| | | |
|---|---|---|
| 1 | IN THE CIRCUIT COURT OF THE STATE OF OREGON | |
| 2 | FOR THE COUNTY OF WASHINGTON | |
| 3 | STATE OF OREGON, | No. 16CR46339 |
| 4 | Plaintiff, | |
| 5 | vs. | MEMORANDUM IN SUPPORT OF DEMURRER—Counts: 1 - 9 |
| 6 | BENJAMIN JAY BARBER, | (Unlawful Dissemination of an Intimate Image) |
| 7 | Defendant. | |

## SUMMARY OF ARGUMENT

ORS 163.472 was recently adopted to criminalize the practice of "revenge porn," whereby one party to an intimate relationship discloses sexually explicit recordings exchanged during the relationship, often in retaliation towards the other party. This conduct constitutes protected speech under the Oregon Constitution and does not fall within a recognized historical exception. Furthermore, this conduct constitutes protected speech under the First Amendment, and ORS 163.472 fails to meet the test for strict scrutiny. As such, ORS 163.472 is facially invalid as an unpermitted restraint on free expression. For these reasons, the statute is unconstitutional and should be struck down.

## BACKGROUND

In the summer of 2015, the Oregon Legislature passed Senate Bill 188, which created a new crime called "Unlawful dissemination of an intimate image." The bill was codified under ORS 163.472, which provides:

> (1) A person commits the crime of unlawful dissemination of an intimate image if:
> (a) The person, with the intent to harass, humiliate or injure another person, knowingly causes to be disclosed through an Internet website an identifiable image of the other person whose intimate parts are visible or who is engaged in sexual conduct;
> (b) The person knows or reasonably should have known that the other person does not consent to the disclosure;
> (c) The other person is harassed, humiliated or injured by the

exhibit #8

PAGE 5 DEMURRER AND MEMORANDUM IN SUPPORT OF DEMURRER

**METROPOLITAN PUBLIC DEFENDER**
400 E. MAIN STREET, SUITE 210    HILLSBORO, OREGON 97123-4166    503-726-7900    FAX 503-726-4950

1  disclosure; and
2  (d) A reasonable person would be harassed, humiliated or injured by the disclosure.

3  Or. Rev. Stat. Sec. 163.472(1) (West, 2016).

4  The bill also provided a number of relevant definitions.

5  (3) As used in this section:
6     (a) "Disclose" includes, but is not limited to, transfer, publish, distribute, exhibit, advertise and offer.
7     (b) "Image" includes, but is not limited to, a photograph, film, videotape, recording, digital picture and other visual reproduction, regardless of the manner in which the image is stored.

9  *Id.*

10  The bill came to be known as Oregon's "revenge porn" law. Denis C. Theriault, *Birth control, 'revenge porn' and upskirting: This week in new Oregon laws*, Oregonlive.com, June 13, 2015 (available at http://www.oregonlive.com/politics/index.ssf/2015/06/this_week_in_new_oregon_laws_2.html). In modern parlance, "revenge porn" refers to a practice by which a jilted lover distributes (generally over the Internet) homemade pornography given to them during a relationship by their former partner. This behavior is motivated by a desire to get revenge for a perceived slight by the former partner – thus the moniker, "revenge porn." In passing this bill, the legislature criminalized that which, until this point, was exclusively the province of civil tort law.

## LAW AND ARGUMENT

**I.  ORS 163.472 is subject to the free expression guarantees provided by Article I, section 8 of the Oregon Constitution because it criminalizes speech.**

Like its federal counterpart, the Oregon Constitution provides for certain guarantees on the rights to free speech and its dissemination. Article I, section 8 of the Oregon Constitution provides:

> No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right.

Oregon Constitution, Art. I, sec. 8 (West, 2016).

Article I, section 8 has long been considered a prohibition against the unfettered power of the Oregon State Legislature. "Article I, section 8 prohibits lawmakers from enacting restrictions that focus on the content of speech of writing, either because that content itself is deemed socially undesirable or offensive, or because it is thought to have adverse consequences." *State v. Robertson*, 293 Or 402, 416-417 (1982).

Furthermore, Article I, section 8 has been construed to provide vast protections for all manner of expression. To that end, the Oregon Supreme Court has noted that "it appears to us to be beyond reasonable dispute that the protection extends to the kinds of expression that a majority of citizens in many communities would dislike – profanity, blasphemy, pornography – and even to physical acts, such as nude dancing or other explicit sexual conduct, that have an expressive component." *State v. Ciancanelli*, 339 Or. 282 (2005).

### a. Article I, section 8 applies to visual recordings.

Visual recordings fall within the protection of Article I, section 8. *See e.g.*, *State v. Stoneman*, 323 Or. 536 (1996) (Article I, section 8 "extends not only to written and spoken communications, but also to verbal and nonverbal expressions in film, photographs, and the like."), *see also State v. Ciancanelli*, 339 Or. 282, 293 (2005) (noting that photography falls within Article I, section 8 protections). As a result, such visual depictions are all considered forms of constitutionally-protected "speech." Here, the statute at issue criminalizes the distribution of "intimate images." "Images" includes photos, films, videotapes, visual recordings, and digital pictures. Thus, Article I, section 8 applies, and the subject matter at issue is "speech."

PAGE 7 DEMURRER AND MEMORANDUM IN SUPPORT OF DEMURRER

**METROPOLITAN PUBLIC DEFENDER**
400 E. MAIN STREET, SUITE 210   HILLSBORO, OREGON 97123-4166   503-726-7900   FAX 503-726-4950

### b. Article I, section 8 applies to the distribution of speech.

Oregon courts have long recognized that the right to free speech encompasses not only the right to speak, but the right do distribute and disseminate one's speech. *See, e.g., State v. Stoneman*, 323 Or 536 (1996) (Article I, section 8 applies to statute criminalizing distribution of child pornography); *State v. Maynard*, 168 Or App 118 (2000) (Article I, section 8 applies to statute criminalizing distribution of obscene materials to minors); *State v. Ciancanelli*, 339 Or 282 (2005) (Article I, section 8 applies to statute criminalizing promotion of live sex shows). Here, ORS 163.472 prohibits only the "disclosure" of "images." To "disclose" means to transfer, publish, distribute, or exhibit. Thus, the only way to violate this statute is by disseminating speech. Article I, section 8 therefore applies.

### II. Challenges to criminal statutes under Article I, section 8 are analyzed under the *Robertson* test.

Challenges to criminal statutes under Article I, section 8 are evaluated under the framework laid out in *State v. Robertson*, 293 Or. 402 (1982), as clarified by the analysis in *State v. Ciancanelli*, 339 Or. 282 (2005). In *Ciancanelli*, the Oregon Supreme Court analyzed the long history of challenges under Article I, section 8 and determined that there are three possible categories of statutes subject to the analysis. The first category is those statutes which, on their face, are "written in terms directed to the substance of any 'opinion' or any 'subject' of communication." *State v. Robertson*, 293 Or 402, 412 (1982). This category includes statutes like the prohibition on live sex shows at issue in *Ciancanelli*. The second category includes statutes that expressly prohibit expression used to accomplish forbidden results. For example, in *State v. Maynard*, 168 Or App 118 (2000), the Court of Appeals found that a statute prohibiting furnishing obscene materials to minors was one which "expressly prohibits expression used to accomplish forbidden effects." The third category involves those statutes which do not, by their terms, implicate speech or expression, and are aimed only at harmful "effects." This category would

PAGE 8 DEMURRER AND MEMORANDUM IN SUPPORT OF DEMURRER

**METROPOLITAN PUBLIC DEFENDER**
400 E. MAIN STREET, SUITE 210    HILLSBORO, OREGON 97123-4166    503-726-7900    FAX 503-726-4950

1   include, for example, a statute similar to our current Encouraging Child Sexual Abuse
2   statute, as seen in *State v. Stoneman*, 323 Or 536 (1996).

### a. ORS 163.472 falls under the first *Robertson* category – those statutes which facially restrict speech based on its content.

Defendant contends that ORS 163.472 falls within the first *Robertson* category – those statutes which, on their face, are "written in terms directed to the substance of any 'opinion' or any 'subject' of communication." These statutes are more easily generalized as "laws that focus on the *content* of speech or writing." *City of Salem v. Lawrow*, 233 Or App 32, 35 (2009). The test under this category contains two parts; (1) determining the scope of the statute, and (2) determining whether it falls wholly within a recognized historical exception to free speech guarantees.

First, a court must determine "whether the statute is directed by its terms at restraining or restricting speech or expression." *Ciancanelli* at 319. In *Ciancanelli*, defendant challenged a statute criminalizing any person who is found to "knowingly direct, manage, finance, or present a live public show in which the participants engage in sadomasochistic abuse or sexual conduct." *Id.* at 319. The Supreme Court found that this statute prohibited acts "*only* when they occur in an expressive context." *Ciancanelli* at 320 (emphasis in original). Therefore, the statute restrained free expression. Here, the argument is far baser. ORS 163.472 prohibits "disclosure" of "images." As discussed above, "images" are a form of free expression, and their disclosure is considered a form of constitutionally-protected dissemination. Therefore, ORS 163.472 clearly restricts expression, and falls within the first category under the *Robertson* analysis.

Furthermore, ORS 163.472 falls under this category because it specifically prohibits the disclosure of "intimate images," meaning that one can only violate the statute by distributing depictions of another's "intimate parts" or "sexual conduct." This distinction was crucial to the Supreme Court's holding in *Citys of Portland v. Tidyman*, 306 Or 174 (1988). In that case, the Supreme Court found that a regulation limiting the

PAGE 9 DEMURRER AND MEMORANDUM IN SUPPORT OF DEMURRER

**METROPOLITAN PUBLIC DEFENDER**
400 E. MAIN STREET, SUITE 210    HILLSBORO, OREGON 97123-4166    503-726-7900    FAX 503-726-4950

locations of "adult bookstores" fell within the first *Robertson* category in part because it was directed solely at "adult" bookstores, and thus, the regulation affected only those engaged in "lewd" subject matter. Similarly, here, the statute criminalizes only "intimate" photographs.

The second part of this test recognizes an exception to Article I, section 8 in some circumstances. "[L]aws that are directed at restraining expression are permissible when the 'scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach." *Ciancanelli* at 296-297. These exceptions include perjury, solicitation or verbal assistance in crime, forgery, fraud, and some forms of theft. *Id.* at 297. Given that the first photograph of a human being is believed to have been taken in 1838, it is impossible to conclude that any social rejection or legal censure of photography was considered "well established" in 1859 or prior. Louis Daguerre, *Boulevard du Temple*, 1838.

**b. ORS 163.472 does not fall within the second *Robertson* category because it solely prohibits dissemination of speech, and is not an incidental means of prohibiting a distinct harm.**

The second *Robertson* category includes those statutes which expressly prohibit expression as one means of prohibiting forbidden results. This category of statutes "focuses on forbidden effects, but expressly prohibits expression used to achieve those effects." *City of Salem v. Lawrow* at 36. The true test for determining whether a statute falls within this category is whether the statute can by violated without expression. For example, in *City of Salem v. Lawrow*, defendant challenged his conviction for violating a city ordinance which prohibited paying for, or receiving money for, "touching or offering to touch the clothed or unclothed body of another for the purpose of arousing sexual excitement in himself or any other person." *Id.* at 34. The Court of Appeals found that this law "falls within the second category of speech laws that are described in *Robertson*: laws

**METROPOLITAN PUBLIC DEFENDER**
400 E. MAIN STREET, SUITE 210   HILLSBORO, OREGON 97123-4166   503-726-7900   FAX 503-726-4950

1  that focus on preventing harm, but expressly proscribe expression as one means of
2  achieving that harm." *Id.* at 38. This was due to the fact that while most factual scenarios
3  falling under this statute would implicate expressive conduct, there were some ways to
4  violate the statute without any form of speech (for example, a private, wordless
5  performance).
6      A simpler analogy would be the coercion statute at issue in *Robertson*, which the
7  Supreme Court found fit into this category as well. That statute prohibited a legitimate,
8  nonexpressive effect – "the effect of frightening another person into a nonobligatory and
9  undesired course of conduct." *Robertson* at 417-418. While one could violate that statute
10 through expressive means, such as verbal warnings or threats, a violation could also occur
11 through nonexpressive means.
12     Laws that fall under the second *Robertson* category must be analyzed for
13 overbreadth. A statute is considered overbroad for purposes of Article I, section 8 when
14 "it appears to reach privileged communication." *Robertson* at 417-418. "Privileged
15 communication" is speech that is constitutionally protected.
16     Defendant contends that ORS 163.472 falls under the first *Robertson* category
17 rather than the second. As discussed above, the only manner in which this statute can be
18 violated is by disseminating speech. The statute is conclusively and exclusively aimed at
19 speech. There is no independent and distinct harm to be forbidden under this statute – the
20 harm to be forbidden is the disclosure of the image itself. Thus, this statute falls squarely
21 within the first *Robertson* category.
22     It is likely that the State will argue that ORS 163.472 should be analogized to
23 prohibitions on the dissemination of child pornography, which Oregon courts have upheld
24 in a somewhat distinct series of cases loosely derived from the second *Robertson*
25 category. *State v. Betnar*, 214 Or App 416 (2007), accurately summarizes the logic behind
26 those cases and demonstrates why these holdings are inapplicable to ORS 163.472. In
   *Betnar*, defendant was convicted of 199 counts of Encouraging Child Sex Abuse I. He

PAGE 11 DEMURRER AND MEMORANDUM IN SUPPORT OF DEMURRER

**METROPOLITAN PUBLIC DEFENDER**
400 E. MAIN STREET, SUITE 210    HILLSBORO, OREGON 97123-4166    503-726-7900    FAX 503-726-4950

argued on appeal that the Encouraging statute violated Article I, section 8. *Id.* at 420. The Court of Appeals disagreed, noting a long line of cases holding that such statutes fall under the second *Robertson* category because the distribution of child pornography necessarily requires a separate and distinct harm – the sexual abuse of a child. After concluding that the statute was not overbroad, the Court held that the statute was permissible because its focus was "on acts that encourage the sexual exploitation of children" and not expression. *Id.* at 423. ORS 163.472 implicates no such distinct exploitation. The fundamental premise of "revenge porn" is that it is consensually made and lawfully exchanged between consenting adults. As such, it exists in a world wholly distinct from child pornography, and any attempts to analogize the two are logically improper.

### c. ORS 163.472 does not fall within the third *Robertson* category – those statutes which do not facially implicate expression and focus only on forbidden effects.

The third category of statutes contemplated by the *Robertson* framework are those which do not, on their face, implicate expression, and focus only on the prohibition of forbidden effects. *Stoneman* at 543. These statutes are distinct in that they focus "on forbidden effects, [] without referring to expression at all." *City of Salem v. Lawrow*, 233 Or App 32, 36 (2009), citing *State v. Plowman*, 314 Or 157 (1992) (constitutional challenge to intimidation statute was unfounded, as statute did not contemplate expression). Such statutes are analyzed on an as-applied basis for vagueness. ORS 163.472 does not fall within this category, as the plain language of the statute criminalizes solely expression.

### d. ORS 163.472 violates Article I, section 8 under the first prong of the *Robertson* analysis.

It is beyond dispute that revenge porn is not socially desirable. However, as a matter of law, "[i]t is axiomatic that, among the various interests that the government of

PAGE 12 DEMURRER AND MEMORANDUM IN SUPPORT OF DEMURRER

**METROPOLITAN PUBLIC DEFENDER**
400 E. MAIN STREET, SUITE 210    HILLSBORO, OREGON 97123-4166    503-726-7900    FAX 503-726-4950

this state seeks to protect and promote, the interests represented by the state constitution are paramount to legislative ones. Consequently, a state legislative interest, no matter how important, cannot trump a state constitutional command." *State v. Stoneman*, 323 Or 536 (1996). Even the most repugnant of speech is subject to proper analysis and protection, if warranted, under Article I, section 8.

Under the *Robertson* analysis, statutes which prohibit speech based on its content violate Article I, section 8 and shall be struck down unless the forbidden result falls wholly within some historical exception that was recognized when Article I, section 8 was adopted. Numerous opinions have examined these "historical exceptions." Between *Robertson* and *Ciancanelli*, the list has grown to include intimidation, coercion, theft, forgery, perjury, and solicitation of crime. "Revenge porn" falls within none of these categories or their contemporary variants. ORS 163.472 is constitutionally infirm and should be struck down.

### III. ORS 163.472 is subject to the free expression guarantees provided by the First Amendment of the United States Constitution because it criminalizes speech.

The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech." The First Amendment applies to the State of Oregon under the Due Process Clause of the 14th Amendment. *Board of Education v. Barnette*, 319 U.S. 624 (1943).

#### a. Photography and motion pictures are speech, regardless of their content or purpose.

The United States Supreme Court has long held that the First Amendment's guarantees of free speech and expression apply not only to spoken word, but also to the written word, photographs, moving pictures, and other expressive mediums. *New York v. Ferber*, 458 U.S. 747 (1982) (so presuming), *see also*, *Freedman v. State of Md.*, 380 U.S. 51 (1965) (allegedly obscene motion picture is within the ambit of First Amendment

PAGE 13 DEMURRER AND MEMORANDUM IN SUPPORT OF DEMURRER

**METROPOLITAN PUBLIC DEFENDER**
400 E. MAIN STREET, SUITE 210   HILLSBORO, OREGON 97123-4166   503-726-7900   FAX 503-726-4950

1  protection), *Jacobellis v. State of Ohio*, 378 U.S. 1676 (1964) (constitutional guarantees
2  of freedom of speech and of the press apply to motion pictures). Here, ORS 163.472
3  targets "images," including photos, films, videotapes, visual recordings, and digital
4  pictures. This subject matter falls within the sphere of First Amendment protection. The
5  First Amendment therefore applies to ORS 163.472.

    **b. The First Amendment protects the distribution of speech.**

       Like Article I, section 8, the First Amendment protects not only the right to speak, but the right to distribute and disseminate speech and expressive materials. The Supreme Court has clearly stated that, with regard to the First Amendment, "[w]hether government regulation applies to creating, distributing, or consuming speech makes no difference." *Brown v. Entertainment Merchant's Association*, 131 S. Ct. 2729, n.1 (2011). Furthermore, numerous Supreme Court cases have invalidated statutes criminalizing the distribution of photos and videos on First Amendment grounds. *See, e.g., Ashcroft v. Free Speech Coalition*, 535 US 234 (2002) (First Amendment applies to federal statute criminalizing the distribution of virtual child pornography); *U.S. v. Stevens*, 559 US 460 (2010) (First Amendment applies to federal statute criminalizing the sale of animal crush videos). Here, ORS 163.472 criminalizes the distribution of "intimate images." Distributing images is a form of speech, and thus, the First Amendment applies.

    **c. State restrictions on speech such as ORS 163.472 are presumptively unconstitutional.**

       The First Amendment presumes that speech may not be criminalized, subject to certain exempted categories. Such categories include incitement, true threats, perjury, blackmail, defamation, obscenity, and child pornography. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 246 (2002). The Supreme Court of the United States has repeatedly declined to create new categories of unprotected speech. *See e.g., U.S. v. Stevens*, 559 U.S. 460 (2010) (declining to hold that depictions of animal cruelty are unprotected speech).

PAGE 14 DEMURRER AND MEMORANDUM IN SUPPORT OF DEMURRER

**METROPOLITAN PUBLIC DEFENDER**
400 E. MAIN STREET, SUITE 210    HILLSBORO, OREGON 97123-4166    503-726-7900    FAX 503-726-4950

1    As the *Ashcroft* court noted, "where the speech is neither obscene nor the product
2 of sexual abuse, it does not fall outside the protection of the First Amendment." *Ashcroft*
3 *v. Free Speech Coalition*, 535 U.S. 234, 251 (2002). Here, the types of recordings
4 prohibited by ORS 163.472 do not fall within any category of unprotected speech. They
5 therefore constitute protected speech.

6    **d. ORS 163.472 does not target obscenity.**

7    The State may argue that "revenge porn" constitutes obscenity. This
8 characterization is false. To prove that speech constitutes obscenity, the Government must
9 prove that the work, taken as a whole, appeals to a prurient interest, is patently offensive
10 in light of community standards, and lacks serious literary, artistic, political, or scientific
11 value. *Miller v. California*, 413 U.S. 15 (1973). ORS 163.472 prohibits the dissemination
12 of "intimate images." "Intimate images" includes visible "intimate parts" and depictions
13 of "sexual conduct." Or. Rev. Stat. Sec. 163.472(1). "Intimate parts" means "uncovered
14 human genitals, pubic areas or female nipples." Or. Rev. Stat. Sec. 163.472(3)(e). "Sexual
15 conduct" means "sexual intercourse or deviate sexual intercourse, as those terms are
16 defined in ORS 163.305, or masturbation." Or. Rev. Stat. Sec. 163.472(3)(f). Finally,
17 "sexual intercourse" "has its ordinary meaning and occurs upon any penetration, however
18 slight" and "deviate sexual intercourse" means "sexual conduct between persons
19 consisting of contact between the sex organs of one person and the mouth or anus of
20 another person." Or. Rev. Stat. Sec. 163.305(1)-(7).

21    ORS 163.472 is not a statute that regulates obscenity. The statute covers a wide
22 range of content, from images as innocuous as bare female breasts to "deviate sexual
23 intercourse." While some revenge porn *might* qualify as obscenity, the statute casts a
24 much wider net. A review of Supreme Court case law indicates that ORS 163.472
25 stretches far beyond anything that could be considered "obscene" under the *Miller* test.
26 For example, in *Ashcroft v. Free Speech Coalition*, the Court noted that even virtual
depictions of child pornography might not be obscene in some circumstances or

PAGE 15 DEMURRER AND MEMORANDUM IN SUPPORT OF DEMURRER

**METROPOLITAN PUBLIC DEFENDER**
400 E. MAIN STREET, SUITE 210    HILLSBORO, OREGON 97123-4166    503-726-7900    FAX 503-726-4950

1  communities. *Ashcroft* at 240. Furthermore, the Court noted that any statute targeting
2  obscenity should track the language of the *Miller* test – something which ORS 163.472
3  makes no attempt to do. *Id.* Finally, the Portland metro area is the least likely community
4  in the nation to find depictions of nudity or sexual conduct "obscene." Our community
5  holds regular events such as the World Naked Bike Ride, boasts that it is "the strip club
6  capital of the world," and frequently hosts events like Dan Savage's "HUMP" Amateur
7  Pornographic Film Festival. This is not an obscenity case.

8      **e. ORS 163.472 does not target speech derived from sexual abuse.**

9      In addition to obscenity, speech derived from sexual abuse falls outside the sphere
10 of First Amendment protections. The landmark case on this issue is *New York v. Ferber*,
11 458 US 747 (1982). In that case, the Supreme Court took the unprecedented step of
12 carving out an entirely new category of unprotected speech – child pornography. The
13 rationale behind their decision was sound. Given that the underground market for child
14 pornography had become so pernicious, government must be allowed to take drastic
15 measures to stamp out the insidious spread of child pornography. Thus, the Court allowed
16 a narrowly-tailored federal statute to stand, on the grounds that it was the least restrictive
17 means of achieving an extremely compelling government interest – stopping the sexual
18 abuse of children. However, recognizing that the creation of an entirely new category of
19 unprotected speech was such a drastic step, the Supreme Court took great care in
20 subsequent cases to delineate the boundaries imposed by *Ferber*. "As a general rule,
21 pornography can be banned only if obscene, but under *Ferber*, pornography showing
22 minors can be proscribed whether or not the images are obscene." *Ashcroft* at 240.
23     No such concerns are implicated by this case. As discussed above, nothing about
24 ORS 163.472 contemplates any form of sexual abuse. By its very nature, revenge porn
25 contemplates photos freely taken and exchanged between consenting adults. Further,
26 nothing about the statute relates to minors. While photographs of a minor *could* fall under
    ORS 163.472, Oregon already has a host of other laws criminalizing such matters, and the

PAGE 16 DEMURRER AND MEMORANDUM IN SUPPORT OF DEMURRER

**METROPOLITAN PUBLIC DEFENDER**
400 E. MAIN STREET, SUITE 210    HILLSBORO, OREGON 97123-4166    503-726-7900    FAX 503-726-4950

1  legislature's discussion of SB 188 evinced not a single reference to minors. ORS 163.472 is not a statute seeking to protect minors and does not fall within the *Ferber* exception.

### IV.  ORS 163.472 is unconstitutional because it is a content-based regulation on speech and does not survive strict scrutiny.

State statutes that restrict speech based on its content, subject matter, or viewpoint are presumptively unconstitutional. *Stevens* at 468. Content-based regulations are those adopted "because of [agreement or] disagreement with the message [the speech] conveys." *Turner Broadcasting System, Inc. v. F.C.C.*, 512 U.S. 622 (1994), citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). "The government may not regulate [speech] based on hostility – or favoritism – towards the underlying message expressed." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 386 (1992).

Here, ORS 163.472 prohibits speech based on its content – whether it is an "intimate image." As discussed above, the statute criminalizes only photographs depicting nudity or sexual conduct. It would not, for example, criminalize disclosing a photograph of an ex-partner eating a sandwich. Such a statute is "'presumptively invalid,' and the Government bears the burden to rebut that presumption." *Stevens* at 468, citing *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 817 (2000).

The test for whether a content-based statute passes constitutional muster is strict scrutiny. *Ward v. Rock Against Racism*, 491 US 781, 791 (1989). To survive strict scrutiny, the statute must be "the least restrictive means of achieving a compelling state interest." *McCullen v. Coakley*, 134 S.Ct. 2518, 2530 (2014). Furthermore, the means employed must be "narrowly tailored" to serve the compelling government interest. *Williams-Yulee v. Florida Bar*, 135 S Ct 1656 (2015). "If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *U.S. v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813 (2000). Thus, strict scrutiny focuses on three major concerns: (1) does the statute target a compelling government interest, (2) is the statute the least restrictive means of achieving that interest, and (3) are

PAGE 17 DEMURRER AND MEMORANDUM IN SUPPORT OF DEMURRER

**METROPOLITAN PUBLIC DEFENDER**
400 E. MAIN STREET, SUITE 210    HILLSBORO, OREGON 97123-4166    503-726-7900    FAX 503-726-4950

1  the means employed "narrowly tailored" to achieving that interest?

2  The question then becomes – what "compelling government interest" will ORS 163.472 safeguard? Undoubtedly, the State will argue that it protects people from harassment, humiliation, and injury stemming from the dissemination of a photograph that they have given away, but in which they expect to retain an expectation of privacy. This premise is fatally flawed.

7  The notion of a "reasonable expectation of privacy" has a long history in the law, but has been viewed primarily in terms of a citizen's right to maintain privacy from government actors. The Fourth Amendment protects citizens from government intrusions into areas in which they have a reasonable expectation of privacy. Thus, government actors cannot walk into someone's home uninvited, and cannot access the contents of someone's cell phone without a warrant or consent. *Riley v. California*, 134 S Ct 2473 (2014). The underlying premise behind this dynamic is that constitutional rights are often referred to as "negative rights," placing limitations on government actors vis-à-vis citizens.

16  Conversely, here, the legislature steps into the fray under the auspices of protecting citizens from one another. While not requiring an explicit "reasonable expectation of privacy," ORS 163.472 requires elements such as "knows or reasonably should have known that the other person does not consent to the disclosure" and "a reasonable person would be harassed, humiliated, or injured by the disclosure." Or. Rev. Stat. Sec. 163.472(2) (West, 2016). The closest statutory analog to these requirements comes from the Invasion of Personal Privacy statute, ORS 163.700, which provides that a "reasonable expectation of privacy concerning the intimate area" means that "the person intended to protect the intimate area from being seen and has not exposed the intimate area to public view." The logical problems with these requirements stems from the presumption that under the scenario outlined above, the alleged victim has already given up an expectation of privacy by disseminating the intimate image themselves. This is,

PAGE 18 DEMURRER AND MEMORANDUM IN SUPPORT OF DEMURRER

**METROPOLITAN PUBLIC DEFENDER**
400 E. MAIN STREET, SUITE 210    HILLSBORO, OREGON 97123-4166    503-726-7900    FAX 503-726-4950

1  regrettably, a conundrum of their own voluntary making.

2  　　　The advent of the digital age has brought about many benefits in modern society.
3  Social media and Internet websites allow human beings to communicate and share
4  information, photos, videos, and more at the touch of a button. However, the last twenty
5  years of Internet history have demonstrated that once information is voluntarily given, it
6  is incredibly difficult to take back. In essence, it is impossible to put the genie back in the
7  bottle. For example, one might look to the public disgrace of former Congressman
8  Anthony Weiner and realize that unfortunately, society does not recognize much of a right
9  to privacy in sexual photographs that are voluntarily shared with partners through Internet
10 technology. It is axiomatic that the surest way to safeguard one's privacy is simple – don't
11 take the photograph, and if you do, don't share it.

12 　　　ORS 163.472 is also flawed because it is not a narrowly-tailored means of
13 addressing the purported government interest. At the onset, it stands to note that a great
14 many possible revenge porn scenarios are already covered by existing statutes. Obviously,
15 any dissemination of sexual photos of minors is covered by statutes on Encouraging Child
16 Sex Abuse, Harassment, or Using a Child in a Display of Sexually Explicit Conduct. Or.
17 Rev. Stat. Sec. 163.684-163.687 (West, 2016); Or. Rev. Stat. Sec. 166.065(C) (West,
18 2016); Or. Rev. Stat. Sec. 163.670 (West, 2016). Intimate photos taken without the
19 subject's consent constitute an Invasion of Personal Privacy. Or. Rev. Stat. Sec. 163.700-
20 701 (West, 2016). Photos stolen from another person's phone, computer, or cloud drives
21 constitute Computer Crime. Or. Rev. Stat. Sec. 164.377(2)(c) (West, 2016). By ruling out
22 all of these scenarios, only one circumstance remains: two people have some sort of
23 relationship, during which one partner voluntarily and consensually gives an intimate
24 photo to the other partner. Sometime later, the relationship ends, with the receiving
25 partner feeling jilted. The receiving partner then disseminates the intimate photo over the
26 Internet, perhaps on social media or on one of the many "revenge porn" websites that
　　evidently now exist.

PAGE 19 DEMURRER AND MEMORANDUM IN SUPPORT OF DEMURRER

**METROPOLITAN PUBLIC DEFENDER**
400 E. MAIN STREET, SUITE 210    HILLSBORO, OREGON 97123-4166    503-726-7900    FAX 503-726-4950

1   If the government interest truly lies in keeping such depictions secret, then ORS
2   163.472 completely fails in achieving that interest because it is strictly limited to
3   disclosures through an Internet website. No part of ORS 163.472 would stop any jilted
4   lover from texting or emailing the intimate images to any number of persons, plastering
5   copies of an intimate photo all around town, purchasing billboards along I-5 to display the
6   image, mailing copies of an intimate video to the subject's employer, or selling copies of
7   an intimate video to one of the many proprietors of "amateur pornography" that dominate
8   commercial airtime on late night television. Of course, each of these scenarios would
9   result in equal amounts of humiliation for the victim, but only those on the Internet would
10  land the offender in jail. As a result, the statute is not a narrowly-tailored means of
11  achieving the purported government interest.

12  To that end, the legal solution to the "revenge porn problem" lies in remedies as
13  old as courts themselves – the civil suit. Torts such as libel, defamation, public disclosure
14  of private facts, invasion of privacy, and intentional infliction of emotional distress await
15  those who have been wronged by vengeful exes and can be neatly tailored to any scenario
16  without concern for whether or not the government is trampling constitutional rights and
17  chilling free speech in the process.

18  ### CONCLUSION

19  Because ORS 163.472 impermissibly criminalizes protected speech under Article
20  I, section 8 of the Oregon Constitution and the First Amendment to the United States
21  Constitution, Defendant respectfully demurs to Counts 1-9 of the Criminal Complaint.

22  Respectfully submitted this __7__ day of __September__, __2016__.

23

24

25  Cameron Taylor, OSB #154324
    Attorney for Defendant

26

PAGE 20 DEMURRER AND MEMORANDUM IN SUPPORT OF DEMURRER

**METROPOLITAN PUBLIC DEFENDER**
400 E. MAIN STREET, SUITE 210    HILLSBORO, OREGON 97123-4166    503-726-7900    FAX 503-726-4950