1

2

3          **IN THE CIRCUIT COURT OF THE STATE OF OREGON**

4              **FOR THE COUNTY OF WASHINGTON**

5    STATE OF OREGON,
                                          No. 16CR46339 (DA 345218)
6                        Plaintiff,
                                          **STATE'S RESPONSE TO**
7          vs.                            **DEFENDANT'S DEMURRER**

8    BENJAMIN JAY BARBER,
                        Defendant.
9

10

11                        **BACKGROUND**

12   Defendant is currently charged with nine counts of Unlawful Dissemination of an Intimate Image.

13   Defendant demurred to all counts alleged in the state's complaint on the grounds that ORS 163.472

14   criminalizes protected speech in violation of Article 1, Section 8 of the Oregon Constitution and the

15   First Amendment to the United States Constitution. Specifically, defendant asserts that ORS 163.472

16   cannot survive the test laid out by the Oregon Supreme Court in *State v. Robertson,* 293 Or. 402 (1982),

17   and therefore must be struck down. Similarly, defendant argues that ORS 163.472 is a content-based

18   regulation on speech and cannot survive strict scrutiny. For the reasons discussed below, defendant's

19   demurrer should be denied.

20   //

21   //

22   //

23   //

Page 1

Washington County District Attorney
150 North First Avenue, Room 300, MS#40
Hillsboro, Oregon  97124-3002
(503) 846-8671   Fax (503) 846-3407

exhibit #9

1                                   **ARGUMENT**

2     **I.      ORS 163.472 is constitutional under Article 1, Section 8, and *State v. Robertson*.**

3           When analyzing a statute's constitutionality under Article 1, Section 8 of the Oregon

4 Constitution, Oregon courts utilize the so-called *Robertson* framework. In *Robertson*, the court was

5 tasked with determining the validity of Oregon's coercion statute. The court's analysis began by

6 dividing statutes into three distinct categories. Category 1 refers to statutes that are "written in terms

7 directed to the substance of any 'opinion' or any 'subject' of communication," i.e. content-based

8 restrictions on speech. Such statutes are deemed unconstitutional unless the restriction falls within some

9 historically recognized exception. Category 2 refers to statutes that expressly restrict speech in an effort

10 to prevent some harmful result. These statutes are analyzed for overbreadth. Finally, Category 3 refers to

11 statutes that do not facially restrict speech, but are solely directed at preventing harmful results. Those

12 statutes are analyzed for constitutionality on an as-applied basis.

13           The court in *Robertson* concluded that Oregon's coercion statute fell within Category 2; although

14 the statute clearly regulated speech, it was "directed in terms against the pursuit of a forbidden effect."

15 As the following arguments illustrate, ORS 163.472 also falls within this category, and survives the test

16 for overbreadth.

17     **a.  ORS 163.472 does not fall within Category 1 of the *Robertson* test.**

18           Defendant asserts that ORS 163.472 falls within the first category of the *Robertson* test.

19 Defendant argues that because the statute refers to "disclosure" of "intimate images" that this necessarily

20 confines ORS 163.472 to the category of content-based restrictions. Defendant cites *State v. Ciancanelli*,

21 339 Or 282 (2005) as well as *City of Portland v. Tidyman*, 306 Or 174 (1988) to stand for this

22 proposition. Defendant's arguments, however, are misplaced. Both *Ciancanelli* and *Tidyman* involved

23 laws that explicitly restricted speech based on its content, with no concern for the undesirable effects of

Page 2

1    the speech. *Ciancanelli* involved a challenge to Oregon's "Live Sex Show" statute, which provided that

2    "it is unlawful for any person to knowingly direct, manage, finance, or present a live public show in

3    which the participants engage in sadomasochistic abuse or sexual conduct." *Id.* at 633. Similarly, in

4    *Tidyman*, the court was faced with a city ordinance prohibiting so-called "adult businesses" from

5    locating within 500 feet of residential or school zones, and 1000 feet from other "adult businesses." *Id.*

6    at 243.

7        In those cases, the court concluded that the statutes fell within the first *Robertson* category

8    because they failed to expressly identify a harm or undesirable effect that the restriction aimed to

9    prevent. Both statutes merely placed regulations on specific forms of expression. Although the state in

10   those cases argued that the regulations were created in the spirit of preventing various harms, the court

11   emphasized that the proscribed effects were excluded from the plain text of the statute, thereby allowing

12   restriction even where no harm occurs. As the court stated in *Tidyman*, "[b]y omitting the supposed

13   adverse effects as an element of the regulatory standard, the ordinance appears to consider the

14   "nuisance" to be the characteristics of the adult materials rather than the secondary characteristics and

15   anticipated effects of the store." *Id.* at 248. Thus, the statutes in those cases were solely content-based

16   restrictions on speech, and were struck down.

17       By contrast, ORS 163.472 expressly targets the harmful secondary effects of the prohibited

18   conduct. ORS 163.472 consists of the following elements: (1) knowing disclosure, (2) of an identifiable,

19   intimate image, (3) through an internet website, (4) knowledge that the disclosure is without consent, (5)

20   intent to harass, humiliate, or injure, (6) the victim is, in fact, harassed, humiliated, or injured, and (7)

21   that a reasonable person would be harassed, humiliated, or injured. The state does not refute the

22   assertion that the statute regulates certain forms of speech. Notably, however, ORS 163.472 also

23   includes no less than three elements that specifically target the undesirable harm that the statute aims to

Page 3

1    prevent. In order to violate the statute, the actor must intend to harass the victim, the victim must in fact

2    be harassed, and it must be reasonable that a person in the victim's position would be harassed. Thus, on

3    its face, ORS 163.472 is clearly distinguishable from the kind of statutes struck down in *Ciancanelli* and

4    *Tidyman,* and cannot be said to belong to the first category of the *Robertson* framework.

5        **b.  ORS 163.472 falls under Category 2 of the *Robertson* test.**

6        Because ORS 163.472 prohibits expression insofar as it is used to accomplish forbidden effects,

7    it clearly falls within the second category of the Robertson framework. Oregon courts have so

8    categorized numerous other statutes with analogous provisions. For example, in *State v. Ray*, 302 Or

9    595, (1987), the court found that a provision of Oregon's former harassment statute fell within the

10   second *Robertson* category because, although the statute specifically regulated sexual or obscene speech,

11   the statute was directed against the accomplishment of a forbidden result, i.e., the "alarm or annoyance"

12   of another person. The court noted that "[t]he intent of the legislature in drafting this statute was to

13   protect persons from actual injury, not to restrict the content of speech." *Ray* at 29. Similarly, in *State v.*

14   *Moyle*, 299 Or 691 (1985), the court placed Oregon's telephonic harassment statute into the second

15   *Robertson* category on the grounds that "[h]arm to another, in the form of alarm, is the focus of the

16   statute." The court noted that "[s]peech and writing are merely the means, albeit the only prohibited

17   means, of achieving the forbidden effect--actual and reasonable alarm," thus, the statute focused on

18   effect rather than speech itself. *Moyle* at 745.

19       In *State v. Rangel*, 328 Or 294 (1999), the court reached the same conclusion regarding Oregon's

20   stalking statute (holding that although speech-based "contacts" were prohibited, the statute is explicitly

21   directed at preventing alarm and coercion to the victim). Additionally, in *State v. Garcias*, 296 Or 688

22   (1984), the court found Oregon's menacing statute fell within Robertson's second category because it

23   aimed to prevent alarm and injury to the victim; the court noted that "the fact that the harm may be

Page 4

1    brought about by use of words, even by words unaccompanied by a physical act, does not alter the focus

2    of the statute, which remains directed against attempts to cause an identified harm."

3         The court in *Garcias* distinguished that case from *State v. Spencer*, 289 Or 225 (1980), in which

4    a portion of the Disorderly Conduct statute was deemed unconstitutional. Although that statute also

5    explicitly required the "intent to cause public inconvenience, annoyance, or alarm," the *Spencer* court

6    noted that the prohibition on abusive or obscene speech would apply whether or not any harm was

7    actually suffered. *Id.* at 1148. This is distinguishable from the statutes at issue in *Garcias*, *Rangel*,

8    *Moyle*, *Ray*, and *Robertson* itself, which are directed at preventing harm and expressly provide as such.

9    ORS 163.472 clearly falls within the latter group, and therefore Category 2.

10         On a related note, defendant argues that the line of cases discussed in *State v. Betnar*, 214 Or

11    App. 416 (2007) and *State v. Stoneman*, 323 Or 536 (1996) is somehow inapplicable to the court's

12    analysis of ORS 163.472. Defendant argues that the statutes at issue in those cases (which involve the

13    possession and distribution of child pornography) fell within Category 2 because the distribution of child

14    pornography necessarily requires that an underlying harm (child abuse) occurs. Defendant then turns this

15    argument on its head to suggest that because the images at issue in ORS 163.472 do not necessarily

16    implicate abuse, that *Betnar* and related cases offer no support for the state's position. Defendant's

17    interpretation of those cases is misguided.

18         What cases like *Betnar* and *Stoneman* stand for can be summarized as follows: to fall under

19    Category 2 of the *Robertson* test, a statute that implicates speech must be aimed against some

20    undesirable effect or harm. Many child pornography statutes do not *facially* proscribe a specific harm as

21    an element of the crime, and thus appear to be purely content-based restrictions. However, in the case of

22    child pornography, the court held that the dissemination itself is "more than mere expression, it is further

23    exploitative conduct" that propagates and incentivizes further instances of abuse. *Betnar* at 423.

Page 5

1   Essentially, the court created an exception where, even when a statute is not explicitly directed at a

2   harmful result, a broader contextual examination can illuminate the state's intent to prevent harm.

3   *Betnar* and *Stoneman* therefore do nothing to diminish the framework identified in *Robertson*; if

4   anything, they emphasize the importance of a forbidden harm, and provide an even broader view of the

5   kinds of statutes that fall within Category 2.

6         Regarding the present case, ORS 163.472 not only explicitly targets a specific harm, but also

7   requires as an element of the offense that the harm actually occurs. The statute therefore squarely falls

8   within the second category of the *Robertson* framework, and should be examined only for overbreadth.

9         **c.  ORS 163.472 is not overbroad, and is therefore constitutional under Article 1, Section 8.**

10         When a statute falls within the second category of the *Robertson* framework, it will be subject to

11   an overbreadth analysis. As stated in *Garcias*, "[t]he inquiry in an overbreadth analysis is whether there

12   are instances in which one is constitutionally privileged to engage in the conduct proscribed by the

13   statute." Put another way, a claim of overbreadth asserts that a statute, while facially valid, reaches

14   conduct that would otherwise be constitutionally protected.

15         Oregon courts have found Category 2 statutes overbroad where their provisions were

16   insufficiently specific and where the types of speech or conduct forbidden were too vaguely described.

17   For example, in *City of Hillsboro v. Purcell*, 306 Or 547 (1988), the court struck down an ordinance that

18   wholly criminalized door-to-door solicitations because it gave no time, place, or manner specifications

19   to justify the prohibition. Similarly, in *Blair*, 287 Or 519, (1979), the court struck down parts of a

20   harassment statute because, although the statute required the intent to "harass, annoy, or alarm," it gave

21   no guidance as to the types of prohibited behavior that could reasonably harass, annoy or alarm another

22   person.

23

Page 6

1        By contrast, courts have consistently held that statutes whose provisions are clear and adequately

2    specific will survive an overbreadth challenge. The *Garcias* court, for example, emphasized that the

3    explicit and implicit meanings within a statute's elements can protect a statute from overbreadth. The

4    defendant in that case offered a laundry list of examples of privileged speech that, in defendant's view,

5    fell within the menacing statute—"a police officer communicating a warning of a bomb threat to the

6    occupants of a building, a doctor informing a patient of a serious illness and one actor menacing another

7    in the course of a performance." *Id.* at 1359. The court rejected these hypotheticals, pointing out that the

8    statute explicitly requires that an actual harm be imminent and serious, and that the idea of "menacing"

9    implicitly requires a level of hostility. Thus, the "elements of the crime of menacing compel an

10   interpretation that would exclude from the statute's coverage defendants' examples of protected

11   communication." *Id.* at 1360.

12       Similarly, the court in *Moyle* discussed the idea that inclusion of provisions such as

13   reasonableness and intent can protect a statute from overbreadth. In the court's words, "[t]hese elements

14   limit the reach of the statute to threats which are so unambiguous, unequivocal and specific to the

15   addressee that they convincingly express to the addressee the intention that they will be carried out." *Id.*

16   at 703. Thus, by including such requirements, innocuous or privileged communications would be

17   protected from the statute's purview.

18       Finally, and perhaps most analogous to the present case, the court in *Rangel* held that Oregon's

19   stalking statute was not overbroad because it adequately laid out the purpose, effect, and reasonableness

20   of the harm sought to be prevented. *Id.* at 385. That statute requires that the actor "knowingly alarm" the

21   victim, that the victim actually is alarmed, and that the alarm is objectively reasonable. The court

22   concluded that such elements adequately "limited the reach" of the statute such that it could not be

23   deemed overbroad. As discussed earlier, ORS 163.472 requires that the actor intends to harass the

Page 7

victim, the victim must in fact be harassed, and it must be reasonable that a person in the victim's position would be harassed. Moreover, taken as a whole, the elements in the statute proscribe a very narrow range of conduct: the non-consensual dissemination via internet websites of identifiable intimate images. The inclusion of such provisions adequately limits the reach of ORS 163.472 to exclude otherwise protected conduct. The statute is not overbroad, and is therefore constitutional under Article 1, Section 8.[1]

## II.    ORS 163.472 is constitutional under the First Amendment.

The First Amendment to the United States Constitution provides that "Congress shall make no law ... abridging the freedom of speech." "[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. American Civil Liberties Union,* 535 U.S. 564, 573 (2002). When the government attempts to regulate speech because of the message it conveys, such regulation is subject to the strict scrutiny standard. However, when the government regulates speech for the purpose of preventing a specific harmful result, a lesser standard applies.

In *United States v. O'Brien*, 391 U.S. 367 (1968), the Court held that "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *Id* at 376. The Court laid out a new framework for analyzing such statutes. First: is the regulation within the government's power, and does it further a government interest? Next, is the government's interest unrelated to the expression? Finally, does the regulation restrict speech no greater

---

[1] As the Oregon legislature pointed out when crafting ORS 163.472, Oregon's free speech protections exceed those guaranteed by the First Amendment. Thus, by virtue of its constitutionality under Oregon law, ORS 163.472 also passes federal constitutional muster. Nevertheless, the state relies on the following arguments to further support the statute's validity under federal law.

Page 8

1    than necessary to prevent the negative effects? *Id.* at 377. For the reasons described below, ORS 163.472

2    passes this test, and is therefore constitutional under the First Amendment.

3        **a. ORS 163.472 is not subject to strict scrutiny.[2]**

4        For nearly fifty years, the Supreme Court has applied the *O'Brien* test to regulations that affect

5    speech for the purpose of combating negative secondary effects. In *O'Brien*, the defendant was

6    convicted under a statute prohibiting the mutilation of draft cards. *Id.* at 370. The defendant appealed on

7    the basis that the regulation was an unconstitutional limit on symbolic speech. The Court held that the

8    statute was constitutional and not subject to strict scrutiny, because although it affected speech, the

9    statute did so for the purpose of combating a harmful secondary effect (impeding the government's

10   ability to regulate the Selective Service).

11       Cases following *O'Brien* remain consistent with this holding. In *City of Renton v. Playtime*

12   *Theatres, Inc*, 475 U.S. 41 (1986), the Court applied the *O'Brien* standard to an ordinance prohibiting

13   adult theaters from locating within 1,000 of a residential or school zone. The Court explained that strict

14   scrutiny was inapplicable because the ordinance "does not appear to fit neatly into either the "content-

15   based" or the "content-neutral" category." The Court noted that the ordinance treated theaters that

16   specialize in adult films differently from other kinds of theaters, thus targeting a specific form of

17   expression. Nevertheless, the Court found that an intermediate standard applied because "the ordinance

18   is aimed not at the *content* of the films shown at "adult motion picture theaters," but rather at the

19   *secondary effects* of such theaters on the surrounding community." *Renton* at 47.

20       Similarly, in *City of Erie v Pap's A.M.*, 529 U.S. 277 (2000), the Court applied the less-stringent

21   *O'Brien* standard to a public indecency ordinance because, although aimed specifically at nude

22

23   [2] The state does not concede that the statute would fail under a strict scrutiny analysis. Although our position is that
     O'Brien's intermediate standard applies, the state would maintain that even under strict scrutiny, the statute is aimed at a
     compelling state interest and is narrowly tailored to achieve it.
     Page 9

1  expression, it was enacted for the purpose of combating the harmful secondary effects of that conduct. In

2  *Ward v. Rock Against Racism*, 491 U.S. 781 (1989) the Court emphasized that the government's purpose

3  is the controlling consideration: "a regulation that serves purposes unrelated to the content of expression

4  is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward*

5  at 791.

6      For the reasons detailed at length above, ORS 163.472 falls in line with the regulations in

7  *O'Brien* and its progeny. The statute regulates speech insofar as it aims to prevent a specific harm:

8  harassment of the victim. The government's purpose in enacting the statute was to prevent that harm, not

9  to unnecessarily curtail speech based on its content, even if it treats one type of content differently than

10  others. Because ORS 163.472 falls into this category of regulation, it is not subject to strict scrutiny and

11  must instead be analyzed under the *O'Brien* framework.

12      **b. ORS 163.472 passes the *O'Brien* test.**

13      As stated above, the *O'Brien* framework analyzes whether a regulation falls within the

14  government's power, whether it furthers a government interest that is unrelated to the expression, and

15  whether the regulation restricts speech no more than necessary in furtherance of that interest.

16  Fortunately, this test mirrors much of Oregon's *Robertson* analysis in spirit and application. Clearly, the

17  government has an interest in preventing harm to its citizens and the power to regulate conduct that

18  harms citizens; such is the basis for enacting any statute prohibiting harassment or injury to another

19  person.

20  //

21  //

22  //

23

Page 10

Washington County District Attorney
150 North First Avenue, Room 300, MS#40
Hillsboro, Oregon 97 24-3002
(503) 846-8671   Fax (503) 846-3407

1    Indeed, Oregon courts have specifically addressed the state's interest in maintaining the

2    wellbeing of the citizenry, whether or not it results in criminal statutes, civil statutes, or both. In *Moyle*,

3    the court noted:

4    "The harassment statute similarly has as its object the use of the criminal law to punish
     "abuses" of speech that cause a private harm--alarm--in lieu of or in addition to a civil

5    remedy for the injured person. Protection of individual as well as societal interests in a
     sense of personal security among the citizenry is a classic objective of law, and Oregon

6    law has been no exception. Since its earliest enactments, the Oregon Legislature has
     sought to preserve a sense of personal security among the citizenry." *Id.* at 746.

7

8    Thus, ORS 163.472's provisions prohibiting the harassment, humiliation, or annoyance of the

9    victim fall within the state's power and interests. The state's interest in preventing harassment,

     humiliation, and annoyance to its citizens is not directly related to the expression at issue in ORS
10
     163.472; several Oregon statutes prohibit harassment, annoyance, alarm, fear, and other forms of harm
11
     to others under a variety of circumstances. Thus, the harm the state aims to prevent is not an effect
12
     purely linked to intimate or sexual content.
13
         Finally, the final piece of the *O'Brien* analysis is essentially an overbreadth test. As discussed
14
     above, the provisions of ORS 163.472 prohibit a very narrow category of conduct, only when it causes a
15
     specific harmful result, and only when that result is reasonable. The statute does not prohibit consensual
16
     dissemination of intimate images, accidental dissemination of intimate images, or dissemination of
17
     images that does not result in harm to the victim. Moreover, the fact that the statute is aimed at
18
     dissemination via internet websites is not only a narrowing provision, it is also a reflection of the
19
     immense harm that such transmissions can cause over a miniscule amount of time. The statutes
20
     provisions do not restrict speech more than is necessary to further the state's interest in protecting its
21
     citizens. Because it satisfies each part of the *O'Brien* framework, ORS 163.472 is constitutional under
22
     the First Amendment.
23

Page 11

1

## CONCLUSION

2          ORS 163.472 passes muster under both Article 1, Section 8 and the First Amendment to the US

3   Constitution. Defendant's arguments to the contrary are not well founded in law or logic, and essentially

4   ignore key provisions in the statute that narrowly tailor it to survive constitutional challenges. As the

5   victim points out in her amicus brief, the Oregon legislature considered at length the possible First

6   Amendment implications at hand, and crafted our statute accordingly. In enacting ORS 163.472, Oregon

7   has helped lead the way in protecting its citizens from the coercive, nonconsensual, and often times

8   irreparably harmful behavior that constitutes "revenge porn." For all of the foregoing reasons,

9   defendant's demurrer should be denied.

10

11

12                                          Marie E. Atwood
13                                          Oregon State Bar #132976
                                            Deputy District Attorney
14

15

16

17

18

19

20

21

22

23

Page 12

*RE: State v.* BENJAMIN JAY BARBER  16CR46339 (DA # 345218)

*DOCUMENT(S):*
*State's Response to Defendant's Demurrer*

### CERTIFICATE – TRUE COPY

*I hereby certify that the foregoing copy of the above-named document is a complete and exact copy of the original.*

Dated: September 27, 2016

/s/ Marie E Atwood
*Attorney(s) for Plaintiff*

### CERTIFICATE OF SERVICE

*I hereby certify that I served a certified true copy of the above-named documents on Cameron Taylor, by providing to said attorney a true copy thereof, certified by me as such, by the following method:*

☐ *Mail:* to said attorney's business address:  Metropolitan Public Defender Services Inc., 400 E Main St. Suite 210, Hillsboro, OR 97123

☐ *Interoffice:* into said attorney's mail pickup at the District Attorney's office at Hillsboro Oregon.

☐ *Personal Service:* to said attorney by personally handing him/her a true copy thereof

☐ *Facsimile Transmission:* to said attorney's fax number:

☒ *Electronic Transmission:* to said attorney's email address: ctaylor@mpdlaw.com

Dated: September 27, 2016

*Attorney(s) for Plaintiff*

**WASHINGTON COUNTY**
District Attorney's Office
Justice Services Building
150 North First Avenue
Hillsboro, Oregon  97124
(503) 846-8671