1

IN THE CIRCUIT COURT OF THE STATE OF OREGON

2

FOR THE COUNTY OF WASHINGTON

3

| | |
|---|---|
| STATE OF OREGON<br>                    Plaintiff,<br>                    v.<br><br>BENJAMIN BARBER<br>                    Defendant. | Case No. 16CR46339<br><br>**VICTIM'S MEMORANDUM IN**<br>**OPPOSITION TO DEFENDANT'S DEMURRER** |

4

5

6

7

8      The named victim in this case, through her attorney Melanie Kebler, hereby objects

9 to the Demurrer filed by Defendant on September 7, 2016, on the grounds that ORS 163.472

10 is constitutional as written and meets all state and federal Constitutional requirements that

11 do apply. The named victim furthermore objects to any arguments by Defendant that imply

12 that she relinquished her reasonable expectation of privacy in any of the intimate images

13 disseminated by the Defendant in this case. This objection is supported by the following

   Memorandum of Law.

14                                    **BACKGROUND**

15      In 2015, Oregon became the 17th state to enact a law criminalizing the

16 nonconsensual dissemination of intimate images, when Senate Bill 188 was passed into law.

17 Now codified as ORS 163.472, and in effect since January 1, 2016, this new crime protects

18 Oregonians from the humiliation and distress caused by perpetrators who intentionally seek

19 to harass and injure their victim by posting intimate images of the victim online, without the

   victim's permission. The current epidemic of this type of victimization, particularly by ex-

20 intimate partners or as perpetrated in the context of domestic or sexual assault, has been

**Page 1 of 8 - VICTIM'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S DEMURRER**

exhibit # 10

1   nationally recognized.[1] As of this date, a majority of the States have passed the same or

2   similar laws criminalizing this type of behavior.[2]

3       Defendant in this case is charged with nine counts of Unlawful Dissemination of an

    Intimate Image under ORS 163.472. Defendant asks the court to demur the charges on the

4   and find that the whole of ORS 163.472 is unconstitutional on its face.

5

**ARGUMENT**

6

**1. ORS 163.472 is Constitutional and does not violate the First Amendment of either the**

7     **Oregon or Federal Constitutions.**

8       The Court should deny Defendant's motion because ORS 163.472 specifically targets

9   the dissemination of intimate images of another person only in situations where the

10  defendant had specific intent to harass, humiliate, or injure the victim, the victim actually

11  suffered the described type of harm, and it was reasonable for the victim to have suffered

12  the described type of harm. The statute is not overbroad, nor does it fall afoul of the *Roberts*

13  analysis cited by Defendant. In fact, the statute was carefully crafted in this manner so as to

14  address all First Amendment concerns while still protecting this class of victims from this

15  particular type of harm.

16

17

---

18  [1] See "Drafting An Effective 'Revenge Porn' Law: A Guide for Legislators," Cyber Civil Rights Initiative, http://www.cybercivilrights.org/guide-to-legislation/ (September 22, 2016) for a summary of the problem and legislative efforts to combat it. (Courtesy copy attached).

19  [2] Thirty-three other states have similar criminal laws: Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Kansas, Louisiana, Maine, Maryland, Michigan, Minnesota, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, North

20  Dakota, Oklahoma, Oregon, Pennsylvania, Tennessee, Texas, Utah, Vermont, Virginia, Washington, and Wisconsin. See list of relevant statutory language from each state, attached to this memorandum.

**Page 2 of 8 - VICTIM'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S DEMURRER**

1

2

3

       **a. Defendant falsely characterizes ORS 163.472 as a statute that "criminalizes solely expression," when in fact ORS 163.472 criminalizes specific behavior that causes specific harm to victims.**

4

5

6

7

8

9

10

11

12

13

14

Defendant correctly identifies *State v. Robertson* 293 Or 402 (1982) and *State v. Ciancanelli* 339 OR 282 (2005) as the applicable cases for his First Amendment challenge, but Defendant incorrectly characterizes ORS 163.472 in several ways. Defendant would like to analyze the statute within the first, and most stringently scrutinized, category of laws under *Robertson* - laws that focus on the content of speech or writing. ORS 163.472 does not, as Defendant contends, *solely* prohibit a particular category of speech, such as the category of "intimate images." This is clear on the face of the law, which very specifically targets the particular *intent* and *behavior* of the defendant. ORS 163.472 actually falls squarely into the second category under *Robertson*, because it "focuses on forbidden effects." ORS 163.472 is designed to prevent harm to victims by those intending to humiliate and harass victims through disseminating intimate images without the victims' permission. It does not ban the possession or distribution of intimate images categorically, because it requires specific intent in the mind of the actor, and that a specific harm *actually* occur to the victim.

15

16

17

18

Defendant's statement that "there is no independent and distinct harm to be forbidden under this statute" is a mischaracterization of the statute.[3] The statute itself defines and prohibits behavior that is intended to cause, and actually causes, harm distinct from the sole act of distributing an image. If a person were to disseminate an intimate image

19

20

--------------------------------------------------

[3] Defendant's Memorandum in Support of Demurrer, Page 11, Line 19.

**Page 3 of 8 - VICTIM'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S DEMURRER**

1   for reasons other than those described in the statute, they would not be criminally liable.

2   The statute even includes exceptions designed to protect this type of speech, such as

3   "disclosures that serve a lawful public interest."[4] Additionally, if a person were to

4   disseminate an intimate image with the requisite intent under the statute, but the victim did

   not actually suffer the described harm, the person would not be criminally liable.

5

        Under the second category of *Robertson*, the test is overbreadth, and ORS 163.472

6   clearly passes that test because of it criminalizes a narrowly defined category of behavior

7   combined with specific intent that actually causes a specific harm. Defendant's desire to

8   categorize ORS 163.472 as one that *solely* criminalizes speech is misguided and leads to the

9   wrong analysis under *Robertson.* It is not criminal under this law to consensually create or

10   possess an intimate image of another person, nor is it criminal to simply distribute it to

11   another person. ORS 163.472 is very specific, not overbroad.

12        **b.  The legislative history of ORS 163.472 reveals that the statute was enacted with**

13           **specific language to address First Amendment issues.**

14        It is clear that the drafters of Senate Bill 188 and the Oregon Legislature anticipated

   and carefully considered the First Amendment challenge that Defendant now makes in order

15

   to avoid consequences of his choice to disseminate intimate images of the victim in this case

16

   without her consent. In the very first public hearing on the bill, Aaron Knott from the

17

   Department of Justice explained there was a "six month consultation between the

18

   Department of Justice, legislative counsel, the ACLU, OCDLA, and ODAA on how to generate

19

20

---

[4] ORS 163.472(4)(e).

**Page 4 of 8 - VICTIM'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S DEMURRER**

1   a constitutional version of a bill that would be effective in combating revenge porn. Senate

2   Bill 188 is the result of that effort."[5] Mr. Knott also acknowledged that Oregon's First

3   Amendment protections are stronger than those in the US Constitution, and testified that

4   Senate Bill 188 was tailored to address any concerns under the Oregon Constitution. At a

5   second public hearing in April of 2015, Mr. Knott confirmed that the ACLU, well-known

6   defenders of free speech[6], were not opposing Senate Bill 188.[7] The Executive Director of the

7   Oregon branch of the ACLU, David Fidanque, stated in February of 2015: "Our major concern

8   would be if the bill was overbroad, and our review of the bill in its current state is that it's

9   pretty narrowly tailored."[8] Mr. Knott continued to testify that there were scenarios when

10  the law would not criminalize nonconsensual dissemination of intimate images, such as if

11  the person disseminated the image with the purpose of impressing friends instead of intent

12  to harm the victim. The legislative history of ORS 163.472 makes it clear that the law was

13  specifically designed to address only the behavior that harmed victims, without criminalizing

14  mere speech or running afoul of the Oregon and US Constitutions.

15      A review of state laws reveals that Oregon has one of the most narrowly tailored

16  criminal statutes in the country focused on addressing the problem of nonconsensual

---

[5] Aaron Knott testimony, begins at timestamp 1:30 of the February 10, 2015 House Committee on Judiciary public hearing video, full hearing available at: http://oregon.granicus.com/MediaPlayer.php?clip_id=8074
[6] The ACLU successfully challenged Arizona's "revenge porn" law in 2015, resulting in subsequent narrowing of the law. See Van Velzer, Ryan. "Senate passes bill revising 2014 'revenge porn' law." *Arizona Capitol Times.* March 7, 2016. Available at http://azcapitoltimes.com/news/2016/03/07/senate-passes-bill-revising-2014-revenge-porn-law/.
[7] Aaron Knott testimony, begins at timestamp 10:26 of the April 29, 2015 Senate Committee on Judiciary public hearing video, full hearing available at: http://oregon.granicus.com/MediaPlayer.php?clip_id=9482
[8] Anderson, Taylor. "Oregon looking to make 'revenge porn' a crime." *Bend Bulletin.* February 10, 2015. Available at http://www.bendbulletin.com/localstate/2870908-151/oregon-looking-to-make-revenge-porn-a-crime.

**Page 5 of 8 - VICTIM'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S DEMURRER**

1  dissemination of images. It simply is not the case that ORS 163.472 is overbroad or solely

2  designed to criminalize a category of speech. ORS 163.472 is constitutional on its face.

3  **2. Defendant's attempt to blame the victim by positing that victims of nonconsensual**

   **dissemination of intimate images implicitly consent to dissemination of the images is**

4  **not a reason for the Court to find ORS 163.472 unconstitutional.**

5
          Per Defendant, a victim who takes an intimate image of herself, or allows one to be

6  taken by someone else, has then relinquished all expectation of privacy in that image and

7  cannot object even if that image is distributed to the public through the Internet.

8  Defendant's attempts to analogize fail to address the unique behavior involved in

9  disseminating intimate images without consent, and fail to acknowledge the particular harm

10  that this act causes victims. Defendant chooses to blame the victim instead of

11  acknowledging that consent between two adults to create an intimate image is not the same

12  as consent to disseminate that image to other people. This part of Defendant's brief is

13  irrelevant to the proper Constitutional analysis under *Robertson*, and reveals the

   Defendant's actual position - his actions shouldn't be subject to scrutiny or criminal liability,

14  because the victim is the one to blame for consenting to the photograph in the first place.

15
          Defendant ignores the fact that the threat of "revenge porn" can be used to coerce

16  victims into staying in abusive relationships, and that nonconsensual dissemination of

17  intimate images often happens after a partner leaves an abusive relationship.[9] The harm

18  that the legislature addressed in passing Senate Bill 188 is real, and it exists because of the

19

20
_____

[9] See Simpson, Jack."Revenge Porn: What is it and how widespread is the problem?" *The Independent*, July 2,
2014; Chiarini, Annmarie. "I was a victim of revenge porn." *The Guardian*. November 19, 2013.

1   decisions of people like Defendant to harm their ex-partner by humiliating and harassing her

2   online. The named victim is aware that it is extremely difficult to take down the videos and

3   images that Defendant has distributed on the Internet. This fact does not excuse

4   Defendant's behavior, just as the fact the images were originally created with consent does

5   not excuse dissemination of those images without consent. Defendant's argument that

6   victim privacy evaporates the moment the camera is turned on is not supported by the

7   authorities he cites, and is based on a victim-blaming approach to the problem of

8   nonconsensual dissemination of intimate images. It should not be persuasive in an analysis

    of whether or not ORS 163.472 is Constitutional on its face.

9                                              **CONCLUSION**

10          Every one of the Constitutional arguments Defendant makes in his Memorandum

11   was anticipated and addressed by the Oregon Legislature when they crafted Senate Bill 188,

12   which is one of the narrowest laws of its type in the country. ORS 163.472 is Constitutional

13   on its face and passes the proper *Robertson* test for overbreadth. Defendant's attempt at

14   blaming the victim does not accurately address the actual problems and harms generated by

15   the "revenge porn" problem, nor does it cite any authority for the proposition that victims

16   do not maintain privacy interests in intimate images of themselves. Defendant's Demurrer

    should be denied.

17

18          Dated: September 26, 2016.

                                                   /s/ Melanie Kebler
19                                                 Melanie Kebler, OSB 083798
                                                   Attorney for Victim
20                                                 melanie@ocvlc.org

**Page 7 of 8 - VICTIM'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S DEMURRER**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2016 I served a true copy of the foregoing

document on counsel for the parties by pre-paid First Class mail, email, or through the OJD

eCourt Efile and Serve system:

Marie Atwood
Deputy District Attorney
Washington County DA's Office
150 N 1st Ave Ste 300 MS40
Hillsboro OR 97124
marie_atwood@co.washington.or.us
Of Counsel for the State

Cameron Taylor
Metropolitan Public Defender
Washington County Section
400 E Main St, Suite 210
Hillsboro, OR 97123
ctaylor@mpdlaw.com
Of Counsel for Defendant

/s/ Melanie Kebler
Melanie Kebler, OSB 083798
Attorney for Victim

**LIST OF STATE LAWS REGARDING NONCONSENSUAL DISSEMINATION OF INTIMATE IMAGES:**

**Accessed on LexisNexis on September 26, 2016**

**ALASKA**

Sec. 11.61.120. Harassment in the second degree

(a) A person commits the crime of harassment in the second degree if, with intent to harass or annoy another person, that person

(1) insults, taunts, or challenges another person in a manner likely to provoke an immediate violent response;

(2) telephones another and fails to terminate the connection with intent to impair the ability of that person to place or receive telephone calls;

(3) makes repeated telephone calls at extremely inconvenient hours;

(4) makes an anonymous or obscene telephone call, an obscene electronic communication, or a telephone call or electronic communication that threatens physical injury or sexual contact;

(5) subjects another person to offensive physical contact;

(6) except as provided in AS 11.61.116, publishes or distributes electronic or printed photographs, pictures, or films that show the genitals, anus, or female breast of the other person or show that person engaged in a sexual act; or

(7) repeatedly sends or publishes an electronic communication that insults, taunts, challenges, or intimidates a person under 18 years of age in a manner that places the person in reasonable fear of physical injury.

(b) Harassment in the second degree is a class B misdemeanor.

Alaska Stat. § 11.61.120


## ARIZONA

13-1425. Unlawful disclosure of images depicting states of nudity or specific sexual activities; classification; definitions

A. It is unlawful for a person to intentionally disclose an image of another person who is identifiable from the image itself or from information displayed in connection with the image if all of the following apply:

1. The person in the image is depicted in a state of nudity or is engaged in specific sexual activities.

2. The depicted person has a reasonable expectation of privacy. Evidence that a person has sent an image to another person using an electronic device does not, on its own, remove the person's reasonable expectation of privacy for that image.

3. The image is disclosed with the intent to harm, harass, intimidate, threaten or coerce the depicted person.

B. This section does not apply to any of the following:

1. The reporting of unlawful conduct.

2. Lawful and common practices of law enforcement, criminal reporting, legal proceedings or medical treatment.

3. Images involving voluntary exposure in a public or commercial setting.

4. An interactive computer service, as defined in 47 United States Code section 230(f)(2), or an information service, as defined in 47 United States Code section 153, with regard to content wholly provided by another party.

5. Any disclosure that is made with the consent of the person who is depicted in the image.

C. A violation of this section is a class 5 felony, except that a violation of this section is a:

1. Class 4 felony if the image is disclosed by electronic means.

2. Class 1 misdemeanor if a person threatens to disclose but does not disclose an image that if disclosed would be a violation of this section.

D. For the purposes of this section:

1. "Disclose" means display, distribute, publish, advertise or offer.

2. "Disclosed by electronic means" means delivery to an e-mail address, mobile device, tablet or other electronic device and includes disclosure on a website.

3. "Harm" means physical injury, financial injury or serious emotional distress.

4. "Image" means a photograph, videotape, film or digital recording.

5. "Reasonable expectation of privacy" means the person exhibits an actual expectation of privacy and the expectation is reasonable.

6. "Specific sexual activities" has the same meaning prescribed in section 11-811, subsection D, paragraph 18, subdivisions (a) and (b).

7. "State of nudity" has the same meaning prescribed in section 11-811, subsection D, paragraph 14, subdivision (a).

Ariz. Rev. Stat. § 13-1425

## ARKANSAS

5-26-314. Unlawful distribution of sexual images or recordings.

(a) A person commits the offense of unlawful distribution of sexual images or recordings if, being eighteen (18) years of age or older, with the purpose to harass, frighten, intimidate, threaten, or abuse another person, the actor distributes an image, picture, video, or voice or audio recording of the other person to a third person by any means if the image, picture, video, or voice or audio recording:

(1) Is of a sexual nature or depicts the other person in a state of nudity; and

(2) The other person is a family or household member of the actor or another person with whom the actor is in a current or former dating relationship.

(b) The fact that an image, picture, video, or voice or audio recording was created with the knowledge or consent of the other person or that the image, picture, video, or voice or audio recording is the property of a person charged under this section is not a defense to prosecution under this section.

(c) Unlawful distribution of sexual images or recordings is a Class A misdemeanor.

(d)

(1) Upon the pretrial release of a person charged under this section, the court shall enter an order consistent with Rules 9.3 and 9.4 of the Arkansas Rules of Criminal Procedure and shall give notice to the person charged under this section of the penalties contained in Rule 9.5 of the Arkansas Rules of Criminal Procedure.

(2) An order under subdivision (d)(1) of this section remains in effect during the pendency of any appeal of a conviction under this section.

Ark. Code Ann. § 5-26-314

## CALIFORNIA

§ 647. Disorderly conduct; Punishment for violation

Except as provided in subdivision (l), every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor:

...

(4)

(A)  Any person who intentionally distributes the image of the intimate body part or parts of another identifiable person, or an image of the person depicted engaged in an act of sexual intercourse, sodomy, oral copulation, sexual penetration, or an image of masturbation by the person depicted or in which the person depicted participates, under circumstances in which the persons agree or understand that the image shall remain private, the person distributing the image knows or should know that distribution of the image will cause serious emotional distress, and the person depicted suffers that distress.

(B)  A person intentionally distributes an image described in subparagraph (A) when he or she personally distributes the image, or arranges, specifically requests, or intentionally causes another person to distribute that image.

(C)  As used in this paragraph, "intimate body part" means any portion of the genitals, the anus and in the case of a female, also includes any portion of the breasts below the top of the areola, that is either uncovered or clearly visible through clothing.

(D)  It shall not be a violation of this paragraph to distribute an image described in subparagraph (A) if any of the following applies:

(i)  The distribution is made in the course of reporting an unlawful activity.

(ii)  The distribution is made in compliance with a subpoena or other court order for use in a legal proceeding.

(iii)  The distribution is made in the course of a lawful public proceeding.

(5) This subdivision shall not preclude punishment under any section of law providing for greater punishment.

Cal. Penal Code § 647(j)(4)


## COLORADO

18-7-107. Posting a private image for harassment - definitions

(1)  (a) An actor who is eighteen years of age or older commits the offense of posting a private image for harassment if he or she posts or distributes through the use of social media or any website any photograph, video, or other image displaying the private intimate parts of an identified or identifiable person eighteen years of age or older:

(I)  With the intent to harass the depicted person and inflict serious emotional distress upon the depicted person;

(II)  (A) Without the depicted person's consent; or

(B)  When the actor knew or should have known that the depicted person had a reasonable expectation that the image would remain private; and

(III)  The conduct results in serious emotional distress of the depicted person.

(b)  Posting a private image for harassment is a class 1 misdemeanor.

(c)  Notwithstanding the provisions of section 18-1.3-501 (1) (a), in addition to any other sentence the court may impose, the court shall fine the defendant up to ten thousand dollars. The fines collected pursuant to this paragraph (c) shall be credited to the crime victim compensation fund created in section 24-4.1-117, C.R.S.

(2)  It shall not be an offense under this section if the photograph, video, or image is related to a newsworthy event.

(3)  Nothing in this section precludes punishment under any section of law providing for greater punishment.

(4)  (a) An individual whose private intimate parts have been posted in accordance with this section may bring a civil action against the person who caused the posting of the private images and is entitled to injunctive relief, the greater of ten thousand dollars or actual damages incurred as a result of the posting of the private images, exemplary damages, and reasonable attorney fees and costs.

(b)  An individual whose private intimate parts have been posted in accordance with this section shall retain a protectable right of authorship regarding the commercial use of the private image.

(5)  Nothing in this section shall be construed to impose liability on the provider of an interactive computer service, as defined in 47 U.S.C. sec. 230 (f) (2), an information service, as defined in 47 U.S.C. sec. 153, or a telecommunications service, as defined in 47 U.S.C. sec. 153, for content provided by another person.

(6)  For purposes of this section, unless the context otherwise requires:

(a)  "Newsworthy event" means a matter of public interest, of public concern, or related to a public figure who is intimately involved in the resolution of important public questions or, by reason of his or her fame, shapes events in areas of concern to society.

(b)  "Private intimate parts" means external genitalia or the perineum or the anus or the pubes of any person or the breast of a female.

(c) "Social media" means any electronic medium, including an interactive computer service, telephone network, or data network, that allows users to create, share, and view user-generated content, including but not limited to videos, still photographs, blogs, video blogs, podcasts, instant messages, electronic mail, or internet website profiles.

18-7-108. Posting a private image for pecuniary gain - definitions

(1) (a) An actor who is eighteen years of age or older commits the offense of posting a private image for pecuniary gain if he or she posts or distributes through social media or any website any photograph, video, or other image displaying the private intimate parts of an identified or identifiable person eighteen years of age or older:

(I) With the intent to obtain a pecuniary benefit from any person as a result of the posting, viewing, or removal of the private image; and

(II) (A) When the actor has not obtained the depicted person's consent; or

(B) When the actor knew or should have known that the depicted person had a reasonable expectation that the image would remain private.

(b) Posting a private image for pecuniary gain is a class 1 misdemeanor.

(c) Notwithstanding the provisions of section 18-1.3-501 (1) (a), in addition to any other sentence the court may impose, the court shall fine the defendant up to ten thousand dollars. The fines collected pursuant to this paragraph (c) shall be credited to the crime victim compensation fund created in section 24-4.1-117, C.R.S.

(2) It shall not be an offense under this section if the photograph, video, or image is related to a newsworthy event.

(3) Nothing in this section precludes punishment under any section of law providing for greater punishment.

(4) (a) An individual whose private intimate parts have been posted in accordance with this section may bring a civil action against the person who caused the posting of the private images and is entitled to injunctive relief, the greater of ten thousand dollars or actual damages incurred as a result of the posting of the private images, exemplary damages, and reasonable attorney fees and costs.

(b) An individual whose private intimate parts have been posted in accordance with this section shall retain a protectable right of authorship regarding the commercial use of the private image.

(5) Nothing in this section shall be construed to impose liability on the provider of an interactive computer service, as defined in 47 U.S.C. sec. 230 (f) (2), an information service, as

defined in 47 U.S.C. sec. 153, or a telecommunications service, as defined in 47 U.S.C. sec. 153, for content provided by another person.

(6) For purposes of this section, unless the context otherwise requires:

(a) "Newsworthy event" means a matter of public interest, of public concern, or related to a public figure who is intimately involved in the resolution of important public questions or, by reason of his or her fame, shapes events in areas of concern to society.

(b) "Private intimate parts" means external genitalia or the perineum or the anus or the pubes of any person or the breast of a female.

(c) "Social media" means any electronic medium, including an interactive computer service, telephone network, or data network, that allows users to create, share, and view user-generated content, including but not limited to videos, still photographs, blogs, video blogs, podcasts, instant messages, electronic mail, or internet website profiles.

Colo. Rev. Stat. § 18-7-107, 18-7-108


## CONNECTICUT

Sec. 53a-189c. Unlawful dissemination of an intimate image: Class A misdemeanor.

(a) A person is guilty of unlawful dissemination of an intimate image when (1) such person intentionally disseminates by electronic or other means a photograph, film, videotape or other recorded image of (A) the genitals, pubic area or buttocks of another person with less than a fully opaque covering of such body part, or the breast of such other person who is female with less than a fully opaque covering of any portion of such breast below the top of the nipple, or (B) another person engaged in sexual intercourse, as defined in section 53a-193, (2) such person disseminates such image without the consent of such other person, knowing that such other person understood that the image would not be so disseminated, and (3) such other person suffers harm as a result of such dissemination. For purposes of this subsection, "disseminate" means to sell, give, provide, lend, trade, mail, deliver, transfer, publish, distribute, circulate, present, exhibit, advertise or otherwise offer.

(b) The provisions of subsection (a) of this subsection shall not apply to:

(1) Any image described in subsection (a) of this section of such other person if such image resulted from voluntary exposure or engagement in sexual intercourse by such other person, in a public place, as defined in section 53a-181, or in a commercial setting;

(2) Any image described in subsection (a) of this section of such other person, if such other person is not clearly identifiable; or

(3)  Any image described in subsection (a) of this section of such other person, if the dissemination of such image serves the public interest.

(c)  Unlawful dissemination of an intimate image is a class A misdemeanor.

(d)  Nothing in this section shall be construed to impose liability on the provider of an interactive computer service, as defined in 47 USC 230, an information service, as defined in 47 USC 153, or a telecommunications service, as defined in section 16-247a, for content provided by another person.

Conn. Gen. Stat. § 53a-189c


## DELAWARE

§ 1335. Violation of privacy; class A misdemeanor; class G felony.

(a)  A person is guilty of violation of privacy when, except as authorized by law, the person:

(9)  Knowingly reproduces, distributes, exhibits, publishes, transmits, or otherwise disseminates a visual depiction of a person who is nude, or who is engaging in sexual conduct, when the person knows or should have known that the reproduction, distribution, exhibition, publication, transmission, or other dissemination was without the consent of the person depicted and that the visual depiction was created or provided to the person under circumstances in which the person depicted has a reasonable expectation of privacy.

a.  For the purposes of the introductory paragraph of this paragraph (a)(9), paragraphs (a)(9)b., and (a)(9)d. of this section:

1.  "Nude" means any 1 or more of the following uncovered parts of the human body, or parts of the human body visible through less than opaque clothing:

A.  The genitals;

B.  The pubic area;

C.  The buttocks;

D.  Any portion of the female breast below the top of the areola.

2.  "Personally identifiable information" means any information about a person that permits the physical or online identifying or contacting of a person. The term includes either a person's face or a person's first and last name or first initial and last name in combination with any 1 or more of the following:

A.  A home or other physical address, including street name and name of a city or town;

B.  An e-mail address;

C. A telephone number;

D. Geolocation data;

E. Any other identifier that permits the physical or online identifying or contacting of a person.

3. "Sexual conduct" means actual or simulated:

A. Sexual contact;

B. Sexual intercourse;

C. Sexual penetration;

D. Masturbation;

E. Bestiality;

F. Sadism;

G. Masochism; or

H. Explicit representations of the defecation or urination functions.

4. "Sexual contact" means any touching by 1 person of the uncovered anus, breast, buttocks, or genitalia of another person or any touching of a person with the uncovered anus, breasts, buttocks or genitalia of another person.

5. "Sexual intercourse" means any act of physical union of the genitalia or anus of a person with the mouth, anus, or genitalia of another person.

6. "Sexual penetration" means the placement of an object inside the anus or vagina of a person or the placement of a sexual device inside the mouth of a person.

7. "Visual depiction" shall have the meaning as used in § 1100 of this title.

b. A person who has, within the context of a private or confidential relationship, consented to the capture or possession of a visual depiction of the person when nude or when engaging in sexual conduct retains a reasonable expectation of privacy with regard to the reproduction, distribution, exhibition, publication, transmission, or other dissemination of the visual depiction beyond that relationship.

c. For the purposes of this paragraph (a)(9), each of the following shall be an aggravating factor and shall be alleged in the charging information or indictment and constitute an element of the offense:

1. The actor knowingly obtains such visual depictions without the consent of the person depicted.

A. A violation of this paragraph (a)(9)c.1. occurs when a person commits a theft as provided for in § 841, § 842, § 843, or § 844 of this title or obtains such visual depictions by committing unauthorized access to a computer system as provided for in § 932 of this title or by unauthorized access to electronic mail or an electronic mail service provider as defined in § 931 of this title.

B. A violation of this paragraph (a)(9)c.1. consistent with § 932 of this title is subject to the venue provision in § 940 of this title.

2. The actor knowingly reproduces, distributes, exhibits, publishes, transmits, or otherwise disseminates such visual depictions for profit.

3. The actor knowingly maintains an Internet website, online service, online application, or mobile application for the purpose of reproducing, distributing, exhibiting, publishing, transmitting, or otherwise disseminating such visual depictions.

4. The actor knowingly reproduces, distributes, exhibits, publishes, transmits, or otherwise disseminates such visual depictions with the intent to harass, annoy, or alarm the person depicted and such conduct would cause a reasonable person to suffer significant mental anguish or distress.

5. The actor pairs such visual depiction with personally identifiable information of the person depicted.

d. For purposes of this paragraph (a)(9), the fact the actor committed this offense within 5 years of a prior conviction for a violation of this paragraph (a)(9) shall be an aggravating factor for sentencing purposes only and, therefore, this fact is not to be alleged in the charging information or indictment and does not constitute an element of the offense.

e. In addition to when the consent of the person depicted is given, the introductory paragraph of this paragraph (a)(9) and paragraph (a)(9)b. of this section do not apply to any of the following:

1. When the visual depiction is of an individual less than 18 years of age and does not violate § 1108, § 1109, or § 1111 of this title, or any similar provision of this title, and the reproduction, distribution, exhibition, publication, transmission, or other dissemination is not for commercial purposes.

2. When the visual depiction is reproduced, distributed, exhibited, published, transmitted, or otherwise disseminated in the course of lawful and common practices of a law-enforcement officer, the reporting of unlawful conduct, legal proceedings, and medical treatment procedures.

3. When the person depicted has consented to the reproduction, distribution, exhibition, transmission, or other dissemination of the visual depiction for commercial purposes.

4. When the person depicted has voluntarily appeared nude in public or voluntarily engages in sexual conduct in public.

5. When the reproduction, distribution, exhibition, publication, transmission, or other dissemination serves a legitimate public purpose.

f. Nothing within this paragraph (a)(9) shall be construed to impose liability on an interactive computer service, as defined in 47 U.S.C. § 230(f)(2), or an information service or telecommunications service, as defined in 47 U.S.C. § 153, for content provided by the actor or another person.

Del.Code Ann. tit. 11, § 1335

## DISTRICT OF COLUMBIA

§ 22-3052. Unlawful disclosure.

(a) It shall be unlawful in the District of Columbia for a person to knowingly disclose one or more sexual images of another identified or identifiable person when:

(1) The person depicted did not consent to the disclosure of the sexual image;

(2) There was an agreement or understanding between the person depicted and the person disclosing that the sexual image would not be disclosed; and

(3) The person disclosed the sexual image with the intent to harm the person depicted or to receive financial gain.

(b) A person who violates this section shall be guilty of a misdemeanor and, upon conviction, shall be fined not more than the amount set forth in § 22-3571.01, imprisoned for not more than 180 days, or both.

D.C. Code § 22-3052

## FLORIDA

§ 784.049. Sexual cyberharassment.

(1) The Legislature finds that:

(a) A person depicted in a sexually explicit image taken with the person's consent has a reasonable expectation that the image will remain private.

(b) It is becoming a common practice for persons to publish a sexually explicit image of another to Internet websites without the depicted person's consent, for no legitimate purpose, with the intent of causing substantial emotional distress to the depicted person.

(c) When such images are published on Internet websites, they are able to be viewed indefinitely by persons worldwide and are able to be easily reproduced and shared.

(d) The publication of such images on Internet websites creates a permanent record of the depicted person's private nudity or private sexually explicit conduct.

(e) The existence of such images on Internet websites causes those depicted in such images significant psychological harm.

(f) Safeguarding the psychological well-being of persons depicted in such images is compelling.

(2) As used in this section, the term:

(a) "Image" includes, but is not limited to, any photograph, picture, motion picture, film, video, or representation.

(b) "Personal identification information" has the same meaning as provided in s. 817.568.

(c) "Sexually cyberharass" means to publish a sexually explicit image of a person that contains or conveys the personal identification information of the depicted person to an Internet website without the depicted person's consent, for no legitimate purpose, with the intent of causing substantial emotional distress to the depicted person.

(d) "Sexually explicit image" means any image depicting nudity, as defined in s. 847.001, or depicting a person engaging in sexual conduct, as defined in s. 847.001.

(3)

(a) Except as provided in paragraph (b), a person who willfully and maliciously sexually cyberharasses another person commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

(b) A person who has one prior conviction for sexual cyberharassment and who commits a second or subsequent sexual cyberharassment commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(4)

(a) A law enforcement officer may arrest, without a warrant, any person that he or she has probable cause to believe has violated this section.

(b) Upon proper affidavits being made, a search warrant may be issued to further investigate violations of this section, including warrants issued to search a private dwelling.

(5) An aggrieved person may initiate a civil action against a person who violates this section to obtain all appropriate relief in order to prevent or remedy a violation of this section, including the following:

(a) Injunctive relief.

(b) Monetary damages to include $5,000 or actual damages incurred as a result of a violation of this section, whichever is greater.

(c) Reasonable attorney fees and costs.

(6) The criminal and civil penalties of this section do not apply to:

(a) A provider of an interactive computer service as defined in 47 U.S.C. s. 230(f), information service as defined in 47 U.S.C. s. 153, or communications service as defined in s. 202.11, that provides the transmission, storage, or caching of electronic communications or messages of others; other related telecommunications or commercial mobile radio service; or content provided by another person; or

(b) A law enforcement officer, as defined in s. 943.10, or any local, state, federal, or military law enforcement agency, that publishes a sexually explicit image in connection with the performance of his or her duties as a law enforcement officer, or law enforcement agency.

(7) A violation of this section is committed within this state if any conduct that is an element of the offense, or any harm to the depicted person resulting from the offense, occurs within this state.

Fla. Stat. Ann. § 784.049


## GEORGIA

§ 16-11-90. Prohibition on nude or sexually explicit electronic transmissions

(a) As used in this Code section, the term:

(1) "Harassment" means engaging in conduct directed at a depicted person that is intended to cause substantial emotional harm to the depicted person.

(2) "Nudity" means:

(A) The showing of the human male or female genitals, pubic area, or buttocks without any covering or with less than a full opaque covering;

(B) The showing of the female breasts without any covering or with less than a full opaque covering; or

(C) The depiction of covered male genitals in a discernibly turgid state.

(3) "Sexually explicit conduct" shall have the same meaning as set forth in Code Section 16-12-100.

(b) A person violates this Code section if he or she, knowing the content of a transmission or post, knowingly and without the consent of the depicted person:

(1) Electronically transmits or posts, in one or more transmissions or posts, a photograph or video which depicts nudity or sexually explicit conduct of an adult when the transmission or post is harassment or causes financial loss to the depicted person and serves no legitimate purpose to the depicted person; or

(2) Causes the electronic transmission or posting, in one or more transmissions or posts, of a photograph or video which depicts nudity or sexually explicit conduct of an adult when the transmission or post is harassment or causes financial loss to the depicted person and serves no legitimate purpose to the depicted person.

(c) Any person who violates this Code section shall be guilty of a misdemeanor of a high and aggravated nature; provided, however, that upon a second or subsequent violation of this Code section, he or she shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment of not less than one nor more than five years, a fine of not more than $100,000.00, or both.

(d) A person shall be subject to prosecution in this state pursuant to Code Section 17-2-1 for any conduct made unlawful by this Code section which the person engages in while:

(1) Either within or outside of this state if, by such conduct, the person commits a violation of this Code section which involves an individual who resides in this state; or

(2) Within this state if, by such conduct, the person commits a violation of this Code section which involves an individual who resides within or outside this state.

(e) The provisions of subsection (b) of this Code section shall not apply to:

(1) The activities of law enforcement and prosecution agencies in the investigation and prosecution of criminal offenses;

(2) Legitimate medical, scientific, or educational activities;

(3) Any person who transmits or posts a photograph or video depicting only himself or herself engaged in nudity or sexually explicit conduct;

(4) The transmission or posting of a photograph or video that was originally made for commercial purposes;

(5) Any person who transmits or posts a photograph or video depicting a person voluntarily engaged in nudity or sexually explicit conduct in a public setting; or

(6) A transmission that is made pursuant to or in anticipation of a civil action.

(f) There shall be a rebuttable presumption that an information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet, for content provided by another person, does not know the content of an electronic transmission or post.

(g) Any violation of this Code section shall constitute a separate offense and shall not merge with any other crimes set forth in this title.

Ga. Code Ann. § 16-11-90

## HAWAII

### § 711-1110.9. Violation of privacy in the first degree.

(1) A person commits the offense of violation of privacy in the first degree if, except in the execution of a public duty or as authorized by law:

(a) The person intentionally or knowingly installs or uses, or both, in any private place, without consent of the person or persons entitled to privacy therein, any device for observing, recording, amplifying, or broadcasting another person in a stage of undress or sexual activity in that place; or

(b) The person knowingly discloses an image or video of another identifiable person either in the nude, as defined in section 712-1210, or engaging in sexual conduct, as defined in section 712-1210, without the consent of the depicted person, with intent to harm substantially the depicted person with respect to that person's health, safety, business, calling, career, financial condition, reputation, or personal relationships; provided that:

(i) This paragraph shall not apply to images or videos of the depicted person made:

(A) When the person was voluntarily nude in public or voluntarily engaging in sexual conduct in public; or

(B) Pursuant to a voluntary commercial transaction; and

(ii) Nothing in this paragraph shall be construed to impose liability on a provider of "electronic communication service" or "remote computing service" as those terms are defined in section 803-41, for an image or video disclosed through the electronic communication service or remote computing service by another person.

(2)  Violation of privacy in the first degree is a class C felony. In addition to any penalties the court may impose, the court may order the destruction of any recording made in violation of this section.

Haw. Rev. Stat. Ann. § 711-1110.9


## IDAHO

§ 18-6609. Crime of video voyeurism

(1)  As used in this section:

(a)  "Broadcast" means the electronic transmittal of a visual image with the intent that it be viewed by a person or persons.

(b)  "Disseminate" means to make available by any means to any person.

(c)  "Imaging device" means any instrument capable of recording, storing, viewing or transmitting visual images.

(d)  "Intimate areas" means the buttocks, genitals or genital areas of males or females, and the breast area of females.

(e)  "Person" means any natural person, corporation, partnership, firm, association, joint venture or any other recognized legal entity or any agent or servant thereof.

(f)  "Place where a person has a reasonable expectation of privacy" means:

(i)  A place where a reasonable person would believe that he could undress, be undressed or engage in sexual activity in privacy, without concern that he is being viewed, photographed, filmed or otherwise recorded by an imaging device; or

(ii)  A place where a person might reasonably expect to be safe from casual or hostile surveillance by an imaging device; or

(iii)  Any public place where a person, by taking reasonable steps to conceal intimate areas, should be free from the viewing, recording, storing or transmitting of images obtained by imaging devices designed to overcome the barriers created by a person's covering of intimate areas.

(g)  "Publish" means to:

(i)  Disseminate with the intent that such image or images be made available by any means to any person; or

(ii)  Disseminate with the intent that such images be sold by another person; or

(iii) Post, present, display, exhibit, circulate, advertise or allow access by any means so as to make an image or images available to the public; or

(iv) Disseminate with the intent that an image or images be posted, presented, displayed, exhibited, circulated, advertised or made accessible by any means and to make such image or images available to the public.

(h) "Sell" means to disseminate to another person, or to publish, in exchange for something of value.

(2) A person is guilty of video voyeurism when:

(a) With the intent of arousing, appealing to or gratifying the lust or passions or sexual desires of such person or another person, or for his own or another person's lascivious entertainment or satisfaction of prurient interest, or for the purpose of sexually degrading or abusing any other person, he uses, installs or permits the use or installation of an imaging device at a place where a person would have a reasonable expectation of privacy, without the knowledge or consent of the person using such place; or

(b) He either intentionally or with reckless disregard disseminates, publishes or sells or conspires to disseminate, publish or sell any image or images of the intimate areas of another person or persons without the consent of such other person or persons and he knows or reasonably should have known that one (1) or both parties agreed or understood that the images should remain private.

(3) A violation of this section is a felony.

(4) This section does not apply to an interactive computer service, as defined in 47 U.S.C. section 230(f)(2), an information service, as defined in 47 U.S.C. section 153 or a telecommunication service, as defined in section 61-121(2) or 62-603(13), Idaho Code, for content provided by another person, unless the provider intentionally aids or abets video voyeurism.

Idaho Code § 18-6609


## ILLINOIS

720 ILCS 5/11-23.5 Non-consensual dissemination of private sexual images

(a) Definitions. For the purposes of this Section:

"Computer", "computer program", and "data" have the meanings ascribed to them in Section 17-0.5 of this Code [720 ILCS 5/17–0.5].

"Image" includes a photograph, film, videotape, digital recording, or other depiction or portrayal of an object, including a human body.

"Intimate parts" means the fully unclothed, partially unclothed or transparently clothed genitals, pubic area, anus, or if the person is female, a partially or fully exposed nipple, including exposure through transparent clothing.

"Sexual act" means sexual penetration, masturbation, or sexual activity.

"Sexual activity" means any:

(1)  knowing touching or fondling by the victim or another person or animal, either directly or through clothing, of the sex organs, anus, or breast of the victim or another person or animal for the purpose of sexual gratification or arousal; or

(2)  any transfer or transmission of semen upon any part of the clothed or unclothed body of the victim, for the purpose of sexual gratification or arousal of the victim or another; or

(3)  an act of urination within a sexual context; or

(4)  any bondage, fetter, or sadism masochism; or

(5)  sadomasochism abuse in any sexual context.

(b)  A person commits non-consensual dissemination of private sexual images when he or she:

(1)  intentionally disseminates an image of another person:

(A)  who is at least 18 years of age; and

(B)  who is identifiable from the image itself or information displayed in connection with the image; and

(C)  who is engaged in a sexual act or whose intimate parts are exposed, in whole or in part; and

(2)  obtains the image under circumstances in which a reasonable person would know or understand that the image was to remain private; and

(3)  knows or should have known that the person in the image has not consented to the dissemination.

(c)  The following activities are exempt from the provisions of this Section:

(1)  The intentional dissemination of an image of another identifiable person who is engaged in a sexual act or whose intimate parts are exposed when the dissemination is made for the purpose of a criminal investigation that is otherwise lawful.

(2) The intentional dissemination of an image of another identifiable person who is engaged in a sexual act or whose intimate parts are exposed when the dissemination is for the purpose of, or in connection with, the reporting of unlawful conduct.

(3) The intentional dissemination of an image of another identifiable person who is engaged in a sexual act or whose intimate parts are exposed when the images involve voluntary exposure in public or commercial settings.

(4) The intentional dissemination of an image of another identifiable person who is engaged in a sexual act or whose intimate parts are exposed when the dissemination serves a lawful public purpose.

(d) Nothing in this Section shall be construed to impose liability upon the following entities solely as a result of content or information provided by another person:

(1) an interactive computer service, as defined in 47 U.S.C. 230(f)(2);

(2) a provider of public mobile services or private radio services, as defined in Section 13-214 of the Public Utilities Act [220 ILCS 5/13-214]; or

(3) a telecommunications network or broadband provider.

(e) A person convicted under this Section is subject to the forfeiture provisions in Article 124B of the Code of Criminal Procedure of 1963 [725 ILCS 5/124B].

(f) Sentence. Non-consensual dissemination of private sexual images is a Class 4 felony.

720 Ill. Comp. Stat. Ann. 5/11-23.5


## KANSAS

21-6101. Breach of privacy.

 (a) Breach of privacy is knowingly and without lawful authority:

(8) disseminating any videotape, photograph, film or image of another identifiable person 18 years of age or older who is nude or engaged in sexual activity and under circumstances in which such identifiable person had a reasonable expectation of privacy, with the intent to harass, threaten or intimidate such identifiable person, and such identifiable person did not consent to such dissemination.

(b) Breach of privacy as defined in:

(1) Subsection (a)(1) through (a)(5) is a class A nonperson misdemeanor;

(2) subsection (a)(6) or (a)(8) is a:

(A)  Severity level 8, person felony, except as provided in subsection (b)(2)(B); and

(B)  severity level 5, person felony upon a second or subsequent conviction within the previous five years; and

(3)  subsection (a)(7) is a severity level 5, person felony.

(c)  Subsection (a)(1) shall not apply to messages overheard through a regularly installed instrument on a telephone party line or on an extension.

(d)  The provisions of this section shall not apply to: (1) An operator of a switchboard, or any officer, employee or agent of any public utility providing telephone communications service, whose facilities are used in the transmission of a communication, to intercept, disclose or use that communication in the normal course of employment while engaged in any activity which is incident to the rendition of public utility service or to the protection of the rights of property of such public utility; (2) a provider of an interactive computer service, as defined in 47 U.S.C. § 230, for content provided by another person; (3) a radio common carrier, as defined in K.S.A. 66-1,143, and amendments thereto; and (4) a local exchange carrier or telecommunications carrier as defined in K.S.A. 66-1,187, and amendments thereto.

(e)  The provisions of subsection (a)(8) shall not apply to a person acting with a bona fide and lawful scientific, educational, governmental, news or other similar public purpose.

(f)  As used in this section, "private place" means a place where one may reasonably expect to be safe from uninvited intrusion or surveillance.

Kan. Stat. Ann. § 21-6101

## LOUISIANA

§ 14:283.2. Nonconsensual disclosure of a private image.

A.  A person commits the offense of nonconsensual disclosure of a private image when all of the following occur:

(1)  The person intentionally discloses an image of another person who is seventeen years of age or older, who is identifiable from the image or information displayed in connection with the image, and whose intimate parts are exposed in whole or in part.

(2)  The person who discloses the image obtained it under circumstances in which a reasonable person would know or understand that the image was to remain private.

(3)  The person who discloses the image knew or should have known that the person in the image did not consent to the disclosure of the image.

(4) The person who discloses the image has the intent to harass or cause emotional distress to the person in the image, and the person who commits the offense knew or should have known that the disclosure could harass or cause emotional distress to the person in the image.

B. Disclosure of an image under any of the following circumstances does not constitute commission of the offense defined in Subsection A of this Section:

(1) When the disclosure is made by any criminal justice agency for the purpose of a criminal investigation that is otherwise lawful.

(2) When the disclosure is made for the purpose of, or in connection with, the reporting of unlawful conduct to law enforcement or a criminal justice agency.

(3) When the person depicted in the image voluntarily or knowingly exposed his or her intimate parts in a public setting.

(4) When the image is related to a matter of public interest, public concern, or related to a public figure who is intimately involved in the resolution of important public questions, or by reason of his fame shapes events in areas of concern to society.

C. For purposes of this Section:

(1) "Criminal justice agency" means any government agency or subunit thereof, or private agency that, through statutory authorization or a legal formal agreement with a governmental unit or agency, has the power of investigation, arrest, detention, prosecution, adjudication, treatment, supervision, rehabilitation, or release of persons suspected, charged, or convicted of a crime; or that collects, stores, processes, transmits, or disseminates criminal history records or crime information.

(2) "Disclosure" means to, electronically or otherwise, transfer, give, provide, distribute, mail, deliver, circulate, publish on the internet, or disseminate by any means.

(3) "Image" means any photograph, film, videotape, digital recording, or other depiction or portrayal of an object, including a human body.

(4) "Intimate parts" means the fully unclothed, partially unclothed, or transparently clothed genitals, pubic area, or anus. If the person depicted in the image is a female, "intimate parts" also means a partially or fully exposed nipple, including exposure through transparent clothing.

D. Nothing in this Section shall be construed to impose liability on the provider of an interactive computer service as defined by 47 U.S.C. 230(f)(2), an information service as defined by 47 U.S.C. 153 (24), or a telecommunications service as defined by 47 U.S.C. 153 (53), for content provided by another person.

E.  Whoever commits the offense of nonconsensual disclosure of a private image shall be fined not more than ten thousand dollars, imprisoned with or without hard labor for not more than two years, or both.

La. R.S. § 14:283.2

## MAINE

§ 511-A. Unauthorized dissemination of certain private images [Effective July 29, 2016]

1.  A person is guilty of unauthorized dissemination of certain private images if the person, with the intent to harass, torment or threaten the depicted person or another person, knowingly disseminates, displays or publishes a photograph, videotape, film or digital recording of another person in a state of nudity or engaged in a sexual act or engaged in sexual contact in a manner in which there is no public or newsworthy purpose when the person knows or should have known that the depicted person:

A.  [2015, c. 394, §5 (RP).]

B.  Is identifiable from the image itself or information displayed in connection with the image; and

C.  Has not consented to the dissemination, display or publication of the private image.

2.  This section does not apply to the following:

A.  Lawful and common practices of medical treatment;

B.  Images involving voluntary exposure in a public or commercial setting; or

C.  An interactive computer service, as defined in 47 United States Code, Section 230(f)(2), or an information service, as defined in 47 United States Code, Section 153, with regard to content provided by another person.

3.  As used in this section, unless the context otherwise indicates, the following terms have the following meanings.

A.  "Sexual act" has the same meaning as in section 251, subsection 1, paragraph C and also includes:

(1)  The transfer or transmission of semen upon any part of the clothed or unclothed body of the depicted person;

(2)  Urination within a sexual context;

(3)  Bondage or sadomasochism in any sexual context;

(4) Simulated sexual acts; and

(5) Masturbation.

B. "Sexual contact" has the same meaning as in section 251, subsection 1, paragraph D and includes simulated sexual contact.

C. "State of nudity" means the condition of displaying fully unclothed, partially unclothed or transparently clothed genitals, pubic area or anus or, if the person is female, a partially or fully exposed breast below a point immediately above the top of the areola.

4. Unauthorized dissemination of certain private images is a Class D crime.

5. Access to and dissemination of certain private images as described in subsection 1 and any written information describing and directly pertaining to the images contained in court records are governed by rule or administrative order adopted by the Supreme Judicial Court.

Me. Rev. Stat. tit. 17-A, § 511-A


# MARYLAND

§ 3-809. Revenge porn.

(a) Definitions. --

(1) In this section the following words have the meanings indicated.

(2) "Intimate parts" means the naked genitals, pubic area, buttocks, or female nipple.

(3) "Sexual contact" means sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex.

(b) Exceptions. --

(1) This section does not apply to:

(i) lawful and common practices of law enforcement, the reporting of unlawful conduct, or legal proceedings; or

(ii) situations involving voluntary exposure in public or commercial settings.

(2) An interactive computer service, as defined in 47 U.S.C. § 230(f)(2), is not liable under this section for content provided by another person.

(c) In general. -- A person may not intentionally cause serious emotional distress to another by intentionally placing on the Internet a photograph, film, videotape, recording, or any other

reproduction of the image of the other person that reveals the identity of the other person with his or her intimate parts exposed or while engaged in an act of sexual contact:

(1)  knowing that the other person did not consent to the placement of the image on the Internet; and

(2)  under circumstances in which the other person had a reasonable expectation that the image would be kept private.

(d)  Penalties. -- A person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 2 years or a fine not exceeding $ 5,000 or both.

Md. Code Ann., Crim. Law § 3-809

## MICHIGAN

§ 750.145e. Dissemination of sexually explicit visual material; conditions. [Effective July 25, 2016]

(1)  A person shall not intentionally and with the intent to threaten, coerce, or intimidate disseminate any sexually explicit visual material of another person if all of the following conditions apply:

(a)  The other person is not less than 18 years of age.

(b)  The other person is identifiable from the sexually explicit visual material itself or information displayed in connection with the sexually explicit visual material. This subdivision does not apply if the identifying information is supplied by a person other than the disseminator.

(c)  The person obtains the sexually explicit visual material of the other person under circumstances in which a reasonable person would know or understand that the sexually explicit visual material was to remain private.

(d)  The person knows or reasonably should know that the other person did not consent to the dissemination of the sexually explicit visual material.

(2)  Subsection (1) does not apply to any of the following:

(a)  To the extent content is provided by another person, a person engaged in providing:

(i)  An interactive computer service as that term is defined in 47 USC 230;

(ii) An information service, telecommunications service, or cable service as those terms are defined in 47 USC 153;

(iii) A commercial mobile service as defined in 47 USC 332;

(iv) A direct-to-home satellite service as defined in 47 USC 303(v); or (v) A video service as defined in 2006 PA 480, MCL 484.3301 to 484.3315.

(b) A person who disseminates sexually explicit visual material that is part of a news report or commentary or an artistic or expressive work, such as a performance, work of art, literary work, theatrical work, musical work, motion picture, film, or audiovisual work.

(c) A law enforcement officer, or a corrections officer or guard in a correctional facility or jail, who is engaged in the official performance of his or her duties.

(d) A person disseminating sexually explicit visual material in the reporting of a crime.

(3) This section does not prohibit a person from being charged with, convicted of, or punished for another violation of law committed by that person while violating or attempting to violate this section.

(4) A person who violates subsection (1) is guilty of a crime and punishable as provided in section 145f.

(5) As used in this section:

(a) "Disseminate" means post, distribute, or publish on a computer device, computer network, website, or other electronic device or medium of communication.

(b) "Nudity" means displaying a person's genitalia or anus or, if the person is a female, her nipples or areola.

(c) "Sexually explicit visual material" means a photograph or video that depicts nudity, erotic fondling, sexual intercourse, or sadomasochistic abuse.

Mich. Comp. Laws Serv. § 750.145e

## MINNESOTA

### 617.261 NONCONSENSUAL DISSEMINATION OF PRIVATE SEXUAL IMAGES.

Subdivision 1. Crime. — It is a crime to intentionally disseminate an image of another person who is depicted in a sexual act or whose intimate parts are exposed, in whole or in part, when:

(1) the person is identifiable:

(i) from the image itself, by the person depicted in the image or by another person; or

(ii) from personal information displayed in connection with the image;

(2) the actor knows or reasonably should know that the person depicted in the image does not consent to the dissemination; and

(3) the image was obtained or created under circumstances in which the actor knew or reasonably should have known the person depicted had a reasonable expectation of privacy.

Subd. 2. Penalties.

(a) Except as provided in paragraph (b), whoever violates subdivision 1 is guilty of a gross misdemeanor.

(b) Whoever violates subdivision 1 may be sentenced to imprisonment for not more than three years or to payment of a fine of $5,000, or both, if one of the following factors is present:

(1) the person depicted in the image suffers financial loss due to the dissemination of the image;

(2) the actor disseminates the image with intent to profit from the dissemination;

(3) the actor maintains an Internet Web site, online service, online application, or mobile application for the purpose of disseminating the image;

(4) the actor posts the image on a Web site;

(5) the actor disseminates the image with intent to harass the person depicted in the image;

(6) the actor obtained the image by committing a violation of section 609.52, 609.746, 609.89, or 609.891; or

(7) the actor has previously been convicted under this chapter.

Subd. 3. No defense. — It is not a defense to a prosecution under this section that the person consented to the capture or possession of the image.

Subd. 4. Venue. — Notwithstanding anything to the contrary in section 627.01, an offense committed under this section may be prosecuted in:

(1) the county where the offense occurred;

(2) the county of residence of the actor or victim or in the jurisdiction of the victim's designated address if the victim participates in the address confidentiality program established by chapter 5B; or

(3) only if venue cannot be located in the counties specified under clause (1) or (2), the county where any image is produced, reproduced, found, stored, received, or possessed in violation of this section.

Subd. 5. Exemptions. — Subdivision 1 does not apply when:

(1) the dissemination is made for the purpose of a criminal investigation or prosecution that is otherwise lawful;

(2) the dissemination is for the purpose of, or in connection with, the reporting of unlawful conduct;

(3) the dissemination is made in the course of seeking or receiving medical or mental health treatment and the image is protected from further dissemination;

(4) the image involves exposure in public or was obtained in a commercial setting for the purpose of the legal sale of goods or services, including the creation of artistic products for sale or display;

(5) the image relates to a matter of public interest and dissemination serves a lawful public purpose;

(6) the dissemination is for legitimate scientific research or educational purposes; or

(7) the dissemination is made for legal proceedings and is consistent with common practice in civil proceedings necessary for the proper functioning of the criminal justice system, or protected by court order which prohibits any further dissemination.

Subd. 6. Immunity. — Nothing in this section shall be construed to impose liability upon the following entities solely as a result of content or information provided by another person:

(1) an interactive computer service as defined in United States Code, title 47, section 230, paragraph (f), clause (2);

(2) a provider of public mobile services or private radio services; or

(3) a telecommunications network or broadband provider.

Subd. 7. Definitions.

(a) For purposes of this section, the following terms have the meanings given.

(b) "Dissemination" means distribution to one or more persons, other than the person depicted in the image, or publication by any publicly available medium.

(c) "Harass" means an act that would cause a substantial adverse effect on the safety, security, or privacy of a reasonable person.

(d) "Image" means a photograph, film, video recording, or digital photograph or recording.

(e) "Intimate parts" means the genitals, pubic area, or anus of an individual, or if the individual is female, a partially or fully exposed nipple.

(f) "Personal information" means any identifier that permits communication or in-person contact with a person, including:

(1) a person's first and last name, first initial and last name, first name and last initial, or nickname;

(2) a person's home, school, or work address;

(3) a person's telephone number, e-mail address, or social media account information; or

(4) a person's geolocation data.

(g) "Sexual act" means either sexual contact or sexual penetration.

(h) "Sexual contact" means the intentional touching of intimate parts or intentional touching with seminal fluid or sperm onto another person's body.

(i) "Sexual penetration" means any of the following acts:

(1) sexual intercourse, cunnilingus, fellatio, or anal intercourse; or

(2) any intrusion, however slight, into the genital or anal openings of an individual by another's body part or an object used by another for this purpose.

(j) "Social media" means any electronic medium, including an interactive computer service, telephone network, or data network, that allows users to create, share, and view user-generated content.

Subd. 8. Other crimes. — Nothing in this section shall limit the power of the state to prosecute or punish a person for conduct that constitutes any other crime under any other law of this state.

Minn. Stat. Ann. § 617.261

### NEVADA

200.780. Unlawful dissemination of intimate image; exceptions; penalty.

1. Except as otherwise provided in subsection 3, a person commits the crime of unlawful dissemination of an intimate image when, with the intent to harass, harm or terrorize another person, the person electronically disseminates or sells an intimate image which depicts the other person and the other person:

(a) Did not give prior consent to the electronic dissemination or the sale of the intimate image;

(b) Had a reasonable expectation that the intimate image would be kept private and would not be made visible to the public; and

(c) Was at least 18 years of age when the intimate image was created.

2. A person who commits the crime of unlawful dissemination of an intimate image is guilty of a category D felony and shall be punished as provided in NRS 193.130.

3. The provisions of this section do not apply to the electronic dissemination of an intimate image for the purpose of:

(a) A legitimate public interest;

(b) Reporting unlawful conduct;

(c) Any lawful law enforcement or correctional activity;

(d) Investigation or prosecution of a violation of this section; or

(e) Preparation for or use in any legal proceeding.

4. A person who commits the crime of unlawful dissemination of an intimate image is not considered a sex offender and is not subject to registration or community notification as a sex offender pursuant to NRS 179D.010 to 179D.550, inclusive.

200.785. Demands in exchange for removal of intimate image; penalty.

Any person who demands payment of money, property, services or anything else of value from a person in exchange for removing an intimate image from public view is guilty of a category D felony and shall be punished as provided in NRS 193.130.

Nev. Rev. Stat. Ann. § 200.780-785


## NEW HAMPSHIRE

644:9-a. Nonconsensual Dissemination of Private Sexual Images.

I. In this section:

(a) "Disseminate" means to import, publish, produce, print, manufacture, distribute, sell, lease, exhibit, or display.

(b) "Image" means a photograph, film, videotape, or digital image or recording.

(c) "Intimate parts" means the fully unclothed, partially unclothed, or transparently clothed genitals, pubic area, or anus, or, if the person is female, a partially or fully exposed nipple, including exposure through transparent clothing.

(d) "Sexual act" means sexual penetration, masturbation, or sexual activity.

(e) "Sexual activity" means any:

(1)  Knowing touching or fondling by any person, either directly or through clothing, of the sex organs, anus, or breast of that person, or another person, or animal; or

(2)  Any transfer or transmission of semen upon any part of the clothed or unclothed body of a person; or

(3)  An act of urination within a sexual context; or

(4)  Any bondage, fetter, or sadism masochism; or

(5)  Sadomasochism abuse in any sexual context.

II.  A person commits nonconsensual dissemination of private sexual images when he or she:

(a)  Purposely, and with the intent to harass, intimidate, threaten, or coerce the depicted person, disseminates an image of such person:

(1)  Who is identifiable from the image itself or information displayed in connection with the image; and

(2)  Who is engaged in a sexual act or whose intimate parts are exposed, in whole or in part; and

(b)  Obtains the image under circumstances in which a reasonable person would know or understand that the person in the image intended that the image was to remain private; and

(c)  Knows or should have known that the person in the image has not consented to the dissemination.

III.  The intentional dissemination of an image of another identifiable person who is engaged in a sexual act or whose intimate parts are exposed is exempt from the provision of this section:

(a)  When the dissemination is made for the purpose of a criminal investigation that is otherwise lawful.

(b)  When the dissemination is for the purpose of, or in connection with, the reporting of unlawful conduct.

(c)  When the images involve voluntary exposure in public or commercial settings.

(d)  When the dissemination serves a lawful public purpose.

(e)  When the dissemination is done in compliance with a subpoena or court order.

IV.  Nothing in this section shall be construed to impose liability upon the following entities solely as a result of content or information provided by another person:

(a)  An interactive computer service, as defined in 47 U.S.C. section 230(f)(2);

(b)  A provider of public cellular or mobile services or private radio services; or

(c) A telecommunications network or broadband provider.

V. Any property used in committing, or facilitating the commission of, any offense under this section shall be subject to forfeiture.

VI. Any person who violates the provisions of this section shall be guilty of a class B felony.

N.H. Rev. Stat. Ann. § 644:9-a

## NEW JERSEY

§ 2C:14-9. Invasion of privacy, degree of crime; defenses, privileges

a. An actor commits a crime of the fourth degree if, knowing that he is not licensed or privileged to do so, and under circumstances in which a reasonable person would know that another may expose intimate parts or may engage in sexual penetration or sexual contact, he observes another person without that person's consent and under circumstances in which a reasonable person would not expect to be observed.

b.

(1) An actor commits a crime of the third degree if, knowing that he is not licensed or privileged to do so, he photographs, films, videotapes, records, or otherwise reproduces in any manner, the image of another person whose intimate parts are exposed or who is engaged in an act of sexual penetration or sexual contact, without that person's consent and under circumstances in which a reasonable person would not expect to be observed.

(2) An actor commits a crime of the fourth degree if, knowing that he is not licensed or privileged to do so, he photographs, films, videotapes, records, or otherwise reproduces in any manner, the image of the undergarment-clad intimate parts of another person, without that person's consent and under circumstances in which a reasonable person would not expect to have his undergarment-clad intimate parts observed.

c. An actor commits a crime of the third degree if, knowing that he is not licensed or privileged to do so, he discloses any photograph, film, videotape, recording or any other reproduction of the image, taken in violation of subsection b. of this section, of: (1) another person who is engaged in an act of sexual penetration or sexual contact; (2) another person whose intimate parts are exposed; or (3) another person's undergarment-clad intimate parts, unless that person has consented to such disclosure.

For purposes of this subsection: (1) "disclose" means sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, publish, distribute, circulate, disseminate, present, exhibit, advertise, offer, share, or make available via the Internet or by any other means, whether for pecuniary gain or not; and (2) "intimate parts" has the meaning ascribed to it in N.J.S.2C:14-1.

Notwithstanding the provisions of subsection b. of N.J.S.2C:43-3, a fine not to exceed $30,000 may be imposed for a violation of this subsection.

d. It is an affirmative defense to a crime under this section that:

(1) the actor posted or otherwise provided prior notice to the person of the actor's intent to engage in the conduct specified in subsection a., b., or c., and

(2) the actor acted with a lawful purpose.

e.

(1) It shall not be a violation of subsection a. or b. to observe another person in the access way, foyer or entrance to a fitting room or dressing room operated by a retail establishment or to photograph, film, videotape, record or otherwise reproduce the image of such person, if the actor conspicuously posts at the entrance to the fitting room or dressing room prior notice of his intent to make the observations, photographs, films, videotapes, recordings or other reproductions.

(2) It shall be a violation of subsection c. to disclose in any manner any such photograph, film, videotape or recording of another person using a fitting room or dressing room except under the following circumstances:

(a) to law enforcement officers in connection with a criminal prosecution;

(b) pursuant to subpoena or court order for use in a legal proceeding; or

(c) to a co-worker, manager or supervisor acting within the scope of his employment.

f. It shall be a violation of subsection a. or b. to observe another person in a private dressing stall of a fitting room or dressing room operated by a retail establishment or to photograph, film, videotape, record or otherwise reproduce the image of another person in a private dressing stall of a fitting room or dressing room.

g. For purposes of this act, a law enforcement officer, or a corrections officer or guard in a correctional facility or jail, who is engaged in the official performance of his duties shall be deemed to be licensed or privileged to make and to disclose observations, photographs, films, videotapes, recordings or any other reproductions.

h. Notwithstanding the provisions of N.J.S.2C:1-8 or any other provisions of law, a conviction arising under subsection b. of this section shall not merge with a conviction under subsection c. of this section, nor shall a conviction under subsection c. merge with a conviction under subsection b.

N.J. Stat. § 2C:14-9

## NEW MEXICO

30-37A-1. Unauthorized distribution of sensitive images; penalties.

A.  Unauthorized distribution of sensitive images consists of distributing, publishing or otherwise making available, by an electronic communications device or other means, sensitive images of a person, with or without information identifying that person, without that person's consent:

(1)  with the intent to:

(a)  harass, humiliate or intimidate that person;

(b)  incite another to harass, humiliate or intimidate that person;

(c)  cause that person to reasonably fear for that person's own or family members' safety;

(d)  cause that person to suffer unwanted physical contact or injury; or

(e)  cause that person to suffer substantial emotional distress; and

(2)  where the conduct is such that it would cause a reasonable person to suffer substantial emotional distress.

B.  For the purpose of this section:

(1)  "electronic communications device" means a computer, an internet web site or page, a video recorder, a digital camera, a fax machine, a telephone, a cellular telephone, a pager or any other device that can produce an electronically generated image, message or signal;

(2)  "information service" means a service offering the capability of generating, acquiring, storing, transforming, processing, publishing, retrieving, utilizing or making available information;

(3)  "interactive computer service" means any information service, system or access software provider that provides or enables computer access by multiple users;

(4)  "intimate act" has the same meaning as "sexual act", as that term is defined in Section 30-9-2 NMSA 1978;

(5)  "sensitive images" means images, photographs, videos or other likenesses depicting or simulating an intimate act or depicting any portion of a person's genitals, or of a woman's breast below the top of the areola, that is either uncovered or visible through less-than-fully opaque clothing, which images may reasonably be considered to be private, intimate or inappropriate for distribution or publication without that person's consent; and

(6)  "telecommunications provider" has the same meaning as set forth in Section 63-7-23 NMSA 1978.

C. Whoever commits unauthorized distribution of sensitive images is guilty of a misdemeanor. Upon a second or subsequent conviction, the offender is guilty of a fourth degree felony.

D. Nothing in this section shall be construed to impose liability on:

(1) an interactive computer service, an information service or a telecommunications provider for content provided by another person; or

(2) a person who reproduces, distributes, exhibits, publishes, transmits or otherwise disseminates content in furtherance of a legitimate public purpose, including the compilation or dissemination of news by newspapers and licensed broadcasters.

N.M. Stat. Ann. § 30-37A-1

## NORTH CAROLINA

§ 14-190.5A. Disclosure of private images

(a) Definitions. -- The following definitions apply in this section:

(1) Disclose. -- Transfer, publish, distribute, or reproduce.

(2) Image. -- A photograph, film, videotape, recording, digital, or other reproduction.

(3) Intimate parts. -- Any of the following naked human parts: (i) male or female genitals, (ii) male or female pubic area, (iii) male or female anus, or (iv) the nipple of a female over the age of 12.

(4) Personal relationship. -- As defined in G.S. 50B-1(b).

(5) Reasonable expectation of privacy. -- When a depicted person has consented to the disclosure of an image within the context of a personal relationship and the depicted person reasonably believes that the disclosure will not go beyond that relationship.

(6) Sexual conduct. -- Includes any of the following:

a. Vaginal, anal, or oral intercourse, whether actual or simulated, normal or perverted.

b. Masturbation, excretory functions, or lewd exhibition of uncovered genitals.

c. An act or condition that depicts torture, physical restraint by being fettered or bound, or flagellation of or by a nude person or a person clad in undergarments or in revealing or bizarre costume.

(b) Offense. -- A person is guilty of disclosure of private images if all of the following apply:

(1) The person knowingly discloses an image of another person with the intent to do either of the following:

a. Coerce, harass, intimidate, demean, humiliate, or cause financial loss to the depicted person.

b. Cause others to coerce, harass, intimidate, demean, humiliate, or cause financial loss to the depicted person.

(2) The depicted person is identifiable from the disclosed image itself or information offered in connection with the image.

(3) The depicted person's intimate parts are exposed or the depicted person is engaged in sexual conduct in the disclosed image.

(4) The person discloses the image without the affirmative consent of the depicted person.

(5) The person discloses the image under circumstances such that the person knew or should have known that the depicted person had a reasonable expectation of privacy.

(c) Penalty. -- A violation of this section shall be punishable as follows:

(1) For an offense by a person who is 18 years of age or older at the time of the offense, the violation is a Class H felony.

(2) For a first offense by a person who is under 18 years of age at the time of the offense, the violation is a Class 1 misdemeanor.

(3) For a second or subsequent offense by a person who is under the age of 18 at the time of the offense, the violation is a Class H felony.

(d) Exceptions. -- This section does not apply to any of the following:

(1) Images involving voluntary exposure in public or commercial settings.

(2) Disclosures made in the public interest, including, but not limited to, the reporting of unlawful conduct or the lawful and common practices of law enforcement, criminal reporting, legal proceedings, medical treatment, or scientific or educational activities.

(3) Providers of an interactive computer service, as defined in 47 U.S.C. § 230(f), for images provided by another person.

(e) Destruction of Image. -- In addition to any penalty or other damages, the court may award the destruction of any image made in violation of this section.

(f) Other Sanctions or Remedies Not Precluded. -- A violation of this section is an offense additional to other civil and criminal provisions and is not intended to repeal or preclude any other sanctions or remedies.

(g) Civil Action. -- In addition to any other remedies at law or in equity, including an order by the court to destroy any image disclosed in violation of this section, any person whose image is disclosed, or used, as described in subsection (b) of this section, has a civil cause of action

against any person who discloses or uses the image and is entitled to recover from the other person any of the following:

(1) Actual damages, but not less than liquidated damages, to be computed at the rate of one thousand dollars ($ 1,000) per day for each day of the violation or in the amount of ten thousand dollars ($ 10,000), whichever is higher.

(2) Punitive damages.

(3) A reasonable attorneys' fee and other litigation costs reasonably incurred.

The civil cause of action may be brought no more than one year after the initial discovery of the disclosure, but in no event may the action be commenced more than seven years from the most recent disclosure of the private image.

N.C. Gen. Stat. § 14-190.5A


## NORTH DAKOTA

12.1-17-07.2. Distribution of intimate images without or against consent — Penalty.

1. As used in this section:

a. "Distribute" means selling, exhibiting, displaying, wholesaling, retailing, providing, giving, granting admission to, providing access to, or otherwise transferring or presenting an image to another individual, with or without consideration.

b. "Hosting company" means a person that provides services or facilities for storing or distributing content over the internet without editorial or creative alteration of the content.

c. "Intimate image" means any visual depiction, photograph, film, video, recording, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, that depicts:

(1) Exposed human male or female genitals or pubic area, with less than an opaque covering;

(2) A female breast with less than an opaque covering, or any portion of the female breast below the top of the areola; or

(3) The individual engaged in any sexually explicit conduct.

d. "Service provider" means an internet service provider, including a person who leases or rents a wire or cable for the transmission of data.

e. "Sexually explicit conduct" means actual or simulated:

(1) Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

(2) Masturbation;

(3) Bestiality;

(4) Sadistic or masochistic activities;

(5) Exhibition of the genitals, pubic region, buttocks, or female breast of any individual;

(6) Visual depiction of nudity or partial nudity;

(7) Fondling or touching of the genitals, pubic region, buttocks, or female breast; or

(8) Explicit representation of the defecation or urination functions.

f. "Simulated sexually explicit conduct" means a feigned or pretended act of sexually explicit conduct that duplicates, within the perception of an average person, the appearance of an actual act of sexually explicit conduct.

2. A person commits the offense of distribution of intimate images if the person knowingly or intentionally distributes to any third party any intimate image of an individual eighteen years of age or older, if:

a. The person knows that the depicted individual has not given consent to the person to distribute the intimate image;

b. The intimate image was created by or provided to the person under circumstances in which the individual has a reasonable expectation of privacy; and

c. Actual emotional distress or harm is caused to the individual as a result of the distribution under this section.

3. This section does not apply to:

a. Lawful practices of law enforcement agencies;

b. Prosecutorial agency functions;

c. The reporting of a criminal offense;

d. Court proceedings or any other judicial proceeding;

e. Lawful and generally accepted medical practices and procedures;

f. An intimate image if the individual portrayed in the image voluntarily allows public exposure of the image; or

g. An intimate image that is portrayed in a lawful commercial setting.

4. This section also does not apply to:

a. An internet service provider or interactive computer service, as defined in 47 U.S.C. 230(f)(2);

b. A provider of an electronic communications service, as defined in 18 U.S.C. 2510;

c. A telecommunications service, information service, or mobile service, as defined in 47 U.S.C. 153, including a commercial mobile service, as defined in 47 U.S.C. 332(d);

d. A cable operator, as defined in 47 U.S.C. 552, if:

(1) The distribution of an intimate image by the cable operator occurs only incidentally through the operator's function of:

(a) Transmitting or routing data from one person to another person; or

(b) Providing a connection between one person and another person;

(2) The operator does not intentionally aid or abet in the distribution of the intimate image; and

(3) The operator does not knowingly receive from or through a person who distributes the intimate image a fee greater than the fee generally charged by the operator, as a specific condition for permitting the person to distribute the intimate image; or

e. A hosting company, if:

(1) The distribution of an intimate image by the hosting company occurs only incidentally through the hosting company's function of providing data storage space or data caching to a person;

(2) The hosting company does not intentionally engage, aid, or abet in the distribution of the intimate image; and

(3) The hosting company does not knowingly receive from or through a person who distributes the intimate image a fee greater than the fee generally charged by the provider, as a specific condition for permitting the person to distribute, store, or cache the intimate image.

5. Distribution of an intimate image is a class A misdemeanor.

N.D. Cent. Code § 12.1-17-07.2


# OKLAHOMA

§ 1040.13b. Nonconsensual Dissemination of Sexual Images—Definitions, Exceptions and Penalties [Effective November 1, 2016]

A. As used in this section:

1. "Image" includes a photograph, film, videotape, digital recording or other depiction or portrayal of an object, including a human body;

2. "Intimate parts" means the fully unclothed, partially unclothed or transparently clothed genitals, pubic area or female adult nipple; and

3. "Sexual act" means sexual intercourse including genital, anal or oral sex.

B. A person commits nonconsensual dissemination of private sexual images when he or she:

1. Intentionally disseminates an image of another person:

a. who is at least eighteen (18) years of age,

b. who is identifiable from the image itself or information displayed in connection with the image, and

c. who is engaged in a sexual act or whose intimate parts are exposed, in whole or in part;

2. Disseminates the image with the intent to harass, intimidate or coerce the person, or under circumstances in which a reasonable person would know or understand that dissemination of the image would harass, intimidate or coerce the person;

3. Obtains the image under circumstances in which a reasonable person would know or understand that the image was to remain private; and

4. Knows or a reasonable person should have known that the person in the image has not consented to the dissemination.

C. The provisions of this section shall not apply to the intentional dissemination of an image of another identifiable person who is engaged in a sexual act or whose intimate parts are exposed when:

1. The dissemination is made for the purpose of a criminal investigation that is otherwise lawful;

2. The dissemination is for the purpose of, or in connection with, the reporting of unlawful conduct;

3. The images involve voluntary exposure in public or commercial settings; or

4. The dissemination serves a lawful purpose.

D. Nothing in this section shall be construed to impose liability upon the following entities solely as a result of content or information provided by another person:

1. An interactive computer service, as defined in 47 U.S.C., Section 230(f)(2);

2. A wireless service provider, as defined in Section 332(d) of the Telecommunications Act of 1996, 47 U.S.C., Section 151 et seq., Federal Communications Commission rules, and the Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66; or

3. A telecommunications network or broadband provider.

E. A person convicted under this section is subject to the forfeiture provisions in Section 1040.54 of Title 21 of the Oklahoma Statutes.

F. Any person who violates the provisions of this section shall be guilty of a misdemeanor punishable by imprisonment in a county jail for not more than one (1) year or by a fine of not more than One Thousand Dollars ($1,000.00), or both such fine and imprisonment.

G. The court shall have the authority to order the defendant to remove the disseminated image should the court find it is in the power of the defendant to do so.

21 Okl. St. § 1040.13b


## OREGON

163.472 Unlawful dissemination of an intimate image.

(1) A person commits the crime of unlawful dissemination of an intimate image if:

(a) The person, with the intent to harass, humiliate or injure another person, knowingly causes to be disclosed through an Internet website an identifiable image of the other person whose intimate parts are visible or who is engaged in sexual conduct;

(b) The person knows or reasonably should have known that the other person does not consent to the disclosure;

(c) The other person is harassed, humiliated or injured by the disclosure; and

(d) A reasonable person would be harassed, humiliated or injured by the disclosure.

(2)

(a) Except as provided in paragraph (b) of this subsection, unlawful dissemination of an intimate image is a Class A misdemeanor.

(b) Unlawful dissemination of an intimate image is a Class C felony if the person has a prior conviction under this section at the time of the offense.

(3) As used in this section:

(a) "Disclose" includes, but is not limited to, transfer, publish, distribute, exhibit, advertise and offer.

(b) "Image" includes, but is not limited to, a photograph, film, videotape, recording, digital picture and other visual reproduction, regardless of the manner in which the image is stored.

(c) "Information content provider" has the meaning given that term in 47 U.S.C. 230(f).

(d) "Interactive computer service" has the meaning given that term in 47 U.S.C. 230(f).

(e) "Intimate parts" means uncovered human genitals, pubic areas or female nipples.

(f) "Sexual conduct" means sexual intercourse or deviate sexual intercourse, as those terms are defined in ORS 163.305, or masturbation.

(4) As used in this section:

(a) Activity by law enforcement agencies investigating and prosecuting criminal offenses;

(b) Legitimate medical, scientific or educational activities;

(c) Legal proceedings, when disclosure is consistent with common practice in civil proceedings or necessary for the proper functioning of the criminal justice system;

(d) The reporting of unlawful conduct to a law enforcement agency;

(e) Disclosures that serve a lawful public interest;

(f) Disclosures of images:

(A) Depicting the other person voluntarily displaying, in a public area, the other person's intimate parts or engaging in sexual conduct; or

(B) Originally created for a commercial purpose with the consent of the other person; or

(g) The provider of an interactive computer service for an image of intimate parts provided by an information content provider.

Or. Rev. Stat. Ann. § 163.472

## PENNSYLVANIA

§ 3131. Unlawful dissemination of intimate image.

(a) Offense defined. — Except as provided in sections 5903 (relating to obscene and other sexual material and performances), 6312 (relating to sexual abuse of children) and 6321 (relating to transmission of sexually explicit images by minor), a person commits the offense of unlawful dissemination of intimate image if, with intent to harass, annoy or alarm a current or former sexual or intimate partner, the person disseminates a visual depiction of the current or former sexual or intimate partner in a state of nudity or engaged in sexual conduct.

(b) Defense. — It is a defense to a prosecution under this section that the actor disseminated the visual depiction with the consent of the person depicted.

(c) Grading. — An offense under subsection (a) shall be:

(1) A misdemeanor of the first degree, when the person depicted is a minor.

(2) A misdemeanor of the second degree, when the person depicted is not a minor.

(d) Territorial applicability. — A person may be convicted under the provisions of this section if the victim or the offender is located within this Commonwealth.

(e) Nonapplicability. — Nothing in this section shall be construed to apply to a law enforcement officer engaged in the performance of the law enforcement officer's official duties.

(f) Concurrent jurisdiction to prosecute. — In addition to the authority conferred upon the Attorney General by the act of October 15, 1980 (P.L. 950, No. 164), known as the Commonwealth Attorneys Act, the Attorney General shall have the authority to investigate and to institute criminal proceedings for any violation of this section or any series of violations involving more than one county of this Commonwealth or another state. No person charged with a violation of this section by the Attorney General shall have standing to challenge the authority of the Attorney General to investigate or prosecute the case, and, if a challenge is made, the challenge shall be dismissed, and no relief shall be made available in the courts of this Commonwealth to the person making the challenge.

(g) Definitions. — As used in this section, the following words and phrases shall have the meanings given to them in this subsection unless the context clearly indicates otherwise:

"Law enforcement officer." —Any officer of the United States, of the Commonwealth or political subdivision thereof, or of another state or subdivision thereof, who is empowered to conduct investigations of or to make arrests for offenses enumerated in this title or an equivalent crime in another jurisdiction, and any attorney authorized by law to prosecute or participate in the prosecution of such offense.

"Minor." —An individual under 18 years of age.

"Nudity." —As defined in section 5903(e) (relating to obscene and other sexual materials and performances).

"Sexual conduct." —As defined in section 5903(e) (relating to obscene and other sexual materials and performances).

"Visual depiction." —As defined in section 6321 (relating to transmission of sexually explicit images by minor).

18 Pa. Cons. Stat. Ann. § 3131

## TENNESSEE

39-17-318. Unlawful exposure.

(a) A person commits unlawful exposure who, with the intent to cause emotional distress, distributes an image of the intimate part or parts of another identifiable person if:

(1) The image was photographed or recorded under circumstances where the parties agreed or understood that the image would remain private; and

(2) The person depicted in the image suffers emotional distress.

(b) As used in this section:

(1) "Emotional distress" has the same meaning as defined in § 39-17-315; and

(2) "Intimate part" means any portion of the primary genital area, buttock, or any portion of the female breast below the top of the areola that is either uncovered or visible through less than fully opaque clothing.

(c) Nothing in this section precludes punishment under any other section of law providing for greater punishment.

(d) A violation of subsection (a) is a Class A misdemeanor.

Tenn. Code Ann. § 39-17-318


## TEXAS

Sec. 21.16. [2 Versions: As Added by Acts 2015, 84th Leg., ch. 852] Unlawful Disclosure or Promotion of Intimate Visual Material.

(a) In this section:

(1) "Intimate parts" means the naked genitals, pubic area, anus, buttocks, or female nipple of a person.

(2) "Promote" means to procure, manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, or advertise or to offer or agree to do any of the above.

(3) "Sexual conduct" means sexual contact, actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, or sadomasochistic abuse.

(4) "Simulated" means the explicit depiction of sexual conduct that creates the appearance of actual sexual conduct and during which a person engaging in the conduct exhibits any uncovered portion of the breasts, genitals, or buttocks.

(5) "Visual material" means:

(A) any film, photograph, videotape, negative, or slide or any photographic reproduction that contains or incorporates in any manner any film, photograph, videotape, negative, or slide; or

(B) any disk, diskette, or other physical medium that allows an image to be displayed on a computer or other video screen and any image transmitted to a computer or other video screen by telephone line, cable, satellite transmission, or other method.

(b) A person commits an offense if:

(1) without the effective consent of the depicted person, the person intentionally discloses visual material depicting another person with the person's intimate parts exposed or engaged in sexual conduct;

(2) the visual material was obtained by the person or created under circumstances in which the depicted person had a reasonable expectation that the visual material would remain private;

(3) the disclosure of the visual material causes harm to the depicted person; and

(4) the disclosure of the visual material reveals the identity of the depicted person in any manner, including through:

(A) any accompanying or subsequent information or material related to the visual material; or

(B) information or material provided by a third party in response to the disclosure of the visual material.

(c) A person commits an offense if the person intentionally threatens to disclose, without the consent of the depicted person, visual material depicting another person with the person's intimate parts exposed or engaged in sexual conduct and the actor makes the threat to obtain a benefit:

(1) in return for not making the disclosure; or

(2) in connection with the threatened disclosure.

(d) A person commits an offense if, knowing the character and content of the visual material, the person promotes visual material described by Subsection (b) on an Internet website or other forum for publication that is owned or operated by the person.

(e) It is not a defense to prosecution under this section that the depicted person:

(1) created or consented to the creation of the visual material; or

(2)  voluntarily transmitted the visual material to the actor.

(f)  It is an affirmative defense to prosecution under Subsection (b) or (d) that:

(1)  the disclosure or promotion is made in the course of:

(A)  lawful and common practices of law enforcement or medical treatment;

(B)  reporting unlawful activity; or

(C)  a legal proceeding, if the disclosure or promotion is permitted or required by law;

(2)  the disclosure or promotion consists of visual material depicting in a public or commercial setting only a person's voluntary exposure of:

(A)  the person's intimate parts; or

(B)  the person engaging in sexual conduct; or

(3)  the actor is an interactive computer service, as defined by 47 U.S.C. Section 230, and the disclosure or promotion consists of visual material provided by another person.

(g)  An offense under this section is a Class A misdemeanor.

(h)  If conduct that constitutes an offense under this section also constitutes an offense under another law, the actor may be prosecuted under this section, the other law, or both.

Tex. Penal Code § 21.16


## UTAH

76-5b-203. Distribution of an intimate image — Penalty.

(1)  As used in this section:

(a)  "Distribute" means selling, exhibiting, displaying, wholesaling, retailing, providing, giving, granting admission to, providing access to, or otherwise transferring or presenting an image to another individual, with or without consideration.

(b)  "Intimate image" means any visual depiction, photograph, film, video, recording, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, that depicts:

(i)  exposed human male or female genitals or pubic area, with less than an opaque covering;

(ii)  a female breast with less than an opaque covering, or any portion of the female breast below the top of the areola; or

(iii)  the individual engaged in any sexually explicit conduct.

(c) "Sexually explicit conduct" means actual or simulated:

(i)  sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

(ii)  masturbation;

(iii)  bestiality;

(iv)  sadistic or masochistic activities;

(v)  exhibition of the genitals, pubic region, buttocks, or female breast of any individual;

(vi)  visual depiction of nudity or partial nudity;

(vii)  fondling or touching of the genitals, pubic region, buttocks, or female breast; or

(viii)  explicit representation of the defecation or urination functions.

(d) "Simulated sexually explicit conduct" means a feigned or pretended act of sexually explicit conduct that duplicates, within the perception of an average person, the appearance of an actual act of sexually explicit conduct.

(2) An actor commits the offense of distribution of intimate images if the actor, with the intent to cause emotional distress or harm, knowingly or intentionally distributes to any third party any intimate image of an individual who is 18 years of age or older, if:

(a) the actor knows that the depicted individual has not given consent to the actor to distribute the intimate image;

(b) the intimate image was created by or provided to the actor under circumstances in which the individual has a reasonable expectation of privacy; and

(c) actual emotional distress or harm is caused to the person as a result of the distribution under this section.

(3) This section does not apply to:

(a)

(i)  lawful practices of law enforcement agencies;

(ii)  prosecutorial agency functions;

(iii)  the reporting of a criminal offense;

(iv)  court proceedings or any other judicial proceeding; or

(v)  lawful and generally accepted medical practices and procedures;

(b) an intimate image if the individual portrayed in the image voluntarily allows public exposure of the image; or

(c) an intimate image that is portrayed in a lawful commercial setting.

(4)

(a) This section does not apply to an Internet service provider or interactive computer service, as defined in 47 U.S.C. Sec. 230(f)(2), a provider of an electronic communications service as defined in 18 U.S.C. Sec. 2510, a telecommunications service, information service, or mobile service as defined in 47 U.S.C. Sec. 153, including a commercial mobile service as defined in 47 U.S.C. Sec. 332(d), or a cable operator as defined in 47 U.S.C. Sec. 522, if:

(i) the distribution of an intimate image by the Internet service provider occurs only incidentally through the provider's function of:

(A) transmitting or routing data from one person to another person; or

(B) providing a connection between one person and another person;

(ii) the provider does not intentionally aid or abet in the distribution of the intimate image; and

(iii) the provider does not knowingly receive from or through a person who distributes the intimate image a fee greater than the fee generally charged by the provider, as a specific condition for permitting the person to distribute the intimate image.

(b) This section does not apply to a hosting company, as defined in Section 76-10-1230, if:

(i) the distribution of an intimate image by the hosting company occurs only incidentally through the hosting company's function of providing data storage space or data caching to a person;

(ii) the hosting company does not intentionally engage, aid, or abet in the distribution of the intimate image; and

(iii) the hosting company does not knowingly receive from or through a person who distributes the intimate image a fee greater than the fee generally charged by the provider, as a specific condition for permitting the person to distribute, store, or cache the intimate image.

(c) A service provider, as defined in Section 76-10-1230, is not negligent under this section if it complies with Section 76-10-1231.

(5)

(a) Distribution of an intimate image is a class A misdemeanor except under Subsection (5)(b).

(b)  Distribution of an intimate image is a third degree felony on a second or subsequent conviction for an offense under this section that arises from a separate criminal episode as defined in Section 76-1-401.

Utah Code Ann. § 76-5b-203

## VERMONT

§ 2606. Disclosure of sexually explicit images without consent

(a)  As used in this section:

(1)  "Disclose" includes transfer, publish, distribute, exhibit, or reproduce.

(2)  "Harm" means physical injury, financial injury, or serious emotional distress.

(3)  "Nude" means any one or more of the following uncovered parts of the human body:

(A)  genitals;

(B)  pubic area;

(C)  anus; or

(D)  post-pubescent female nipple.

(4)  "Sexual conduct" shall have the same meaning as in section 2821 of this title.

(5)  "Visual image" includes a photograph, film, videotape, recording, or digital reproduction.

(b)

(1)  A person violates this section if he or she knowingly discloses a visual image of an identifiable person who is nude or who is engaged in sexual conduct, without his or her consent, with the intent to harm, harass, intimidate, threaten, or coerce the person depicted, and the disclosure would cause a reasonable person to suffer harm. A person may be identifiable from the image itself or information offered in connection with the image. Consent to recording of the visual image does not, by itself, constitute consent for disclosure of the image. A person who violates this subdivision (1) shall be imprisoned not more than two years or fined not more than $ 2,000.00, or both.

(2)  A person who violates subdivision (1) of this subsection with the intent of disclosing the image for financial profit shall be imprisoned not more than five years or fined not more than $ 10,000.00, or both.

(c)  A person who maintains an Internet website, online service, online application, or mobile application that contains a visual image of an identifiable person who is nude or who is engaged

in sexual conduct shall not solicit or accept a fee or other consideration to remove, delete, correct, modify, or refrain from posting or disclosing the visual image if requested by the depicted person.

(d) This section shall not apply to:

(1) Images involving voluntary nudity or sexual conduct in public or commercial settings or in a place where a person does not have a reasonable expectation of privacy.

(2) Disclosures made in the public interest, including the reporting of unlawful conduct, or lawful and common practices of law enforcement, criminal reporting, corrections, legal proceedings, or medical treatment.

(3) Disclosures of materials that constitute a matter of public concern.

(4) Interactive computer services, as defined in 47 U.S.C. § 230(f)(2), or information services or telecommunications services, as defined in 47 U.S.C. § 153, for content solely provided by another person. This subdivision shall not preclude other remedies available at law.

(e)

(1) A plaintiff shall have a private cause of action against a defendant who knowingly discloses, without the plaintiff's consent, an identifiable visual image of the plaintiff while he or she is nude or engaged in sexual conduct and the disclosure causes the plaintiff harm.

(2) In addition to any other relief available at law, the Court may order equitable relief, including a temporary restraining order, a preliminary injunction, or a permanent injunction ordering the defendant to cease display or disclosure of the image. The Court may grant injunctive relief maintaining the confidentiality of a plaintiff using a pseudonym.

Vt. Stat. Ann. tit. 13, § 2606


## VIRGINIA

### § 18.2-386.2. Unlawful dissemination or sale of images of another; penalty

A. Any person who, with the intent to coerce, harass, or intimidate, maliciously disseminates or sells any videographic or still image created by any means whatsoever that depicts another person who is totally nude, or in a state of undress so as to expose the genitals, pubic area, buttocks, or female breast, where such person knows or has reason to know that he is not licensed or authorized to disseminate or sell such videographic or still image is guilty of a Class 1 misdemeanor. However, if a person uses services of an Internet service provider, an electronic mail service provider, or any other information service, system, or access software provider that provides or enables computer access by multiple users to a computer server in committing

acts prohibited under this section, such provider shall not be held responsible for violating this section for content provided by another person.

B. Venue for a prosecution under this section may lie in the jurisdiction where the unlawful act occurs or where any videographic or still image created by any means whatsoever is produced, reproduced, found, stored, received, or possessed in violation of this section.

C. The provisions of this section shall not preclude prosecution under any other statute.

Va. Code Ann. § 18.2-386.2

## WASHINGTON

9A.86.010. Disclosing intimate images.

(1) A person commits the crime of disclosing intimate images when the person knowingly discloses an intimate image of another person and the person disclosing the image:

(a) Obtained it under circumstances in which a reasonable person would know or understand that the image was to remain private;

(b) Knows or should have known that the depicted person has not consented to the disclosure; and

(c) Knows or reasonably should know that disclosure would cause harm to the depicted person.

(2) A person who is under the age of eighteen is not guilty of the crime of disclosing intimate images unless the person:

(a) Intentionally and maliciously disclosed an intimate image of another person;

(b) Obtained it under circumstances in which a reasonable person would know or understand that the image was to remain private; and

(c) Knows or should have known that the depicted person has not consented to the disclosure.

(3) This section does not apply to:

(a) Images involving voluntary exposure in public or commercial settings; or

(b) Disclosures made in the public interest including, but not limited to, the reporting of unlawful conduct, or the lawful and common practices of law enforcement, criminal reporting, legal proceedings, or medical treatment.

(4) This section does not impose liability upon the following entities solely as a result of content provided by another person:

(a) An interactive computer service, as defined in 47 U.S.C. Sec. 230(f)(2);

(b) A mobile telecommunications service provider, as defined in RCW 82.04.065; or

(c) A telecommunications network or broadband provider.

(5) It shall be an affirmative defense to a violation of this section that the defendant is a family member of a minor and did not intend any harm or harassment in disclosing the images of the minor to other family or friends of the defendant. This affirmative defense shall not apply to matters defined under RCW 9.68A.011.

(6) For purposes of this section:

(a) "Disclosing" includes transferring, publishing, or disseminating, as well as making a digital depiction available for distribution or downloading through the facilities of a telecommunications network or through any other means of transferring computer programs or data to a computer;

(b) "Intimate image" means any photograph, motion picture film, videotape, digital image, or any other recording or transmission of another person who is identifiable from the image itself or from information displayed with or otherwise connected to the image, and that was taken in a private setting, is not a matter of public concern, and depicts:

(i) Sexual activity, including sexual intercourse as defined in RCW 9A.44.010 and masturbation; or

(ii) A person's intimate body parts, whether nude or visible through less than opaque clothing, including the genitals, pubic area, anus, or post-pubescent female nipple.

(7) The crime of disclosing intimate images:

(a) Is a gross misdemeanor on the first offense; or

(b) Is a class C felony if the defendant has one or more prior convictions for disclosing intimate images.

(8) Nothing in this section is construed to:

(a) Alter or negate any rights, obligations, or immunities of an interactive service provider under 47 U.S.C. Sec. 230; or

(b) Limit or preclude a plaintiff from securing or recovering any other available remedy.

Wash. Rev. Code Ann. § 9A.86.010

## WISCONSIN

942.09. Representations depicting nudity.

(1) In this section:

(a) "Captures a representation" means takes a photograph, makes a motion picture, videotape, recording, or other visual or audio representation, or records or stores in any medium data that represents a visual image.

(ae) "Consent" means words or overt actions by a person who is competent to give informed consent indicating a freely given agreement to the act. A person who has not attained the age of 18 is incapable of consent. The following persons are presumed incapable of consent but the presumption may be rebutted by competent evidence, subject to the provisions of s. 972.11 (2):

1. A person suffering from a mental illness or defect that impairs capacity to appraise personal conduct.

2. A person who is unconscious or for any other reason is physically unable to communicate unwillingness to an act.

(ag) "Intimate representation" means any of the following:

1. A representation of a nude or partially nude person.

2. A representation of clothed, covered, or partially clothed or covered genitalia or buttock that is not otherwise visible to the public.

3. A representation of a person urinating, defecating, or using a feminine hygiene product.

4. A representation of person engaged in sexual intercourse or sexual contact, as defined in s. 940.225 (5) (b) or (c).

(am) "Nude or partially nude person" has the meaning given in s. 942.08 (1) (a).

(b) "Nudity" has the meaning given in s. 948.11 (1) (d).

(bg) "Post or publish" includes posting or publishing on a Web site on the Internet, if the Web site may be viewed by the general public.

(bn) "Private representation" means a representation depicting a nude or partially nude person or depicting a person engaging in sexually explicit conduct that is intended by the person depicted in the representation to be captured, viewed, or possessed only by the person who, with the consent of the person depicted, captured the representation or to whom the person depicted directly and intentionally gave possession of the representation.

(c)  "Representation" means a photograph, exposed film, motion picture, videotape, recording, other visual or audio representation, or data that represents a visual image or audio recording..

(d)  "Sexually explicit conduct" has the meaning given in s. 948.01 (7).

...

(3m)

(a)  Except as provided in par. (am), whoever does any of the following is guilty of a Class A misdemeanor:

1.  Posts, publishes, or causes to be posted or published, a private representation if the actor knows that the person depicted does not consent to the posting or publication of the private representation.

2.  Posts, publishes, or causes to be posted or published, a depiction of a person that he or she knows is a private representation, without the consent of the person depicted.

(am)  A person who commits a violation specified under par. (a) is guilty of a Class I felony if the person depicted or represented in the violation of par. (a) had not, at the time of the violation, attained the age of 18 years.

1.  Posts, publishes, or causes to be posted or published, a private representation if the actor knows that the person depicted does not consent to the posting or publication of the private representation.

2.  Posts, publishes, or causes to be posted or published, a depiction of a person that he or she knows is a private representation, without the consent of the person depicted.

(b)  This subsection does not apply to any of the following:

1.  The parent, guardian, or legal custodian of the person depicted if the private representation does not violate s. 948.05 or 948.12 and the posting or publication is not for the purpose of sexual arousal, gratification, humiliation, degradation, or monetary or commercial gain.

2.  A law enforcement officer or agent acting in his or her official capacity in connection with the investigation or prosecution of a crime.

3.  A person who posts or publishes a private representation that is newsworthy or of public importance.

4.  A provider of an interactive computer service, as defined in 47 USC 230 (f) (2), or to an information service or telecommunications service, as defined in 47 USC 153, if the private representation is provided to the interactive computer service, information service, or telecommunications service by a 3rd party.

Wis. Stat. Ann. § 942.09

**Drafting An Effective "Revenge Porn" Law: A Guide for Legislators**

Mary Anne Franks[†]

Legislative and Tech Policy Director & Vice-President, Cyber Civil Rights Initiative
Professor of Law, University of Miami School of Law

Updated September 22, 2016

Table of Contents

I.    Defining the Problem...........................................2

II.   Global and U.S. Legislative Efforts..........................3

III.  Elements of an Effective Law ................................5

IV.   Model State Law....................................…..…......10

V.    Supplemental Resources: Revenge Porn Statistics.........11

VI.   Supplemental Resources: Case Studies.....................13

        a.  Holly Jacobs..........................................13
        b.  Alecia Crain..........................................14
        c.  "Sarah"...............................................14
        d.  Audrie Pott ..........................................14
        e.  Rehtaeh Parsons...................................15

---

[†]Contact the author at mafranks@law.miami.edu.

1

## I.  Defining the Problem

The disclosure of sexually explicit images without consent and for no legitimate purpose –also known as "revenge porn" – causes immediate, devastating, and in many cases irreversible harm. A vengeful ex-partner, opportunistic hacker, or rapist can upload an explicit image of a victim to a website where thousands of people can view it and hundreds of other websites can share it. In a matter of days, that image can dominate the first several pages of search engine results for the victim's name, as well as being emailed or otherwise exhibited to the victim's family, employers, co-workers, and peers. Victims are frequently threatened with sexual assault, stalked, harassed, fired from jobs,[2] and forced to change schools.[3] Some victims have committed suicide.[4]

The term "revenge porn," though popular, is misleading in two respects. First, perpetrators are not always motivated by vengeance. Some act out of a desire for profit, notoriety, or entertainment, or for no particular reason at all. Perpetrators include not only bitter ex-partners but also people who are complete strangers to their victims. Second, the term "revenge porn" is sometimes interpreted to mean that taking a picture of oneself naked or engaged in a sexual act (or allowing someone else to take such a picture) is pornographic. Creating explicit images in the expectation within the context of a private, intimate relationship - an increasingly common practice[5] - is not equivalent to creating pornography. However, disclosing a private, sexually explicit image to someone other than the intended audience can be described as pornographic in the sense that it transforms a private image into public sexual entertainment. Many victim advocates accordingly use the term "nonconsensual pornography."

Nonconsensual pornography is not a new phenomenon, but its prevalence, reach, and impact have increased in recent years. The Internet has greatly facilitated the rise of nonconsensual pornography, as dedicated "revenge porn" sites and other forums openly solicit private intimate images and expose them to millions of viewers, while allowing the posters themselves to hide in the shadows.[6] As many as 3000 websites feature "revenge porn,"[7] and intimate material is also widely distributed without consent through social media, blogs, emails, and texts. The Cyber Civil Rights Initiative (CCRI) is contacted by an average of 20-30 victims each month. Technology and social media make it possible for abusers to "crowd-source" their harassment as well as making it possible for unscrupulous individuals to profit from it.

---

[2] *See* Ariel Ronneburger, *Sex, Privacy, and Webpages: Creating a Legal Remedy for Victims of Porn 2.0*, 21 Syracuse Sci. & Tech. L. Rep. 1 (2009), 10.
[3] *See* Danielle Keats Citron & Mary Anne Franks, *Criminalizing Revenge Porn*, 49 Wake Forest L. Rev. 345 (2014).
[4] Emily Bazelon, <u>Another Sexting Tragedy</u>, Slate, April 12, 2013.
[5] In a recent survey of 1100 New Yorkers, nearly half (45%) reported that they had recorded themselves having sex. Post Staff, *New Yorkers Reveal What Their Sex Lives Are Really Like*, N. Y. POST (Sept. 3, 2014), http://nypost.com/2014/09/03/new-yorkers-reveal-what-their-sex-lives-are-really-like/.
[6] Dylan Love, <u>It Will Be Hard to Stop the Rise of Revenge Porn</u>, Business Insider, Feb. 8, 2013.
[7] The Economist, <u>Revenge Porn: Misery Merchants</u>, July 5, 2014.

Nonconsensual pornography often plays a role in intimate partner violence, with abusers using the threat of disclosure to keep their partners from leaving or reporting their abuse to law enforcement.[8] Traffickers and pimps also use nonconsensual pornography to trap unwilling individuals in the sex trade.[9] Rapists are increasingly recording their attacks not only to brag about their activities but also to discourage victims from reporting sexual assaults.[10] Nursing home workers have been caught posting nude photos of elderly and disabled patients to social media.[11]

The rise in this destructive conduct is due in part to the fact that malicious individuals do not fear the consequences of their actions. Before 2013, there were few laws in the United States explicitly addressing this invasion of sexual privacy, even as concerns over almost every other form of privacy (e.g., financial, medical, data) have captured legal and social imagination. While some existing voyeurism, surveillance, and computer hacking laws prohibit the nonconsensual observation and recording of individuals in states of undress or engaged in sexual activity, the nonconsensual *disclosure* of intimate images has been largely unregulated by the law. This is beginning to change.

## II. Legislative Efforts: Global and U.S.

In 2009, the Philippines became the first country to criminalize nonconsensual pornography, with a penalty of up to 7 years' imprisonment.[12] The Australian state of Victoria outlawed nonconsensual pornography in 2013.[13] In 2014, Israel became the first country to classify nonconsensual pornography as sexual assault, punishable by up to 5 years imprisonment;[14] Canada and Japan criminalized the conduct the same year.[15] England and Wales criminalized the conduct in February 2015.[16] New Zealand outlawed the practice in July 2015.[17] Northern

---

[8] *See* Jack Simpson, Revenge Porn: What is it and how widespread is the problem?, The Independent, July 2, 2014; Annmarie Chiarini, "I was a victim of revenge porn." The Guardian, Nov. 19, 2013.

[9] *See* Ann Bartow, *Pornography, Coercion, and Copyright Law 2.0*, 10 Vand. J. Ent. & Tech. L. 799, 818; Marion Brooks, The World of Human Trafficking: One Woman's Story, NBC Chicago, Feb. 22, 2013.

[10] Tara Culp-Ressler, 16 Year-Old's Rape Goes Viral on Twitter, Think Progress, July 10, 2014.

[11] *See* Charles Ornstein, *Nursing Home Workers Share Explicit Photos of Residents on Snapchat*, PRO PUBLICA (Dec. 21, 2015) https://www.propublica.org/article/nursing-home-workers-share-explicit-photos-of-residents-on-snapchat

[12] World Intellectual Property Organization, *Anti-Photo and Video Voyeurism Act of 2009* (Republic Act No. 9995), http://www.wipo.int/edocs/lexdocs/laws/en/ph/ph137en.pdf

[13] *'Revenge porn' outlawed: Israel and Australia ban spurned lovers from posting compromising photos of their exes*, DAILY MAIL (Jan. 8, 2014), http://www.dailymail.co.uk/femail/article-2535968/Revenge-porn-outlawed-Israel-state-Australia-ban-spurned-lovers-posting-compromising-photos-exes.html

[14] Yifa Yaakov, *Israeli law makes revenge porn a sex crime*, TIMES OF ISRAEL (Jan. 6, 2014), http://www.timesofisrael.com/israeli-law-labels-revenge-porn-a-sex-crime/.

[15] House of Commons of Canada, Bill C-13; *The Criminalization of Revenge Porn in Japan*, 24 PAC. RIM. L. & POL'Y J. 289 (2015).

[16] I advised one of the Members of Parliament who originally pushed for a law prohibiting nonconsensual pornography, Maria Miller.

[17] Scoop, Act Closes 'Revenge Porn' Loophole, July 6, 2015.

3

Ireland and Scotland followed suit in February[18] and March 2016, respectively.[19] In 2015, Germany's highest court ruled that an ex-partner must destroy intimate images of his former partner upon request.[20] Brazil is currently considering legislation on the issue.[21]

In the United States, only three U.S. states – New Jersey, Alaska, and Texas[22] – had criminal laws that could be directly applied to nonconsensual pornography before 2012. Between 2012 and May 2016, 32 states and Washington D.C. passed criminal legislation to address this conduct: Arizona,[23] Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Kansas, Louisiana, Maine, Maryland, Michigan, Minnesota, Nevada, New Hampshire, New Mexico, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Tennessee, Texas (to supplement previous law), Utah, Vermont, Virginia, Washington, and Wisconsin, bringing the total number of states with "revenge porn" laws as of August 2016, to 34.[24] The Cyber Civil Rights Initiative advised drafters in most of these states, though the final versions of these laws do not necessarily reflect CCRI's recommendations.

The conduct is a felony in 6 of these states (Arizona, Hawaii, Idaho, Illinois, New Jersey, and Texas, as well as Washington, DC), a felony under some circumstances in several states, can be upgraded to a felony under certain circumstances in others, and is a misdemeanor offense in others.[25] State legislation has been introduced or is pending in more than a dozen other states, as well as Puerto Rico. As of August 2016, CCRI advised or is continuing to advise legislative efforts in Alabama, Kentucky, Massachusetts, Missouri, New York, and Virginia.[26]

---

[18] *See* Lucy Clarke-Billings, <u>Revenge Porn Laws in Europe, U.S. And Beyond</u>, NEWSWEEK (Sept. 16, 2016).
[19] *See* Mark McLaughlin, *'Revenge porn' becomes an offence as MSPs vote on sex crime law shake-up*, DAILY RECORD (March 22, 2016), http://www.dailyrecord.co.uk/news/scottish-news/revenge-porn-becomes-offence-msps-7610604#B3sUIs54qHlvDF1C.97
[20] *Sex Tape Row: German court orders man to destroy naked images*, BBC NEWS (Dec. 22, 2015), http://www.bbc.com/news/world-europe-35159187.
[21] Alex Cochrane, *Legislating on Revenge Porn: An International Perspective*, SOCIETY FOR COMPUTERS AND LAW, July 24, 2014), http://www.scl.org/site.aspx?i=ed38027
[22] A portion of Texas's law was declared unconstitutional in 2014. *See* Ex parte Thompson (2014), available at http://caselaw.findlaw.com/tx-court-of-criminal-appeals/1678295.html.
[23] The ACLU brought suit against Arizona's original 2015 law; the parties ultimately agreed not to enforce the law. The Arizona legislature passed a revised version of the law in 2016. *See* Associated Press, *Arizona Gov. Ducey signs bill criminalizing 'revenge porn,'* AZ CENTRAL (March 11, 2016), http://www.azcentral.com/story/news/politics/legislature/2016/03/11/arizona-gov-ducey-signs-bill-criminalizing-revenge-porn/81666052/
[24] Cyber Civil Rights Initiative, *34 States + DC Have Revenge Porn Laws*, http://www.cybercivilrights.org/revenge-porn-laws/ (last accessed August 16, 2016). The total is 34 instead of 35 because Texas's new law supplemented its previous one.
[25] In some states, the offense is a felony if certain aggravating factors are present, e.g. when the perpetrator publishes the images for profit or with the intent to harass the victim. *See, e.g.,* Section 1335, Title 11 Delaware Code, available at http://www.legis.delaware.gov/LIS/lis147.nsf/vwLegislation/HB+260/$file/legis.html?open.
[26] Virginia has a law but is seeking to revise it.

4

CCRI's Legislative and Tech Policy Director, Mary Anne Franks, began working with the office of Congresswoman Jackie Speier (D-CA) on a federal criminal bill in 2013.[27] The bill, titled the Intimate Privacy Protection Act, was introduced with bipartisan support in Congress on July 14, 2016. In a press release, Congresswoman Speier spoke of the harm caused by nonconsensual pornography: "The damage caused by these attacks can crush careers, tear apart families, and, in the worst cases, has led to suicide. What makes these acts even more despicable is that many predators have gleefully acknowledged that the vast majority of their victims have no way to fight back. ... My bill will fix that appalling legal failure."[28] The bill is supported by Facebook, Twitter, the National Organization for Women, the National Democratic Institute, the Information Technology and Innovation Foundation, Feminist Majority, Girls, Inc., and the Cyber Civil Rights Initiative.[29] Leading constitutional scholar Erwin Chemerinsky also gave a statement in support of the bill.[30]

### III. Elements of an Effective Law

Unfortunately, many of the state laws regulating nonconsensual pornography that have passed or are pending suffer from overly burdensome requirements, narrow applicability, and/or constitutional infirmities. A strong law must be clear, specific, and narrowly drawn to protect both the right to privacy and the right to freedom of expression. The following is a list of features an effective law should have, as well as features that should be avoided.

1. The law SHOULD, first, clearly set out the elements of the offense. The basic elements should be (1 the disclosure of private, sexually explicit photos or videos of an identifiable[31] person and (2 without the consent of the person depicted.[32]

2. The law SHOULD also clearly state the requisite *mens rea* for each element of the crime. It is an axiom of criminal law that a person cannot be guilty "unless the mind be guilty; that is unless the intent is criminal."[33] Mens rea, or "guilty mind," "refers to the mental state the

---

[27] Progressive Law Practice, Federal Legislation on Tap to Fight 'Revenge Porn,' (Jan. 2015), http://progressivelawpractice.com/index.php/big-law/692-federal-legislation-on-tap-to-fight-revenge-porn.

[28] Congresswoman Jackie Speier, *Press Release: Congresswoman Speier, Fellow Members of Congress Take on Nonconsensual Pornography, AKA Revenge Porn* (July 14, 2016), http://goo.gl/JTD1AZ.

[29] *Id.*

[30] *Id.*

[31] The designation of an "identifiable" person makes clear that the statute will not apply to photos or videos that merely depict body parts or sexual activity and provide no indication of who the subjects might be.

[32] *See* Illinois S.B. 1009 (signed into law December 2014): "A person commits nonconsensual dissemination of private sexual images when he or she... intentionally disseminates an image of another person... who is identifiable from the image itself or from information displayed in connection with the image; and who is engaged in a sexual act or whose intimate parts are exposed... and obtains the image under circumstances in which a reasonable person would know or understand that the image was to remain private; and knows or should have known that the person in the image has not consented to the dissemination." (available at http://www.ilga.gov/legislation/publicacts/fulltext.asp?Name=098-1138).

[33] Black's Law Dictionary 55 (4th ed. 1968).

5

defendant must have had with regard to the 'social harm' elements set out in the definition of the offense."[34] At common law, the terms for mens rea were numerous and often ill-defined. The Model Penal Code (MPC), by contrast, uses just four terms for mens rea: purpose, knowledge, recklessness, and negligence. Many states have adopted the MPC approach to mens rea.[35]

The mens rea for the first element, disclosure, should be purpose or knowledge. The distinction between the two is not bright in most circumstances, and in the context of disclosures amount effectively to the same thing. The primary point is to ensure that purely accidental disclosures would not be punishable.

The mens rea for the second element should be no higher than recklessness. While the term "recklessness" can be defined in various ways, the MPC offers a fairly straightforward definition: recklessness is the conscious disregard of a "substantial and unjustified risk."[36] It is based on the actual knowledge of risk on the part of the offender, as opposed to negligence, which is based on what the offender should have known. That is, for an offender to be punished, he would have to know that there was a substantial risk that the person depicted had not consented to the disclosure and be unable to offer justification for why he took that risk.

3. The law SHOULD explicitly include an exception for sexually explicit images voluntarily exposed in public or commercial settings.[37] This would ensure that individuals would not be prosecuted for recording and reporting unlawful activity in public places, such as flashing, or forwarding or linking to commercial pornography (or content they reasonably believed was commercial pornography).[38]

4. The law SHOULD include a narrow exception for disclosures made in the public interest, including the lawful and common practices of law enforcement or medical treatment. Law enforcement officers and medical professionals often have to deal with intimate materials, such as visual evidence of injuries from domestic violence or rape. While it is vital that such

---

[34] United States v. Cordoba-Hincapie, 825 F. Supp. 485 (1993).

[35] *See* JOSHUA DRESSLER & STEPHEN GARVEY, CRIMINAL LAW: CASES AND MATERIALS, 7th ed. (2016), 168-9.

[36] MPC 2.02(c)

[37] *See* Illinois S.B. 1009, which exempts the intentional dissemination of an image of another identifiable person who is engaged in a sexual act or whose intimate parts are exposed "when the dissemination is made for the purpose of a criminal investigation that is otherwise lawful"; "for the purpose of, or in connection with, the reporting of unlawful conduct"; when the images involve voluntary exposure in public or commercial settings"; or "when the dissemination serves a lawful public purpose." (available at

http://www.ilga.gov/legislation/publicacts/fulltext.asp?Name=098-1138)

[38] *See* Illinois S.B. 1009, which exempts the intentional dissemination of an image of another identifiable person who is engaged in a sexual act or whose intimate parts are exposed "when the dissemination is made for the purpose of a criminal investigation that is otherwise lawful"; "for the purpose of, or in connection with, the reporting of unlawful conduct"; when the images involve voluntary exposure in public or commercial settings"; or "when the dissemination serves a lawful public purpose."

6

materials be kept out of the public eye, the law should not burden the necessary flow of evidence or medical records that takes place in professional settings. Outside of law enforcement and medical practices, the "public interest" exception might apply, for example, to situations in which a concerned partner or parent of a victim of nonconsensual pornography contacts an advocacy organization or social media platform and includes links to or copies of the content in the hopes of having it removed or otherwise obtaining assistance, without getting express permission from the victim to do so.

5. The law SHOULD include a severability clause, so that in the event that any particular provision is declared invalid, the rest of the provision will remain effective.

6. The law SHOULD NOT require that perpetrators act with the intent to harass, humiliate, or cause emotional distress. Such a requirement mischaracterizes nonconsensual pornography as a form of harassment rather than as an invasion of privacy and potentially renders statutes vulnerable to First Amendment challenge.

The term "revenge porn" may be partly to blame for these misguided intent requirements, as it implies that this conduct is motivated by personal animus.[39] Nonconsensual pornography often is, of course, a form of harassment. "Classic" revenge porn cases involve bitter exes determined to destroy their victims' lives. However, a significant portion of nonconsensual pornography cases involves people who do not even know each other.  The proprietors of revenge porn websites, for example, do not have personal grievances against the thousands of victims depicted without consent on their platforms. Neither did the distributors of over a hundred female celebrities' private, intimate photos in the notorious 2014 "celebrity hack."[40] Nor do the many perpetrators who distribute or publish photos and videos on the presumption that their victims will never discover what they have done, including the California Highway Patrol officers who accessed and forwarded female DUI suspects' intimate cellphone pictures as a "game,"[41] the fraternity brothers who uploaded photos of unconscious, naked women to a members-only Facebook page,[42] or the caretakers who posted explicit images of their unsuspecting patients to Snapchat.[43]

"Intent to harass" requirements confuse mens rea with motive. While the requisite mens rea for each element of a criminal law should be clearly stated, criminal laws are not required to include – and indeed the majority do not include - motive requirements. "Intent to cause

---

[39] *See* Franks, How to Defeat Revenge Porn, *supra* note 24.

[40] *See* Rob Price, Bitcoin Beggars Try to Profit Off Leaked Celebrity Nudes, Daily Dot, Sept. 1, 2014.

[41] *See* Matthias Gafni & Malaika Fraley, Warrant: CHP officer says stealing nude photos from female arrestees 'game' for cops, Contra Costa Times, Oct. 24, 2014.

[42] Holly Otterbein, Member of Penn State's Kappa Delta Rho Defends Fraternity, Philadelphia Magazine, March 18, 2015.

[43] *See* Charles Ornstein, *Nursing Home Workers Share Explicit Photos of Residents on Snapchat,*
PRO PUBLICA (Dec. 21, 2015) https://www.propublica.org/article/nursing-home-workers-share-explicit-photos-of-residents-on-snapchat

7

emotional distress" or "intent to harass" requirements[44] arbitrarily distinguish between perpetrators motivated by personal desire to harm and those motivated by other reasons.[45] Motive requirements ignore the reality that many perpetrators are motivated not by an intent to distress but by a desire to entertain, to make money, or achieve notoriety.[46]

What is more, while "intent to harass" provisions are often touted as necessary to ensure compliance with the First Amendment, the reality is that such provisions are neither required by First Amendment doctrine and in fact create First Amendment vulnerabilities. The Supreme Court has never held that statutes regulating expression must include motive requirements; if anything, the Court has suggested that motive requirements might render an otherwise constitutional statute unconstitutional.[47] Indeed, cyberbullying laws in North Carolina and New York that included such clauses have recently been declared unconstitutional.[48] The courts in these cases noted that phrases such as harass, torment, embarrass, etc. are unconstitutionally vague. While the American Civil Liberties Union (ACLU) has been the most vocal proponent of the claim that "intent to harass" provisions are necessary to ensure a statute's constitutionality,[49] the organization itself previously characterized the term "intent to cause substantial emotional distress" as "unconstitutionally overbroad" in its objection to federal stalking provisions of the Violence Against Women Act.[50]

Requiring "intent to harass" and similar provisions moreover renders nonconsensual pornography laws duplicative of harassment laws, which already exist in every state and at

---

[44] *See* Utah H.B. 71 (signed into law March 2014): "An actor commits the offense of distribution of intimate images if the actor, with the intent to cause emotional distress or harm, knowingly or intentionally distributes to any third party any intimate image of an individual who is 18 years of age or older…"

[45] *See* Mary Anne Franks, How to Defeat Revenge Porn: First, Recognize It's About Privacy, Not Revenge, Huffington Post, June 22, 2015.

[46] As the proprietor of a once-popular revenge porn site described his motivations, "I call it entertainment… We don't want anyone shamed or hurt we just want the pictures there for entertainment purposes and business." CBS Denver, 'Revenge Porn' Website has Colorado Women Outraged, Feb. 3, 2014.

[47] *See* R.A.V. v. City of St. Paul, Minn., 505 U.S. 377 (1992).

[48] *See* Eugene Volokh, *N.C. court strikes down ban on posting 'personal or sexual information' about minors 'with the intent to torment,'* WASH. POST (June 11, 2016) https://www.washingtonpost.com/news/volokh-conspiracy/wp/2016/06/11/n-c-court-strikes-down-ban-on-posting-personal-or-sexual-information-about-minors-with-the-intent-to-torment/; David L. Hudson Jr., *NY high court says anti-cyberbullying law won't pass First Amendment muster*, ABA JOURNAL (Nov. 1, 2014) http://www.abajournal.com/magazine/article/bully_fighting_new_yorks_high_court_says_anti_cyberbullying_law_wont_pass_f

[49] The ACLU Foundation of Arizona makes this claim in its recent lawsuit against Arizona's non-consensual pornography law, Antigone Books et al v. Horne (2014). The ACLU of Maryland made this claim in its Testimony for the Maryland House Judiciary Committee on HB 43 (Jan. 28, 2014). *See* Mary Anne Franks, The ACLU's Frat House Take on 'Revenge Porn,' Huffington Post, April 1, 2015.

[50] ACLU, *New Expansion of Stalking Law Poses First Amendment Concerns*, March 12, 2013 (https://www.aclu.org/blog/free-speech/new-expansion-stalking-law-poses-first-amendment-concerns).

8

the federal level and are demonstrably inadequate to address the specific harm of nonconsensual pornography.[51]

5. The law SHOULD NOT be so broadly drafted as to include drawings[52] or incorporate expansive definitions of nudity (e.g. buttocks, female nipples visible through gauzy or wet fabric, coveered male genitals in a "discernibly turgid state")[53] in its scope. Too-broad definitions could lead to "baby in the bath" problems, criminalizing parents who share innocuous pictures of their infants.[54]

6. At the same time, the law SHOULD NOT be so narrowly drafted as to apply only to images featuring nudity, as an image can be sexually explicit without containing nudity.[55]

6. The law SHOULD NOT be so narrowly drafted as to only apply to disclosures made online or through social media,[56] as nonconsensual pornography can also take "low-tech" forms such as printed photographs and DVDs.[57]

---

[51] If legislators are compelled by political pressures to include some reference to harm or distress, a better approach would be to employ an objective standard, e.g. "when a reasonable person would know that such disclosure would cause harm or distress."

[52] One draft bill in Michigan, S.B. 0294 stated "A person shall not ... post on the Internet any sexually explicit photograph, drawing, or other visual image of another person with the intent to frighten, intimidate, or harass any person." http://www.legislature.mi.gov/documents/2013-2014/billengrossed/Senate/pdf/2014-SEBS-0924.pdf. The bill that Michigan ultimately passed narrowed the scope of images. See Enrolled Senate Bill No. 508, http://www.legislature.mi.gov/documents/2015-2016/billenrolled/Senate/pdf/2015-SNB-0508.pdf.

[53] See Georgia H.B. 858, defining "nudity" as "(A) The showing of the human male or female genitals, pubic area, or buttocks without any covering or with less than a full opaque covering; (B) The showing of the female breasts without any covering or with less than a full opaque covering; or (C) The depiction of covered male genitals in a discernibly turgid state."

[54] See Riya Bhattacharje, Florida pushes bill to criminalize 'revenge porn', MSN News, April 3, 2013: "University of Miami law professor Mary Anne Franks said it was 'a very good sign' that legislators were working toward criminalizing revenge porn, but the proposed bill was too broad in some aspects and too narrow in others. 'It's criminalizing the creation of an image that depicts nudity, but it doesn't define nudity,' Franks said. 'It needs to make clear what it means by nudity and that nudity isn't the only thing we care about. So it is unclear whether it refers to genitalia, buttocks, breasts, etc. or all of the above. That vagueness might mean that a mother who uploads a photo of her baby in the bath to Facebook could face criminal prosecution.'"

[55] See Carrie Goldberg, Seven Reasons Illinois is Leading the Fight Against Revenge Porn, Cyber Civil Rights Initiative, Dec. 31, 2014.

[56] See Georgia H.B. 858, limiting application to a person who "(1) Electronically transmits or posts, in one or more transmissions or posts, a photograph or video ... when the transmission or post is harassment or causes financial loss to the depicted person and serves no legitimate purpose to the depicted person; or (2) Causes the electronic transmission or posting, in one or more transmissions or posts, of a photograph or video ...when the transmission or post is harassment or causes financial loss to the depicted person and serves no legitimate purpose to the depicted person."

[57] See, e.g., the case of David Feltmeyer, who allegedly distributed sexually explicit DVDs of his ex-girlfriend on the windshields of cars in her neighborhood after she declined to continue a relationship with him. Police: Man Left DVDS of ex Girlfriend Performing Sex Acts on Car Windshields, AP News, March 3, 2007. See also the case of Jovica Petrovic, who sent 8.5 x11 glossy photos of his ex-wife performing sex acts in FedEx envelopes to her boss as well as to her home address, where they were opened by her seven-year-old son. Nicholas Phillips, Sext Fiend, Riverfront Times, April 18, 2013.

9

7. The law SHOULD NOT be limited to conduct perpetrated by a current or former intimate partner.[58] While such laws highlight the fact that nonconsensual pornography is often a form of intimate partner violence, they allow friends, co-workers, and strangers to engage in this destructive conduct with no consequence.

8. The law SHOULD NOT broaden immunity for online entities beyond what is provided by the Section 230 of the federal Communications Decency Act.[59] Section 230 protects online entities from liability only to the extent that they function solely as intermediaries for third-party content. To the extent that online entities act as co-developers or co-creators of content, they can be prosecuted under state criminal law.[60]

### IV. Model State Law

An actor may not knowingly disclose an image of another person who is identifiable from the image itself or information displayed in connection with the image and whose intimate parts are exposed or who is engaged in a sexual act, when the actor knows or recklessly disregarded the risk that the depicted person has not consented to such disclosure [and under circumstances in which the actor knew or should have known that the depicted person had a reasonable expectation of privacy. A person who has consented to the disclosure of an image within the context of a confidential relationship retains a reasonable expectation of privacy with regard to disclosures beyond such a relationship, as does a person whose intimate parts are exposed or who is engaging in a sexual act involuntarily, whether in public or private.][61]

    A. Definitions. For the purposes of this section,

        (1)   "Disclose" includes transferring, publishing, distributing, or reproducing;
        (2)   "Image" includes a photograph, film, videotape, recording, digital, or other reproduction;
        (3)   "Intimate parts" means the naked genitals, pubic area, anus, or female post-pubescent nipple of the person;

---

[58] *See* Pennsylvania H.B. 2107: "a person commits the offense of unlawful dissemination of intimate image if, with intent to harass, annoy or alarm a current or former sexual or intimate partner, the person disseminates a visual depiction of the current or former sexual or intimate partner in a state of nudity or engaged in sexual conduct."

[59] 42 U.S.C. §230

[60] Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC 521 F.3d 1157 (9th Cir. 2008)

[61] The "reasonable expectation of privacy" language is bracketed because of the benefits and drawbacks of including it. The benefit of including such language is to emphasize that the statute only protects private images. This point is already addressed in B(1) of the exceptions, but including it in the elements might helpfully underscore this aspect. The drawback of this approach is that the term "reasonable expectation of privacy" might create more ambiguity than it resolves, especially considering the doctrinal baggage of the term in Fourth Amendment jurisprudence.

10

(4)    "Sexual act" includes but is not limited to masturbation; genital, anal, or oral sex; sexual penetration with objects; or the transfer or transmission of semen upon any part of the depicted person's body.

B.  Exceptions. This section does not apply to

(1) Images involving voluntary exposure in public or commercial settings; or
(2) Disclosures made in the public interest, including but not limited to the reporting of unlawful conduct, or the lawful and common practices of law enforcement, criminal reporting, legal proceedings, or medical treatment.

C.  Severability.

(1) The provisions of this section are severable. If any provision of this section or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application

## V.  Supplemental Resources: Revenge Porn Statistics

From a Cyber Civil Rights Initiative survey with 1606 total respondents, 361 victims:

- 61% of respondents said they had taken a nude photos/videos of themselves and shared it with someone else
- 23% of respondents were victims of revenge porn.

Statistics on Revenge Porn Victims:

- 83% of revenge porn victims said they had taken nude photos/videos of themselves and shared it with someone else
- 90% of revenge porn victims were women
- 68% were 18-30 years old, 27% were 18-22
- 57% of victims said their material was posted by an ex-boyfriend, 6% said it was posted by an ex-girlfriend, 23% said it was posted by an ex-friend, 7% said it was posted by a friend, 7% said it was posted by a family member
- Information that was posted with the material:
  - o  Full name: 59%
  - o  Email Address: 26%
  - o  Social network info/screenshot of social network profile: 49%
  - o  Physical home address: 16%
  - o  Phone number: 20%
  - o  Work Address: 14%
  - o  Social Security Number: 2%
- 93% of victims said they have suffered significant emotional distress due to being a victim

11

- 82% said they suffered significant impairment in social, occupational, or other important areas of functioning due to being a victim
- 42% sought out psychological services due to being a victim
- 34% said that being a victim has jeopardized their relationships with family
- 38% said it has jeopardized their relationships with friends
- 13% said they have lost a significant other/partner due to being a victim
- 37% said they have been teased by others due to being a victim
- 49% said they have been harassed or stalked online by users that have seen their material
- 30% said they have been harassed or stalked outside of the Internet (in person, over the phone) by users that have seen the material online
- 40% fear the loss of a current or future partner once he or she becomes aware that this is in their past
- 54% fear the discovery of the material by their current and/or future children
- 25% have had to close down an email address and create a new one due to receiving harassing, abusive, and/or obscene messages
- 26% have had to create a new identity (or identities) for themselves online
- 9% have had to shut down their blog
- 26% have had to close their Facebook account
- 11% have had to close their Twitter account
- 8% have had to close their LinkedIn account
- 26% have had to avoid certain sites in order to keep from being harassed
- 54% have had difficulty focusing on work or at school due to being a victim
- 26% have had to take time off from work or take less credits in/a semester off from school due to being a victim
- 8% quit their job or dropped out of school
- 6% were fired from their job or kicked out of school
- 13% have had difficulty getting a job or getting into school
- 55% fear that the professional reputation they have built up could be tarnished even decades into the future
- 57% occasionally or often have fears about how this will affect their professional advancement
- 52% feel as though they are living with something to hide that they cannot acknowledge to a potential employer (such as through an interview).
- 39% say that this has affected their professional advancement with regard to networking and putting their name out there
- 3% have legally changed their name due to being a victim
- 42% haven't changed their name, but have thought of it
- 42% have had to explain the situation to professional or academic supervisors, coworkers, or colleagues

12

- 51% have had suicidal thoughts due to being a victim
- 3% of victims have posted revenge porn of someone else

### VI. Supplemental Resources: Illustrative Case Studies

The following cases provide a sense of the scope and severity of this conduct.

## 1. HOLLY JACOBS

Holly Jacobs is not the name she was born with. A few years ago, the Miami, Florida resident was working on completing her doctorate in Industrial/Organizational Psychology at FIU and had moved on from what she thought had been an amicable breakup with a longtime, long-distance boyfriend.

She was happy in a new relationship, so much so that she posted a picture of herself with her new boyfriend to Facebook to announce their relationship. Soon after, she received an email that would change her life.

*"It's 8:15 where you are. You have until 8:37 to reply. Then I start the distribution."*

Holly quickly realized what the sender of the email was threatening to distribute, which also made the sender's identity clear. She and her ex-boyfriend had exchanged intimate photos throughout their three-year relationship, but she had never thought that he would use them to destroy her life.

Three days after Holly received the email, her pictures were on over 200 websites and she had been inundated with unwelcome sexual propositions from men who had seen them. The pictures had also been sent to her boss and a co-worker. Holly spent the next few months trying to explain the situation to her employer, her family, her friends, and colleagues, and to plead with porn sites and search engines to remove her material. After a solid month writing her dissertation by day and sending takedown notices at night, the material was gone. But not for long. Within two weeks, her material was up on 300 websites.

At that point, Holly gave up trying to change her search results, and started the process to change her name. She couldn't see any other way to escape the material that was following her everywhere, jeopardizing her career, her psychological health, and her relationship.

But that wasn't the biggest change Holly was to make. After being told repeatedly by lawyers and police officers that what her ex was doing wasn't against the law, she decided that this should change too. She started the End Revenge Porn Campaign and teamed up with activist Charlotte Laws and law professors Mary Anne Franks and Danielle Citron to form a nonprofit organization, the Cyber Civil Rights Initiative. One of the organization's primary

13

goals is to get nonconsensual pornography criminalized in every state and at the federal level. Less than two years later, the formerly obscure issue of revenge porn has been pushed into the public consciousness and more than half of U.S. states have enacted criminal legislation against the conduct. Read more about Holly here.

## 2. ALECIA ANDREWS-CRAIN

Alecia Andrews-Crain, a Missouri mother of two, thought she could finally breathe a sigh of relief after the full order of protection against her abusive ex-husband had been granted in February 2014. But one morning only a few days later, as Alecia went about her work as an independent insurance agent, she was greeted by a startling message in her inbox.

*Subject: Someone did something nasty to you on [redacted].com*

Once she clicked on the link, she saw a photograph of herself taken seven years ago as she stepped out of the shower. She was still married to her husband then, and she had no time to react to his unexpected presence in the bathroom with a camera – an example of his casually abusive behavior. This seven-year-old picture was now posted to one of the most notorious – and most popular - revenge porn websites. The photo showed up connected to her LinkedIn and Facebook profiles, causing her personal and professional humiliation.

Like Holly, Alecia went to the police, certain that her ex's malicious behavior had to be against the law. In fact, Missouri does not have a law prohibiting the nonconsensual distribution of intimate images, and the act was not considered a violation of her order of protection. Alecia was left without recourse. Alecia is now advocating for Missouri to reform its criminal laws to address this issue. Read more about Alecia here.

## 3. "SARAH"

In 2013, Alex Campbell was sentenced to life in prison for human trafficking. According to the four witnesses who testified against him, Campbell used violence and intimidation to force women into prostitution. One of the women, "Sarah" (not her real name) was forced to perform sexual acts with another woman while Campbell filmed it. Campbell threatened to send this video to Sarah's family if she ever attempted to escape. Sarah's story offers a glimpse of how nonconsensual pornography is used by sex traffickers to keep women in servitude. Read more about Sarah's story here.

## 4. AUDRIE POTT

While attending a party in September 2012, fifteen-year-old Audrie Pott became extremely intoxicated. Three boys and a girl took her to an upstairs bedroom. The girl left when the boys starting undressing Audrie and drawing on her breasts and buttocks with markers. The boys

14

then took pictures of themselves sexually assaulting Audrie. When Audrie woke up the next morning, she didn't know where she was or what had happened to her. Seeing the marks on her body led Audrie to ask her friends how they got there. Through Facebook conversations, Audrie learned what the boys had done to her. She also learned that there were pictures, and that those pictures were circulating around the school.

A week later, Audrie called her mother from school at midday and asked to be taken home. She retreated to her room when the two arrived at home; her mother decided to check on her after not hearing anything for 20 minutes. The bathroom door was locked and there was no answer from inside. Audrie's mother forced open the door and found her only child hanging from a belt attached to the showerhead. Paramedics arrived soon after Audrie's mother called 911, but their efforts to save Audrie were unsuccessful.[62] Read more about Audrie's story here.

## 5.  REHTAEH PARSONS

In 2011, 15-year-old Rehtaeh Parsons went to a party. She had several alcoholic drinks, becoming quite sick after doing so – sick enough that at one point in the evening she was vomiting out of an open window. As she did so, an older boy sexually penetrated her from behind. Another boy at the party, who Rehtaeh later said also raped her, took a photo, which eventually spread around her school and her town. Rehtaeh received a barrage of messages calling her a slut and propositioning her for sex. In April 2013, Rehtaeh attempted to hang herself, which left her in a comatose state. She was taken off life support a few days later.

In an open letter following her death, her father, Glen Canning, wrote: "Why is it [the boys] didn't just think they would get away with it; they knew they would get away with it. They took photos of it. They posted it on their Facebook walls... they emailed it... They shared it with the world as if it was a funny animation." Rehtaeh's father closed the letter with these words: "For the love of God do something."[63]

---

[62] Nina Burleigh, *Sexting, Shame and Suicide*, ROLLING STONE (Sept. 17, 2013), http://www.rollingstone.com/culture/news/sexting-shame-and-suicide-20130917.

[63] Glen Canning, *Rehtaeh Parsons was my daughter* (April 10, 2013), http://glencanning.com/2013/04/rehtaeh-parsons-was-my-daughter/.

15