Benjamin Barber
Plaintiff
E-mail:barberb@barberb.com
Phone 9712700855

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**BENJAMIN BARBER,**                              Case No.3:2016cv02105

      Plaintiff,

                                      **Memorandum in Support of Claim 4**

   vs.

                                  (Civil Rights) 42 USC 1983, First Amendment,

**ELLEN ROSENBLUM, KATE BROWN,**         Fourteenth Amendment, 42USC 1981,

**BEN CANNON, BRAD AVAKIAN in their**         42 USC 1985, 42 U.S.C. §2000(d),

**official capacity (for claim #4 only)**         42 USC 3604, 42 U.S.C. 2000(e)

      Defendants

**Table of Contents**

2   **(I)Facts**
7   **(II) Claims**
8   **(III) Relief Sought**
9   **(IV) Standard of Review**
11  **(V) Violation of Barber's rights under the 14th Amendment**
13  **(VI) Unlawful Employment Discrimination in Federal Law.**
15  **(VII) Unlawful Housing Discrimination.**

## (I) Facts

1.   It is the plaintiffs positions that Civil Rights resides with and is to protect individuals, actions or laws that target individuals as a member of their class are inherently suspect, and to that each individual is an ends unto themselves, and not merely a means to the ends of any state or corporate interest.[1]

2.   Barber did lobby for the equal rights amendment to the Oregon Constitution which it amended to read "Equality of rights under the law shall not be denied or abridged by the State of Oregon or by any political subdivision in this state on account of sex."

3.   The State of Oregon under color of law has created a statutory and financial framework, which provide property tax exemptions to Oregon companies under the enterprise zone program, with explicit purposes of discriminating in employment on the basis of suspect classification in exchange.

4.   The State of Oregon has gone so far as to allow to operate under the color of laws, it to use federal funds to be used to promote discrimination but also segregation on the basis of gender, as separate and unequal a practice which should have ended with Brown vs Board of Education.

5.   The State of Oregon has arrested Barber for the sole reason for the sole reason of exercising his rights under the law, and under the direction of of its statutory requirements for discrimination under the law, has caused him losses of employment opportunities and workplace harassment for its defense.

6.    Under ORS 200.015  "In cooperation with the private sector, the affected populations, interested groups and appropriate governmental entities, a program of review should be established to recommend remedies for the unfortunate effects of social, political and economic inequity that still exist." and that "Women and minorities are rebuttably presumed to be: (a) Economically disadvantaged. (b) Socially disadvantaged."[2]

7.   Under ORS 200.090 "Contracting agencies shall aggressively pursue a policy of providing opportunities for disadvantaged business enterprises, minority-owned businesses, woman-owned businesses, businesses that service-disabled veterans own and emerging small businesses and shall cooperate with the Governor's Policy Advisor for Economic and Business Equity to determine the best means by which to make such opportunities available."[3]

8.   Worksystems Inc. is the local Worksource Investment Board for Multnomah and Washington counties, who receives funds from the federal Workforce Investment Act, which distributes federal

---

1 Immanuel Kant – Categorical Imperative – Groundwork of the Metaphysics of Morals,
2 ORS 200 015.pdf
3 ORS 200 090.pdf

funds to "increase employment, retention, and earnings of individuals".Worksystems is also a member of the Portland Metro STEM partnership[4] and receives funds from STEM Investment Council[5].

9.   The Portland Development Commission approved its policy on Equity on January 9, 2013, which are guided by administrative procedures.[6] Those procedures are to require 20% of goals for awarding contracts and percentage goals for the number of women, and encourages disparate treatment based on gender and race.[7] Like for example a startup fund only for use by women and minorities.[8]

10. However in June of 2011 it had a report to the board stating how it needs to legally construct them."A strong basis in evidence that discrimination affects minority- and women-owned firms; and That any program adopted is narrowly tailored to achieve the goal of remedying the specific identified discrimination. A number of elements determine whether a program is narrowly tailored."[9]

11. In June of 2014 barber contributed to two teams in the Portland Startup challenge[10], which was held by the City of Portland but was meant for only minorities and women,[11] He had been working on Solar computers at the time.[12] However he contributed but receieved no renumeration for a "Tiny Homes" project with Twee Huyen[13] and "noappfee.com" from Tyrone pool who won a $50000 award[14]

12. In July 2014 The State of Oregon sought to enter into a contract with Barber's former employer Intel, providing it with a property tax exemption over the course of 30 years under the "Enterprise Zone Act", under its 2014 "Strategic Investment Program" under ORS 285C.606(1).[15]

13. The contract reads "The laws of the State of Oregon shall govern this 2014 SIP Agreement. Any action or suit commenced in connection with this contract shall be in the Circuit Court of Washington County, Oregon Tax Court, or the Federal District Court for Oregon, as appropriate."[16]

14. It reads "No person shall be denied or subjected to discrimination in receipt of the benefits of any services or activities made possible by or resulting from this 2014 SIP Agreement on the grounds of race, color, religion, gender, sexual orientation, national origin, disability, age, or marital status."[17]

---

4 Core Partners Portland Metro Stem Partnership.pdf
5 STEM-Education-Plan-Final_CEdO_Nov_2016.pdf
6 Business-and-Workforce-Equity-Policy.pdf
7 Equity-Procedures.pdf
8 Inclusive Startup Fund – Prosper Portland.pdf
9 PDC-Disparity-Study-Executive-Summary.pdf
10Startup PDX Challenge - Portland Development Commission.pdf
11Startup PDX Challenge returns, offering $15,000 grants and a focus on women and minorities _ OregonLive.pdf
12Solar Powered Servers.pdf
13Twee Startup PDX challenge.pdf
14 Tyrone Poole startup PDX challenge.pdf
15 ORS 285C 215.pdf
16 2014-SIP-Agreement.pdf 14.1
17 2014-SIP-Agreement.pdf 14.2

15. The contract also reads that the company is supposed to enter into a "First Source Hiring Agreement" with a third party approved by the county, which is a requirement of ORS 285C.215 and regulated by the administrative rules OAR 123-070 which define "First Source Hiring".[18]

16. First source hiring requirements state that the Benefited Business "should make a good faith effort to hire and retain such individuals, who are presumed to have low incomes or otherwise face disadvantages in finding employment" with the "contract agency for local providers".[19]

17. In June 2014 Worksystems announced a partnership with a company called "Treehouse" to provide online training for people who wish to learn how to code called "Code Oregon", which was supposed to train 10,000 Oregonians to code and was slated to begin in June of 2015.[20]

18. Barber did decide to apply for this program because he was interested in learning to code, and was in the process of teaching himself programming and electronics engineering technician, however he never received a response back from the organization, meaning that he was not qualified.[21]

19. By August of 2014 Tree house signed an agreement with Worksystems, and the Clinton Global Initiative, and several groups "Chick Tech" and "Girls Inc" and others to "change the ratio", The agreement stated that they were to create training programs for those "10,000" adults with Workforce Investment Boards, who would later host job fairs to place people into "code to work" programs. [22] [23]

20. These organizations are receiving money from the Oregon Department of Education, some of which comes from the US department of education, some of it comes from workforce investment act funds, which were provided to the STEM hubs and Workforce Investment Boards.[24]

21. Moreover these organizations also provide their services to only women, and have a "no men allowed" policy which is actively condoned by the Department of Education, despite the fact that it is an unlawful act to do so in the state of Oregon and under federally assisted programs. [25]

22. After seeing the advertisements for the "change the ratio" programs on these websites, in January 2015 Barber attended 3 technology events which were advertised as "women only", and he was denied entrance at all 3 events on the basis of his gender, he was contacted by one of the hosts of

---

18 2014-SIP-Agreement.pdf 5.5
19 OAR first souce hiring agreement.pdf
20 Code Oregon Worksystems & Treehouse Will Train 10,000 Oregonians for Tech Jobs.pdf
21 Code Oregon application.pdf
22 Code-to-Work Training for High-Paying Tech Jobs _ Clinton Foundation.pdf
23 changing-the-ratio1.pdf
24 STEM, STEAM and_or CTE Program and Activity Grant - Oregon Department of Education.pdf
25 chicktech women only.pdf

the events which had evicted him over concerns of public accommodation laws who he later sued for $20 for the sole purpose of desegregating the events. [26] [27] [28]

23. In March of 2015 these "code to work" programs were paid for by the federal program called "tech hire", which were supposed to connect persons who were previously in the "Code Oregon" program into a position with an employer, these positions were supposed to be given a preference to "underrepresented" people on the basis of age, color, women, etc in violation of the law.[29]

24. In March 3rd of 2015 Barber attended a program that was being hosted by the portland development commission called the Tech Community Open House PDC's 2015-2020 strategic plan[30], which was attended by Jared Weiner of the Portland Development Commission. [31]

25. Barber expressed to Jared Weiner that there were problems with the plan was that it created discrimination on the basis of race and sex, and that it lacked the required auditing and controls that would make sure that there would be a sufficient return on invesment, as denoted by "price per job created" or "long term return on investment" for the grants and loans it was making.

26. On March 25th of 2015 Barber attended Portland City Hall and informed them that the plans that they were undergoing were violations of Oregon and federal law, in addition to he lax capital controls which would make sure that there it was a wise investment of taxpayer funds.[32]

27. In June 15th of 2015 The State of Oregon Business Commission, Worksystems and the Portland Development commission created the "Tech Town Diversity Pledge", which targets people based on suspect class for preferable hiring preferences by the companies who also sign it.[33]

28. In June 17th of 2015 the Portland City Council gave Jaguar Land Rover $382,000 in tax abatements as a part of the Enterprise zone program in ORS 285C.606. In exchange for their participating in the preferential hiring of "underrepresented" populations, using a quota system that reserves 2 of its 12 spots in its incubator program for people from underrepresented communities.[34]

29. Jaguar Land Rovers Open Source incubator program was developed along with Intel, and was something Barber was interested in[35], because Barber had been an proponent of Open Source software,

---

26 Calagator_ Portland's Tech Calendar.pdf
27 Follow Up By New Relic.pdf
28 Multnomah County Circuit Court 16SC03609
29 Tech Hire Grant.pdf
30  PDC-Strategic-Plan.pdf
31 Tech Community Open House_ PDC's 2015-2020 Strategic Plan.pdf
32 portland city hall testimony.pdf
33  Diversity Letter — TechTown, Portland.pdf
34  Portland enterprise zone Jaguar Landrover.pdf
35 Jaguar Land Rover's new Portland lab seeks to make automotive tech driver-friendly _ OregonLive.pdf

and at one point Barber made a demonstration application for face recognition with Intel 3D Cameras[36], which allowed the camera to utilize face recognition technology made by the Sensory Inc api [37]

30.  Up to 3 million dollars of contracts will be provided to firms in the incubator program which are funded in part by Drive Oregon. The Portland Development Commission created the "Tech Town Diversity Pledge", which tech companies promise to assist "under-represented communities" "women and minorities", Jaguar Land Rover signed to get in order to get its tax abatement.[38]

31. Barber saw an event sponsored by Jaguar Land Rover and Worksystems along with the "change the ratio" group, for the purposes of prospective employment considering he had been working on similar or identical technology which it employed in its vehicles systems, and felt like he should be welcome to attend events like this without discrimination on the basis of gender.[39]

32. Barber received a ticket to attend the event and was told that he was not allowed entry because of the basis of his gender, and he was arrested while waiting in the alcove of the Jaguar Land Rover building, because he wished to make a complaint to lodge with the Bureau of Labor and Industries.[40]

33. Barber was arrested by the Portland Police and cited for trespassing, he informed the police who had attended, that this event was in fact state sponsored discrimination. Barber had a printout of the Oregon discrimination laws and informed the officer that he was constitutionally protected from arrest.

34. Barber did not violate any time, place, or manner restriction which was placed on the company, he merely sought to receive the equal treatment under the law, and to peacefully attend the meeting.

35. Because Intel is required under the SIP to operate a "First Source Hiring" program with Worksystems which it signed with the commission, Intel started a program of quota based hiring programs which caused them to discriminate on the basis of suspect class in violation of its contract.[41]

36. In Sepember of 2015 Portland Mayor Hales claimed that he would end homelessness in only women while Barber was homeless, and the City of Portland did provision many women[42] only homeless shelters and tiny homes, despite the fact that the majority of homeless persons are men.[43]

37. Intel stated in its 2015 employment report it stated that there was only a 24.7% availability of U.S. women in technical roles however in 2016 it hired 35% women for the roles, moreover they lost

---

36  Sensory Inc API agreement.pdf
37  Intel Realsense, Sensory api.pdf
38  Portland OKs $382,000 tax break for Jaguar Land Rover tech incubator _ OregonLive.com.pdf
39  WITCH Women in Tech Summer Soiree Tickets.pdf
40  Barber police report.pdf
41  Portland tech leaders issue 'diversity pledge' _ OregonLive.pdf
42  Women Into Housing Now Initative Underway _ Housing Blog _ The City of Portland, Oregon.pdf
43  Oregon Live Homeless Women Services.pdf

PAGE 6 - Memorandum in Support of Claim 4

over 3000 males and 3 women employees when it decided to start layoffs within the company in 2016, It also increased its Asian hires to 33% who are presumed to be "disadvantaged" under law. [44]

38. Intel had discussed the legality of the programs with Intel on a discussion forum[45], stating that personally identifying information should be removed from code and work reviews to reduce discrimination, that actively discriminating on a persons suspect classification was against the law as was age discrimination, in a series of correspondences to the President of HR of Intel Richard Taylor.[46]

39. In January of 2016 Barber applied for a employment agency named "Scout Savvy" that was meant exclusively for women, which was started at the behest of the Portland Development Commission, with the purpose to help members of the "Tech Town" group to hire exclusively women.[47]

40. Barber filed a discrimination complaint to the Oregon Bureau of Labor and Industries regarding Scout Savvy, and the Jaguar Land Rover / Worksystems, and the "Tech Town" group for violation the state laws against discrimination in places of accommodation, which were ignored by the agency.[48]

41. Barber joined a group of ex Intel Employees, who had also been in contact with the Bureau of Labor and Industries, who had felt that they had been targeted for discrimination, but were not taking their complaints for discrimination based on age, sex, or color seriously. [49]

42. In January 30 of 2017 Barber did complain to Portland Community College that it requested a grant from the US that discriminated on the basis of gender which is unlawful under Oregon and federal law, which would be provided to women in the same program which Barber is attending. [50]

43. On Febuary 21st of 2017 Barber asked Jared Weiner of the Portland Development Committee a question "how do you quantify the ROI of diversity", to which Weiner was unable answer clearly.[51]

44. Barber sought equal accommodation for the scholarships, education and employment opportunities from PCC, based on a grant which he is not eligible for as a result of the state. [52]

45. The State of Oregon under the color of law advocates for the unlawful discrimination on the basis of a protected class, and through its willful negligence to carry out its duties not to a specific

---

44 Intel hiring practices.pdf
45 Intel-Circuit-news.pdf
46 Richard Taylor Intel.pdf
47 Boli Complaint.pdf
48 Boli Complaint.pdf
49 Intel Employee Discrimiantion Investigation.pdf
50 NSF Award Search_ Award#1643624 - Mentoring in Manufacturing Technology.pdf
51 Jared Wiener on Twitter_ __How do you quantify ROI of diversity.pdf
52 NSF Award Search_ Award#1643624 - Mentoring in Manufacturing Technology.pdf

person, but to entire classes of persons who also complain regarding its policies advocating for discrimination, does under the color of law violate the plaintiff Barber's civil rights.

## (II)Claims

46. The State of Oregon creates a disparate treatment of men because it presumes that there is a form of disparate impact against women in technology, however its actions do not target any presumptive disparate impact caused by unlawful discrimination and is therefore inherently suspect.

47. The State of Oregon has a strict liability standard upon which it is supposed to protect the civil rights of persons based upon their sex and gender, and by advocating disparate treatment that is not narrowly tailored it violates the rights of all Oregonians who seek equal public accommodations.

48. While there may in fact be some incidents of discrimination against some individuals on the basis of a protected characteristic, Barber has himself been told that he was "too white" to work at a short term position that he had been working on behalf of Wacom, and it is not permissible to use discrimination in order to try to stop discrimination on the basis of a protected characteristic.[53]

49. The percentage of women in technology is a result of factors regarding natural choice, in addition to biological factors that play into a disparity in percentages of women and men at the IQ of 130, as well as higher quantitative reasoning scores on the SAT as a predictive measurement..[54]

50. The biological cause of this disparity is a result of Men possessing 1 X chromosome instead of 2 that creates a larger statistical distribution of intelligences, in addition to a sexually dimorphism that leads to a larger visual cortex which is also utilized in mathematical abilities which evolved in men.

51. The disparities not in education but even ability after education has been checked, for example India has the highest percentage of women in computer science,[55] even though its women engineers score higher than american women, only 25% of women and compared to 43% of men are able to write compilable code and 1% and 3% can write functionally correct code without references and tools. [56]

52. The Oregon Department of Education statistics show male students of equal test scores and social economic outcome are less likely to graduate, and are also less likely to attend university in the State of Oregon which are due in part to preferential treatment and funding that is provided to women.[57]

53. The State of Oregon under the color of law advocates for the unlawful discrimination on the basis of a protected class, and through its willful negligence to carry out its duties not to a specific

---

53  wacom white privilege.pdf
54  2016 SAT test results 50 years high school boys are better at math than girls.pdf
55  Which Countries Have the Most Skilled Female Developers_.pdf
56  National Programming Skills Report - Engineers 2017 - Report Brief.pdf
57  graduation-brief-2016.pdf

person, but to entire classes of persons who also complain regarding its policies advocating for discrimination, does under the color of law violate the plaintiff Barber's civil rights.[58]

54. The State of Oregon does so using funds it receives in federally assisted programs, including the Workforce Investment Act, and other grants which it then delegates to the the Worksystems Inc Worksource Investment Board and financial aide provided to its states educational institutions under specific grants requesting them to be used to discriminate on the basis of gender and race.[59]

55. The State of Oregon goes so far as to allow its Department of Education in addition to its Higher Education Coordination Committee, and Bureau of Labor and Industries to allow there to exist women only employment events and employment agencies operating under the color of the law.

56. By discriminating on the basis of a protected class, both Oregon and Intel violate their SIP contract, without which Intel would have to pay the full burden of its property taxes and provide social benefits, which would be sufficient to provide equal services for persons of every social demographic.[60]

57. The actions by Intel to discriminate in offering training and employment opportunities and minorities, is in order to shift the perception of its failures to provide the sort of tax revenue which would create the educated workers it says it lacks, which is the entire reason for which it claims it requires the H1B visa worker program, rather than hiring the US nationals subsidizing its tax breaks.[61]

58. The State of Oregon in arresting Barber infringed on his due process rights and equal protection rights under the 5th and the 14th amendment of the Constitution, the officer responsible for his arrest should have known that arrest was protected from arrest as he was no violating a valid time, place or manner restriction, and the only purpose for his removal was that he was seeking equal treatment.

## (III) Relief Sought

59. Barber seeks to have an injunction to prevent the State of Oregon from creating distinctions between suspect classifications in federally funded programs and in educational programs, and enter into a consent decree with the Attorney Generals Community Relations Service to follow a strict scrutiny guideline towards state programs targeting suspect classifications.

60. Barber seeks punitive and compensatory damages as a result of the State of Oregon infringing on his civil rights to be free from discrimination by his arrest, as well as the damage that it has caused

---

58  STEM-Education-Plan-Final_CEdO_Nov_2016.pdf
59 Worksystems Receives 6M Grant for Workforce Training _ Worksystems.pdf
60 Tax abatements in Hillsboro, Washington County take a toll on school districts.pdf
61 Intel Lays Off 12,000 After Seeking Visas to Import 14,523 Foreign Professionals.pdf

his employment opportunities as a result of his blacklisting from all of the companies listed in the Tech Town Diversity group which actively blacklist barber for attending as a result of his complaints.

61. In lieu of the programs which the state has enacted that target persons on the basis of their protected status, Barber proposes that the state seek a contract software that will allow it to automatically apply for job positions, which will allow it to create a statistical sampling which is able to detect when a company is using protected characteristics in its hiring processes.

### (IV) Legal Principles Applied

The State of Oregon with its statue creates a two tiered system of racial and gender classifications, which hold similar to the ones which were struck down by the United States Supreme Court in Adarand Constructors, Inc. v. Peña, 515 U.S. 200 (1995). The question before the court was primarily whether the presumption of disadvantage based on race alone, as well as the consequent allocation of favored treatment, was a discriminatory practice that violated the equal protection clause of the 14th amendment as well as the due process clause of the 5th amendment.

*"All racial classifications, imposed by whatever federal, state, or local governmental actor, must be analyzed by a reviewing court under strict scrutiny. Pp. 10-29; 34-37." Justice Scalia agreed that strict scrutiny must be applied to racial classifications imposed by all governmental actors, but concluded that government can never have a "compelling interest" in discriminating on the basis of race in order to "make up" for past racial discrimination in the opposite direction. Under the Constitution there can be no such thing as either a creditor or a debtor race. We are just one race in the eyes of government. Pp. 1-2.*

*Requiring strict scrutiny is the best way to ensure that courts will consistently give racial classifications a detailed examination, as to both ends and means. It is not true that strict scrutiny is strict in theory, but fatal in fact. Government is not disqualified from acting in response to the unhappy persistence of both the practice and the lingering effects of racial discrimination against minority groups in this country. When race based action is necessary to further a compelling interest, such action is within constitutional constraints if it satisfies the "narrow tailoring" test set out in this Court's previous cases.*

The State of Oregon also passed a strict scrutiny constitutional amendment called the "equal rights amendment" by voter initiative, it codified into the constitution an already existing Oregon Supreme court decision, that discrimination by the government on the basis of gender is inherently suspect when it is not based on a biological basis. It was enrolled in November 2014 and is codified into law as section 46 of the Oregon constitution as follows:

*Section 46. Prohibition on denial or abridgment of rights on account of sex. (1) Equality of rights under the law shall not be denied or abridged by the State of Oregon or by any political subdivision in this state on account of sex.*

The interpretation of the constitutional protections were elaborated upon by The Oregon Supreme Court ruling in Hewitt v. SAIF - 294 Or. 33, 653 P.2d 970, regarding state sponsored discrimination as it applied to benefits provided to a men and not women wrote:

*Gender is a visible characteristic determined by causes not within the control of the individual. It bears no relation to ability to contribute to or participate in society. The purposeful historical, legal, economic and political unequal treatment of women is well known. Accordingly, we hold that when classifications are made on the basis of gender, they are, like racial, alienage and nationality, classifications, inherently suspect. The suspicion may be overcome if the reason for the classification reflects specific biological differences between men and women. It is not overcome when other personal characteristics or social roles are assigned to men or women because of their gender and for no other reason. That is exactly the kind of stereotyping which renders the classification suspect in the first place.*

Therefore should the court declare that the state statue is an unconstitutional discrimination based on the 14th amendment, it would bring these statues which create two tiered systems into compliance with its own laws that prohibit discrimination, in addition to the federal laws which prohibit discrimination. The State may presume that its statue is a narrowly tailored solution to some sort of vague disparate impact, but the state does not target the source of the disparate impact, forms of disparate impact would include things like maternity leave or ESL support, but instead it advocates for disparate treatment under the law. Furthermore the U.S. Supreme Court had decided in Texas Department of Housing and Community Affairs v. The Inclusive Communities Project, Inc ., 576 U.S. (2015), that disparate impact policies must be limited so that they do not cause a violation of the equal protection clause of the 14th amendment.

*But disparate-impact liability has always been properly limited in key respects to avoid serious constitutional questions that might arise under the FHA, e.g., if such liability were imposed based solely on a showing of a statistical disparity. A disparate-impact claim relying on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity. A robust causality requirement is important in ensuring that defendants do not resort to the use of racial quotas. Courts must therefore examine with care whether a plaintiff has made out a prima facie showing of disparate impact, and prompt resolution of these cases is important. Policies, whether governmental or private, are not contrary to the disparate-impact requirement unless they are "artificial, arbitrary, and unnecessary barriers." Griggs,401 U. S., at 431. Courts should avoid interpreting disparate-impact liability to be so expansive as to inject racial considerations into every housing decision. These limitations are also necessary to protect defendants against abusive disparate-impact claims.*

### (V) Violation of Barber's rights under the 14th Amendment

The State of Oregon violated Barbers rights to be free from segregation and discrimination, by his arrest as the result of nothing more than seeking to attend an event paid for by federal funds, which discriminates on the basis of gender.  United States v. Raines, 362 U.S. 17, 25 (1960) is a prime example is the statutory requirement of racially segregated schools condemned in Brown v. Board of Education, 347 U.S. 483 (1954). And see Peterson v. City of Greenville, 373 U.S. 244 (1963), holding that trespass convictions of African Americans "sitting-in" at a lunch counter over the objection of the manager cannot stand because of a local ordinance commanding such separation, irrespective of the manager's probable attitude if no such ordinance existed.

The programs and activities were sponsored by Worksystems, which as a beneficiary of workforce investment act funds, is prohibited by 42 U.S.C. §2000(d) in addition to 40 U.S.C. §122 from discrimination against based on sex. Additionally Workforce Investment Act 29 CFR §37.5 prohibits persons from being excluded in participation from or discriminated against in connection with any WIA funded program or activity.  The state waives its sovereign immunity from suit under 42 U.S.C. §2000d-7 for remedies available against a state on the basis for its discrimination.[62]

The event which the defendant had attended is a place of public accommodation, because they fit the definition provided by ORS §659A.400(1)(a), because they both advertised to the public and provided advantages and amusements to those people. The position of the organizers is that they are a "distinctly private group", but they would not be distinctly private when they advertise to the public, and even then are subject to public accommodation law. Oregon Supreme Court decision in Lloyd Lions Club v. Int. Assoc. of Lions Clubs 724 P.2d 887 (1986), regarding sexual discrimination in a club that was claiming to be distinctly private, William L. Richardson decided for the majority.

*The Minnesota court's reasoning is persuasive, and we agree with plaintiffs, the state amici and the trial court that similar reasoning is decisive here. In the light of the trial judge's findings, we conclude that defendant is a business which sells memberships and substantial concomitant business advantages to the male public throughout the state. Defendant is not a "private" organization. It is open to virtually all, except women. Its revocation of the Lloyd club's charter was an action aimed at denying its business product and services to a segment of the population on the basis of sex.*

*Defendant makes several arguments for the proposition that the Act does not apply to it. Many of those arguments question the trial court's findings or attempt to distinguish this case*

---

62  2015 ORS 30.860 Action for trade discrimination.pdf

PAGE 12 - Memorandum in Support of Claim 4

*factually from United States Jaycees v. McClure, supra, and Rotary Club of Duarte v. Board of Directors, supra. Those arguments are based entirely or in the main on the premise that we have authority to review de novo. We do not.*

*Defendant contends that the Act's application to it would violate its and its members' right to free association, as well as their enjoyment of communication and related rights with associates of their choosing, under the Oregon Constitution (citing Or. Const., Art. I, §§ 3, 8, 26 and 33) and under the First Amendment.[4] Defendant's federal arguments are answered by Roberts v. United States Jaycees, 468 U.S. 609, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984). In that case, arising out of the same controversy which the Minnesota court addressed in United States Jaycees v. McClure, supra, the United States Supreme Court held that Minnesota had compelling state interests justifying the imposition of the restrictions on the Jaycees' association and communication rights. Defendant's efforts to distinguish this case from Roberts again turn on asserted factual distinctions which, in view of the trial court's findings, do not exist.*

*"On its face, the Minnesota Act does not aim at the suppression of speech, does not distinguish between prohibited and permitted activity on the basis of viewpoint, and does not license enforcement authorities to administer the statute on the basis of such constitutionally impermissible criteria. See also infra, at 629-631 [104 S.Ct. at ___]. Nor does the Jaycees contend that the Act has been applied in this case for the purpose of hampering the organization's ability to express its views. Instead, as the Minnesota Supreme Court explained [in United States Jaycees v. McClure, supra], the Act reflects the State's strong historical commitment to eliminating discrimination and assuring its citizens equal access to publicly available goods and services. See 305 N.W.2d, at [764] 766-768. That goal, which is unrelated to the suppression of expression, plainly serves compelling state interests of the highest order." 468 US at 623-24, 104 S.Ct.*

This view was again upheld in the case of *Lahmann v. Grand Aerie of Fraternal Order of Eagles, 180 Or. App. 420, 434, 43 P.3d 1130* That organizations regardless of whether or not they provide commercial services are considered places of public accommodation, and that they are beholden to not discriminate in the application of those social benefits.

*On cross-motions for summary judgment, the trial court denied defendants' motion and granted plaintiffs', ruling that the organization is a "place of public accommodation" because it emphasizes recruitment, offers its services to the public, and is unselective in recruiting except for its rule against admitting women to aeries. The Eagles appealed, arguing that the trial court's understanding of "place of public accommodation" was too expansive. Lahmann I, 180 Or App at 424. According to the Eagles, the act did not apply to fraternal organizations. As noted, we rejected that position and explained that "the question whether an organization is a place of public accommodation under the act turns on (1) whether it is a business or commercial enterprise, and (2) whether its membership policies are so unselective that the organization can fairly be said to offer its services to the public." Id. at 435. We explained that the term "business or commercial enterprise" includes organizations that market civic or*

PAGE 13 - Memorandum in Support of Claim 4

*social benefits. Id. We remanded the case so that a finder of fact could determine whether the organization is a "place of public accommodation" under that two-part definition. Id.*

*The Public Accommodations Act applies to the Eagles because, as the trial court found and the Eagles do not dispute, the organization provides amusement and civic services, and it offers them unselectively to the male public. Enforcing the act so as to require the Eagles to consider women for membership on the same terms that they consider men does not violate the organization's members' rights under the state constitution's guarantee of religious freedom, nor does it violate their right freely to assemble to consult for their common good; neither case law, text, context, nor history provides any reason to apply section 26 to groups engaged principally in activities outside of the political realm. Moreover, applying the act will not violate the members' right of expressive association because admitting women will not require the Eagles to send a message contrary to one of the organization's core values, and, even if it did, that interference with associational rights would be justified by the state's compelling interest in eliminating gender discrimination.*

Under the supreme court decision in *Pruneyard Shopping Center v. Robins, 447 U.S. 74 (1980)*, under the U.S. Constitution, states can provide their citizens with broader rights in their constitutions than under the federal Constitution, so long as those rights do not infringe on any federal constitutional rights. If this is the case then the State of Oregon is only supposed to take into consideration the differenced in biology and not social roles of people on the basis of race and gender, The 14th amendment would protect my rights to be free from discrimination on a strict scruinty basis, which would yield many of these equity benefits to be unconstitutional in Oregon.

### (VI) Unlawful Employment Discrimination in Federal Law.

One of the possibilities is that the state will argue that Barber was not in fact discriminated against on the basis of his gender, but it was that he disagreed with the very premise of the organization and its efforts to discriminate, or it was in fact that his mere presence was a disruption due to the perceptions of attendees. However this would be for the solitary reason that Barber is a men's rights activist, and had complained to state agencies in the past regarding discrimination by the state.

Under 42 U.S.C. 2000(e)-3 it is not only unlawful to discriminate based on a protected class, but it is also unlawful to discriminate against a person in retaliation for a person opposing a unlawful employment practice, or for a person who had made a complaint under of the discrimination laws. The same statue also makes it an unlawful employment practice for any employer, labor organization, employment agency, or labor management committee, to even publish that there is a preference given to a protected classification, which has been performed by the State of Oregon under the color of law.

42 U.S.C. 2000(e)-2 describes the sort of unlawful employment practices, Worksystems as a labor organization under its definitions, because it operates a hiring office that procures employees for

an employer, and as such is prohibited from discriminating or classifying persons. Moreover the organizations that also attended the "summer soirée" events could also be considered  labor organizations, because it does deal in part with employee grievances regarding what conditions of employment.

### (VII) Unlawful Housing Discrimination

Under 42 U.S. Code § 3604 prohibits " otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex" and includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

The Ninth Circuit court has held in *Community House Inc v. City of Boise 490 F. 3d 1041*. It held that homeless shelters were covered under the fair housing act because ""is occupied as, or designed or intended for occupancy as, a residence by one or more families," and thus qualifies as a "dwelling" under section 3602(b)." Furthermore the court held that having a men only homeless shelter was unlawful due to it being an explicit form of discrimination.

*"A facially discriminatory policy is one which on its face applies less favorably to a protected group.3 See Frank v. United Airlines, Inc., 216 F.3d 845, 854 (9th Cir. 2000); see also Bangerter, 46 F.3d at 1500 (holding that an ordinance that singled out the handicapped and applied different rules to them was facially discriminatory). The men-only policy at Community House is facially discriminatory because it explicitly treats women and families different from men. See Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Johnson Controls, Inc., 499 U.S. 187, 197, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991). City documents and policy endorse this discrimination."*

Dated: May 12, 2017                            /s/_____

Ben Barber

### Table of  Exhibits

1        01-011.pdf
39       0914agenda.pdf
40       2013-2015 Manufacturing Workforce Plan_0.pdf
44       2014-SIP-Agreement.pdf
67       2015-SIP-summary.pdf
68       2016 SAT test results 50 years high school boys are better at math than girls.pdf
71       2020DiversityInitiative3_jl.pdf
73       About — Greater Portland 2020.pdf
77       An Interview with Jared Wiener of the Portland Development Commission.pdf
85       Barber police report.pdf
100      Blackman, Sam_2016_1_5_GoGreen_Elemental_SamB_Draft 1.9.pdf
112      Boli Complaint.pdf
130      Business-and-Workforce-Equity-Policy.pdf

137    Calagator_ Portland's Tech Calendar.pdf
141    changing-the-ratio1.pdf
142    chicktech women only.pdf
143    City of Hillsboro, OR _ Hillsboro Enterprise Zone Program.pdf
145    codefellowspdx worksystems - Twitter Search.pdf
148    Code Fellows _ The Diversity Scholarship Fund.pdf
152    Code Oregon application.pdf
154    Code Oregon.pdf
156    Code Oregon Worksystems & Treehouse Will Train 10,000 Oregonians for Tech Jobs.pdf
158    Code-to-Work Training for High-Paying Tech Jobs _ Clinton Foundation.pdf
171    Core Partners Portland Metro Stem Partnership.pdf
172    CountyBoardPacketAugust262.pdf
209    Diversity Letter — TechTown, Portland.pdf
213    emerging-regional-stem-hub-backbone-grant---final.pdf
247    EnterpriseZoneFlyer.pdf
249    EnterpriseZoneWorkforceStr.pdf
253    Equity-Procedures.pdf
264    E-Zone First Source Hiring Agreement.pdf
267    E-Zone-Intake-Checklist-Timeframe.pdf
269    Follow Up By New Relic.pdf
270    girls-inc.pdf
276    graduation-brief-2016.pdf
282    grants.pdf
286    HB 2258.pdf
290    hillsborosdgrant.pdf
310    Inclusive Startup Fund – Prosper Portland.pdf
313    Intel-Circuit-news.pdf
351    Intel Employee Discrimiantion Investigation.pdf
354    Intel hiring practices.pdf
362    Intel Lays Off 12,000 After Seeking Visas to Import 14,523 Foreign Professionals.pdf
365    Intel wins Nike-style tax deal, just ahead of the deadline _ OregonLive.pdf
369    Intel Realsense, Sensory api.pdf
374    Jaguar Land Rover's new Portland lab seeks to make automotive tech driver-friendly
377    Jared Wiener on Twitter_ __How do you quantify ROI of diversity.pdf
378    National Programming Skills Report - Engineers 2017 - Report Brief.pdf
398    nba_ngaguide.pdf
419    New Portland jobs board pairs women with tech jobs - Portland Business Journal.pdf
421    NSF Award Search_ Award#1643624 - Mentoring in Manufacturing Technology.pdf
423    OAR first souce hiring agreement.pdf
429    Oregon Gives Intel a Nike-Like Tax Deal - Oregon Center for Public Policy.pdf
430    Oregon Local News - Data centers_ big tax breaks, little disclosure.pdf
432    **Oregon Live Homeless Women Services.pdf**
443    ORS 200 015.pdf
444    ORS 200 090.pdf
445    ORS 285C 215.pdf
446    PCC STEM Grant Girls.pdf
448    PDC 2015 2020 plan.pdf

PAGE 16 - Memorandum in Support of Claim 4

451    PDC doles out $100K for tech diversity projects - Astro Read.pdf
453    PDC-Disparity-Study-Executive-Summary.pdf
475    PEOPLE — Greater Portland 2020.pdf
477    portland city hall testimony.pdf
486    Portland enterprise zone Jaguar Landrover.pdf
491    Portland OKs $382,000 tax break for Jaguar Land Rover tech incubator.pdf
493    Portland tech leaders issue diversity pledge.pdf
495    President Obama includes Code Oregon in TechHire initiative _ Worksystems.pdf
497    Resolution 7194.PDF
501    Richard Taylor Intel.pdf
506    Sensory Inc API agreement.pdf
514    Startup PDX Challenge - Portland Development Commission.pdf
515    Startup PDX Challenge returns, offering $15,000 grants and a focus on women.pdf
517    Solar Powered Servers.pdf
518    STEM-Education-Plan-Final_CEdO_Nov_2016.pdf
558    STEM, STEAM and_or CTE Program and Activity Grant - Oregon Department of
Education.pdf
560    Tax abatements in Hillsboro, Washington County take a toll on school districts.pdf
564    Tech Community Open House_ PDC's 2015-2020 Strategic Plan.pdf
565    Tech Hire Grant.pdf
578    Tech + Inclusion_ A Community Conversation, Portland Tickets, Portland _ ImpactFlow.pdf
582    Tech Town Diversity panel.pdf
583    Thousands of Oregon coding newbies to get a guiding hand - Portland Business Journal.pdf
585    Treehouse Launches $1M Tech Ed Scholarship Program.pdf
587    Treehouse Partners with Girls Inc.pdf
589    Treehouse's Mission to Change Tech - 33voices.pdf
591    Twee Startup PDX challenge.pdf
595    Tyrone Poole startup PDX challenge.pdf
597    wacom white privilege.pdf
615    We Want to Train 10,000 Oregonians to Code.pdf
617    what-no-boys-or-girls-allowed.pdf
619    Which Countries Have the Most Skilled Female Developers_.pdf
626    WITCH Women in Tech Summer Soiree Tickets.pdf
631    Worksystems Receives $6M Grant for Workforce Training! _ Worksystems.pdf
        2015 ORS 30.860[1] Action for trade discrimination.pdf

**Table of Citations**
Lahmann v. Grand Aerie of Fraternal Order of Eagles, 180 Or. App. 420, 434, 43 P.3d 1130
Lloyd Lions Club v. Int. Assoc. of Lions Clubs 724 P.2d 887 (1986)
United States v. Raines, 362 U.S. 17, 25 (1960)
Brown v. Board of Education, 347 U.S. 483 (1954)
Peterson v. City of Greenville, 373 U.S. 244 (1963)
Texas Department of Housing v. The Inclusive Communities Project, Inc 576 U.S. (2015)
Hewitt v. SAIF - 294 Or. 33, 653 P.2d 970
Adarand Constructors, Inc. v. Peña, 515 U.S. 200 (1995).
Community House Inc v. City of Boise 490 F. 3d 1041
Pruneyard Shopping Center v. Robins, 447 U.S. 74 (1980)