In the U.S. District Court for the District of Oregon

Benjamin Barber

us

Vance, et al

Case no 16 CV-02105 · AC

Objections (oral arguments requested)

First it should be noted that while plaintiff was drafting the Complaint, Deputy Ingram had siezed court documents in his possesion    , causing him to hurry to meet the courts deadline. More over the washington county Jail does not offer a court access program that Complies with Bounds v Smith, this has much to do with the deficiencies. I also do not have a Copy of the Complaint to refer to as well.

## Objections

1  Page 4 n. 3 Acosta says "no original documents are provided" however he discusses the very same original documents on Page 18 " Plaintiff recently filed "Amended suppliments". These "original documents" are the trial records and correspondance between Barber and vance stored electronically.

2  Page 4 "All of the exhibits attached to the Amended Complaint relate to the criminal proceedings." This is incorrect, many of them relate to before the criminal proceedings, for example vance's extortion and drug abuse.

Rebuttal: Acosta provides no authority as to why the Court should not Consider "evidence in support of those allegations" when they are also allegations themselves. Vance's attorney cited Swartz v KPMG LLP 476 F3d 756, 763 in support of that and moreover Barber could have Just added them to the Complaint.

PAGE 1

3 | Page 5-6: Acosta omits any discussion of civil Rico 18 USC 1964(a) even though that is discussed by state Defendants motion to dismiss. Barbe Alleges two independant but also related (by vance) civil Rico claims, the first occured from october 2013 to roughly september 2015, the second from June 2016 to present.

4 | Page 7 "Barbe seeks money damages for deffamation and attempted fraud on accusations Barbe raped vance, general gossip, and vance's refusal to contribute to vances uhlity costs, and for severe inflichon of emohonal distress for extorhon, violahon of a restraing order"

Response: I do not actually have a copy of my own complaint so it's hard for me to say for certain. This was the part of the complaint I had rushed through because the legal paperwork I had was taken by Deputy Ingram right before the deadline.

These are mostly regarding civil Rico 18 USC §1964(a) claims vance interfered with my tenants and leaseholds and my employment, while she was under a restraining order. She used accuasations of rape, threats of arrest for "attempted fraud" beause I did in fact pay those uhlites costs, and demanded that I sign her divorce agreement or else I would be arrested. When I informed PSU that I had been doing vances homework, and informed police about vances extorhon, again I was threatened with arrest, which may have dissuaded vance and her friends torhous and unlawful conduct that vance and the friend admitted were intended to destroy my life.

PAGE 2

5 | Younger and Heck: Barber maintains that the exceptional circumstances to both Younger and Heck apply.

Younger exceptions that apply: Bad faith, harassment, patently and flagrantly violative statute, irreparable injury both great and immediate, doctrine of Complete Preemption, removal. and when I am released on 12/15/2018 another prosecution.

Heck exceptions that apply: full faith and credit not due to state by fraud in probable cause complaint, full faith and credit not due to lack of subject matter jurisdiction, trial court proceeding when a motion to remove was filed render judgment void ab initu or coram non Judice, and the release on 12/15/2018 may render habeas unavailable.

## Complete Preemption

"Generally federal preemption is a defense to a plaintiff's action, and as such, "it does not appear on the face of a well pleaded complaint" metropolitan life Ins Co v Taylor 481 US 58, 63, 95 L.Ed. 2d 55, 107 Sct 1512 (1987) Consequently it "does not authorize removal to federal court" Id In certain circumstances, however "the pre-emptive force of [federal law] is so 'extra ordinary' that it 'converts an ordinary state Common-law Complaint into one stating a federal claim for purposes of the well pleaded Complaint rule'" Catapillar Inc 482 US at 393 (quoting Metropolitan life Ins Co 481 US at 65) This so-called complete preemption occurs when "an area of state law has been [so] completely preempted, [that] any claim purportedly based on the pre-empted state law is considered ... a federal claim" Id when state-law claims are Completely preempted by federal law, the plaintiffs complaint arises under federal law and removal is proper see metropolitan life Ins Co at 67" Rociszewski v Arele Assocs inc 1f3d 225, 231    PAGE 3

"The grant of exclusive jurisdiction to the federal district courts over civil actions arising under the copyright act, combined with the preemptive force of §301(a), compels the conclusion that Congress intended that state law actions preempted by §301(a) of the copyright act arise under federal law. Accordingly, we hold that the preemptive force of §301(a) of the copyright act transforms a state law complaint asserting claims preempted by §301(a) into a complaint stating a federal claim for purposes of the well-pleaded complaint rule. Since claims preempted by §301(a) arise under federal law, removal of actions raising these claims to federal district court are proper" Rociszewski 1 F3d 225 at 233

Rociszewski preempted Virginia's computer crime act, In Globe Ranger Corp v Software AG 691 F3d 702 the court held that the second, fourth, fifth, sixth (11th) circuits all apply complete preemption to 17 USC §301. The Ninth Circuit I believe (but don't know because I lack law library access) has held the same In Malooney v T3 media Inc 853 F3d 1004 "where a likeness has been captured in a copyrighted artistic visual work, and the work itself is being distributed for personal use, a publicity right claim is little more than a thinly disguised copyright claim, because it seeks to hold a copyright holder liable for exercising his exclusive rights under the copyright act. The panel concluded that the plaintiffs publicity right claims and the derivative unfair competition law claim challenged control of the artistic work itself and accordingly the subject matter of the state law claims fell exclusively within the subject matter of copyright" see also Monroe v Maya Magazines 688 F3d 1164, 1177 9th cir 2012 Garcia v Google 743 F3d 1258 9th cir

PAGE4

"no matter whether the defendant is a state or a private entity, effective remedies for such violations must be provided if the Constitutionally mandated incentive to create is to be protected Abrogation of state Sovereign immunity is therefore fully warranted."

"The second component, set forth in new section 511(a), and in new subsection (g)(1) of section 911 of title 17 is based on the Rehabilitation Act Amendments of 1986, which supreme court opinions have twice cited as an example of Congress's ability to abrogate the Eleventh Amendment when it wanted to." Id at n citing Delmuth v Muth 491 US 223, 226 n.1

The Rehabilitation Act Amendments were enacted pursuant to §5 of the fourteenth amendment, and since there exists no state post deprivation or jurisdiction over copyright law, the states should have their sovereign immunity waived. At the current time every state court habeas corpus and the post conviction relief has been exhausted and denied and no written opinion about ORS 163.472 exists.

28 USC § 1338(a) provides that "The district Courts have original jurisdiction of any civil action arising under any act of Congress relating ... to Copyrights ... no state Court shall have jurisdiction over any claim for relief arising under any act of Congress relating to ... Copyrights"

This means that any post conviction relief, or habeas Corpus raising a Copyright claim under 17USC §201(e) or 301(a) is not allowed to be adjudicated by the states at all.

PAGE 5

Further support for this is found in the Copyright removal statute 28 USC §1454, a statute allowing removal of civil cases to the US District Court, for claims that arise under Copyright. Benjamin Barber, Jay David Leatherwood, Jaycob Patrick Holten have already filed for removal of their post conviction relief to the Federal Court pursuant to 28 USC §1454 for example.

The 9th circuit interprets 28 USC §1338(a) using the T.B. Harms test T.B. Harms Co v Elisco 339 F2d 823, 828, see eg Scholastic Entm't Inc v Fox Entm't Group Inc 336 F3d 982, 986 (9th cir 2003); Topolos v. Caldewey 698 F2d 991, 993 (9th cir 1983)

"In summary, the T.B. Harms test requires the district Court to exercise jurisdiction if (1) the complaint asks for a remedy expressly granted by the Copyright act (2) the Complaint requires an interpretation of the Copyright act; or (3) federal principals should Control the claims" Scholastic Entm't Inc 336 F3d at 986 "The test outlined in T.B. Harms is essentially a reiteration of the 'well pleaded complaint' rule that federal jurisdiction exists only when a federal question is presented on the face of a properly pleaded complaint" Id.; see Nimmer on Copyright § 12.01 [A][1][d][1]. However the well pleaded complaint rule has a necessary corollary -- the artful pleading doctrine "under the artful pleading rule 'a plaintiff may not defeat removal by ommitting to plead necessary federal questions in a Complaint" ARC v Envtl Remediation LLC v Dept of Health & Envtl Quality of the state of Mont 213 F3d 1108, 1114 (9th cir 2010) (quoting Franchise Tax Bd of Cal v. Constr. Laborers Vacation trust for S. Cal 463 US 1, 22, [...] see also Nimmer § 1201[A][1][d][1]" Just Med v Byce 600 F3d 1118, 1124

Thus under the T.B. Harms test, the remedy under 17 USC 201(e), 301 authorized by either 17 USC § 502, Post Conviction Relief ORS 138.510-ORS 138.680, state habeas Corpus ORS Chapter 34, 28 USC § 2254 are Cognizable under all three prongs of the test and thus 28 USC § 1338 (a)

Congress was explicit, when it passed the copyright act, Congress "Intended [17 USC 301] to be stated in the Clearest and most unequivocal language possible, so as to foreclose any concievable misinterpretation of its unqualified intention that Congress shall act preemptively ... and to avoid the development of any vague borderline between state and federal protection" it passed 17 USC § 201(e) with "the purpose of this Subsection is to reaffirm the basic principal that the United States Copyright shall be secured to that author, and cannot be taken away by involuntary transfer. It is the intent of the Subsection that the author be entitled, despite any purported expropriation or involuntary transfer, to continue exercising all rights under the United States statute, and that the government body may not enforce or exercise any rights under this title in that situation." HR Rep no 1476 94th Cong 2d Sess 130 (1976)

To Clarify a state law claim that Barber "with intent to harrass, humiliate or injure meagan vance, disseminated an intimate image" under ORS 163.472 becomes under the doctrine of Complete preemption, a claim that Barber violated 17 USC § 106

"we have found a state law preempted when the extra element Changes the scope, but not the fundamental nature of the right" Grosso v Miramax film Corp 383 F3d 965, 968

what the statute criminalizes is criminalizing the dissemination of "Intimate Images" without "consent" where it results with the person being "harrassed, humiliated, or injured." The issue is that under 17 USC §106 the only person who has the power to consent is the author themself.

The right in ORS 163.472 is equivalent to 17 USC §106 because "In fact this court has held that a copyright owner has the capacity arbitrarily to refuse to license one who seeks to exploit the work see Fox Film Corp v Doyle 286 US 123, 127" Stewart v Abend 495 US 207, 228-229.

More recently in the motion to seal documents, the attorney for Vance said that the images were "private", despite of course a contract agreeing to transparency, a subsequent promise of "complete transparency", Vance testifying at trial court that she told her friends about the videos being "hidden on his website, and they subsequently coercing Barber with them, Vance testifying that she was aware these videos were sent 72 hours after they were made, to people we were consentualy seeking group sex with, and we had originally made porn because "we could make a lot of money. Vance testified that she consented to the recording, and she knew she was being recorded.

What I presume she refers to is Restatement of torts (second) § 652C or § 652D which have been both held preempted by Copyright. "we pointedly note that we address the unpublished status of the photos only under Copyright principals not privacy law" Monroe v Maya Magazines 688 F3d 1164, 1177 9th cir 2012.

PAGE 8

In other words the state must "allege a basis for the claim, an element other than unauthorized use of the copyrighted work" Nw. Home Designing Inc v Sound Built Homes 776 F supp 2d 1210, 1216. "The state claim must protect rights which are qualitatively different from the copyright rights" Del madera properties v Rhodes and Gardener Inc 820 F2d 973, 976

"Thus, a right is equivalent to one of the rights comprised by a Copyright if it is infringed by the mere act of reproduction, performance, distribution, or display" Balthmore Orioles Inc v Major league Baseball Players Association 805 F2d 663, 676-677

"A state law right is equivalent to a right protected by copyright law if either (1) no additional element beyond exercise of one of the rights protected by the copyright act is required to violate the state law, (the extra element test), or (2) the state law is violated simply by the exercise of a right protected by the copyright act" Grosso v mira max film corp Computer Associates Intern. v Altai Inc 982 F2d 693.

The states case relied solely on uploading the videos to websites, Barber did not send the videos to anyone else, and it is not even clear how vance located the videos. In her testimony she claims she looked for them after a may 30th email from Barber, yet the DMCA claim is on march 29th of 2016 by vance, whereas Barber claims she stalks Barber. The uploading of the videos correspond with shutting down a server they were on that Barber couldit afford, and dropping and breaking an external 2TB hard drive.

PAGE 9

## full faith & credit

Barber wants to distinguish Younger and Heck on the basis that the entire case is void Ab Initiv (void ab initio), and since the court never had subject matter jurisdiction and never had personal jurisdiction, it is as if the plaintiff had never been held by legal process itself.

As mentioned previously, under the doctrine of Complete preemption, the claim that Barber violated ORS 163.472 is a federal claim that Barber violated 17 USC §106, and that is not a claim which the state could press absent of any subject matter jurisdiction in state court.

Also noted in the Complaint is that the Deputy Duenis stated that the crime occured on April 1st 2016 at vance's apartment, despite him driving to SW 4th Ave portland OR (multnomah county) to speak to me, despite Vance's statement to the court that I had not known her address, and despite the facts that it occured in Yamhill County.

A "Court of Competant jurisdiction" is one that has jurisdiction over the relevant parties and the subject matter. Dowell v Applegate 152 US 327, 343. Barber filed a notice of removal to federal court to the Circuit court, which stated this court case number and grounds for removal under 17 USC §201(e) 301(a) (claim 1 exhibits pg 997) Deputy DA Atwood testified "He handed me a motion that was apparently filed here in the circuit court requesting a number of things. Let's see here. It's a motion of removal to federal court."

PAGE 10

"When application is made in proper form to state to remove pending cause to federal court and sufficient ground for such removal is shown, It is duty of state court to proceed no further in cause and any step subsequently taken in state court is Coram Non Judice"
Virginia V Rives 100 US 313


Barber simultaneously filed the TRO seeking stay of state Court proceedings, where he explicitly says "moreover it infringes on the plaintiffs copyrights as the author of the audio visual work" and mentions 17USC § 201(e), 361 copies of Both the TRO and Removal were provided to both Courts and all parties. (claim 2 exhibits page 887-1000)


A judgement by a court that lacks jurisdiction is not on the merits (Rule 41(b) Fed. R. Civ. Proc., and thus is not binding under full faith and credit, whether due to subject matter jurisdiction, or Duenus committed fraud by stating the crime took place at vance's apartment under oath in the probable cause hearing.


"The venue requirements of Article III of the Constitution and the 6th Amendment state the public policy fixes the situs of a trial in the vincinage of the crime rather than where the accused is a resident; and a variation of the rule for the Conveniance of the prosecution or the accused is not justified" Johnson v United States 351 US 215

The idea that a crime is committed, where and when Vance logs on to her computer, and visits pornhub is not not supported by the statute or precedent, otherwise each visit would count as a seperate charge. Rather the person "causes to be disclosed", when and where the images are uploaded to the internet website, and the service provider "causes to be disclosed" upon viewing the page.

Oregon's full faith and credit statute ORS43.220 cites "any judicial record may be impeached and the presumption arising therefrom overcome by evidence of want of jurisdiction, collusion between parties, or fraud in the party offering the record"

Under Amendment 6 the location of the crime must be ascertained before a defendant can be charged, what Deputy Duenis did was commit fraud by knowingly entering a false probable cause affadavit.

"Federal Court does not have to give full faith and credit to state court judgement if state court did not have jurisdiction over subject of litigation or the parties before it." In re Brady Municipal Gas Corp 936 F2d 212

State Court judgement cannot act to bar, on Res Judicata grounds, claims over which Federal Courts have jurisdiction" Pension Trust Fund for Operating Engineers v Triple A Machine shop 942 F2d 1457

If we look to the language of 17 USC §201(e) it too shows that the Court can't give the state court judgment full faith and credit, by using the words "no action ... shall be given effect"

"when an individual author's ownership of a copyright, or any of the exclusive rights under a copyright, has not previously been transferred voluntarily by that individual author, no action by any government body or other official or organization purporting to sieze, expropriate, transfer, or exercise rights of ownership with respect to copyright, or any of the exclusive rights under a copyright, shall be given effect under this title, except as provided under title 11"

Since the state complaint under complete preemption is converted to a federal complaint, and that complaint undoubtedly expropriated Barber's rights under 17 USC §106 and siezed the work itself for destruction, it is not to be given effect for purposes of a 17 USC §502 injunction.

"Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringment of a copyright."

where such infringment is of 17 USC §106, 201(e), 301(a) the Court is operating "In aid of its Jurisdiction" for the purposes of 28 USC §2283.

PAGE 13

# Younger v Harris

Younger was decided regarding "The basic doctrine of equity jurisprudence that Courts of equity should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law, and will not suffer irreperable injury if denied relief.

Younger was solely related to 42 USC§1983 as applied to 28 USC§2283(1), it has no bearing regarding 28 USC§2283(1),(2). Moreover it's reference to Comity does not apply where Congress had explicitly restricted it's jurisdiction.

"It has long been recognized at common law that judicial immunity protects only those acts committed within the proper scope of a judges jurisdiction, but provides no protection for acts committed in excess of jurisdiction, Because writs of mandamus were intended only to control the proper exercise of jurisdiction" Pullman v Allen 466 US 522, 549

"It is not enough to have jurisdiction over the complaintant generally; It must have jurisdiction over the particular case, and if it have not, the judgement is void Ab Initiu" Bradley v Fischer 13 wall 335, 1871 US Lexis 1345 at 16.

"Prohibition in judiciary act against courts of the united States enjoining proceedings in state courts has no application where case has been removed from state court" French v Hay 89 US 250

The goals of younger abstention are opposed to the treaty obligations in NAFTA Article 1714 "Each party shall ensure that its procedures for the enforcement of intellectual property rights are fair and equitable, are not unneccessarily complicated or costly, and do not entail unwarranted delays." .... "To have reviewed at least the initial judicial decisions on the merits" "such enforcement procedures shall be applied so as to avoid the creation of barriers to legitimate trade and to provide safeguards against abuse of the procedures."

When Congress adopted 17 USC §511(a) it intended "all remedies applicable to private defendants were also made available in suits against states". HR Rep no 101-282 "Effective remedies for such violations must be provided if the Constitutionally mandated incentive to create is to be protected. Abrogation of State Sovereignty is therefore fully warranted." Id at 11 "

This is completely at odds with Younger's " underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration of "comity", that is, a proper respect for state functions, a recognition the fact the entire country is made up of a union of seperate state governments, and a belief that the national government will fare best if the states and their institutions are left to perform their seperate functions in their seperate ways" Younger v Harris 401 US 37 at 44

This, too was considered by Congress, and rejected. "Allen Wagner, while acknowledging that the federal copyright laws apply to states

, advocating giving state Courts jurisdiction over Copyright cases. Concurrant jurisdiction creates the potental for differing standards and results, depending on whether the forum is state or federal. Given that an essential premise of the act is to create a uniform federal System for the creation and enforcement of Copyrights, the Committee rejects this suggestion. HR Rep no 101-282 at 9.

Just because the state artfully avoids the term Copyright, does not mean that the state statute criminalizing "unlawful sound recordings" is any less a Copyright law than "unlawful dissemination of inmate images". See State v Oidor 292 P3d 692 (2012) (holding prosecution under ot25 164.865 is preempted by 17 USC § 301) see also, People v Williams 920 NE 2d 446, State v Perry 697 NE 2d 624 (unlawful use of property preempted)

"whereby express terms of act of Congress, state Court was absolutely without jurisdiction to proceed, federal Court having exclusive jurisdiction was not precluded from restraining proceedings pending in state Court"
In Re Long Island N.S. Pass & Freight Transp Co. 5 F 599

"where suit was removable to federal Court, proceeding in state Court would be restrained" Pacific Tel & Tel Co v Agnew 5 F2d 221

"28 USC § 2283 which provides that state Court proceedings may be enjoined by federal Courts when such action is necessary in aid of it's jurisdiction allows, in fact requires federal Court

to enjoin any state Court action which impinges on
jurisdiction of federal Court"
Federal Savings & Loan Ins Corp v PSL Realty Co 482 Fsupp 74


Courts have Construed "necessary in aid of It's jurisdiction"
exception under All writs act 28 USC §1651 and anti injunction
act 28 USC §2283 quite narrowly, finding threat to Courts
jurisdiction only where state Court proceeding threatens
to dispose of property that forms basis of federal In Rem
jurisdiction" Corley v Entergy Tech Holding Co 297 Fsupp 2d 915


In rem jurisdiction refers to "A courts power to adjudicate the
rights to given piece of property, including the power to sieze
and hold it.


Acosta Confirmed in response to my motion to transmit part
of the record that this was precisely what happened. The
defendants asked Judge Roberts to destroy my online accounts
and physical devices, because I was using the information
to "harass" them in district Court. This was done after
Barber informed the trial court of a lack of jurisdiction,
a waiver of all immunity by 17 USC §511, and this lawsuit
the trial Court proceeded any ways saying she saw no
evidence that the images were copyrighted, despite
the fact that Barber and vance testified at trial about
Copyright, and providing the trial Court notice in 3
different instances that the Court was infringing on my
Copyright, and all parties admitting that I am the author.

"In action challenging Constitutionality of New Jersey anti-obscenity statute and procedures followed by authorities in siezing films or publications thought to be obscene, younger abstention was not required in view of class action nature of proceedings, and pullman abstention was not applicable where there existed no reasonable likelyhood that the state court would construe statute as to avoid Constitutional issue"
Hama Theatres Inc v Cryan 365 Fsupp 1312

"Complaint which alleges series of arrests and warrantless siezures in enforcement of statute making criminal possesion with intent to sell and sale of obscene material, use in most cases of multiple complaints and large monetery fines, was sufficient under rule that when three judge court is requested in younger type cases single judge may only inquire whether complaint at least formally alleges basis for relief under younger"
Literature Inc v Quinn 482 F2d 372.

Unlike these two cases, the defendants do not hold that the images are obscene, they argue that the author of images may not disseminate intimate images without the consent of the person in them, conceding however that consent once existed and that ms vance also disseminated the images who used them for coercion. In the instance of Jaycob Patrick Holten, his victim Brooklyn had setup the pornhub account herself and recieved the renumeration, and she exparte informed judge Hunnsaker that she had done so, but judge Hunnsaker denied relief to mr Leatherwood, clear evidence of bad faith.

In NAFTA Article 1716 (4) "Each party shall provide that it's judicial authorities shall have the authority to order provisional measures on an Ex Parte basis, in particular where any delay is likely to cause irreperable harm to the right holder, or where there is a demonstratable risk of evidence being destroyed.

In NAFTA Article 1716 (1) "Each party shall provide that it's judicial authorities shall have the authority to order prompt and effective provisional measures : (a) to prevent an infringment of any intellectual property (b) to preserve relevant evidence in regard to the alleged infringement.

In NAFTA Article 1715 (6) "In respect to the administration of any law pertaining to the protection and enforcement of intellectual property rights, each party shall only exempt both public authorities and officials from liability to appropriate remedial measures where actions are taken or intended in good faith in course of the administration of such laws.

Bad faith means "Intentional deception, dishonesty, or failure to meet obligation or duty". It is an action of bad faith when notified of a suit in another jurisdiction, to try to destroy the evidence, because the County employees are defendants. It is also bad faith that when informed that the County Court lacked subject matter jurisdiction, to proceed on the basis that the images arent copyrighted, when the contention of both Barber and vance in those proceedings that they are. Thus it does not appear that there is any immunity by the trial Court from an injunction, ordering release of Barber.

As mentioned previously Benjamin Barber, Jaycob Patrick Holten, and Jay David Leatherwood have removed their Post-Conviction Relief claims to federal Court pursuant to 28 USC §1454. Moreover Andrew Guy Moret and Chad Dykehouse who have not been charged with ORS 163.472, but have been given Copyright licences by Barber to the work "Albino Porn" Registration # VAu-01282435, Case 1-4108648471 opened 10/25/16 with the US Copyright office want to Challenge the Oregon law, as well as every "revenge porn" law in the US.

given that all is required to violate ORS 163.472 is to simply post/share/retweet an "intimate image", without having first gotten the affirmative consent of the depicted person, where a "reasonable person" would be "harassed, humiliated or injured", it seems that Barber, et al have third party standing to assert everyones right to both produce and also to consume the speech in question. Indeed thousands of people viewed the "albino Porn", which is considered a "great mass" of people, relatively too large to joinder as parties to be sure. In Brown v Entertainment Merchants Association 131 sct 2729 the court said there can be no distinction between the Consumption, or production or publishing of speech.

"In order to invoke three judge federal court to test validity of state statute to enjoin state prosecutions thereunder there must be need to vindicate some transcendent right affecting masses of populous in exercise of their first amendment rights" Porter v Kimzey 309 FSupp 993

"As a Corollary, the Court has altered it's traditional rules of standing to permit -- in the First Amendment area- "attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own Conduct Could not be regulated by a statute drawn with the requisite narrow specificity" Dombrowski v Pfister 380 US at 486 litigants therefore are permitted to challenge a statute not because they own rights of free expression are violated, but because of a judicial prediction or assumption that the statutes very existance may cause others not before the Court to refrain from Constitutionally protected speech or expression" Broadrick v Oklahoma 413 US 601, 612

Though Acosta doesn't think I can challenge ORS 163.472, he himself said that others Could, so Case no 18 cv 00855 AC was filed with Jay David Leatherwood, Andrew Guy Moret, and Chad Dykehouse, where a timely IFP was filed on June 19th 2018, but acosta has not processed it yet. It seems doubtful that he can prevent me from challenging all of those other state statutes on account of ORS 163.472, Moreover the request by the Deputy Attorney General to prevent any other collateral attacks on ORS 163.472 was after that law suit was filed, and his office had notified me of receipt of the Complaint. I see no reason why more innocent people should have to go to jail, why Juycob Patrick Holten, or Jay David Leatherwood had to go to jail, over a flagrantly unconstitutional law. Rosenblums own civil rights director Erious Johnson told this Court precisely that Ellen Rosenblum is intentionally engaging in a program to infringe on speech rights.

PAGE 2b

Younger says that "The accused should first set up and rely on his
defense in state courts, even though this involves a challenge to the
validity of some statute, unless it plainly appears that this would
not afford adequate protection" Younger v Harris 401 US 37, 45

Barber and Leatherwood have both fully exhausted Post Conviction
and Habeas Corpus Relief in the state. Moreover Holten tried
a motion to arrest judgement and motion to set aside judgement,
and informed me his gf luichm Brooklyn even appeared ex parte
to recant the allegations. In Washington County Court,
the Court refused to act on motions, refused to allow refiling PCR
with Barber as a co-plaintiff, and orders such egregious motions
as supoena'ing Aaron Gabriel Zdlecs defense attorney to testify
against him. pressing charges 10 years past the statute of
limitations with Michael Forker, defying the state appellate
Court with Antonio Ruiz, or putting writwriter martin johnson
in Administrative Segregation for writing a habeas Corpus for an
inmate. The County is so infamous, articles in Slate magazine
dedicated to it's "red justice inabluestate" were published.

Being the state supreme Court does not want to weigh in
and the relcatrant trial court, which has yet to reverse
the post Conviction relief on remand. Barber filed a new
post Conviction relief with Jaycob Patrick Holten and
Jay David Leatherwood, and filed a motion to remove
pursuant to 28 USC § 1454. It has indeed been 2 years, and
the state courts have had numerous chances to do something, and
they have refused to do so, perhaps as Attorney Jason weber
informs me state habeas Corpus cant challenge statutes.

PAGE 22

His opinion seems to be, that I have to rely on post conviction relief statutes instead of state habeas. However there is also the matter that I am due to be released on 12/15/2018, and if I do file for federal Habeas Corpus it may be denied as moot, because the court can't grant me release from custody when I'm not in fact in state custody, in which case I may be barred by Heck with the exception of Dicta in the case Muhamed v Close 540 us 749 or Heck v Humpfrey suggesting that states should not be able to evade federal review, due to this sort of behavior.

Moreover when I am released I am simply planning to re upload them to the internet, perhaps to be polite to vance, I'll upload them "hidden" on a server that I own/rent, and inform washington county that I've indeed uploaded them while crossing the I-5 bridge to vancouver, or perhaps I'll merely upload the parody video game "revenge porn simulator". Moreover I believe I could even script a bot that would upload a copy every day to a different website, or give a non exclusive license to a european porn studio.

This of course is merely because I intend on breaking ORS 163.472, in such a way as to demonstrate how constitutionally infirm it is, and also because the threats of multiple convictions, absent either personal or subject matter jurisdiction is real, younger abstention isn't required. Vance of course may refuse to complain, but she has shown that she cannot help herself, even when aware that she may be liable for copyright infringment in this suit, she still filed more DMCA complaints in January of 2017.

PAGE 23

The record here unlike in Younger also has elements of bad faith, which the states defendants claim do not matter because Brady violations can be brought up in state court. Barber could have brought them up at PCR, except the state court refused to allow the counsel recuse himself for a conflict of interest, and then when he did not respond to the motion to dismiss, dismissed the case. Then when the Appellate court ruled this was wrong, and the dismissal is without prejudice, because barber was not present or represented by conflict free council, refused to vacate the judgement.

The language of younger states "The injury that harris faces is solely "that incidental to every criminal proceeding brought lawfully and in good faith", but when a court proceeds wholly without personal or subject matter jurisdiction, the proceeding cannot be said to be brought lawfully. Deputy Duenis purjered the probable cause affadavit to claim I committed ORS 163.472 on April 1st at vance's apartment, despite travelling to downtown portland to find me, and despite the websites themselves saying portland or newberg oregon, and vance testifying that I did not know where she lived at the release hearing.

Then at demurrer marie Atwood claims that the anthony weiner analysis, fails because he is a public figure, and they are constantly under scrutiny. She also says that the scenario where "joe blow" sends nude photos to "every girl on tindr" doesn't count, because a reasonable person wouldn't think he didn't consent to that. Yet it just so happened that 3 days

PAGE 24

after we had made the videos, we were sharing them with a random couple we met on Craigslist for foursomes, all of which was her idea by the way because she "cant do the routine sex thing for a while. It's just boring - the feeling of excitement has to be there." She testified she knew intimate images were being shared, I had shared theirs with her, and she consented to the practice. Vance had also done the same exact thing a month earlier with "hot curiosity" from okcupid, so she had been an active participant.

Moreover Atwood submits a probation revocation motion to the Court with a print out of the Oregonian newspaper website, where people notice me as a public figure. Because I had ran for house district 36 and organized the Americans Elect political party of Oregon.... exactly when this porn sharing was taking place with me and vance, and these people.

Then it also just so happens that Barber and vance agreed to "each party agrees to have transparency and provide access to their social interactions, including the ability to speak to members of one's social Groups" which Atwood informed the Oregon State Bar she had recieved from Barber. This would be later construed by both parties as "complete transparency", and not "merely in the context of a marraige as her attorney contends, because as vance told the trial Court I had a tendency of showing others embarrasing facts. This is after all because vance admits, and atwood and the court saw vance say to Nicholas Gunzberg "I am the physical abuser, I emotionally abuse, too. I was the first to cheat. It's not just him. I play the victim alot in my life, I cower when it's not needed."

PAGE 25

of course this would be too exculpatory for the jury to see, but then the jury was not allowed to see the proper jury instructions either, ones that exclude images originally made for a commercial purpose for example when vance testifies "one day when I was visiting, we had talked about "oh wouldn't that be interesting to make porn together? we could make a lot of money". And of course the jury couldn't be allowed to see the commercial porn solicitations, because that would also be too exculpatory as well.

Then vance testifies that she had also disseminated those videos, and she omits that it was on the website google hangouts she did this, by giving them access to the server that the videos have been on since January of 2011.

"so there were some friends that I had had that I told, you know, that these videos were hidden on his website. I had recently seen that he had made the website meagan vance.net and, you know, I'd -- opened up to them about it.

And apparently someone, you know, talked to him about it and he construed that as people were going to dox him and what it was that these people had told him -- these friends had told him that if he -- that if he continued with this website and posted things about me, that he did have a lot of stuff on his website that they had as well. I wasn't okay with that, but I think that's enough detail with the situation" (testimony By vance)

So it's a bit hard to reconcile vance testifying "It was very much agreed that this was between us", a "complete transparency" agreement, and vance testifying she knew we were exchanging porn with strangers online, and finally that she told friends "that those videos were hidden on his website" and I was told "that he did have a lot of stuff on his website that they had as well", which is why Judge Roberts said "you're saying because she was guilty that you can do whatever you want"; "you're playing a victim".

This is of course exactly what vance admits to, playing the victim. She testified "my lawyer was discussing with me you know maybe you want to do this once it becomes a law"; "I was just going to leave it there and, you know, wait until it becomes a law". Then when it becomes a law she gives the videos to people in europe on google hangout "digging into his personal life", who "then decided to share them with a bunch of people" one of whom "you expected me to post it so you could shift the blame" and "made me an accessory to your crime".

Again I want to emphasize that all this Evidence is in these "Amended Suppliments" that I sent to the Court in many large 5" binders and on ECF 69, 70, 74, 75, and summarized in the Amended Complaint exhibits. Vance posted these videos, someone tried to frame me for the crime but failed, She then filed DmcA takedowns (8chinet/cow/res/7630.html)" my lawyer, when I was going through the divorce, said this might happen 'cause

he had them hidden on his website before that. And if they did, I could always try to file a DMCA copyright claim and claim that this is part of my copyright and try to delete them that way". This seems to me to be an excellent example of "bad faith" by vance and the state.

There are in addition other Brady violations, like Detective Rookhuyzen not turning over an email from Pornhub that had IP addresses that would show Barber was not in washington county, and lieing about it. Deputy Duenis saying he did not read my emails to him telling him vance's story is not credible with evidence, but then actually reading the emails about our upcoming meeting. Deputy Duenis waiting 17 days to write a report, and then mischaracterizing my attacks on her credibility as "he basically said he did it because she accused him of rape"; where I told him she gave the porn to others who posted it online, and we organized the world naked bike ride, and told him about our transparency agreement. Deputy Duenis testifying he couldn't record the phone calls because he would need "special equipment", when he uses an android smartphone, and they have been able to record phone calls for 10 years because they're "smart". (more specifically, they're actually handheld computers) Atwood told the court I sent the images to her work, and "Its not that... he stopped these actions", when I sent vance "receipts" that I took them down. The Coup De Grace, is also continuing absent jurisdiction, and trying to have evidence in a lawsuit against you destroyed, that is bad faith.

PAGE 28

Younger Said "Where a Statute does not directly abridge free
speech, but -- while regulating a subject within the states power
-- tends to have the incidental effect of inhibiting first
amendment rights, it is well settled that the statute can be
upheld if the effect on speech is minor in relation to the
need for 'control of the conduct and the lack of
alternative means for doing so.'" Whereas here the
Statute is a pure speech regulation, in a subject
which is not within a states power to control. Being
that the state is completely preempted by the
copyright act to give control of a work to a non author

Younger Said "It is of course conceivable that a statute might
be flagrantly and patently violative of express constitutional
prohibitions in every clause, sentence, and paragraph, and
in whatever manner and against whomever an effort might
be made to apply it" Younger v Harris Vol us 37, 53-54.

ORS 163.472 is one of these Statutes. The statute is targeted
at content and viewpoint directly, and that is usually
enough unless the speech is a historically unexempted
category. Moreover the form of the restriction is prior
restraint as well. Moreover the law is preempted by Trick
§301 a and if the person is the author by Trick §301(e),
And if the person is not the author by 41 USC 530,
There is no person that this statute can prosecute,
which exist for a myriad of constitutional issues I
also set out in the memorandum in support of three judge
court. TAKE JUDICIAL NOTICE of THE MEMORANDUM.

# Heck v Humpfrey

Reviewing Heck v Humpfrey, heck only involved damages, and not damages in addition to injunctive relief. Nothing in Heck precludes this court granting habeas pursuant to 28 USC §1651, or granting post conviction ORS 138.510 - 138.680 on removal from state court pursuant to 28 USC §1454, 1338(a) under pendenant jurisdiction. This Court should provide such relief because of the requirement in 28 USC §2254 requires two copies, and the institution holding Barber has refused to photocopy the 28 USC §2254 stating it should be hand copied, although being told that pursuant to Canell v Bradshaw "hand copying is more than just draconian..., it is impossible" 840 Fsupp 1382, 1392. Thus Barber lacks adequate remedies under §2254, and relief under 28 §1651 should be granted as a result.

In heck the District Court construed his §1983 as a request for habeas corpus, and informed him that he had not exhausted his state remedies. Here Barber applied for a post conviction Relief, and when the attorney Jon Weiner moved to withdraw as counsel for a conflict of interest, the trial court did nothing, and later the District attorney filed a motion to dismiss, to which the PCR attorney did not respond to because he was not allowed to represent plaintiff with a conflict of interest, and the motion to dismiss was granted. On appeal the apellate commissioner said that since Barber was not represented by counsel, the dismissal is without prejudice, and held the appeal in abeyance pending a motion for relief from judgement, which has been sitting for more than two months without response. Barber filed a PCR with Jay David Leatherwood, who is also convicted of ORS 163.472 and the

Trial Court denied it sua sponte because of the appeal being present, and thus not properly before the Court. Barber filed Habeas Corpus with Jay David Leatherwood which was denied by that Court, and a Habeas Corpus with Jaycob David Leatherwood who was also Convicted of ORS 163.472 which was also dismissed by that Court. Barber filed a Habeas Corpus by himself in the Oregon Supreme Court which was denied, and he filed another with both Jay David Leatherwood which was denied by the Oregon Supreme Court (Case no S066037) Finally Barber refiled a PCR with the County Court, and included a motion to remove to federal court pursuant to 28 USC 1454, 1338 (a)

In 28 USC § 2254 (b) the language allows for habeas corpus when "It appears that the applicant has exhausted the remedies available in the Courts of the state, or that there is an absence of state corrective process or existance of circumstances rendering such process ineffective to protect the rights of the prisoner." The removal and exclusive subject matter jurisdiction of the federal courts under 28 USC § 1338 and 28 USC § 1454 are exceptions of 28 USC § 2254 (b)

Nowhere in Heck does the court say that a District Court cannot exercise removal jurisdiction over a post conviction claim, when it has the exclusive subject matter jurisdiction on the basis of relief, nor does it preclude exercising pendent jurisdiction over Post Conviction. Moreover the decision only deals with 42 USC § 1983 and not 17 USC § 502, where congress explicitly intended only federal court jurisdiction and specifically waived state sovereign interests with 17 USC 511, nor for that matter Civil Rico 18 USC § 1964 and its injunctions.

PAGE 31

"where defendant prior to trial in State Court on charges of homocide, filed removal petition in District Court, filed a copy of petition in office of Clerk of state court, and served a copy on the state prosecutor, subsequent trial and conviction in state Court was void and writ of habeas Corpus was issued commanding defendants release subject to states right to retry him" South Carolina v Moore 447 F2d 1067

This being analagous except for homocide, at the begining of the case, where personal and subject matter jurisdiction was lacking, where barber did give the state court a notice to remove to federal court explaining the grounds, Habeas Corpus should issue pursuant to 28 USC 81651, thus making Heck v Humprey moot, after all the state court case is void Ab initiv, and Barber was therefore never held by legal process to begin with.

In Wallace v Kato 549 US 384, the Court said that cases like these must be stayed and not dismissed, because the date of accrual and statute of limitations begins when Barber was arrested, false arrest, and malicious prosecution, and false imprisonment are seperate claims. Moreover Vance may be liable jointly or severally for false arrest, even if she is not liable for false imprisonment. If the claim is dismissed, even if the merits are not addressed, because of procedural defaults they will be subsequently time barred. The supreme Court considered and rejected a tolling rule, or that the statute of limitations would begin only when the conviction was set aside, and false arrest does not imply in all cases

PAGE 32

The invalidity of the sentence. For example, when I was arrested by the wrong County, claiming I committed a crime at vance's apartment, might be considered harmless error, even if it was a fourth Amendment error to do so.

The Court said "we hold that the statute of limitations upon a § 1983 claim seeking damages for false arrest in violation of the fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." Wallace V Kato 549 US 384, 397

"Although the dissent criticizes us for a system of stays and dismissals, it should be obvious that the omnibus tolling solution will require the same"... "states and municipalities have a strong interest in timely notice of alleged misconduct by their agents" Id

## Immunities

6 | Acosta says that Rosenblum and Kate Brown are protected by Absolute Legislative immunity, which applies to state legislators for actions under 42 USC §1983. On Page 10

However this common-law immunity does not apply to claims arising under 17 USC § 502, 504, where Congress had specifically allowed suits against any officer, instrumentality or employee of a state, and under the NAFTA Treaty Article 1715 (6) limits anything more than immunity for actions in good faith, which should be known as qualified immunity, when Barber claims elements of bad faith

17USC§511 specifically waved "any other doctorine of Sovereign immunity", and stating that "remedies are available for the violation to the same extent as such remedies are available for such a violation in a suit against any public or private entity".

The statute was "based on the rehabilitation acts of 1986" which is based on §5 of the 14th Amendment. Here they had established state procedure in ORS163,472 to deprive Barber of his rights to publically perform the works under 17USC§201(e). Ellen Rosenblum, according to her own employee Erious Johnson in a lawsuit in the District Court, alleges an intentional policy of depriving people of their speech rights, and by extension the property rights under the copyright Act. Kate Brown had informed Slate magazine that she was a radical feminist, and it is also established that she was a practicing lawyer, and may have acted on gender based animus.

while Brown's actions are legislative (signing a bill), Rosenblum's aren't, she like any person including myself can request a bill to be introduced, and I have done so in the past even though I was not a government official. Here Rosenblum's actions were neither judicial or legislative but administrative. No person in legislature solicited this from her, in fact she took credit all on her own on her campaign website. Moreover the immunities of 42USC§1983 in common law, do not superseede the statutory scheme of a different statute with different immunities.

PAGE 34

In Bogan v Scott-Harris "They argue that their acts of introducing, voting for, and signing an ordinance" 523 US 44, 46. Rosenblum did none of these, she corruptly (18 USC §1964) influenced a legislator to introduce the bill, not in a place of legislative counsel (which is an independant group), but as a politician running for office (and bragging on her website). Rosenblum has been accused by her employee of misconduct for political purposes, just as she advised Ted Wheeler that he could deny "Alt-right" protests because "hate speech is not protected speech. She sued Wynn-Casinos to fire founder and conservative filantropist Steve-Wynn, after he was accused of sexual harrasment in a state where prostitution is legal, only after having the state buy shares in the Company, alleging that the controversy was damaging the share prices.

It stretches the cannons to suggest that, asking treasury to buy shares in stock, asking legislative officials to introduce a piece of legislation, or advise the mayor that hate speech isn't protected speech, could be considered part of the duties of the attorney general in any official capacity. Nor is it protected by discretional immunity, because the AG does not have discretion to violate the Constitution "Accordingly, defendants are not immune under the Tort claims Act because acting with deliberate indifference with regards to an inmates Constitutional rights is not a matter of discretion" Bilberdort v Oregon 243 FSupp 2d 1145, 1160. what Bogan v scott harris says is "In few cases where liability did attach, the courts emphasized that the defendants lacked discretion". I believe that Rosenblum having acted without any statutory authority to do so is not immune

PAGE 35

See Dennis v Sparks 449 US 24 "The Court ruled that there was no good reason for conferring immunity on private persons who pursuaded the immune judge to exercise his judgement corruptly

"§1983 liability lies against any official who personally deprives another of a Constitutionally protected right, provided causal connection between personal conduct and deprivation, which can come by direct participation or by setting in motion a series of acts by others" Mc rorie v Shimoda 795 F2d 780

The Copyright act and the treaties also do not support absolute immunity see 17 USC §511, NAFTA Article 1715 (6). "We hold that one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringment, is liable for the resulting acts of infringment by third parties." MGM v Grokster 545 US 919.

7. Acosta claims that Atwood and Roberts are Absolutely immune for conduct in "initiating a prosecution and in presenting the state's case", "judicial acts in their judicial capacity". However Atwood's involvement was before the prosecution had even begun, and Roberts was not performing judicial acts, where she knew she was without jurisdiction.

Deputy Dvenis testified that before he had even talked to Barber he consulted with Atwood, because he was not sure about this law, and atwood gave him advice. This advice may have been to list April 1st and that the crime occured at vance's

PAGE 36

apartment, as he swore under the penalty of purjury
on a probable cause affadavit, because vance didn't
likely tell him this she testified that Barber didn't even
know her address, it is a reasonable inference that
Atwood would tell him whether the law was Constitutional,
and how to fill out the probable cause affadavit given
the circumstances of him seeking her advice before indictment.

See Burns v Reeds 509 US 492-496 prosecutors are only qualified
immune for advice given to police during an investigation.
See Dixon v walla walla County (whether counsel's advice can
establish qualified immunity depends on whether counsel
was independant, whether advice concerned constitutionality
of the conduct in question, whether counsel is aware of
all of the facts, whether advice was sought before the
defendant acted). Thus if Deputy Duens claims he relied on
Marie Atwoods judgement, then he will be granted immunity
but she should not be granted immunity for that advice.

In Pullman v Allen 466 US 522 and Bradley v Fisher 13 wall
335 the supreme Court distinguished between immunity
for judicial acts, and for acts where they exceed or have
no jurisdiction, and know they have no jurisdiction.

"It has long been recognized at common law that
judicial immunity protects only those acts Committed
within the proper scope of a judges jurisdiction, but
provides no protection for acts Committed in excess of
jurisdiction." Pullman v Allen 466 US 522, 549

PAGE 37

In Bradley v Fisher 80 US 335, 337 the Court suggested that if a probate court judge tried a criminal case, the judge would act in the abscence of all jurisdiction and the judge would lose immunity. However it is up to the plaintiff to prove that the judge did'nt merely act in excess of jurisdiction, but knew that the judge knew it lacked jurisdiction, which amounts to qualified immunity under our 42 USC § 1983 system.

"[in the case of the marshalsea] 'a difference was taken when a Court has jurisdiction of the cause, and proceeds ... erroneously, there ... no action lies [against a judge]... But when the Court has not jurisdiction of the cause, then the whole proceeding is Coram Non Judice, and actions [against the judge will lie]" (quoting Case of the marshalsea) Pullman v Allen 466 US 499 n.7

Judge Roberts was notified of a notice of removal to federal court before trial began, and then notified at the probation violation hearing that the trial court lacked subject matter jurisdiction, after which Roberts proceeded to retaliate with destruction of evidence, for the stated purpose that the evidence was being used to "harass" Vance and the state in this case

"When application is made in proper form to state to remove pending cause to federal court ... any step subsequently taken in state Court is Coram NON Judice"
Virginia v Rives 100 US 313

PAGE 38

Still, whatever statutory schemes Congress adopts should
displace common law, specifically 17 USC§511 and NAFTA
Article 1715(6). A state judge and a state prosecutor are
still officers and instrumentalities of a state, and Congress
when enacting 17 USC §201(e) thought it was wise to
protect authors like Barber exactly from this sort of
behavior, and Barber recited 17 USC§201(e) at trial.
Whether the acts were in bad faith, and thus aren't
immune should be allowed to develop at discovery


Moreover as illustrated in Bilberdorf v Oregon there
is no qualified immunity for the tort of false imprisonment
under state law "we believe that an Oregon Court faced
with the issue would hold that intentional torts are
not immune from liability. Accordingly, defendants are
not immune under the Tort Claims Act because acting
with deliberate indifference with regard to an inmate's
Constitutional rights is not a matter of discretion"
Bilberdorf v Oregon 243 F supp 2d 1145, 1160
Citing Waugh v Pearce 954 F2d 1470, 1481


This Monell theory can be based on the fact that the
County has prosecuted 2 other individuals, while knowing
there were contested constitutional issues, and this
42 USC §1983 lawsuit in existance. Being that the fact
was broadcast on international (the guardian UK) news,
immediately following the PR announcement by the sheriffs
department, and reports from Nathan Baxter, alleging his
step father, a County Commissioner know of the lawsuit.

PAGE 39

17 USC §511

Congress in the legislative report said that Congress had authority based on both its Article 1 and Fourteenth amendment powers, and said it based 17 USC §511 on the rehabilitation act amendments of 1986, which was an exercise of Fourteenth amendment powers, precisely because the Supreme Court had upheld it in prior litigation.

It is clear from 17 USC §201(e) that Congress did not want any states from taking intellectual property rights from Copyright owners, and that is an unconstitutional violation of due process by an established state proceedure, and that because federal courts have exclusive subject matter jurisdiction, there is no state Court post-deprivation process for compensation under the due process clause.

Moreover the punishment of statutory damages is Congruent and proportional, and a valid prophylactic measure, because the states tried to disguise a content and viewpoint restriction of speech as a intellectual property right violation. Indeed the Supreme Court has always reserved "strong medicine" for speech restrictions, even if they are used sparingly, for example the overbreadth doctorine, I can think of no other better strong medicine than statutory fees, when a Court ignores the intellectual property jurisdiction of the federal courts, and uses it to disguise a content and viewpoint based restriction of speech, after the Supreme Court explicitly foreclosed that there were not any new unprotected categories of pure speech. United States v Stevens 559 US 460

PAGE 40

Additionally this case is alot like the one in Cent. Va. Cnty. College v. Katz 546 US 356. Like Bankruptcy, Copyright is principally In Rem, and criminal punishments for Copyright infringment, like insolvent debtors exist. The court there said that sovereign immunity was waived, to recover prefferential transfers of assets, which the State had possesion of, and was exclusively the jurisdiction of federal court to determine the rights to the property. Moreover the desire for Congress to make uniform laws regarding competing soverignties disposition of the property of an insolvent debtor, is as important as the need for uniform laws with regard to Copyright. Moreover the power of federal courts to release debtors from state prisons before the 14th Amendment, in exercise of their in Rem jurisdiction, should be the same as for exercise of Copyright jurisdiction. Cent va Cnty College v Katz 546 US 356, 374

In Comparing whether there is a pattern of unconstitutional conduct by the states, it should be noted that in Copyright unlike in other deprivation of property, because of it's intangible nature it is hard to detect violations. Moreover the 1990 act was just on the Cusp of the internet, the 1997 telecommunications act had not yet enabled the widespread Copyright infringment that occurs today, even in the government. However Congress had known that siezure of copyright was a method of censorship, since it was practiced by the Soviet Union see eg films by jove v Berov or for example the book Mein Kampf, and for a pertinent description the description by Alexander Solzychen in gulag

PAGE 41

archipeligo of the states writers union and committe on publications. The Copyright clarification act was simply to reaffirm that it had originally meant to waive sovereign immunity, even if it did not have hindsight or foresight of history. In Watson v Buck 313 US 387, which was cited by younger v Harris, the court said that states could not infringe on an authors copyrights, and that not even the federal government could do so. Now I do not mean to say that every use of a copyrighted work, from a university film studies class, to Oracle v Oregon would be congruent and proportional, but using intellectual property rights as a method of censorship of an authors work followed by his imprisonment IS proportional, and among the evils of the Soviet Union Congress had in mind with 17 USC §201c.

It is also the driving force for why there are no adequate state remedies for the property post-deprivation remedy, It was the state created remedy that deprived Barbe of his property rights and liberty. While Barbe can make a claim for loss of liberty, if the intellectual property is destroyed in toto, or even momentarily removed from public consumption, any state remedy would be preempted by 17 USC §301.

Furthermore Barbe is not aware about any case law that discusses whether Congress is able to abrogate 11th or sovereign immunity pursuant to it's Article VI treaty powers as contained in NAFTA Article 1715(6), and I also presume the WTO agreements, being that the US is currently in a trade war with China (another WTO member) regarding copyright and patent violations by state businesses.

PAGE 42

from the language of 17 USC §511 it is clear that Congress intended that all remedies against a "state, any instrumentality of a state, and any instrumentality of a state", allows "remedies (including those in law and in equity) are available for the violation to the same extent as... any public or private entity". Whatever the construction of Common law principals, of legislature, 11th Amendment, Sovereign, absolute, qualified immunity, Congress displaced them with the statutory text of 17 USC §511 specifically mentioning "any other doctorine of Sovereign immunity". Since private entities do not enjoy these immunities, it is hard to say how the remedies could be "the same extent" under 17 USC §511.

## Individual Capacity

The Ninth Circuit Court in Romano v Bible 169 F 3d 1182, 1186 said "we also have presumed that officials neccessarily are sued in their personal capacities where those officials are named in a complaint, even if the complaint does not explicitly mention the capacity in which they are sued.

I also find it hard to square the adoption of ancient common law immunity where the entire revolution was an usurping of that immunity. I am by no means a Jacobin for the assertion that a person who breaks the law should be liable, even if they are a public official, and where there may be logic to immunity of public bodies it should not extend to individuals. The notion that they need the freedom of performing duties, should not extend to violating laws.

7  Acosta claims on Page 10 that ORS 163.472 "do not directly
   implicate Copyright law" with a bald assertion. Acosta
   failed to analyze 17USC§301 or 20l(e) or use either the
   two part Copyright preemption test or the T.B. Harms
   Test. In fact the only way Barber could have possibly
   known that vance "did not consent" for purposes of
   ORS 163.472 is a copyright takedown under 17USC§512
   sent to pornhub, and from pornhub to Barber. When vance
   sent the DMCA falsely under penalty of purjury,
   stating that she is the Copyright owner, the only
   Court that could adjudicate that claim is the
   federal court, because just as we see in Just med v
   Byce 600 F3d 1118, that question "arises under Copyright".

8  Acosta claims " Barber failed to establish or allege he held a
   copyright in the images, and he has failed to remedy this
   deficiency here." None of the parties either challenged
   that Barber is the author of the images, or raised an objection
   that Barber failed to allege he is the author, and Barber has
   alleged it, the problem is that acosta fails to "find" them,
   not that they have not been established or alleged.

   Barber does not have the Complaint to cite the exact page
   or ECF numbers, but I will start by first reciting the
   Copyright registration with the US Copyright office is:
   VAU-001282 42435 Case no 1-4108648971 opened 10/25/16
   title "Albino Poin" Author: Benjamin Barber. Then if we look
   at the TRO sent in NOV 2016 it says "It infringes on the
   plaintiffs Copyright as the author and subject of the audiovisual works"

PAGE 44

see pg 44 of the amended Complaint "he recorded them" on page 1 of the original Complaint "right to disseminate his Copyrighted works (ECF38) on Page 8 "he is the one who held the Copyright". Barber also asked Acosta to take judicial notice of 18 CV 00855 AC which has the registration # on it. Barber also provided the "Amended Complaint exhibits", which quotes vance at trial saying "he recorded them". This document cites the "Amended suppliments acosta mentions on page 18 as being ECF 69, 70, 74, 75 (reffering to ECF no 74 as containing images of vance, which is the "claim 1 exhibits" cited in the "Amended Complaint exhibits"). moreover on Page 17 Acosta says "his repeated efforts to publish the images by filing copies of them in this case" when the images are them selves prima facia evidence of who the author is, Anyone who watches it will see me set the camera down and walk into the scene, assuming that the copies have been preserved as requested.

Barber has since Acosta's Findings and reccomondations filed a affadavit under penalty that he is the author. "Under Copyright act of 1976, author as general rule is party who actually creates the work" Community for Creative non violence v Reid 490 US 730 "under the Copyright act of 1976, copyright ownership" vests initialy in the author or authors of the work 17 USC §201 (a)" Just Med v Byce 600 F3d 1118, 1125. "pursuant to 17 USC § 302(a) copyright subsisted from moment photographs were created" Blair v world Tropics Prods 507 F supp 2d 828. Copyright ownership and registration are two different things, under the Berne Convention Implication act of 1988

PAGE 45

Pub L NO 100-568 (1988) registration is not even required for copyright protection. Nor is even a prima facie case required at a motion to dismiss for failure to state a claim, the allegation is assumed true. Simon based his assumption on a notice in the website, but overlooked that it says "Claim submission completed no further action required"

8. ON PAGE 12 Acosta claims that I had not alleged vance committed any acts which would constitute a felony, but Barber did allege as the states attorney acknowleges Civil Rico 18 USC § 1964, which is predicated on 18 USC 1962, moreover vance's attorney said there was no private cause of action for any of the criminal offences, and Barber alleged the definition of 18 USC § 16 to be the definition of crimes of violence.

In Diaz v Gates 420 F3d 897, 904 "The phrase "racketeering activity" is defined in Section 1961. That extensive definition includes both direct injury to tangible property, such as "arson", and also various kinds of wrongdoing that constitute "personal injury". Among the "personal injury" wrongs that can constitute "racketeering activity" are "murder" and "kidnapping" [...] Murder and kidnapping fall within the "personal injury" torts of "wrongful death" and "false imprisonment."

During any false imprisonment violence is used against a person, whether or not the force is "excessive" under the 4th or 8th Amendments. As the definition in 18 USC § 16

PAGE 46

states there merely needs to be a risk of injury, for the definition to apply. Moreover academic literature define legal and administrative abuse, as a form of inmate partner violence, and essentially I am claiming that vance and the state officials (including April Kusters a PSU employee, and County employees), engaged in legal and administrative abuse, and that abuse was motivated by Gender, and that it involved violence or the risk of violence (false arrest and imprisonment) which constitute a felony (Rico, 18 USC §241, 18 USC §1951, etc)

The US supreme Court decision in United states v Morrison, is distinguished from this case, it involved the failure by state officials to act to prevent a private person from committing acts of violence. This is due to the 14th amendment being a limitation on infringments of rights by government actors, not for private wrongs that violate rights. This case is where the government actors are themselves committing the wrongs, and thus directly violating the 14th amendment themselves

It should also be noted that my efforts to desegregate "women only" employment events was mentioned twice at trial, that vance herself says she hates men, that kate Brown, Ellen Rosenblum, and April kusters are all feminists, and the Judge and DA are both women. Moreover the "model Legislation" was sponsored by the feminist majority foundation, the national organization of women, girls Inc, who say "90% of victims are women".

PAGE 47

9 | Acosta claims on Page 12 that 11th Amendment immunity extends to April Kusters, which is a PSU employee, without alleging PSU is an arm of the state, and where PSU has an independant board and is not ran by the State. When the state of Oregon in 2012 dissolved Oregon University System, and made all the state universities independant like OHSU, PSU ceased to be an arm of the state.

10 | Acosta claims that "Barber is unwilling, or unable to allege facts neccessary to support a viable section 1983 claim against state defendants". But this inability is solely the result of Barbers unconstitutional incarceration, interference with Court access by the County jail, and lack of law library access by the jail, and confiscation of his legal documents by the jail. As such the result is in pari delicto, that the state defendants should be able to immunize themselves with unconstitutional behavior.

In July of 2017 Barber had requested Samuel Kreimeyer to send him the "amended suppliments" ECF 69, 70, 74, 75, so Barber could be able to marshall the facts. The jail met with Barber and refused to allow them to send more than 5 pages a day, stating it wasnt legal mail, even if the documents were on the Court docket, because they were not sent by an attorney. At this time Barber was told he would have to sue the jail if he wanted to have his friends send these documents to him.

Furthermore Barber informed this Court that the jail lacks a proper law library access system. It only offers 1 hour a week, and only has state materials with the exception of 28 USCA 2254, 2255, 2241, 18 USCA 1983. There is in fact no federal rules of civil procedures or any federal rules of evidence, and of course no federal reporters. When Barber grieved the jail, in december 2017 they concluded the law library had all of the materials required.

It wasn't until Feb 8th after Barber's PCR Attorney had withdrawn as Consel that he sent Barber the parts of the amended suppliments pertaining to vance and ORS 163.472. Barber's legal papers were Confiscated by Deputy Ingram on Feb 14th because he had in his cell too many legal documents, and the requirement was that he wait an average of 4 hours to merely switch some documents from property to his cell, not even being allowed to browse through what to switch, between deputy shifts when one could bring him his legal documents.

Barber also informed the Court that this sort of irreparable injury is the Sort of injury allowed in Younger to avoid abstention, and the Court denied his request for relief on those grounds but now wishes to Subject him to the irreperable injury of dismissal with prejudice it said it would not avoid by not abstaining. It should also be noted that Barber asked the Court to sever the claims (or bi furcate them) because it denied his request to join the parties that

PAGE 49

he could remember, and add "John does" until he could get the information he needed through discovery, because in many instances for example the cultural competency requirements promulgated by the Oregon Health Authority, or vance's therapist at lewis & clark, I do not have access to the documents I need because these would be solely in the possession of defendants.

"Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right to access the courts are invalid Procunier v Martinez 416 US 396, 419

"states may not erect barriers that impede the right of access of incarcerated persons" John L v Adams 969 F2d 228, 235.

Barber asked for collateral orders to remedy the problem, as Acosta notes on Page 18 that he found these orders "not relevant to the issues in this case and not properly brought in this lawsuit." (ECF 111) But yet the "failure to comply with court's instructions" and the jails interference with access to the courts are relevant and causal, and Acosta's failure to grant these orders, and Barber's inability to appeal these interim rulings led to the irreperable injury that acosta now proposes in this case.

Acosta denied the request to joinder parties for most of the claims arising from anything other than vance, citing issues pertaining judicial economy, subsequently Barber

Did not include those claims, but asked for them to be moved into a new 42 USC § 1983 claim, which Acosta has not ruled on that motion. Acosta now wants to dismiss those claims with prejudice, because Barber was unable to raise them, because Acosta did not allow him to include the defendants and the claims against those defendants citing judicial economy.

Collateral orders are orders "That are conclusive, that resolve important questions completely seperate from the merits, and would render such important questions effectively unreviewable on appeal from final judgement in the underlying action" Digital Equip Corp v Desktop Direct Inc 511 US 863, 867 because the "legal and practical value" of the right involved would be destroyed by waiting (i.e. the damage will have already been done by then) Lauro Lines srl v Chasser 490 US 495, 498-499

Barber suggests the court find that Barber's inability to access the courts, a law library, his documents, was the proximate cause of being not able to draft a sufficient complaint. In the 2 weeks he had, he was mostly trying to marshall the facts, from which he needed to compile a properly pleaded complaint. But given the choice of filing something and filing nothing, Barber chose to file something, so he wouldn't miss the filing deadline. Acosta's lack of interest in his access to these contributed to the proximate cause, and Barber should have Leave to amend.

Barber will attach a proposed amended complaint, and the court can observe that it is properly pleaded, because now unlike before Barber has a copy of the "prisoners litigation self help manual." This book includes a whole chapter with how to write a complaint and state a claim for relief.

As is clear in the Complaint, there are two series of page numbers from pg 8-13, because the complaint was supposed to be a completely different document. I had been trying to condense 2000 pages of documents into 100, which is described as "marshalling the facts" in the legal research chapter of the book. It is mostly because I ran out of time, due to interference by the jail, and not having access to the original documents, that the prayer for relief and the introduction was added in a single day, and in the haphazard manner described.

Marshalling the facts themselves is difficult without information technology, no "find", "cut", "paste", etc. More over one hour a week in an insufficient law library for a person not trained in law to research. This court asks for a lot when acosta suggests i visit copyright.gov to get a copy of the copyright registration, or draft complaints with out access to the primary source documents, and recite details of his orders that I have no access to and/or dont recall

To even seek relief from these conditions under Lewis v Casey 518 US 343, it is a perverse set of incentives to punish Barber for what conditions he cant remedy, unless he is punished. Am I supposed to now sue the jail to recoup these penalties?

PAGE 52

1.1 | On Page 9 Acosta says that ordinarily Leave to amend would be proper, but that he wants to avoid "forth iteration of the Complaint", he will address the claims in the Complaint, on the merits.

There have been so far according to acosta Barber I, and Barber II, I believe Barber I is the only Complaint which he refers to, which says it was on Sept 26th 2017, and Barber II refers to the same exact Complaint but to different claims for relief. see Document 38 Page 8 (Barber I) and Page 9-12 (Barber II).

Barber submitted an amended complaint on Feb 21st based on Acosta's feed back that it lacked factual Content, this time enough to overcome Younger v Harris and ORS 31.150. Barber alleged as much detail as he could, Including the details about the creation of the videos to support ownership of Copyright (Barber I)

In Barber II the issues of "name the defendant", "proximate cause", "Causal relationship", "specific actions", specific injuries". Barber had some issues due to access to his paperwork and inadvertantly focused on Barber I, and ran out of time on the Barber II aspects. Some of these are because he lacked the physical documents due to interference, some of which is because Barber was not allowed discovery, and Barber was not allowed to add "john doe" defendants. Barber can fix these when he is released on 12/15/18 if left unmolested.

Citing "Amended Suppliments" ecf 69, 70, 74, 75

Barber Believes that his exhibits show what vance herself claimed she was told by her therapist, Borber doesn't have the complaint, but he thinks he mentioned that he was given a handout at the one time he went there, which included material about "white privilege", "male privilege", "cis gendered privilege", "straight privilege", "colonial privilege", etc. Barber also thinks that he also included information about Theresa McDowell, and the contents of the courses taught by Lewis and Clark, and that Psu also funded the "Liberation Healing Conference" that I attended where "white privilege conference" flyers were provided

Borber believes (he does not have a copy of the complaint), he mentioned that these are required by the cultural competancy laws, and that Lewis & Clarks documents said they were relying on cultural competancy. The obvious implication is that Barber's loss of Consortium derived from Lewis & Clarks feminist family therapy, and that derived from state laws and regulations about cultural compentancy / critical theory.

However Borber does not know all of the specific persons, from who promulgated the regulation, who approved the schods curriculum, or even who vance's therapist was. Barber would have to get this information in discovery, because they are not within Barber's possesion. Barber doesn't even remember who the person he spoke to is, who handed him the offending handocts implying that vance's emotional problems were due to my "privilege".

PAGE 54

The peculiar perversity of imposing heightened pleading standards in prisoner cases... is that it is far more difficult for a prisoner to write a detailed complaint than for a free person to do so, and again this is not because the prisoner does not know the law but because he is not able to investigate before filing suit"
Billman v Indiana Dept of Corr 56 F3d 785, 789, 790

Acosta would not let me add john doe defendants, to identify who those people might be during discovery see Gillespie v Civiletti 629 F2d 637, 642-643 (9th cir 1980), Spencer v Doe 139 F3d 107, 113 (2d cir 1998) My book (prisoners litigation self help manual circa 2010) does not address the contradiction between these and Ashcroft v Iqbal 129 s. ct 1937, 1950 (2009), and I do not have access to any federal resources in our law library to address it either, however Acosta did not address this issue either, and the court should do so. see also Fed rule civ proc 26 (a)(1) denying initial disclosure by persons who are in state custody for discovery

Barber should be allowed to after release on 12/15/18, be allowed the "Breathing room" and proper access to the evidence and law library access to fix the short comings of Barber II. Of course Washington County and the state will disagree, and likely try to interfere again, but as the last time I will be at least able to draft an amended complaint before the County puts me back in a jail that lacks the Court access requirements of Bounds v Smith.

12    i. Acosta on Page 15 that Vance was protected under
ORS 31.150 and entitled to absolute immunity for
communications made with regard to criminal proceedings
under Barber I, Barber I cites "Vance has established
the communications upon which Barber bases her claims
against her arise out of statements made in a judicial
proceeding." (page 14 Document 131) It also mentions
that "Barber's claim lacks allegations or evidence,
Vance copied or published Barbers Copyrighted material"

Barber fixed those deficiencies, because 1) The wrongs by
Vance preceeded the institution of a judicial proceeding
2) They do not "arise out of" statements in a judicial
proceeding but the Complaint made with malice and
reckless disregard for the truth to a police officer when
no judicial proceeding existed 3) they were contrary to
Vance and Barbers Contractual and promissary
agreements 4) Complaining witnesses are distinct from
normal witnesses and are not absolutely immune.

To make an analogy, a person (#1) who sells a car to
another person (#2), then reports it stolen to the
police, is not absolutely immune nor does the claim
"arise out of" an activity protected by ORS 31.150
"A private citizen who initiated or procured a criminal
prosecution could (and can still) be sued for the
tort of malicious prosecution -- but only if he acted
maliciously and without probable cause"
Kalina v Fletcher 522 US 118, 132-133
                    PAGE 56

In Kalina v Fletcher Scalia's Concurring opinion describes the history of Common law and §1983, he describes that the absolute immunity "was however, an immunity only against slander and libel actions", not for breach of Contract or promissary estoppal and negligent undertaking which would apply to vance in this example.

"But a 'Complaining witness' could be sued for malicious prosecution whether or not he ever provided factual testimony, so long as he had a role in initiating or procuring the prosecution; in that sense the "witness" in Complaining witness is misleading"
Kalina v Fletcher 552 US 118, 135

"First amendment petition clause does not provide absolute immunity to those who make false statements, even in context of petitions to government" Curry v Hall 839 Fsupp 1437, 1440

"Knowingly false statements and the false statement made with reckless disregard for the truth do not enjoy Constitutional protection" Garrison v Louisiana 379 US 64

As acosta says in Document 131 "vance's statements [...] were in furtherance of the criminal proceedings eventually initiated by washington County and covered by ORS 31.150  See Wollam v Brandt 154 orapp 156, 163 (1998) ([...] for [attorney client] privilege purposes). These communications also qualify as Conduct in furtherance of her Constitutional right of petition see gable v Lewis 201 F.3d 769, 771 (6th cir 2000) (submissions of Complaints"

The claims were dismissed without prejudice, and acosta did not re-review the amended complaint to examine if I had fixed the pleading requirements So I ask the court to do so, while considering the Amended complaint exhibits allegations as a part of the complaint, backed by evidence in the amended supplements ECF 69, 70, 74, 75 (and sent to the court in the 5 black binders labeled "claim £1-53 exhibits" on the top-right corner with the page number)

Barber adopts the analysis in Jordan-Benel v universal city studios Inc 859 F3d 1184 for motions under ORS 31.150 Acosta makes 2 claims 1) that vances communications were "in furtherance" of a petition to an exercise of a right to petition and 2) in furtherance of criminal proceedings "not yet initiated".

Under ORS 31.150 (2)(a), (2)(b) the claims that #2 apply to this do not apply, because there was at this point no "proceeding" and no "issue under consideration" only after the complaint was there an "issue under consideration." Thus vance has to rely on ORS 31.150 (2)(c), (2)(d) where no judicial doctrines apply, she alleges merely a first amendment right to make those statements in general.

As Jordan Benel v universal city studios explains "we must begin with the pronouncements of the states highest court, but because I cannot get access to ORS Annotated 31.150 and have limited access to the law library (zero hours per week)

PAGE 58

and have only a Collection of printed material from
after my grievances in June 2018, I will assume that
since "oregon used california's anti SLAPP law as model
for its legislation" Schwern v Plunkett 845 F3d 1241, 1244
that many of the assumptions hold true in Jordan Benel
v Universal city Studios 859 F3d 1184

The california court of appeals stated that "arising from"
language to mean that a claim is based on whatever
conduct constitutes "the specific act of wrongdoing" that
gives rise to the claim" Jordan benel at 1190
it cites Wang v walmart Real Estate Bus trust 153 cal
app 4th 790, (holding that anti SLAPP did not apply to a
claim of Breach of Contract)

moreover the court there rejected acosta's "but for" approach
finding that "defendants "but for" theory in this case would
lead to an unprincipaled expansion of anti SLAPP."
Jordan Benel at 1192

"we further note that limiting the application of anti SLAPP
to claims that actually challenge free speech activity
does not create an impermissable intent to chill requirement"
Jordan Benel at 1193

finally after we analyze from what the Conduct "arises
from", we then turn to whether the wrong that is
claimed by the plaintiff is in furtherance of free speech.

The Conduct that this arises from is a violation of Barber's first amendment rights, and expropriation of his property rights under Copyright, how on earth can Acosta claim with a straight face that this is "Conduct in furtherance of the rights of petition or free speech?" Moreover Barber and Vance had signed a contract agreeing "to have transparency and provide access to their social interactions, including the ability to speak to members of one's social groups." Later Barbe and vance discussed how she no longer liked the contract in an august 24th 2013 face book chat where Barber calls it "Complete transparency" and vance says she doesn't like this (nor the "dispute resolution process") but she "will do complete transparency for 2 years". Of course Barber did not change his mind, vance did, and Barber did not agree.

This implies of course that vance lied to the police, when she claimed "that they did agree back in 2011 that the videos would not be posted"                , and subsequent testimony that "this was between us" is contradicted by evidence. Not only were these videos posted 72 hours to my server after they were made, but vance was notified that they were shared with the people we had been seeking foursomes (group sex) with, just as vance had sought out with "hot curiosity" from okcupid and exchanged nude images with a month earlier. Not only that but when vance is confronted with evidence that I had asked pornographer about offers of money that month prior, vance admits in testimony "we had talked about "oh wouldn't that be interesting to make porn together? we could make alot of money"

PAGE 60

Finally in july 10th of 2015 a person by the pseudonym "Beardmosexual" tells Barber that a Uk national Robin Gething and a German National Matthias Huber had been "sharing them with a bunch of people" on "[google] Hangout" (a specific google Conferencing product). And Vance admits in testimony

"so there were some friends that I had had that I told, you know that these videos were hidden on his website. I had recently seen that he made the website meagan vance .net and you know I opened up to them about it

And, apparently someone, you know, talked to him about it and he Construed that as people were going to dox him and what it was that these people had told him -- these friends had told him that if he -- that if he continued with this website and posted things about me, that he did have a lot of stuff on his website that they had as well. I wasn't okay with that, but I think that's enough detail with the situation".

Moreover on 01/02/15 on Http://8ch.net/cow/res/7360.Html "[link] (where he is getting ass raped)" "[link] (where he is getting porn'd)" (discussing Barber) Followed by "He is threatening legal action against me because I am divorcing him" (Http://marker.to/ck4PØq)

Vance says "I didn't think anyone Could find them" when they were posted to the ftp server, and that she wasn't Concerned

PAGE 61

about them and "I was just going to leave it there and, you know, wait until it becomes a law", but once it becomes a law then she gives the videos to her friends, who in his own words said "you expected me to post it so you could shift the blame", "Thats why I told Endo [Barber] everything, how you got the files, what you spread, how many people you showed, what you were planning to use it for."

To summarize vance lied to the police officer, violated a contract, and asked for Barbers first amendment rights and property rights to be infringed, none of which "arise from" actuity protected by the first amendment. It is no more protected than selling someone a car, then reporting that the car is stolen. It is not simply that vance was mistaken, because you cant claim it was "agreed that this was between us" and also give access to it to strangers from europe on "google Hangouts" (I have been given the logs of some of these), after you learn it is illegal to do so.

Under the Oregon frame work   state v Robertson 649 P2d 569 Courts examine whether the restriction aims at the content of the speech or the harmful effects. If the law targets contents it is unlawful unless restrained under a historic exception. If the law targets effects, the Courts scrutinize it for overbreadth.

"Complaining witnesses were not absolutely immune at common law. In 1871, the generally accepted rule was that one who procured an arrest warrant by submitting a complaint

Could be held liable if the Complaint was made maliciously and without probable cause"
Malley v Briggs 475 US 335, 340-341

The "Amended suppliments" AKA the evidence cited by the Amended complaint exhibits show several pages of vances malice for Barber and also of men in general. Indeed vance even threatened to have Barber arrested on several occasions, unless he agreed to her divorce stipulations, and admitted to deffamatorily accusing Barber of raping her, and being physically abusive to Barber.

"Honestly I am the physical abuser, I emotionally abuse, too. I was the first to cheat. It's not just him. I play the victim alot in my life. I cower when it's not needed, and attract dominant people that want to dominate".

And that is what vance has done, because it is an effective strategy, vance didn't mention our transparency (and dispute arbitration agreement), because she hated it, and hated it precisely because it neutralizes this strategy. This is why vance did not like her own statements being put on a website, and tried to coerce Barber with the videos. Barber on the other hand when he ran for the oregon House of representatives made a read only copy of all of his phone calls and emails on Barberb.com, none the less during the time he and vance were exchanging porn with these couples. Vance and Barber even were organizers of the world Naked Bike Ride, and Barber worked with the sunlight foundation

PAGE 63

Vance had agreed to this, knowing full well what our social contract was, I agreed to accept things I don't like. for example her preexisting mental illness, youth and inexperience, Albinism and photo sensitivity. It is only fair vance had to deal with my gunshot wound to the eye, what she suggests is aspergers syndrome, and strong personal ideologies. How any couple manages any of these comprimises is their social contract, He works long hours, she tends to the children, etc. In our case we encoded our expectations in a contract, vance cannot now turn back time, claiming she did not know, or did not agree to my views on transparency, nor that we utilize a dispute resolution process, and evidence is on the record that she hated this contract or promise.

Vance was estopped from filing a criminal complaint by promissary estoppel doctorine. Bixel v First National Bank of OR. 49 or app 195, 619 P2d 895, 898-899. The "principal criteria" that determine "when action renders a promise enforceable" under this doctorine are (1) a promise [;] (2) which the promisor, as a reasonable person could foresee would induce conduct of kind which occured [;] (3) actual reliance on the promise [;] (4) resulting in an actual change in position."

Just as "contract law is designed to protect the expectation of contracting parties" Samuel williston & Richard A Lord, A Treatiste on the law of contracts §1.1 (4th ed 2007) The restatement of contracts define a promise as "manifestation of an intention to act or refrain from acting in a specific way, so made

as to justify a promise in understanding that a commitment has been made" Restatement (second) of contracts §2(1). Promissary estoppel developed in part out of cases in which "promises of future action ... related to an intended abandonment of an existing right." Williston & Lord §8.4

Our agreement was manifested by our having been married, and vance intended to rely on it when as she admits, she gave access to our social interactions and computer accounts to foreign interlopers. Barber's detrimental reliance on the promise and contract forms the basis for the the state of mind he had, which vance used to inflict injury on him using legal administrative abuse, which is a form of intimate partner violence.

Specific unlawful acts are not protected speech, even if speech is the means for their commission see Brandenburg v Ohio 395 US 444, 447-449. Thus Acosta's "but for" analysis of Anti-SLAPP must fail, otherwise it will both interfere with Article I §10 of the Constitution, but as a matter of fact also apply to people committing fraud or forgery "In furtherance of free speech"

In Barber I Acosta cited Schwern v Plunkett, which the court dismissed on speculation, whereas here vance admits she gave the people the means to post the files, the motivation to post the files, and the opportunity to as her friend said "fuck his life up" and "you have made me an accessory to your fucking crime" and "you expected me to post it so you could shift the blame" Http://Archive.to/Ybykm, and "they were protecting me" she said.

PAGE 65

Barber alleges that Vance acted under the color of law because (1) Vances attorney melanie keble filed a objection to Barbers demurrer at the County Court, and (2) the deprivation was due to a property right conveyed to Vance under state law, (3) Vance's attorney asked the trial court to destroy evidence that was on Barbers online accounts and computers, because the evidence was being used to "harrass" her in this lawsuit.

"A plaintiff may demonstrate joint action by proving the existance of a Conspiracy or by showing that the private party was a 'willful participant in joint action with the state or its agents"
Franklin v Fox 312 F3d 423, 445

The plaintiff must show a "substantial degree of cooperation" between government officials and the private individual. Id "there is no specific formula for defining state action
McdadeV West 223 F3d 1135, 1139"
Jones v Poie D.OR 2007 WL 1875653

Tower v Glover 467 US 914, 920 (private person may be acting under color of state law when Conspiring with state officials to violate others' Constitutional rights)

"The traditional definition of acting under the color of state law requires that the defendant... exercised power possesed by virtue of state law and made possible because the wrongdoer is clothed with authority of state law
West v Atkins 487 US 42, 50

PAGE 66

Radcliffe v Rainbow Construction Co 254 F3d 772, 783 (conspiracy requires evidence of agreement or meeting of the minds) Moreover, Barber alleged a civil Rico 18 USC § 1964 Conspiracy, and should have also alleged as he did in the original Complaint 42 USC § 1985 conspiracy (document 38 page1)

13 | Acosta says "misrepresentations relating to Barber's copyright in the images, and Contributory copyright infringment with regard to the images, the prior finding that Barber failed to establish ownership of the Copyright defeats such defense or claims"

The 17 USC § 512 statute does not even require that a person be the Copyright owner see Lenz v universal music group (9th cir 2015), stephanie Lenz did not allege that she was the Copyright owner of a (artist known as) prince Composition or Copyright, Lenz prevailed on the fact that she was entitled to fair use of the work, and that the DMCA takedown was misrepresenting the work as infringing.

Despite the fact that no parties ever raised or objected to the fact that Barber recorded the images, and is thus the author, and is thus the Copyright holder. Even if Vance had been the author, Barber would still be able to claim he had a license to the work by the Contract, or that he had a Constructive license, or it was fair use. However as Barber has already informed the Court, he registered for a Copyright with the US Copyright office on 10/25/16, and Vance had testified in County court "he recorded them".

Acosta should not be misconstruing vances statements, vance has said that they were "private" videos, not that Barber isn't the copyright holder, not that vance did not misrepresent the 17USC§512 claim. When rebutted with statements and documents from trial court, she tried to allege they haven't been yet authenticated, which is at this phase premature, because this is a motion to dismiss and acosta has not yet compelled discovery, and Barber has not yet been allowed to authenticate them. More over vance hasn't even explained what makes them private at this point that is a conclusatory statement, and is itself preempted by 17USC§301 of the Copyright act.

More over I would like to point out vances own statements to trial court in the 5" binders also filed electronically into the court, and summarized in the amended complaint exhibits. "They were made consentually, we had agreed what they were -- the purpose was for him. They were made consentually and he recorded them. I knew they were being recorded"

Acosta even says "vance moves for sanctions against Barber pursuant to 28 USC§1927 for his repeated efforts to publish the images by filing copies of them in this case". Acosta mentions the collateral orders in his order document 168, which on Page 8 includes a supeona Duces Tecum requesting the copyright office send to the Court Barber's Copyright certificate, which Acosta denied and told Barber "he may obtain such registration through the office's website", when he knew Barber had no internet access.

PAGE 68

Moreover Barber asked acosta claims that he will not take notice of another Complaint 18cv-00855 which has the Copyright registration there. Barber alleged in the TRO on Nov 7th claimed he was the author on page 1. In the F&R Acosta says Barber didn't offer any evidence of a copyright registration, But in the "Amended suppliments" called claim 1 exhibits page 772 is a copy of the receipt from the US copyright office. which Barber sent to the Court in 5" Black Binders. In "memorandum in support of claim 1" page 9 "when they were produced by Barber before she was married to Barber" on page 1 "The videos and pictures were taken with MR Barber's cellphone in his home". Barber also offered a Affadavit under the penalty of purjury that Barber is the author of the images in question.

In Barber I Acosta and Simon Conflate Copyright ownership and Copyright registration, Copyright ownership exists independant of registration, and even if no registration occurs. Moreover the material in the receipts had been uploaded, they are listed in the receipt itself. Also Copyright registration is not a requirement for protection under copyright since Congress adopted the Berne Convention Implimentation Act of 1988 Pub L. No. 100-568 stat 2855 (1988). An illustration is in Just Med v Byce 600 F3d 1118, 1130, where Byce filed a copyright registration, but the Court determined him to be an employee and not an independant Contractor. In a motion to dismiss the Court is supposed to assume that all of the facts are true, that Barber is the author of the Blush

The videos themselves are prima facia evidence that
Barber is the author, because Barber starts recording, sets
the camera down, and walks into the scene. As long as
the images are produced, no jury will have a difficult
time identifying the author, and the Court can order
their production, if for some reason the clerks did not
download a copy as requested, or preserve the DVD
I had sent to the Courthouse.

"In this case, the Complaint asserts Just Med's
ownership of source code, while at the same time
acknowledging that ownership is disputed. These
allegations directly implicate the Copyright act. [...]
Because ownership normally vests in the author of
the work, [...] because there was no written agreement
as to ownership." Just Med v Byce 600 F 3d 1125

"we hold the statute [17 USC § 512] requires Copyright
holders Copyright holders to consider fair use before
sending a takedown notification, and that failure to
do so raises a trial able issue as to whether the Copyright
holder formed a subjective good faith belief that the
use was not authorized by [copyright] law."
Lenz v Universal Music group 9th cir 2015

"fair use is not just excused by the law, It is wholly
authorized by the law. In 1976 Congress authorized a
four step test for determining fair use of Copyrighted works" Id

PAGE 70

To issue a Copyright takedown 17 USC §512(3)(A) A person has to issue a statement under the penalty of perjury they are authorized to act on behalf of the Copyright owner. To issue a CounterNotification 17 USC §512(3)(g) A person has to issue a statement under the penalty of perjury that the person believes the notice is mistaken, and accept jurisdiction of Federal District Court.

Barber provided these Copyright notices in claim 1 exhibits pg 769, 921-924, and both of them create triable issues of fact, regardless of who the Copyright owner is. what Vance seems to be claiming is that her "private" photos pursuant to Restatement (second) of torts §652 D give her the right to Censor the videos, and issue DMCA takedowns (mind you before prosecution of ORS 163.472), and this take down notice was the only way she notified Barber she "did not Consent" to the disclosure in ORS 163.472.

The problem is that the tort is preempted by 17 USC §301 "we pointedly note that we address the unpublished status of the photos only under Copyright principals not privacy law see Bond v Blum 317 F3d 385, 395" (§652D) Mongue v Maya Magazines 688 F3d 1164, 1177 9th 2012 See also Garcia v Google 743 F3d 1257 (§652 C)

To dismiss the 17 USC §512 claim Vance would have to prove (1) that she is the Copyright owner (2) the upload was not fair use and (3) that Barber doesn't have a license to the work, none of which she has done at this point.

More to the point, had vance been the copyright owner, then she could have gotten an injunction and damages when I sent the counter notice and reuploaded them. This is why the feminist groups needed to invent this law, because there is no remedy otherwise, and of course "90% of the victims are women". So now Melania Trump can call the police, and have the photographer who released her unpublished nude photos arrested, that he took of her some 20 years ago. The naked Donald Trump sculpture, you have to delete those pictures too. The paris Hilton sex tape, "a night in Paris", "you're under arrest!"

vance testified "my lawyer, [april kisters of PSU] when I was going through the divorce, said this might happen 'cause he had them hidden on his website before that. And if they [the friends] did, I could always try to file a DMCA copyright claim and claim that this is a part of my copyright and try to delete them that way"

"my lawyer was discussing with me unofficially, you know 'maybe you want to do this once this becomes a law'"; "I was just going to leave it there and, you know, wait until it became a law"; "my lawyer suggested, this is an option you could take. I was not concerned about the videos because I didn't think anyone could find them".

"I reported the videos, and I just like, explained, you know, that I was reporting on part of these videos. I don't want them online. And, you know, It's a copyright issue" (DMCA Notice.)

PAGE 72

13 | on Page 16 Acosta claims that only state law claims remain, however as Vance's attorney notes that Barber cites "which amount Barber requests to be trebled under federal Rico laws". The state law claims that Acosta says are "extortion", "violation of a restraining order", "eviction" are part of the civil Rico 18 USC § 1964 claims, which Barber refers to racketeering on Amended complaint Page 18

To help understand why, Vance interfered with Barber's contractual relations (lease and sublets), and also business opportunities, and threatened Barber with arrest for fraud if he did not sign her divorce agreement, and did so to -- much as she is doing now -- trying to "protect myself" from liability for her actions. Vance even had her attorney April Kusters, a PSU employee, threaten Barber with arrest for reporting Vance's activities to government agencies, where there was no evidence or allegation that Barber lied, which also is cognizable under 42 USC § 1983, 1985.

In Diaz v Gates 420 F3d 897 "Diaz [...] has alleged both the property interest and financial loss. The harms he alleges amount to intentional interference with contract, and interference with prospective business relations, both of which are torts under california law" Id at 900 "If Diaz properly alleges that his injuries were "by reason of a violation of section 1962 there is nothing to prevent him suing therefore" See 18 USC 1964" Id at 902

what I believe I allege (because I dont have the complaint), is that after vance was arrested and a restraining order was placed on her, she went to ohio and in ohio extorted me and broke her restraining order 18 USC §875, 2261, 2262. The extortion was that she would have me arrested for fraud for paying for our utilities from the joint bank account (all money is joint in our contract) unless I signed her divorce agreement (along with its condition of payment of money), despite our arbitration agreement.

Then I called the portland police to report these threats, and vance then said something (she said he "took my side") to my landlord to try to evict me, and to tell my tenants to not pay me rent, and vance claimed that unless I signed her agreement she would testify in order to get me evicted, and also interfere with my own eviction of the non paying tenants. Her claim being that the animals she wanted as psychiatric service animals were not so.

Then at my workplace Transfer Online, I am told that someone informed them I had "attempted fraud" against vance, being that they are a financial services company, I had to get a background check and not be allowed to access the computer systems until I was cleared. At which time they started a spinoff boutique web development firm Jagalee, but I still had to have my work pass through several people just to make sure it was not bugged. Naturally when I thought the company may get into

PAGE 74

trouble just as the previous parking systems Contractor did, and blame may be heaped on me, I gave an open source prototype to the city of what is now the qr code system, and told them they should develop it internally, because it took me only 20 hours to develop; after all the previous company had persons go to prison, and I didn't want to have any risk of that happening.

Similar allegations of rape and/or abuse and/or fraud were sent to clients I had worked for in the past, and even a woman who worked for PSU as an accountant, whose only digital connection, was that I told vance that she was looking for a sperm donor, and I asked Vance for permission to do so. At this point I got Campus safety (police) and the Dean of students office involved, and also informed them that I had been doing vance's course work, which she admitted to Caylee Hogg.

In retaliation vance, through her attorney at PSU april kusters, told me that she would have me arrested if I myself reported vance to authorities, 42 USC §1983. Vance claimed in the circuit Court things such as I took her magnifier, or took her home work, which she was awarded money for, and were fraudulent. As a result of these actions by vance, I was left without a job and without a home, and suffered both injury to "business and property" but also extreme emotional distress, as a result of both Rico activities, but also gender motivated violence.

PAGE 75

Vance testified "so I felt I was trying to protect myself as much as I could. I don't want to seek any other vengence on him because I -- I just want to move on" In response to Attorney Cameron Taylor's question about what previous "transgressions" she had done. When Vance testified about her "friends" trying to extort me with the videos she also claims "I knew that these people weren't going to; they were protecting me". When I confronted Vance in a series of text messages the day after that event, and told her that "you failed to love me when you tried to destroy me": vance replies "I tried to protect myself, and do what was best for us. I've done some terrible things that U have to live with". (there is a page on this in the amended complaint exhibits)

Racketeering is defined by 1) the exhortion of money or advantage by threat of force. Protection 4a) immunity from prosecution purchased by criminals through bribery 4b) money exhorted by racketeers posing as a protective association. But the Supreme Court has determined that "If the defendant engages in a pattern of racketeering activities forbidden by these provisions, and the racketeering activities injure the plaintiff in his business or property" Sedima SPRL v Imrex Co 473 US 479, 495. This includes secondary effects "by reason of", by a "proximate cause" standard see Holmes v Sec Investor Prot. Corp. 503 US 258, 265-268, which is generous enough to include unintended, though foreseeable consequences of RICO predicate acts. This includes a leasehold which is subletted out to others, and it applies to 1099 contract employment, which I had also been running out of it.

PAGE 76

A theory is good if it satisfies two requirements: (1) it must accurately describe a large set of observations on the basis of a model containing only a few arbitrary elements (2) it must make definite predictions about the results of future observations.

In June of 2013 vance told Nicholas Gunzburg " Honestly, I am the physical abuser, I emotionally abuse, too. I was the first to cheat. It's not just him. I play the victim a lot in my life. I cower when it's not needed, and attract dominant people that want to dominate". (see Karpmans Drama Triangle)

But in doing so she commits 18 USC § 875, 1513, 1030, 1341 she tried to exhort me from ohio 18 USC § 875, 2261, 2262, then retaliated with tenants 18 USC § 1513, retaliated with my workplace 18 USC § 1513, gave people in europe access to my servers and email 18 USC § 1030, and lied to the circuit court telling them I took her magnifying equipment and homework 18 USC § 1341, including telling people I raped her! then threatening me with arrest for reporting on her 42 USC § 1985 with a PSU employee 42 USC § 1983 She may claim that she wasn't the one who did it, she only told these other people, her embellishments, so she isn't responsible for what my landlord does, or what these "friends" of hers, but § 1513 says "any action harmful to any person"

This is why vance's website of "transgressions" is so damaging, she doesn't want to be known as the little girl who cries wolf (or in her situation cries rape!) because it will ruin her credibility

14  Acosta's claim on page 17 is that the Court has had to seal 20 documents to protect personal identifying information of vance and others, to prevent additional publication of the images or other inappropriate material, and to prevent Barbe's attempts to violate the terms of his state Court criminal sentence.

The personal identifying information is not credit card numbers or bank statements, they are names, email addresses, and sometimes pictures. just because the material is salacious, does not mean they should be sealed. Moreover as Acosta should be aware "any content or viewpoint based restriction of speech is presumptively invalid and the government bears the burden to rebut the presumption".
United States v Playboy Entertainment Group 529 US 803.

"our recent decisions demonstrate that state action to punish the publication of truthful information seldom can satisfy Constitutional standards" Smith v Daily Mail 443 US 589

A person has no reasonable expectation of privacy in information he voluntarily turns over to third parties"
Smith v Maynard 442 US 735

"Even if the information is revealed on the assumption that it will only be used for a limited purpose and the confidence in the third party will not be betrayed"
United States v miller 425 US 435

PAGE 78

Moreover Vance signed an agreement with Barber waiving any privacy when she agreed to have transparency, and allow access to our social interactions, which we both describe as "Complete transparency". Moreover Barber has the right to a public trial under the 6th Amendment, which includes any evidence or testimony used at State trial. Moreover his motions to seal violate Amendment 1 US const. and Article 1 §10 of the Or. Const. being a collateral attack on the state.

Acosta did not follow the procedures outlined in Oregonian Publishing Co v United States District Court (citing Press-Enterprise Co v Superior Court I, II 964 US 501, 478 US 1) and Jury resource center v Carson 116 P3d 594, Allen v Employment dept 57 P3d 903. What Acosta intends is to dismiss the entire case on procedural grounds with prejudice, and then deny anyone access to the evidence or basis for the allegations, or even what the allegations are themselves.

While I admit perhaps my values of transparency are more than the Court (in 2012 I gave open access to every email, text message and phone call on my google account eg for 10 years when I ran for House District 36, and proposed to make state lawmakers wear body cams, open source all their documents, phone calls, etc) It has been in my experience, that the government only keeps secrets to shield itself from public scrutiny, the very same public scrutiny that I am trying to subject the government to. Moreover initially there was press interest internationally in the case, due in part to my appearance at the sheriffs press conference.

for all we know it may have effected the election of the washington County DA or judges, to have the public aware of these sorts of government misbehavior. "people in open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing" Richmond Newspapers v virginia 448 US 555, 572 555, 572

The court sua sponte sealed these documents, while not (1) allowing me to state my objections, and (2) the reasons were not articulated in findings. Only later did the Court even attempt the window dressing of requiring Vance to ask for the documents to be sealed, but even then it did not follow first amendment standards.

The district court needs to determine if the right to access extends to the type of proceeding, and second if public access would serve as a curb on prosecutorial or judicial misconduct Oregonian publishing Co v United states Dist. Court 920 F2d 1962, 1465 Even then the right to access "can only be overcome by an over riding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest" Press enterprise v California Superior Court 464 US 501, 510 which is even more strict than the "compelling government interest" test. "No interest in society justifies over riding guarantees of free speech and press and establishing a regime of censorship" Memoirs v Massachusetts US sct 1966

However Acosta has decided he intends to do exactly that, not merely with a few inmate images, but with every piece of intellectual property I've ever made or developed: every Christmas photo, piece of software, 3D Model, genetic or protein analysis, database cross referencing government documents, gone... destroyed, like the scene in Ferenheit 451, where instead of burning the banned books, they burn down the books and your house to go with it.

This is quite unlike other cases I've read, like Voicenet Communications Inc v Corbett US Dist Lexis 61916 (EDPA aug 30 2006) where the state was trying to prosecute a sole proprieter USENET service provider for hosting child pornography, and he was immune under 47 USC §230. The court there prevented destruction of his material, only the illegal content was destroyed, and the state was enjoined.

15  Acosta then goes on to describe the may 24 2017th order, and filings made during the original complaint, for which Vance has already had attorney fees awarded. I will analyze some of these because Acosta claims they are irrelevant, but they are not in fact so, he is making bald assertions without finding facts relevant to the situation.

on the may 24th notice told Barber to only file exhibits directly pertaining facts alleged against those defendants in this case, and to the legal theories directly tied to the legal theories and constitutional and statutory authorities plaintiff relies on.

PAGE 81

Moreover he is told to not file repetitive exhibits. Barber did not file the exhibits again, and now Acosta faults him for not filing the originals. If Acosta can fail to remember his own directives in his own filings, or Barber's filings in the case previously, then perhaps either it is as he claims bad faith, or alternatively that the mind is not a computer and has limited capacity for recall unless primed to remember something, like for example by writing it down in the same document before, or a built in habit through years of practice.

Acosta was asked to provide Barber with Bounds v. Smith access, on July 13rd Acosta said they weren't relevant to the case. But yet the problems in the amended complaint are by and large caused by lack of access to the law library. Had Barber been able to access the exhibits, and various rules of civil procedure in July, along with a litigation self help book, he would filed a properly pleaded complaint.

Moreover the exhibits all had a memorandum of law that explained why the relevant exhibit supported a claim or a legal theory. In retrospect I have learned they are commonly known as Balfour Briefs, which is why they contain academic texts, journals, studies. I recognize I am not an expert in psychiatry, for example, but there is ample evidence the medicine Vance has taken causes "serotonin syndrome". How else do I establish the veracity of my claims If I do not have an expert witness, and cannot rely on academic articles to verify my claims.

PAGE 82

Acosta claims that I sought to initate a special grand jury 18 USC § 3331-3334, refering to ECF 168 Pg 2 he states in that "While Barber does have a right to report criminal activity, neither cases nor the statute cited give Barber the right to convene a special Grand jury"

In re grand jury application 617 Fsupp 199 the court noted that the bill was introduced as explained: "The jury would not be limited by charge of the courts but would have the right to pursue any violation of criminal law within its jurisdiction. Citizens would be accorded the right to contact the jury, through the foreman, regarding any alleged criminal act"

"Congress has ample grounds for determining that a need exists for creation of special grand juries with substantial independance of the prosecutor and court" House hearings at 11 Id at 204

"18 USC § 3332 creates a right in every person to have information known by them concerning organized crime to be presented to the grand jury. It provides two ways for this to occur -- either the court may bring it to the grand juries attention or a united states attorney can. Plaintiffs have requested one or the other form of relief in the alternative".

Nowhere did he say that the allegations are frivilous, and being that one of the duties of a grand jury is to investigate, and Barber cannot, also Acosta says they have civil immunity but not criminal

immunity, A grand jury may be able to suggest relief, including that the person be removed from office pursuant to 18 USC 81964 I can also demonstrate that for example that if Donald Trump were to fire Bob Mueller in the "Russia investigation" that a special grand jury be able to pick up the investigation

The founding fathers believed in "the three boxes of freedom" the soap box, the voting box, and the jury box. Such an example is the british soldiers who killed civilians and were tried in military courts, and were pardoned or exonerated.

As Madison wrote "A popular government without popular information, or the means of acquiring it, is but a prologue to a farse or a tragedy; or, perhaps, both. Knowledge will forever govern ignorance: And a people who mean to be their own governers, must arm themselves with the power knowledge gives" 9 writings of James Madison 103

Since Barber is deprived of his civil rights, there is no reason why he shouldn't be able to pray for relief either by civil or criminal law, and notice to the defendants that misconduct may also be criminal may serve as a deterrant.

Neither Acosta or the defendants have said the allegations of the criminal complaints are frivilous, but that he is... not a prosecuting attorney, and therefore cannot convene the grand jury; which is an error that he has not distinguished, that a person has the right to present evidence to the jury

PAGE 84

Moreover the Complaint offers a detailed explaination as to why vance's actions are criminal, such as admitting to the trial court that she had sought $2000 from Barber in exchange for not having him arrested for fraud, based on an allegation that using joint funds to pay for utilities is fraud. For example vance testified that she gave access to my server to people in europe, who then tried to use the videos as Blackmail so I wouldn't publish vance's previous "transgressions" on an internet website. Vance's attorney said that any attempt to pursue "legal and disciplinary actions" would result in her having me arrested. Vance also asked washington County to destroy evidence in this civil case, including all online and physical devices, because I was using the evidence to sue them with in court.

Regarding state defendants Barber seperates negligence from criminal actions, where there is evidence or allegations from subordinates of intentional wrongdoing. The city of Portland for example commissioned outside counsel to give them advice on their "equity" programs, who explicitly told them not to use racial quotas, however they proceeded to use quotas in exchange for tax breaks. Rosenblum and Avakian were accused by their subordinates in lawsuits of intentional infringement of civil rights. In Ellen Rosenblums case the civil rights director accused her of intentional pattern of first Amendment infringment. In Avakian's instance the case worker for the civil rights division accused him of an intentional discrimination on the basis of race and religion, coupled with speeches he has given on the topic at marion County democrats meetings

Barber also simply ran out of time to prepare his amended complaint, because he did not get any of the documents in the case until nearly 2 weeks until the deadline. Even then Barber was divested of many of his court documents by the jail, because he had more than 1/4" of legal paper work 1 week before the deadline, and had to rely on the jail to give him access to his property so he could exchange parts of his documents. Moreover the law library is open 1 hour a week, and lacks federal materials, so Barber relied on people to send him by mail their own research on nothing alone but good grace. Acosta exhibited deliberate indifference to these court access problems, and wholly underestimates the difficulty of not having anything but pencil and paper, while being pro-se.

Before Acosta's May 2017 notice Barber asked Acosta whether it was appropriate for him to recuse himself, due to a paid speech he gave in favor of affirmative action and identity politics. I told him that I respect that he has lived his own unique experiences and I have also had mine and they have led to opposite conclusions. The most notable thing I took away from the website is the proposition that we need more "equal equality", which for me conjures up memories of Animal Farm by George Orwell, Harrison Bergeron by Phillip K Dick Ferenheit 451 by Ray Bradberry. These are themselves based on the socialist ideology of the Soviet Union, and the idea that the ends (equity) justify the means (coercion)

PAGE 87

Barber sought to appeal many of the issues he thinks acosta
overlooked and his collateral orders for access to the courts as well.
Barber asked to proceed class action in hope that he could
get an attorney appointed, because he lacked the resources
in the county jail to litigate his civil rights. Moreover younger
wouldn't apply in a class action scenario, and Acosta told Barber
in a hearing that people other than Barber can challenge
the statute even if they have not been charged.

Barber asked the court to take notice of the other case because
he had gotten other people to challenge the statute & asked
for judicial notice of 17 USC §511 because Acosta ignored
the statutory language of the act, and asked for copies of
documents because he doesn't have copies of them including
the may 24th order that he faults Barber for not following

Barber filed the amended complaint with enough to
overcome both younger and Heck, and wanted to appeal
those decisions before but he was not allowed to. Barber
also noted that the court was mistaken about the copyright
registration receipt, and that his allegations of 42 USC 12631
are distinguished from the reasoning of united states v
morrison, because in that case it was alleged a failure
to act was the basis of the claim, in not doing enough
to stop an abusive private party. whereas here Barber
alleges the government defendants themselves intentionally
harmed Barber with vance, while being aware that vance
is abusive, and both did so based on gender animus

PAGE 86

Barber cannot appeal these matters without bringing
them up in an amended complaint, so amending the
complaint is not to "harass" his opponents. Nor has Acosta
cited why the specific arguments are frivilous, he has largely
relied on bald assertions. Frivilous arguments are those
that are based on "indisputably meritless legal theory" or
"Neitzke v williams 490 us 319, 327 or "describe fantastic or
delusional scenarios" Denton v Hernandez 504 US 25, 31-32.
Attempting to distinguish a "witness" from a "complaining witness",
or factual findings of copyright ownership, or the "but for" Anti SLAPP,
being overbroad, or distinguishing unconstitutional "failure to act"
to restrain private persons vs intentional unconstitutional behavior,
is not "frivilous" or "made in bad faith"


Rather what Barber described is bad faith, trying to destroy
evidence, violating a contract, complaining for conduct which
vance consented and also performed. In the case of the
state, being on a probable cause affidavit to justify
in personam jurisdiction, trying to destroy evidence,
not turning over evidence, arguing that a statute is
unconstitutional as applied to certain circumstances, and
then applying it to those same circumstances. The fact
that Barber has been obstructed by the state defendants
privies, when a critical juncture occurs, or in failure to
provide adequate law libraries and legal supplies, and not
allow others to send him legal documents could also be in
bad faith. Acosta could also be considered to have Abused
discretion or used bad faith in this case previously:

Acosta has:

a| told me I should use the internet in jail to get my copyright records, even though, that too is forbidden by State Court order

b| refused to process the IFP application in case 18CV0085SAC for 5 months, filed with several people who want to challenge every one of these laws in the USA.

c| plainly ignored evidence, and claimed the original documents dont exist, even when he himself said not to resubmit them

d| refused to allow me have access to my own filings, which Borbe needs to refer to in objecting to his findings and reccomondations and amend the Complaint.

e| Refused to address collateral issues that impact these claims, Like subpoena Dures TECUM or admissions of ownership of Copyright, or Habeas Corpus Ad teshficadum to show proof of copyright ownership until after he dismisses them for failure to prove on a motion to dismiss that he is the Copyright owner.

f| Refused to provide Judge Simon the memorandum of law in support of objections, detailing why ORS 163.472 is flagrantly unconstitutional under Younger v Harris.

G| Refused to ensure that Borbe had constitutional access to the Courts, when asked by a Collateral order by Borbe

H | Sealed large masses of documents sua sponte, in violation of Amendment 1, and orders that Barber's entire intellectual property will be destroyed in violation of Amendment 1

I | Prejudiced Barber's claims by not allowing him to add John Doe defendants, and not allowing him discovery or access to the documents he filed, which would allow him to name state Defendants

J | uses conclusatory statements eg not the copyright holder, vance's liability "is not well taken", without examining the basis on new pleading.

H | Denies leave to amend when the complaint could be saved by a leave to amend, Lira v Herrera 427 F3d 1164, 1169-1170

I | Expects extraordinary proof of copyright ownership at the motion to dismiss phase, then argues that Barber should be sanctioned for attempting to meet this heightened burden.

An adversarial process is not one where one party is left deaf, blind, and schacked, and it is a perverse set of incentives to allow defendants to unconstitutionally violate a parties rights, and then use the circumstances of confinement to frustrate, obstruct, and impede any ability of holding them accountable, and grant them both immunity and damages.
Hernandez v Whiting 881 F2d 768, 770-771

PAGE 90

The first amendment "right to petition" requires "breathing space", and a margin of error is required, or else it will chill speech, and this has applied to the subject of sanctions. The Supreme Court has said that sanctions may not be imposed against persons who bring litigation unless the litigation is both objectively and subjectively without basis Prof'l Real Estate Investors Inc v Columbia Pictures Indus Inc 508 US 49, 60-61

Given that Barber has given a factual and case law based justification for all of the issues Acosta cites, sanctions themselves are unwarranted. Indeed Acosta either disagrees with supreme court decisions about whether a complaining witness may be held liable. The procedural matter of failing to state a claim given the particular circumstances of obstruction, impediments of Court Access, should not be considered sanctionable. See Hughes v Rowe, 449 US 5, 14-15, 101 sct 173 (1980 Acosta may award costs, and Barber may try to have those costs paid for by the county jail in a seperate 42 USC §1983, but the label of sanctions should not be applied, especially dismissal with prejudice for failure to state a claim. Instead Barber will submit a proposed amended complaint, and ask for appointment of counsel, and due to tenative release use Information technology to improve upon the proposed amended complaint after 12/13/2018. He can then use things like hyperlinks, and the tort treatise to accurately plead a claim for relief.

16 | Acosta claims that the tort of Alienation of affection is not a recoverable tort in oregon law. However it may be under federal law under §1983, because family integrity is one of the fundemental rights protected by the 14th Amendment.

"The fundemental liberties protected by the Fourteenth Amendment's Due Process clause extend to certain choices central to individual dignity and autonomy, including intimate choices defining personal identity and beliefs see eg Eisenstadt v Baird 405 us 438, 435; Griswald v Connecticut 381 us 479, 484-486. Courts must exercise reasoned judgement in identifying interests of the person so fundemental that the state must accord them it's respect. History and tradition guide and discipline the inquiry but do not set its outer boundaries. When new insight reveals discord between the Constitutions central protections and a recieved legal structure, a claim to liberty must be addressed."
Oberfell v Hodges 576 U.S.    (2015)

"Four principals and tradition demonstrate that the reasons marraige is fundemental under the Constitution ... First premise of this Courts relevant precedents is that the right to personal choice regarding marraige is inherent in the Concept of individual autonomy"... "second principal ... is that the right to marry is fundemental because It supports a two person union unlike any other in its importance to the Committed individuals"

"Third basis for protecting the right to marry is that it safeguards children and families"... "finally this courts cases and the nations traditions make clear that marriage is a keystone of the nations social order" Id

"The freedom secured by the Constitution consists in one of its essential dimensions of the right of the individual to not be injured by the unlawful exercise of government power"..."thus when the rights of persons are violated the Constitution requires the redress of the Courts" Id

"the dynamic of our Constitutional system is that individuals need not await legislative action before asserting a fundamental right, the nations courts are open to injured individuals who come to them to vindicate their own personal stake in our basic charter. An individual can invoke a right to Constitutional protection when he or she is harmed, even if the broader public disagrees and even if legislature refuses to act. The idea of the Constitution "was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principals to be applied by the Courts"" Id

"no union is more profound than marriage, for it embodies the highest ideals of love, fidelity, devotion, sacrifice, and family. In forming a union two people become something greater than they once were"

Barber and Vance entered into a Covenant marraige Contract, which is a religious marraige contract with an arbitration Clause requiring couples therapy and informal dispute resolution before divorce, eliminates "no-fault" divorce, and prevents things like drug abuse, dangerous behavior, while at the same time prevents divorce in the case of physical or mental illness, it also included complete transparency.

The reason for this was a recognition that Vance has poor mental and physical health, and to be an arbitrage against risks, like for example mandating life insurance coverage. It didn't make divorce impossible, just more difficult, and provided for a reasonable set of expectations of each others behavior, even after the divorce (children)

Vance went to a government doctor (OHSU) that prescribed medicine with adverse side effects (Prozac, Zoloft), which has been shown to be worse than placebo, and based on a disproven theory of depression and serotonin, when Vances real problem is about adrenaline and anxiety biologically speaking.

Vance then tries to remedy the side effects with over the counter drugs, and ends up hospitalized multiple times for wanting to kill herself. She cant get a psychologist at OHSU, her primary care provider, and so goes to the Lewis & Clark community Counseling Center. The Counseling center teaches feminist therapy, liberation psychology, and critical theory, neomarxism, critical race theory, etc

Lewis & Clark is required to teach these materials because of rules promulgated by the Oregon Health Authority under Oregon law ORS 413.450 and its predecessor SB 97 2011 moreover Vance was exposed to this because she was learning special education, and the Oregon department of education also makes it a requirement as well.

The Oregon Health Authority requirements mandate "power, privilege and oppression accross personal identities" whereas Oregon Department of Education requires "All educators must be prepared to effectively address issues of social justice, institutional racism, and privilege, and to embed culturally responsive curriculum into their lesson planning and discussions"

while "cultural competency" sounds secular, because it could be defined as learning Spanish and/or world religions, etc, what it really is code word for "critical theory", otherwise known as cultural marxism. The dean of the mark o Hatfield school of Government at PSU calls it "a small part of the attempt to reconfigure higher education on a partisan ideology of social engineering" and "Ideological litmus tests".

critical theory originated with Antonio Gramsci, Max Horkenheimer and Theodore Adorno as marxists who wanted to uhlize "the culture industry" or "cultural Hegemony" to defeat Capitalism "socialism is precisely the religion that must overwhelm christianity ... in the new order, socialism will triumph by first capturing the culture via infiltration of schools, universities, churches and the media by transforming the consciousness of society" —Gramsci—Reader

PAGE 95

Because of the so called "Imposition of diversity statements on faculty hiring and promotion by Oregon universities", Lewis & Clark employed Theresa Mcdowell whose seminal works include "class and classism in family therapy practice, a feminist, neo marxist praxis" and "Applying critical social theories to family therapy practice."

Their "Introduction to family therapy" CPSY 504 class teaches "Students will apply systems, social construction ist and critical social thought to work in their professional fields. A critical contextual understanding of how intersecting identities/ Social locations (eg race, class, gender, sexual orientation, abilities, national origin) and societal/global systems of privilege and oppression shape family well being is emphasized throughout".

The problem with this is that marxist feminism is predicated on the premise that the nuclear family and marraige is a patriarchial system which perpetuates class through the use of money, inherentance, and power. They advocate for a cultural revolution and to destroy monogamy, the patriarchy and the family unit, whose stability and financial resources would be supplanted by communist structures like the welfare state

It also creates a victimhood perception, that causes "karpmans drama triangle", sensitizes persons to trauma/fear, removes personal agency and locus of control, increases negative thinking, all traits that are adverse to someone with a history of Anxiety/Depression like Vance is.

PAGE 96

This faucet seems intentional, the College hosts a group "counselors for social justice" whose Facebook page features an infographic with a anthropromorphic flame stating "It does not require a majority to win, only an irate minority keen to set brush fires in peoples minds" and whose papers advocate to "operationalize" patients in "social justice", their journal called Social action purports its cause is "social transformation towards social justice". This seems to be a part of the feminist maxim "The personal is political", in regards to Counseling psychology.

Barber attended one session with the therapist on the premise that it was going to lead to marraige Counseling, and the very first thing to come up was "The circle of power and Control" with its white privilege, male privilege, straight privilege, etc. The therapist could not tell me why this was relevant to me when vance is abusing drugs and being physically abusive. She didn't understand this is a basterdization of enlightenment era philosophy specifically "on liberty" by Isaah Berlin where "x is free/not free from y to do/not do or be/not be z". That a responsibility is a restriction on liberty, that requires inherently the power and Control over the thing one is responsible for (money/bills).

Either in retaliation of the assertion that their therapy was illegal, or prejudiced by my opposition to their views, they refused to have Couples therapy. According to vance they told her to seek extramarital relationships, and covertly arrange a friend in ohio she had sexual/romantic feelings for to buy her a plane ticket to see him, and vance started going to some "polyamory" meetings without asking or telling me about it.

PAGE 97

In addition vance started to get weird ideas like I had been raping her, that marraige is a form of patriarchial control of womens bodies, that she is living with Stockholm syndrome, she shaved her head bald (not that I cared), and that we should have a threesome. I tell vance that I'd rather have stability than kinkyness, she says she wont be jealous, and it will be good for our relationship, and that she wants me to be the seducer.

lo and behold vance becomes angry and assaultive when I ask our neighbor over to dinner, because she thinks I am trying to cheat on her by asking her to go to the erotic ball with us. Nevertheless vance has herself been cheating on me and going on dates with men at these poly amory meetings she neglected to tell me about. I find this out by downloading her facebook messages and emails on her computer (per our contract) when she is arrested.

vance proceeds to try to extort me from oHlo with a restraing order, and the portland police do nothing about it, and tries to force me out of our home. Later when vance is back in portland, she has the government paid divorce attorney and again tries to get me fired with the same fraud accuasations of using our joint funds to pay for utilities. vance's attorney tells me that she will have me arrested for legal / disciplinary actions against vance, and it turns out abrogate our marraige contract, and she reports that she too is a feminist to the bar. (the PSU webpage includes banners with a list of feminist books and mostly female staff.)

PAGE 98

The state of oregon, and its many subsidiaries, every time took adverse actions, from malpractice, to legal stigma against males, to equal protection of religious covenant marraige. Had this happened without government intervention acosta may be correct, but the fundemental part of Constitutional rights is to be free from government intervention in our lives absent due process. If "cultural compentancy" took it's ideas from dianetics and scientology, which also has ideas like "suppressive individuals", and alienates it's adherents from family member who are not followers, the legal result would be the same but it may not be as "politically correct".

I cannot see what is so objectionable about making a person who signed a contract agreeing to mediation with first impartial friends/family members and then therapists or clergy, when they know and admit they have a long history of emotional problems. But it appears that this is a mandatory part of the federal arbitration act, and the state denied me due process in abrogating this part of the contract.

In any event in july of 2015 vance says "I'm interested in seeing if we could patch things up romantically as we have so much in common", and "I love you and every one else bores me", "I always love you". This may be but at this point I told her "you failed to love me when you instead tried to destroy me" and she says "I'm crazy, emotional, and confused," "I tried to protect myself and do what I thought was best for us" "I've done terrible things that U have to live with."

I acknoledge that I chose to marry someone that I knew had mental illness, and that there are risks with that choice, but vance couldn't have used the government as both a sword and a shield, without the unconstitutional ideological indoctrination and discrimination it is based on. My strategy of Diet, exercise, recreation for stress and to slowly have her confront her phobias (heights, insects, groups of people, inadequacy, riding bicycles), and taking responsibility for her emotions, spending, work gradually may have worked.

Ms Olsen thinks I'm angry at vance for divorcing me, but vance describes me as a robot, because I am driven by codes and rules. Among those "those who live by the sword die by the sword" and "do unto others as you would have them do unto you." In every instance vance initiates conduct that she herself is appalled when it is used against her. Also in every instance I begin with a peace offering, for example I offered vance to remove the videos and pay her in june 2018. More importantly I am angry with the government, they are supposed to be "professional", "experts", and "unbiased."

I do love vance, and could have taken her back, if she had tried to fix the damage she caused, but when she intentionally and maliciously abuses government power as a weapon she must be stopped. Vance admits that "I'm the physical abuser, I emotionally abuse too ... I play the victim alot in my life". The government need to wisen up that Administrative and legal abuse by women is a serious problem, as we see with Brett Kavanaugh and Bob Mueller.

PAGE 100