In the United States District Court for the District of Oregon

Benjamin Barber

vs

Vance, et al

Case no 16-CV-02105-AC

Objections to findings and Recommondations

1 | As you can observe on page 8 of the complaint, there are different numbers, because the complaint was not ready when it was sent, Barber had to choose between sending something flawed and sending nothing. The reason for this was entirely preventable by the court, and caused by constant obstruction and interference by privies in this case. Barber did not get the "suppliments" menhoned by acosta on page 15 of the FBR until Feb 21st, Barber had made arrangements to have them sent by mail to the jail in July 2017 but was denied by the jail, furthermore even after he did recieve them from RCR Attorney Jon weiner after his withdrawal as Counsel, the materials were taken because they exceed the "1/4" rule implimented by the jail, and to get access to them required a deputy to get them out of his property box if and when they feel like it. Thus most of the time from Feb 21 on und was attempting to reduce 2000 pages of evidence into an organized set by topic and timeline. This is refered to as "marshaling the facts" in a chapter "legal research" I later aquired. Moreover the jail has insufficient law library access, 1 hr a week, and no Federal materials except for 42 USCA 1983, 28 USCA 2241, 2254, 2255. For legal research I had to rely on people from the 4chan and reddit community, themselves untrained in law. I have attached exhibits to the previous objechons, and stress that even today 11/25/18, I am in disciplinary segregation without access to legal papers, literally for filing Federal Habeas Corpus for myself and Jay Leatherwood and Jaycob Hotten to challenge this statute.

PAGE 1

Because Vance and the State are joint actors with the County, they shouldn't be allowed to benefit from unlawful acts and obstruction by the County under the doctrine of in pari delicto, and Barke should be able to submit a second amended complaint under FRCP 15 due to excusable neglect after he is released on December 19th 2018

2 Acosta claims the claims are still barred by Younger & Harris, when he has not undertaken any findings of any of the younger factors, and claims that the "challenges" do not directly implicate Copyright law. He claims the Copyright claim is not viable and does not justify removal of criminal proceedings to federal court, and does not serve as an exception to Younger and Heck, and relies on no law, or decision in support of his assertion, he should have to rely on authorities.

2a Copyright Complete Preemption
Pursuant to 17 USC § 301 all laws that are under the subject matter of Copyright, and enforce rights equivalent to copyright are preempted and Congress intended that Copyright litigation only take place in federal court, meaning that it forms an In Rem jurisdiction. moreover state claims preempted by 17 USC § 301, are completely preempted, and are converted into federal claims. "arising under" federal law subject to removal and Younger's exception for "flagrantly and patently" unconstitutional statutes. 401 US at 53-54

The gravamen of the charge is that I disseminated an intimate image of myself and vance, without vance's consent, is preempted because "a copyright owner has the capacity arbitrarily to refuse to license one who seeks to exploit the work" see Fox film Corp v Doyle 286 US 123, 127" Stewart v Abend 495 US 207, 228-229

PAGE 2

moreover any post conviction relief or habeas corpus challenging ORS163.472 would also be required to be filed in the US District Court pursuant to 28USC§1338(a) see Just Med v Byce 600F3d 1118, 1123-24 citing the T.B. Barnes test T.B. Barnes v Eliscu 339 F2d 823,828 as stated in Scholastic Entm't v FoxEntm't Group 336F3d 982, 986 (9th cir). This post conviction relief has been removed to federal Court in case no 18CU1870 and the federal court has pendant jurisdiction to grant post conviction relief.

moreover the Defendants are estopped from claiming that ORS163.472 is not preempted by 17USC§301, obviously the first part of the preemption test is satisfied because images are in the subject matter of copyright, as for the second part of the test, equivalency I refer to the trial transcripts

Atwood states "we're not talking about the content of the [images] the dissemination itself [is] the focus of the statute". (transcripts pg 80) "I think defense counsel's argument that this statute refers only to disseminating images over the internet is a testament to that"; "It's a testament to the fact that things that are disseminated -- disseminated over the internet are almost impossible to take down and can reach hundreds of thousands of people in the course of a couple of hours" (transcripts page 75) "If -- to say that a person gives an image to some body, that they give up any right to be offended for disseminating that image further is, completely, I guess Backwards from a lot of other crimes" (transcripts page 74)

Vance said: "I reporting on part of these videos. I don't want them online. And you know, it's a copyright issue" (transcripts pg 246) "They were made consentually, and he recorded them, I knew they were being recorded" (transcripts pg 295) (transcripts are in claim exhibit)

every circuit Court that has considered whether 17 USC §301 completely preempts state law claims has ruled affirmatively Globerange Corp v Software AG (691 F3d 702, 708, Dunlap v G&L Holding group 381 F3d 1285 (11th cir). In the 9th circuit there are a litany of copyright preemption cases that deal with copyright preemption see Maloney v T3 media Inc 853 F3d 1004 (calling publicity claim a 'thinly disguised copyright claim') James Jordan video Inc v Canada Inc 617 F3d 1164 (publicity claim in pornography) Mongoe v Mayox magazines 688F3d 1164, 1177 (privacy claim in honey moon photos) garcia v google 743 F3d 1258 (privacy and control of likeness claim in footage used in Hate speech that led to death threats) Del Madera Properties v Rhodes and Gardere Inc 820 F2d 973, 976 (promise not to publish blueprints)

| 2b | Acosta cited no reason for his conclusion, he did not use the preemption test used in grosso v miramax FilmCorp 383 F3d 965, 968, he did not claim that criminal claims cant be preempted (see state v Oidor 292 P3d 629 for preemption of ORS 164.865 prohibiting sale of sound recording without consent), he does not say criminal claims cant be removed (see 28 USC 1455, Virginia v Rives 100 US 313; South Carolina v Moore 447 F2d 1067; people v Goldwag 42 misc 2d 356 ; state v cegielski 124 wis 2d 13;) he does not disclaim that state law claims are completely preempted by Copyright act (Rociszewski v Arele Associates 1 F3d 225, 232-233). He does not dispute that I filed a notice of removal and that it was served on the defendants (claim 1 exhibits pg 997, transcripts pg 117 (note transcript are located in claim 1 exhibits), he does not Refute that complete preemption or removal would render the state court absent of jurisdiction to proceed.

This court should make such determinations of facts and law, so that they can be properly reviewed by the appellate court, specifically because the state Courts are forbidden from making those findings.

2C) Even if it is too late to remove, and the removal was procedurally defective, under the complete preemption doctorine, the allegation that Barber violated ORS163.472 is converted to an allegation that Barber violated 17USC§106 see Tech based Soluntionary Electronics College Inc 168 F supp 2d 375, 379-380, and as such it lacked subject matter jurisdiction because Congress vested exclusive jurisdiction in the federal Courts see HR Rep 101-282 101st Cong 1st sess 1989 at 1, and as such it is not entitled to full faith and credit 28 USC §1738 See Fehl habe v Fel habe 681 F2d 1015; In re Brady Gas corp 936 F2d 212; Pension Trust fund for operating engineers v Triple A Machine Shop 942 F2d 1457; ORS 43.220. Similiarly 17 usc §201 (e) was passed by Congress to deny full faith and credit to judgements of a state Court see HR Rep no 1476 94th Cong 2d sess 130 1976

2D) The mohun to remove should be liberally construed united states ex rel Echevarria v Silbergltt 441 F2d 225; Kerbow v Kerbow 421 F supp 1253 insofar as Barber submitted a mohon for preliminary injunction in federal Court, and a notice of removal in state court, and both menhun 17 USC §301, 201(e), 51160 and were submitted together, and Barber typed "states are expressely prohibited and C preempted" which was a typographical error meaning "completely preoompled". See claim 1 exhibits pg 997- 1000

In state Court DA notified judge. Barber submitted a removal pehhon, did not read it, and found it not compelling, when state court should have not proceeded to judgement see 28USC§1455, Virginia v Rives 100 US 313; Virginia v Paul 148 US 107; transcripts pg 117 Injunchons are appropriate for cases removed or removable French v Hay 89 US 250; Pacific tel & tel Co v Agnew 5 F2d 221
PAGE 5

2e | Barber has the right to assert the rights of third parties affected by the order of the state court, including those not before this or the state court powers v ohio 499 US 400, 410-411; Eisenstadt v Baird 405 US 438; Griswald vs Connecticut 381 US 479; Doe v Bolton 410 US 179. MR Andrew Guy Moret recieved a copyright license to use the work, moreover chad Dykehouse did as well, they along with Jay David Leatherwood petitioned the Court in Case no 18CV00855-AC to abolish ORS163.472 and all similar state laws. moreover Barber is assisting Jay David leatherwood and Jaycob patrick Holten who have been convicted of ORS163.472 to challenge the statute in Habeas Corpus proceedings. Moreover Barber gave the images to people like professor john Barber at university of washington and people from reddit and 4chan with a license. lastly thousands of people who viewed the images and those deprived of viewing the images are affected, because the "Creative commons share a like" license is infringed by the State, and they have a consttutional right to view and copy the work, see Brown v Electronic merchants Association 131 Sct 2729


Given that washington County Continues to prosecute this law despite its dubious Constitutionality, and considers the place where the victim resides as the location of the crime, and given that vance had used a DMCA takedown in videos uploaded by other people for the purpose of preservation of evidence, it is clear that the federally protected rights are not able to be defended against by a defence against a single Criminal prosecution, and whose injury to constitutional rights extends further than the plaintiff. see younger 401 US 37, 45-46 Literature Inc v Quing 482 F2d 372; Hamar theatres Inc v Cryan 365 F SUPP 1312

2F  As shown in the complaint exhibits, the Deputy Thomas Duenis had no idea where the crime was actually committed when he applied for a arrest warrant with his affadivit of probable cause, nor did they ever establish that the crimes occured in washington county, meaning pursuant to Amend ment 6 of the US Constitution and Article 18.1 of the oregon Constitution the court did not have personal jurisdiction over Barber. Compelled to put something on the affadivit he put that Barber was at vance's apartment on April 1st when he committed the crime.

The language of the statue says "caused to be disclosed", and does not have any jurisdictional language, it is absurd to allege that I caused to be disclosed at vances apartment, either by burglary or by her using the website, because I didn't transfer or publish it there, the ISP "caused to be disclosed" in the country of cyprus. The state could have relied on either the IP address, or the account information stating portland and newberg, voicenet Comm'ns v Pappet 2010 US Dist lexis 95619 at 30, instead it used vance's home which is contrary to Johnson v United states 351 US 215.

Neither cases that lack in personam jurisdiction, or that were fraudulently initiated, qualify for full faith & credit, 28 USC 1738 see Fidelity Standard life Ins v First Natl Bank & Trust Co 382 Fsupp 956 affd 510 F2d 272 (fraud); In re Brady Municipal gas Corp 936 F2d 212 (jurisdiction). They also Constitute an exception in younger for cases brought in bad faith, because bad faith means a "failure to obey obligation or duty", and it is clear from Duenis's other conduct his assertions were made with reckless disregard for the truth wilson v Russo 212 F3d 781, 787-788 see transcript pg 347-348 where he disregards our agreement and evidence, and says "Basically" he said he did it because "she accused him of rape" pg 30 complaint

PAGE 7

counsel for the state claims that this is a brady violation, that Barbe can remedy in state court, however all of the state court remedies have been exhausted, and it is not merely a brady violation but a matter of being void Ab initiv see Pullman v Allen 446 US 522, 549 and younger is limited to "good faith" younger v Hairis 401 US at 54

26  younger also does not even address injunctions made in aid of the District Courts jurisdiction, as stated in 28 USC § 2283 and authorized by 17 USC §502, 511 (a), younger does address comity younger v Hairis 401 us at 44. As stated previously Copyrighted works form the basis of the federal courts In Rem jurisdiction, and disputes over ownership, use, or distribution of images is properly "arising under" Copyright law College of Charleston Found v Ham 585 F supp 2d 737. Congress intended that the exclusive jurisdiction of all state claims preempted by Copyright 17 USC §301 to be in the Federal district court see HR Rep no 101-282 101st Cong 1st sess 1989 WL 229376 at 1. Congress intended states to be subject to the same rules as private defendants Id at 2. 17 USC §511.

Congress expressly prohibited the state from expropriating my copyrights 17 USC §201, and completely preempted ORS 163,472, but nonetheless the state court as Acosta confirms that the state intends to destroy not only the copies of the works, but all physical and online devices. This was done for the stated purpose that I am using them to "harass" the defendants with this lawsuit. Moreover since Barbe would like to continue using his copyrights and license them to others, an injunction pursuant to 17 USC §502 is neccessary in aid of the federal court jurisdiction see Federal savings & Loan Ins Corp v PSL Realty Co 482 F supp 74; Corley v Entergy Tech Holding Co 297 F supp 2d 915 James v Bellotti 733 F2d 989; United States v Alpine land & Reservor Co 174 F3d 1007 Ex parte baldwin 291 US 610 for examples of injunctions in aid of In rem jurisdiction

2H  Younger also says that abstention is not warranted when the irreparible injury is both great and immediate, and given that the state court intends on destroying every piece of intellectual property I have, in addition to spoiling evidence for this case, that qualifies as an exception see younger 401 us at 45 citing exparte young 209 us 123. normally in cases like those the courts at least require a hearing; when a court tries to sieze large quantities of material for destruction or absolute suppression. see Heller v New york 413 us 483, 488; Fort wayne books v Indiana 489 us 46; Aquantity of Copies of books v Kansas 378 us 205; Bantham Books Inc v Sullivan 372 us 58; marcus v Search warrant of property 367 us 717. Instead Acosta seems to endorse the destruction of materials and finds no first amend ment problems with the destruction of everything from christmas photos, circuit blueprints, and genome data.

2I  Younger also said that it does not apply to flagrantly and patently unconstitutional statutes Younger 401 us at 53-54. ORS 163.472 is such a statute, and the courts should compel the defendants to name one person or situation that they could constitutionally charge which does not violate the Constitution or is not already covered by another statute, or the Court should make specific findings as to why it is not flagrantly and patently unconstitutional. Barber provided this Court a 30 page memorandum of law detailing why it is, and under United States v Playboy Entm't Group 529 us 803 "content and viewpoint based restrictions of speech are presumptively invalid and the government bears the burden to rebut the presumption." moreover since it is completely preempted by 17 USC§301, and expressely preempted by 17 USC§201 for Copyright owners, and 47 USC§230 for anyone else who was provided the content by another, there is nobody the state can punish, much less shift the burden to "A reasonable person" standard.

25) Heck only refers to a case where he only sought damages and not injunctive relief see Heck v Humphrey 512 US 477, 479, in contrast to this case where just recently Barber asked for a three judge panel pursuant to 28 USC § 2284 and additionally filed a memorandum in support of the injunction. Moreover Heck does not say that the court cannot issue habeas corpus under 28 USC § 1651, 1454, 1455, or exercise pendant jurisdiction of ORS 138.530 due to 28 USC § 1338(a) in the

In Heck 512 US 487 it says that the plaintiff must show that the conviction has already been invalidated, I believe this means the conviction is void and not merely voidable, because a law completely preempted is considered converted to a federal claim and void, moreover United States v Playboy Entm't Group 529 US 803 contends that it is already presumptively invalid. Moreover the decision in Heck is limited to § 1983 and not 17 USC § 504 or 18 USC § 1964

and to the extent that Barber is going to be released on Dec 15th and will be on probation, and not eligible for Habeas corpus, Barber believes that such a practice can shield the state from federal review, and would overrule Heck on the basis that district courts can issue Habeas Corpus pursuant to 28 USC § 1651

As the US Supreme Court in wallace v kato state that false arrest and false imprisonment claims statute of limitations begin to run before the conviction is set aside wallace 549 US at 387-388 because the false arrest ends once legal process begins, but in some cases it doesn't impugn the conviction, and at 399 n. 3 cites spencer v mckenna 523 US1, 21 stating plaintiff may bring § 1983 claim if they are not "in custody" under 28 USC § 2254 Id at 25.

PAGE 10

2k | Younger also has an exception for harassment, and vance has been shown to engage in this pattern of conduct, that she excuses on the bias of "protecting" her. She admits she even gave access to the very same videos to people in europe. Vance has used threats of arrest, which she admitted in testimony was to get money, and she authenticated an exhibit where she also admits to levying false rape accusations. Vance admitted in court we originally made porn because we thought we could make a lot of money, and that she knew in 2011 that intimate images were being shared, because she was a participant. Barber has brought evidence that contrary to her statements we had agreed to "complete transparency" in our marriage, which she relied upon to give access to my FTP server to unauthorized people.

2L | Just as occured in Dombrowski, Barber had been a civil rights activist prior to prosecution, and the prosecution by the state has the effect of prejudicing and time barring complaints against it and companies (like the companies in the tech industry it gives tax abatements to for race and gender quotas). This is due in part because washington county jail refuses to allow the materials I needed to be sent to me, and lacks federal materials in its law library. These civil rights claims cant be defended in a state criminal trial, and the court should issue an injunction long enough to resubmit a §1983 for them after I am supposed to be released on probation Dec 15th 2018. Given the revocation for going on the oregonian, it is likely the county court will revoke again, and it will further prejudice the claims.

Ellen Rosenblum likewise did not enjoy legislative immunity, because she like any private citizen can petition to have a bill submitted, and they are not "integral steps in the legislative process" Bogan v Scott - Harris 523 US 44, 55, the AG is a judicial officer and bills do not cross her desk; nor does she act as counsel for the legislature, they have their own counsel. Defendant for the state could assert first amendment or SLAPP immunity, which I will address as well, because he will.

3D  Acosta says that my claim that Vance should be liable despite Anti-SLAPP "is not well taken", but he merely refers to the previous order which was made without prejudice, and also flawed because he relied on an authority pertaining to a witness as opposed to a "complaining witness", and attorney client privilege, and also erred by ignoring "substantial evidence", and improperly weighed vances evidence as to probability of prevailing young v Davis 314 P3d 350, 356

Oregon intended that california case law would inform oregon courts see Pages v Parsons 249 oreapp 445, 461-62, "a cause of action may be triggered by' or associated with a 'protected act', but it does not mean the cause of action 'arises from' the act kolar v Donahue, Mcintosh & Hammerton 145 cal app 4th 1532; Nauellier v sletton 29 cal 4th 82, 52 P3d 703, 708-709 "the gravamen of an action is the wrongful and injury-producing conduct that provides the foundation for the claims Renewable Res. Coal inc v Pebble mines Corp 218 cal app 4th 384, Thus the "but-for" basis is not the same as "arising from" see David Jordan Benel v universal city studios 859 F3d 1184, 1191-1192. To "arise from the conduct must be in furtherance of the right to free speech and not just associated with it Deep photonics Corp v Lachepelle 282 oreapp 533, 385 P3d 1126 ,1135 and Censorship is obviously not "in furtherance" of free speech.

PAGE 15

2m | youngers focus on comity and abstention also conflicts with the intellectual property treaties NAFTA and WTO, in NAFTA Article 1714 it states that member states must "provide for safeguards against abuse of procedures", and "do not entail unreasonable time limits or unwarranted delays" and Article 1715 (6) limits immunity of any public authorities or officials to qualified immunity and shall provide "expiditious remedies to prevent infringments".

3 | Acosa mentions different immunities, but does not distinguish between common law, and statutory law, 42 USC §1983, 18 USC §1964, 17 USC §504, or use the functional analysis test used in §1983 cases. It is well settled that Congress can displace common law immunities with statutory law, and that the court borrowed common law tort immunity from §1983 in a way that differs from common law, including the use of functional analysis. These common law based immunities do not apply to 17 USC §504, whose immunities are based on 17 USC §511 and are reaffirmed by the WTO and NAFTA treaties.

3a | 17 USC §511 clarified "that states, instrumentalities of states, and officers and employees of states, acting in their official capacity are subject to suit in federal court by any person ... and that all remedies can be obtained in such a suit that can be obtained in a suit against a private person" HR Rep no 101-282 101st Cong 1st sess 1989 WL 229376 at 1 Congress relied on both Article I and Amendment 14 Id at 7 and is based on the Rehabilitation Act Amendments of 1986 which is based on Amendment 14 Id at 12, and concluded "If states violate the copyright law, they are injuring property rights of citizens" Id at 8 the law applies to employes of a state instrumentality, ie judicial ones.

In enacting 17 USC §201 Congress anticipated and prohibited states and their instrumentalities from expropriating copyrights, and in 17 USC §301 and 17 USC §1338(a) prohibited them from having any jurisdiction to do so, therefore the states are taking property without compensation and also violating due process by an established procedure. Given that the deprivation was also an infringment of speech, it is a valid prophylactic measure because the government uses "strong medicine" for the protection of first amendment rights see Broadrick v Oklahoma 413 US 613 moreover the state does not provide any post deprivation remedies, because it lacks subject matter jurisdiction, like the supreme court said in Cent va Cmty College v Katz 546 US 346, 362; Tennessee student assistance Corporation v Hood 541 US 440, 450-451 that In Rem jurisdiction like admirality and bankruptcy cases do not implicate state sovereign immunity to nearly the same degree, but copyright is intangible property so you cannot merely request return of a specific ship or specific property.

While Bankruptcy is an Article 1 power, and the supreme court in Seminole tribe v Florida 517 US 44 said Congress could not use Article 1 powers to abrogate state sovereignty, it distinguished Cent va Cmty College v Katz on this ground, and on the ground of uniformity power which is one of the reasons Congress abrogated immunity for 17 USC §511, Congresses need for uniform bankruptcy laws and copyright laws, not just for interstate commerce but international law is vitally important. I know of no authority regarding if Congress can waive sovereign 11th amendment rights pursuant to treaty powers. Scalia in the decision claims it over rules Hoffman v Connecticut Dept of income maintance 492 US 96, 104 and that the framers had a concern for lack of uniform patent law, copy rights, Commerce, naturalization, and bankruptcy (Cent va cmty college 546 at 384, and it implicitly overrules Seminole tribe

3B | In the 9th circuit Romano v Bible 169 F3d 1182, 1186 the presumption is that people named in the complaint are neccesarily sued in their individual capacities, if the Complaint doesn't explicitly say in what capacity

3C | The supreme Court has developed a functional test to §1983 immunity Antoine v. Byers & Anderson Inc 508 US 429, 434-436. Thus the District attorney does not enjoy absolute immunity for the advice given to Deputy Duenis during the pretrial investigation see Burns v Reed 500 US at 492-496, the exparte revokation hearing due to speaking on the oregonian Kalina v Fletcher 522 US 118, 131; Cruz v Kauai County 279 F3d 1064, 1067-68 9th cir; similarly not immune for trying to destroy devices for the stated purpose that I was using the evidence to "harass" defendants in this §1983, because that had nothing to do with prosecution of the statute but interference in this case.

moreover Beth Roberts likewise was not acting in a judicial role in that instance, and both of them had been informed that they lacked subject matter jurisdiction, and immunity only lies when a judge or a DA act within their jurisdiction see Bradley v Fisher 80 US 335, 352; Pullman v Allen 446 US 522, 549

likewise van cea as a "complaining witness" does not enjoy absolute immunity, because the complaint occured outside of trial and even if she testifies in court Kalina v Fletcher 522 US 118, 132

Deputy Duenis who is not named in Acosta's F&R but is mentioned in the complaint is only afforded qualified immunity, but he may be indemnified by DA Atwood who he sought counsel from during the pretrial investigation; Malley v Briggs 475 US 335-340-41

PAGE 14

| 3e | Defendant Vance only asserted a Defect in Fed R Civ 8a and did |
|    | not assert SLAPP, Acosta did for Vance "It is not our proper function |

Defendant Vance only asserted a Defect in Fed R civ 8a and did not assert SLAPP, Acosta did for Vance "It is not our proper function to make or develop a party's argument when that party has not endeavored to do so itself" states Brand 257 or app 647. Vance cannot show that she made the Complaint "in connection with a public issue or an issue of public interest" Deep photonics corp v La chapelle 385 P3d 1126, 1133, and they were made before any litigation existed I dat 1135, moreover Vance must show it was "in furtherance" of free speech or the right to petition, petitioning activity that is illegal do not qualify Flatly v Mauro 39 cal 4th 299, 319-320. Likewise legal malpractice does not qualify 282 or app 533, 535 nor does a breach of contract Jordan Benel v universal city studios 859 F3d 1184, because "specific criminal acts are not protected speech even if speech is the means of commission Packingham v North Carolina 137 sct 1730, 1736 and Vance's conduct "arises from" unsworn falsification and breach of contract and promissary estoppol, 42 usc §1983, 17 usc 201 17 usc §106, 17 usc §512, 18 usc §1964, 18 usc §1513, 1505, 1512, 1951, 241, 242 2261, 2262, 873, 875, 42 usc §1985, 12631. Likewise Rosen blums arises from official misconduct, malpractice, and breach of Duty. They would have to show that activity would be covered by free speech jurisprudence, then I would rely on my "substantial evidence" to make a prima facie case, and the amount of evidence is needed is minimal it can consist of affidavits, but the court can't weigh the evidence or use a likelyhood of prevailing on the merits young v Davis 314 P3d 350, 356; Staten v steel 222 or app 17, 29 the evidence does not have to be included in the complaint. Acosta's claim in the previous SLAPP that Vances contributory copyright infringement also is wrong, because barber submitted evidence that she admitted giving them access to the videos at County trial, and that they were used for coercion, unlike in Schwern v plunkett as speculation.

PAGE 16

4. Acosta alleges that he will not consider evidence in the exhibits on a motion to dismiss, nor the other complaint on judicial notice contrary to Defendant Vance's citation of Swartz v KPMG LLP 476 F3d 756, 763. Moreover he complains that Barber did not attach the original documents, despite the fact that he himself cites an order from him on Page 18 of the F&R stating that I am not supposed to submit them, he refers to them as "amended supplements." I believe "claim1 exhibits" is ECF 74, and "transcripts" refers to Washington County trial transcripts located in "claim1 exhibits". These are also the same "Black 5" Binders" that I stated Acosta overlooked last time, each is entitled "memorandum in support of Claim[x]" and "claim[x] exhibits", and a table of contents is in the back of the memorandum, which states why it is relevant.

Acosta claims that I failed to prove my ownership of the copyrights, based on similarly faulty analysis, the previous ruling misread the copyright registration form, and no party has ever disputed ownership or raised this issue. Simon did not read the entire case summary the last time, the "case details" in the center says "claim submission completed; no further action required", the complaint lists the registration # VAU-001282435. Moreover the complaint cites the trial transcripts in county court, where Vance admits I recorded them, thus pursuant to 17 USC 201 I am the copyright owner, this is also cited in the exhibits. Acosta also notes that I had person send a DVD to the courthouse, and upon not getting an answer if it was recieved, had a friend upload it digitally with instructions to the clerk to download them. The videos themselves are evidence of who the author is, because I set the camera phone down and then walk into the frame.

5 | Acosta claims that he is ruling on the merits to avoid a fourth iteration of the Complaint, when Barber I and Barber II are the same Complaint, and the reason why Barber has trouble with Compliance with the heightened pleading standards, is that Barber did not have access to any federal case law or rules, nor did he have access to the documents he needed because they were Confiscated as 'nuisance Contraband' by the County jail.

5a | Acosta rules that because I have not proven that I am the Copyright owner, that I can't state a claim for a DMCA taked down done by vance, when ownership of copyright is not an element of that claim. In Lenz v universal music group 9th cir 2015 stephanie lenz was not the copyright owner of an artist known as prince's music, but won because it was fair use. The fact that I sent a DMCA takedown Counter Notice establishes a triable issue of fact, as to whether vance or Barber is the Copyright owner, and if Barber had fair use, and whether vance filed the DMCA notice in Bad faith.

5b | like wise acosta claims that the federal issues resolved, and the rest of the issues were state issues, when Defendant vance admits that they are brought under civil Rico 18 USC §1964 and the gender motivated violence statute. Certainly he is confused because on page 18 of the Complaint I state "racketeering" and cite the prerequisite "racketeering activity". However because I did not at the time have any access to case authorities, I didn't know how to use the RICO Specific pleading requirements, but interferance with my landlord-tenant relationships and employment relationships are injuries to business or property see Diaz v gates 420 F3d 897, and it was caused by racketeering activity, and is a federal cause of action

PAGE 17

The short and sweet version is that vance wanted money while in ohio under a restraining order, so extorted me with threats of arrest for paying for our utility bill, and tried to interfere with my landlord and my tenants so she would live at our home where I also worked out of, doing on call It support for the Downtown Portland area. vance used the same allegations she threatened me with, to distrupt my employment at a Rnancial tech company, and when I reported her she threatened me through her Portland state university attorney with arrest if I tried to use disciplinary action (a violation of 42 USC §1983). vance claims property and money she wasn't entitled to fraudulently, and abrogated our contract, due in part because I lack the time to litigate due to her distruption. when I want to publish a website showing her behavior, she gives these people in europe the videos on my FTP server via google hangouts app, and they post them online, in an attempt to use ORS 163.472 according to her testimony against me. her excuse is that she is "protecting" herself, against the consequences of her previous bad actions, thus it is a "protection" racket.

she states her modus operandi to her love interest Nick Bunzberg: "Honestly, I am the physical abuser, I emotionally abuse, too. I was the first to cheat, It's not just him. I play the victim a lot in my life. I cower when it's not needed, and attract dominant people who want to dominate". the internet slang for this is called a "cry-bully".

5 C | Acosta says that vance's petition to the police is protected activity, but petitions made with reckless disregard for the truth do not have first amendment protection see curry v Hall 839 Fsupp 1437 D.OR; garrison v louisiana 379 US 64; state v oneil 879 P2d 450 (1994) and acosta's previous claim that vance's speech falls under (2)(b) is refuted by Deap photonics Corp v Lachappelle

385 P3d 1126, because when vance made the speech to the police officer, no litigation was contemplated, and it was merely associated not "arising from" the right to petition Id at 1135. Vance could not claim (2)(d) because it was not a matter of public interest Id at 1133.

Dvenis claims "I confirmed with meagan that she told Benjamin not to post the videos. She said that they did agree in 2011 that the videos would not be posted".

"An assertion is made with reckless disregard for the truth when viewing all the evidence the affiant must have entertained serious doubts as to the truth of his statements, or had obvious reason to doubt the accuracy of the information he reported" "the standard for deciding whether an ommission is made with reckless disregard for the truth is determined by asking whether the officer knew a fact and nevertheless withheld it from the affidavit, even though "any reasonable person would have known that this is the sort of thing the judge would like to know". Wilson v Russo 212 F3d 781, 788

There is "substantial evidence" that vance knew the following
a) that 72 hours after they were made they were posted and shared
b) that she posted and shared the same exact videos in 2015
c) that we had a contract for "complete transparency" and to allow access" to our social interactions, and she relied on it for (b).
d) that the videos were on my server since 2011 until 2016
e) that we had discussed making the porn videos for commercialization
f) that she knew the videos were posted and shared in 2011
g) that no aggreement to not post the videos in 2011 was made,

PAGE 19

The ommissions are clearly something that a reasonable officer would want to know, and a jury could find that vance's statements amount to a reckless disregard for the truth. Therefore Barbe's prima facia case met the burden of SLAPP ORS 31.150, and acosta shouldn't have dismissed it with prejudice. Moreover the violation of a contract, or the attempt to infringe on Barber's 1st Amendment rights, do not "arise from" the right to petition, and are not "in furtherance of" first amendment rights see Platley v mauro 139 P3d 2, 15; Kolar v Donahue, mcIntosh & Hammerton 145 cal app 4th 1532, 1537 Jordan - Benel v universal city studios 859 F3d 1184, 1190 citing city of Cotati v. Cashman 29 cal 4th 69, 52 P3d 695, 700


moreover vance's claim on page 33, 34 that she told them that the videos were "hidden on his website", and on page 23 the account of her friend calling it a crime and an attempt to shift the blame, and vances testimony that "my lawyer was discussing with me unofficially, you know, 'maybe you want to do this once this becomes a law'"; "I was just going to leave it there and, you know, wait until it becomes a law", and the timing taking place just after it became a law, and her attorney's threat of arrest if I initiate legal and disciplinary proceedings, or post vance's personal information online that she would pursue criminal charges, supports the inferrance that vance intended to use ORS 163.472 by giving access to the videos to these people, because I wanted to make a website of vance's transgressions, ie the unlawful and unethical conduct. unlike schwern v Plunkett 845 F3d 1241 it is not speculation that vance was the source, she admits that she is, and that she didn't "think anyone else could find them" as she says. she also demonstrates motive and intent in her statements, she doesn't obviously put the actions together with the motive, but it seems clear they knew it was a crime, and she indicates she used her damsel in distress guise.

PAGE 20

and considering her attorney did not allege false reporting or deffamation
it is hard to see how she could have me arrested for either of those,
because posting information online and reporting someone for legal
or disciplinary matters is not harrasment or stalking, but apparently
she did discuss with vance that she could use ORS 163.472, Re
Regardless, this alone is a 42 USC §1983 retaliation claim in itself.

5D   Acosta claims that I cannot assert a claim for 42 USC § 12361, relying
on his previous assertion that Congress did not have authority under
the Commerce clause. Barber's case is distinguished from the case
of United States v Morrison, and the supreme court in watson v Buck
313 U.S. 387 the Court said that the Courts should not declare laws unconstitutional
"in toto" if parts of it may be unconstitutional as applied, the supreme Court
in United states v Morrison should be limited to non-interstate and non
under the color of law, and non state actor claims, not unconstitutional
in every application, or in the circumstances of this case.

The statute says "a person (including a person who acts under the color
of any statute, ordinance, regulation, custom or usage of any state"
USV Morrison 529 US 598, 605-606, and the Court said that Congress
relied on the Commerce clause and Amendment 14, but in that case
Brzonkala did not allege any involvement of any public official
Id at 626, and the crime was rape which was interstate and non
economic but the court held that 18 USC § 2261 (a)(1) was upheld
due to it being interstate Id at 614. In the present case 2261 is
alleged, and economic crime is alleged (extortion from ohio), and
state actors are also alleged as well. So while 42 USC § 12361 may
be unconstitutional as applied to Brzonkala, it does not seem
to be unconstitutional in this case, and the court should make findings.

There are two of these claims, the first is that vance under the color of law, violated felony criminal statutes in having Barbe arrested for ORS 163.472, where violence or a risk of violence was involved. The second is that vance while under a restraining order in ohio made demands for money, or else she would have me arrested for paying our utility bills without our joint funds. Then later when I tried to institute legal and disciplinary action, used a public official (April Kusters) to threaten me with arrest for pursuing it, then plotted to use ORS 163.472 with her and those friends in europe, by placing the videos online in 2015, and trying to pretend that it was I who did it. unlike United States v morrison this involves both interstate Commerce and the 14th Amendment, and crimes with a substantial risk of physical injury, which is inherent in every false arrest. Moreover congress recognized the gender bias in the state criminal justice system.


"Arrest rates may be as low as 1 for every 100 domestic assaults" S. Rep No 101-545 (citing Dutton, profiling of wife assaulters: preliminary evidence for trimodal analysis, 3 violence and victims 5-30 (1988)) " Id at 632, The vawa amendment also added protection for the first time for men, and also authorized money from the federal government to states Id at 661 so it should be upheld under the spending clause as applied to states or beneficiaries of federal funds. vance's attorney who she had file an opposition to the demmurrer, melanie kebler for the oregon crime victims law center is a recipient of these funds, her present attorney in this case is a board member and former director. As the title suggests "violence against women act", the proponents and implimentation of Domestic violence in most state programs is very discriminatory against male victims, and thus is a valid prophylactic.

Barber has provided evidence of this (Claim 2 exhibits page 1001- 1209 and page 1837- 2070), and it is known that humans are skilled tool users, so providing tools that provide free housing, income, and citizenship for female victims, will tend to increase the false positive rates in these systems. The research shows that most male victims (89%) of domestic violence have reported legal and administrative abuse by their partners, because it is a powerful tool. Vance even had an attorney paid at no cost to her to be a private prosecutor in a criminal case, to infringe on Barber's first amendment and copyright rights.

The crimes were motivated by gender animus, vance in the exhibits demonstrates the animus, april kusters also is a feminist and had as a banner on the PSU webpage "fight like a girl; how to be a fearless feminist", the law ORS 163.472 was written based on a template made by feminist groups, ellen Rosenblum, kate Brown, and Rep williamson the principal architects are all feminists, and DDA Atwood refered to Barbers attendance at "women only" employment fairs at trial 3 times, and judge Beth Roberts heard vance testify that she did the same conduct and said "youre saying because she was guilty that you can do whatever you want", when she obviously "consented", and said "youre playing the victim" despite evidence that vance admits that she plays the victim".

The court should make findings about whether 42 USC 12631 can be constitutionally applied to these scenarios, and not merely rely on different conduct that wasnt interstate, wasnt commerce, wasnt under color of state law, and wasnt a public official, to decide the constitutionality of the law as it pertains to conduct that is all of those things, however Barber may still rely on §1983, 1985

5e | Vance may be liable under 42 USC § 1985 and 42 USC § 1983, because Vance conspired with others to deprive Barbee of equal protection of the law with a gender animus, and that Vance was engaged in joint actions with government agents, that she could have only exercised by virtue of state law. It is clear from Vances statements that she has a gender animus, and she sought to deprive Barbee of his first amendment rights with April Kusters, Deputy Duenis, and DA Atwood, which resulted in Barbee's injuries. Addisu v Fredmeyer Inc 198 F3d 1130, 1141, and in implimenting 42 USC 12631 Congress determined that class members "require and warrant special federal assistance in protecting their civil rights" Oum v Barclay 272 F3d 1207, 1217 n.4. Additionally Vance obviously was in joint action with her attorney, April Kusters, who is an employee of PSU hired by PSU to represent Vance. Moreover Vance was in joint action with the state of Oregon in prosecuting ORS 163.472, because Vance's attorney filed an opposition motion to the demurrer, and sought and recieved an order to destroy evidence being used to "harass" her in this court case. See eg Howerton v Gabica 708 F2d 380; Radcliffe v Rainbow Constr Co 254 F3d 772, 783; Tower v Glover 467 US 914, 920. Vance could have only exercised her complaint by virtue of ORS 163.472, which acts to deprive Barbee of his rights under law. Moreover Vance has tried to obstruct both state and federal court proceedings to 'protect' her. griffin v Breckerridge 403 US 88, 91, 96-101 Although "there is no specific formula" mcdade v west 223 F3d 1135, 1139, a meeting of the minds to allow Vance to submit a motion in a demurrer required permission by the DA, who requested it from the judge and then it became a joint enterprise Franklin v Fox 312 F3d 423, 445; Collins v woman care 876 F2d 1145, 1154. Moreover Kusters actions were not a part of litigation, but are more akin to that of police, who functionally complain and attest to the probable cause for a persons arrest for the actions.

PAGE 24

56 | Vance knew when she made the complaint to thomas Dueris that there was no agreement that it would not be posted, because less than 72 hours after they were made they were posted and shared. Moreover Vance herself posted and shared the videos on the google hangouts website, and Vance agreed to "complete transparency" including "access to their social interactions". On a number of occasions Vance has stated that she disliked the Contract, but on no occasion had they agreed to anything else.

Vances actions "arise from" a breach of this contract, and of course the attempt to infringe on Barbe's civil rights pursuant to 42 USC §1983, Vance was prohibited by promissary estoppel from complaining Bixler v. First National Bank of OR 49 or app 195, 619 P2d 895, 898-899; Willistion & Lord A Treatise on the Law of Contracts, §11.8 8.4; Restatement (second) of Contracts §2(1) even if the action was "associated" with speech Kolar v Donahue, Mcintosh & Hammerton 145 cal app 4th 1532, and was not "in furtherance" of the right to free speech Deep photonics corp v Lachapelle 282 or e app 533, 385 P3d 1126, 1135, and occured before any litigation begun Young v Davis 314 P3d 350, 356

like wise Vance has stated that she tries to "protect" herself, and the communication through her attorney at PSU, was to chill speech that was in connection to "legal and disciplinary" actions, in regard to previous interstate crimes. Thus Vance sought to deprive Barbe of equal protection of the law, both in respect to fairly litigating the divorce by her deffamatory and outrageous claims of rape and fraud, and to prevent her from being brought to justice for the extortion that she made to not make those claims, and the plot with kusters and others to use ORS 163.472 in July 2015 despite the fact that barbe did not commit it

PAGE 26

5f Thomas Duenis in his report said that I claimed that the speech was protected by the First Amendment, and he had reason to know that he was infringing on Barber's Constitutional rights. However he consulted Marie Atwood to interprete the statute. Marie Atwood made comparisons to property crimes implying this is an intellectual property dispute rather than a content based restriction of speech.

"For example, if you lend your car to a friend for a day and they never bring it back, it's not your fault for giving them permission initially. They're still guilty of unlawful use of a vehicle. If you tell someone to hold your purse while you go use the restroom and that person takes off with your wallet, it's not your fault for letting them handle your purse. They're still a thief." (transcript page 74)

Thus Atwood knew that this was an intellectual property dispute, and knew or reasonably should have known that the law was preempted by Copyright, when she gave the advice to Thomas Duenis. Moreover the law is both a content based restriction of speech, and an intellectual property infringment. She seems to imply the construction of Article I§8 in state v Robertson is "exclusive or"; rather than "if-then", when categorizing speech.

In any case Atwood and Duenis knew that they did not know where the crime had occured, and they also knew that the crime did not occur at Vances apartment on April 1st 2016. One of them made the decision to list that as the location on the probable cause affadavit, because they are required to under Article I§11 of the OR Const, and the 6th Amendment to the US Constitution, which require that the trial take place in the district where the crime occured.

PAGE 25

5H   Vance also intentionally interfered with Barber's 1099 employment and with his lease and sublets, consisting of intentional interference with contractual relations, and intentional interference with prospective business relations, both by her actions in 2015 and in 2016. In 2015 Vance's actions that caused the torts were extortion done in interstate to demand money and the signing of the divorce aggrement, or else she would falsely accuse Barber of a crime 18 USC 875, 873, ORS 163.275, then Vance told Barber's tennants to not pay him rent and pay it to her 18 USC §1341/43 and attempted theft by extortion and deception ORS 164.075, 085, V 18 USC §1951. Vance then using april kusters threatened Barber with arrest if he initiates legal or disciplinary action 18 USC §1511, 1512, 1513. In preparation of this plan, Vance gave others access to a protected computer for the purpose of extortion 18 USC §1029, 1030. Vance in 2016 committed 18 USC §2319 criminal copy right infringment, by false representation to gain intellectual property rights 18 USC §1343/41, and after Vance was sued retaliated and tried to obstruct the investigation 18 USC §1503, 1512, 1513, with the purpose to obstruct the use of the intellectual property and possess the abuse of the property 18 USC §1951.

In Diaz v Gates 420 F3d 897 the Court said that if a person including a person under color of law, who is engaged in acts of racketeering, and that racketeering causes damages to business or property, a claim under 18 USC §1964 is stated. This includes damages that were proximate and not directly the cause, including uninteded but forseeable consequences. The Court also stated that interference with prospective business relations, and with performance of a contract were injuries "to business or property"; and in addition the copyrights are property, as is the proceeds of a lawsuit (divorce) obtained or caused by the predicate RICO acts.

5I | If Acosta finds that Vance's actions pertaining to the conviction in Washington County are Barred by Heck/Younger, then he has no ability to dismiss them with prejudice, or determine if SLAPP applies. In Heck the court said that the court does not have jurisdiction in the Article III sense, until the conviction is overturned, to then proceed to the merits is to act in excess of jurisdiction see Steel Co. v Citizens for a better Env't 523 US 83, 101-2 Heck v Humpfrey 512 US 477, 489.

5J | The court should construe the malicious prosecution to include unlawful arrest and abuse of process, because "a plaintiff is not required to set forth a legal theory to match the facts, so long as some legal theory can be sustained on the facts of the complaint. likewise Acosta cites that in Oregon there is no claim for alienation of affection, a state tort, however it is not merely some cassanova seducing my wife, it is the State placing a stigma based on race, gender "privilege" and "oppression", despite it being prohibited from doing so, then requiring that all therapists are trained to apply this to mental patients and despite the practice being not being based on evidence or any scientifically verified practice. This Malpractice and "stigma plus" are both available under state law, and it also implicates the due process clause of the 14th Amendment right to family integrity, and the 1st Amendment establishment clause. It is analogous to the anti misegination campaigns, except that the stigma in this case is applied to men, and especially white or asian men, who presumably have "privilege". moreover the state impaired a valid contract and arbitration procedure to first go through exhaustion of remedies, including informal arbitration, then Counseling, then formal arbitration, before divorce.

PAGE 28

5k  The Court should allow a Monell claim against the County finding deliberate indifference to constitutional rights, because of subsequent developments. After the conviction, Barber was at a press conference by the county sheriffs office, where he appeared and told KGW8 news that it had been originally made for commercial purpose, and that vance attempted to blackmail me with the pornography, and Barber posted on Oregon Live. Com (the Oregonian website) copies of evidence, which led to the District Attorney to revoke probation.

The County also prosecuted Jay David Leatherwood for ORS 163.472 as well as Jaycob Patrick Holten with the crime, despite the washington County Counsel and the District Attorney's office being on notice via Barber's filings that ORS 163.472 is patently unconstitutional under Amendment 1 of the US Const, 17 USC § 301, 201(e), 47 USC § 230. In Holten's case a memorandum was given from his attorney Cassidy Rice of Metropolitan Public Defenders to MR Holten's DA, who simply offered a better plea Bargain.

Furthermore the County placed Barber in Disciplinary and Administrative segregation for helping MR Holten file Habeas Corpus, which is contrary to the holding in Johnson v Avery. The County also placed martin Johnson in Administration for the same reason. Barber was told by Deputy Allen that the decision was made by Elmer Dickens of washington County Counsel, first based on ORS 9.160 (practicing law), then when Barber cited Johnson v Avery, the decision was made on the basis that Barber would have "undue influence" on inmates. Barber believes that this pattern shows deliberate indifference to First amendment rights, as a part of the County's custom or policy.

PAGE 29

5L  Barber also asserts a legal malpractice claim, where he stated to his attorney Cameron Taylor that he wanted to bring up Copyright preemption, and Barber and vance's agreement and the Commerce clause/Communications Decency Act, and Taylor did not utilize this. Moreover Jay David Leatherwood and Jaycob Patrick Holten were also represented by attorneys from metropolitan public defenders, and Holten's attorney Rice arranged a plea deal despite knowing the statute was flagrantly unconstitutional, and I am told by MPD client Martin Johnson that Leatherwoods attorney Ted Occialino was caught using drugs and was told by Leatherwood that he thought that it was protected speech but was pushed into a plea deal by Occialino. Barber believes that MPD as a firm is violating the 6th Amendment on a wide scale, and his only other personal interaction, he was told by a MPD employee that while men aren't a protected class under the constitution, in regards to a trespassing charge at a "women only" employment fair paid for by state and federal funds in an attempt to desegregate it.

5m  Acosta claims that I can not make a claim for 17 USC §512 DMCA takedown misrepresentation, because I failed to establish that I was a copyright holder, however a person does not have to be a copyright holder to establish a 17 USC §512 misrepresentation. In Lenz v Universal Music group 9th cir 2015, Stephanie Lenz had made a 30 second video of her child dancing to a song by an artist known as prince. Lenz asserted that she had a right of fair use 17 USC §107 to make a derivative use, and that universal misrepresented the DMCA takedown because it did not consider fair use. The 9th circuit found that universal could be found to be willfully blind to her fair use, and that Lenz would be entitled to statutory damages.

Acosta is not correct that I had proved that I am the copyright owner, I submitted the Washington County trial transcripts where Vance admits that I recorded the videos, which makes me the author and copyright owner pursuant to 17 USC §201. Moreover I had registered the videos with the US Copyright office, and included the registration # in the complaint, and referenced the trial transcripts. Moreover Vance did not make any mention of the DMCA claims in her motion to dismiss, she cited Rule 8(a) for the complaint being confusing and lengthy. The first DMCA claims in march 2016 were made at the advice of April Kusters of PSU, and were the only evidence that Barber "knew or should have known" that Vance did not consent pursuant to ORS 163.472. The second set of DMCA claims were in January 2017, despite being served with this lawsuit and Vance hearing Barber recite 17 USC §201 on the stand to DA Atwood. Thus Vance was aware she was misrepresenting the 17 USC §512 claims, however the first set of claims set in motion the conviction for ORS 163.472.

5N) Vance is also responsible for Contributory Copyright infringment under both 17 USC §106, 201 pursuant to MGM v Grokster (US Sct). Vance admits in Washington County Court that the videos were "hidden on his website", and she didn't think anyone could find them, and they had been there since 2011. However she intended to wait until ORS 163.472 became a law, then she had planned to use the law against me according to her testimony, which is impossible in those circumstances. Vance through her attorney April Kusters at PSU, that if Barber used legal or disciplinary action, or put information about Vance on the internet, she would have him arrested for harrassment, which is also impossible under those circumstances under Amend 1

PAGE 31

Vance claims in her testimony that because Barber had told her that he was going to make a website of her "transgressions", that she told people from europe how to get access to the porn on Barber's server. One of them who goes by the pseudonym "Beardmosexual", who admitted on the website reddit to being in contact with vance, stated on Twitter that the videos had been shown to a dozen others and that he was being expected to post the videos online, and that he did not want to be an accessory to their crime. Moreover Barber's porn appeared on 8chan.co and vance states that her attorney told her she could use a DMCA takedown on the videos if they had posted them online. Given vance's many examples of dishonesty and ommissions to the court, it is plausible that she minimized her role in the events, and that she intended to use ORS163.472 by convincing these people to violate 17 USC §106, and is liable for their infringment

Moreover vance also petitioned the government to violate 17 USC §201(e), and even had her attorney file objections to the demurrer, thus vance should be jointly liable for the infringments by the state, made possible only by vance's reckless disregard for the truth as she complained to Deputy Duenis stating that we agreed they wouldn't be posted, when she knew we had sought to make commercial pornography, had a transparency contract, she "posted" the URL's to people on google Hangouts website, and that they were "posted" 72 hours after they were made to my server. Thus her actions did not "arise from" the petitioning activity, but the abrogation of a contract, copyright violation, and attempts to censor, and thus aren't protected by SLAPP ORS 31.150.

PAGE32

6 | Vance moved to file for Sanctions because Barber had filed copies of the images in question in this case, and irrelevant allegations or in violation of Court's orders. Acosta made some findings and Barber will dispute the findings in each instance.

6A | Barber filed copies of the videos, because they are prima facia evidence of ownership and authorship of Copyright, due to Acosta's findings & Reccomondations in Barbe I & II that Barber did not provide evidence of ownership of Copyright. The videos clearly show Barber start recording, and walk into the scene after setting the Camera phone down, evidence that he is the author and Copyright owner pursuant 17 USC §201

6B | Vance was required to serve the motion on Barber and wait 21 days before filing it with the Court, to give Barber a chance to withdraw or correct the paper that violates the rules of Court see Rule 11(C)(1)(A); Marrie v. Nickels 70 Fsupp 2d 1252, 1267 This "safe harbor" provision was not followed by Counsel.

6C | All of the things Acosta mentions in his Findings & Reccomondations are things related to the Attorney fees already awarded by OR$31,150, it appears that the only thing that vance seeks attorney fees for are related to Rule 8 for the Amended Complaint, and an order preventing Barber from filing any lawsuits against vance in the future, and the arguments over sealing the amended Complaint. None of these implicate a Rule11 violation, and the problem with the Amended Complaint has more to do with the jail's lack of federal materials in the law library, and the time I had alotted to prepare the Complaint due to delays in getting access to the evidence itself.

6D | The court in Hughes v Rowe 449 USS, 14-15 states that attorney's fees can only be awarded only for actions found to be frivilious, unreasonable, or without foundation. "These limitations apply with special force in actions initiated by uncounseled prisoners", not merely because opposing counsel is the prevailing party. None of the actions taken are unreasonable, or without foundation, and they rely heavily on previous case law and are backed up with evidence, therefore fees shouldn't be awarded

6E | Acosta cites a Habeas Corpus Ad testificadum, which is a reasonable way to ensure Barber is able to attend a hearing.

6F | Acosta cites a request to transfer him to federal custody, this is stipulated in 28 USC§1455 removal of criminal proceedings, and is based on the doctorine of Complete preemption

6G | Acosta cites requests for access to a law library, which is a collateral motion, the denial of which is one of the causes of the damages he is now awarding, for failure to comply with Rule 8, which is not present in the washington County jail. Being that the court did not appoint him counsel when he requested it, and failed to ensure Barber's Bounds v Smith requirements were being met, when Acosta stated that they were irrelevant, it is ironic that they are only relevant for awarding fees to vance and not as a mitigating factor. A motion requesting Bounds v Smith like one appointing counsel can be an abuse of discretion, because it can prejudice the plaintiffs claims based on defendants' priues misconduct see Pruitt v Mote 503 F3d 647,

GF | Barbe/ Also asked to convene a Special Grand Jury 18 USC§3332(a)
as explained in the Case In re Grand Jury Application 617 F supp 199

"18 USC §3332(a) creates a right in every person to have information
known by them concerning organized crime to be presented to the
grand jury. It provides two ways for this to occur -- either the
court may bring it to the grand jury's attention or a united states
attorney can" Id at 206 (granting mandamus to US Attorney).

Acosta did not state that the indictments are them selves
frivilous, and he did say Barbe has the right to inform of
violations of the law, but not the right to convene the grand jury.

The underlying reason is that vance herself admitted in Court
to practicing extortion in interstate, and the County Court Judge
ordered to destroy evidence explicitly because it was being used
in this 42USC§1983. I feel as many do, that the legal system
has a two tier justice system, one for politically favored
classes, and the other for everyone else. The epitome of
this is when vance can have a government employed
attorney at PSU threaten Barbe not to engage in his right
to petition the police or courts or use his free speech at
threat of arrest, and petition the court to destroy all
evidence of her wrongdoing at the penalty of imprisonment.

It is axiomatic that the failure to punish crime encourages
more of it, and Barbe was subsequently put in segregated
custody, due to filing a 28 USC §2254 Habeas Corpus, and
again limited from accessing his papers, pencils, and a writing surface.

PAGE 35

6G | Acosta stated that Barber sought to proceed class action, and did not mention that Barber sought counsel, but it is clear that other people are being convicted of a flagrantly unconstitutional statute ORS 163.472, and people not convicted also petitioned the court to overturn ORS 163.472, and class actions are exempt from the younger doctorine because the rights of the class cannot be protected by a single defence in state court.

6H | Acosta stated that Barber sought to get access to copies of documents, because he needed them to draft the complaint according to Iqbal v Ashcroft's pleading requirements, and the County jail wouldn't let other people send him the evidence he relied upon, this like the Appointment of Counsel and the request for law library access is a collateral order that prejudiced Barber's claims, and should be a mitigating factor for fees.

6I | Acosta says that Barber filed Confidential material, but does not describe what is Confidential, or why, or under what duty they were held to be Confidential. Presumably he means the copies of the videos, but those were made for Commercial purpose, and Barber and vance agreed to transparency, which is the opposite of Confidentiality

6J | Acosta says that Barber insists on challenging ORS 163.472 despite Younger, when in fact he has to include it in order to appeal, and he doesn't even mention the younger exceptions. Moreover in citing previous opinions, he did not refer to Simon the memorandum of law that Barber prepared on the matter, so Simon couldn't assess whether it is flagrantly unconstitutional.

PAGE 35

under the Supreme Court Case United States v. Playboy Entm't Group 529 US 803, the statute ORS 163.472 by barring "intimate" images is a content based restriction of speech, is already presumably invalid, and it shifts the burden to the state to show that it is not. Moreover due to the Complete preemption doctrine, Rociszewski v. Arete Assocs Inc 1 F3d 225, 232-233, the charge of ORS 163.472 is converted into a claim asserting 17 USC §106, because it is preempted by 17 USC §301 and Congress intended only Federal Courts to exercise jurisdiction. Thus younger's concern with Comity doesn't exist in this case, and Heck only applies where there are no injunctive relief requested unlike in this case.

6k| Acosta said that I asked to unseal documents, and that he sealed 20 documents, which he says were done on both it's initiative and at vance's request, "to protect personal identifying information of vance and others". This isn't a compelling government interest that merits sealing documents in

Acosta does not say he is sealing documents Containing information integral to crime like credit card numbers. The personal information of "vance and others" is merely related to their own prior statements. Vance claims that the information is private, but does not provide a reason why, she does not allege that Barber Hacked the information, because per Barbers aggrements with vance she agreed to have transparency. Moreover many of the 20 documents include information which doesn't apply, like trial transcripts or public government documents for claims not related to vance, but to institutional discrimination in the state of Oregon instead.

PAGE 36

6L  Acosta says there was "four complaints" in the first 6 months which he is referring to the memorandum of law and exhibits in support of the claims in the first complaint. However he never bothered to even consider or cite these on any of his previous rulings, like when he says that I had not provided any evidence in the SLAPP motion, or when even in this F&R, he claims that Barbe did not supply the original documents that are cited in the complaint or in the Amended Complaint exhibits, which is odd and not understandable to me.

6M  Acosta says that Barbe asked him to take judicial notice of statutes or cases, which is what I understood was to bring special attention to undisputable facts. For example that multiple parties are challenging ORS 163.472 in the case 18CV855-AC which is an exception to Younger v Harris, or requesting notice of 17 USC §511, which displaces the common law doctrines of immunity, and also younger v Harris in addition, however Acosta has not once addressed this statute whatsoever.

6N  Acosta states that Barbe asked for his recusal. As early as Jan 17 Barbe expressed concerns that Acosta had given a paid speech in favor of affirmative action, citing the need for "equal equality", which for Barbe conjures up memories of the George Orwell book Animal Farm. Barbe originally expressed to Acosta that he respects that he has had his own life experiences and that Barbe's have led him to the opposite conclusion. Barbe was concerned of bias, but a different opinion does not rise to the level of bias, later Acostas conduct raised actual concerns, because Acosta's behavior as an expert departs from what

PAGE 37

Barber thought was not just the interpretation of the first Amendment, but also dilligence to ensure that Barber would have a fair trial, via substantive and procedural due process.

For example of the former, Acosta in his minutes claims that he is seriously considering allowing Roberts to destroy every piece of intellectual property owned by Barber, from software he has written to christmas photos, and biochemistry simulations, when the stated reason was that Barber was using the information to "harass" the defendants in federal court. This is the sort of misconduct called "obstruction of proceedings", and "retaliation against witness" that would be sanctionable and would merit injunctive relief to prevent spoilation of evidence. Typically the court order a hearing when seizure and destruction of large amounts of speech for the purpose of suppression occurs. Heller v New York 413 US 483, 488; Fort Wayne Books Inc v Indiana 489 US 46; A quantity of copies of Books v Kansas 378 US 205; Bantham Books v Sullivan 372 US 58; Marcus v Search warrant of property 367 US 717. Acosta in his orders seems to advocate censurship, and a variation of first Amendment jurisprudence, when speech is "inappropriate" or in other words embarrassing.

Acosta has in the previous objections to his previous F&R failed to forward a memorandum of law regarding the constitutionality of ORS 163.472 to simon, refused to look at significant evidence that shows he is the copyright owner, including the videos themselves, the trial transcripts, affadavits, a copyright office registration #, and denied a supeona Duces tecum to the US Copyright office

PAGE 38

Acosta did not follow the guidelines set out in Oregonian Publishing Co v United States District Court 920 F2d 1462, Press enterprise Co v Superior court 464 US 501, 510, Press enterprise Co v superior court 478 US 1, and Article 1 810 of the Oregon Constitution open courts clause.

Article 1810 presumes that civil cases will have a public trial just like criminal cases, and typically this should also cover pretrial proceedings (Press enterprise II), especially the presentation of evidence, and the desire to avoid public scrutiny is not a compelling interest Press enterprise II 478 US at 19, and the pretrial motions like preliminary hearings serve the public interest in making sure that justice is fairly administered Press enterprise II 478 US at 13, 18, 28. Vance did not offer an overriding interest that was based on law or facts that would be prejudiced by having the documents unsealed (Press enterprise II 478 US at 17).

Acosta violated the process when he sealed the documents sua sponte, and when he did so at Vance's request Oregonian publishing 920 F2d 1462, 1465-1466. He did not in the first case allow objections, he did not follow the analysis of whether or not the documents should be sealed in findings, nor did he narrowly tailor the sealing or redactions.

Obviously there is no reasonable expectation of privacy in information willingfully disclosed to third parties or said in open court, Smith v Maynard 442 US 735, nor did vance advance any theory of privacy. It seems that Acosta and vance rely on the belief that "inappropriate" speech is excepted.

PAGE 39

Acosta has claimed that Barbe is unwilling or unable to follow
the court rules, when he informed the court that he did not
have access to the very same rules that he is supposed to follow.
I do not know how Acosta expects me to memorize these
rules, and to then recall them, when Acosta cannot even
consistantly recall parts of the same document that conflict.
In one place he says He wants to avoid a 4th iteration of
the complaint, and in another states that I filed 4 complaints
in the first 6 months, in one place says I didn't provide the
original documents, then says that I was ordered not to submit
those very same documents. Should this then lead me to
believe, consistant by this logic, that Acosta is acting
in bad faith, or maliciously or frivilously, in this document?

7 | Barbe would like findings regarding all of the exceptions
in younger as applied to the evidence in this case, and
under the doctrines of complete preemption, waiver of
immunity 17USC851, removal, NAFTA Treaty rules, and
the First Amendment presumption shifting to the defendants
and ruled on by a three judge panel Take Judicial
Notice of the Memorandum of law in support of injunction.

7A | Barbe would like to have the 28 USC 2284 injunction
decided along with oral arguments by both sides, with
the Evidence in the Binders available, and an order to
the County and state to ensure Barbes attendance at It

7B | Barbe would like leave to file and amended Complaint
pursuant to FRCP 15 to Correct the rule 8(a) errors.

Date 12/7/18          PAGE 40          Ben Barbe